## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                          Case No.  3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

_____

## O R D E R

**THIS CAUSE** is before the Court on several motions in limine.  The Government filed two motions in limine on February 24, 2023.  See Motion in Limine for Jury Instruction (Doc. 189; Government's First Motion); Motion in Limine to Exclude Argument and Evidence at Trial That Is Contrary to the Law (Doc. 190; Government's Second Motion).  Defendants filed responses on March 10, 2023.  See Defendant Ervin's Response to Government's Motion in Limine for Jury Instruction (Doc. 213; Ervin's Response to Government's First Motion); Defendant Ervin's Response to Government's Motion in Limine to Exclude Argument and Evidence at Trial That Is Contrary to the Law (Doc. 214; Ervin's Response to Government's Second Motion); Defendant Matthew Raymond Hoover's Opposition to Government's Motions in Limine (Doc. 215; Hoover's Response).  Defendants filed five joint motions in limine on February 27, 2023.  See Defendants' First Motion in Limine (Doc. 193; Defendants' First Motion);

Defendants' Second Motion in Limine (Doc. 194; Defendants' Second Motion);

Defendants' Third Motion in Limine (Doc. 195; Defendants' Third Motion);

Defendants' Fourth Motion in Limine (Doc. 196; Defendants' Fourth Motion);

Defendants' Fifth Motion in Limine (Doc. 197; Defendants' Fifth Motion).[1]

Hoover filed an additional sixth motion in limine. See Defendant Hoover's Sixth

Motion in Limine Regarding Mrs. Hoover (Doc. 203; Hoover's Sixth Motion),

filed February 27, 2023.   The Government filed responses in opposition to

Defendants' motions on March 10, 2023.   See Government's Response in

Opposition to Defendants' First Motion in Limine (Doc. 207; Response to

Defendants' First Motion); Government's Response in Opposition to

Defendants' Second Motion in Limine (Doc. 208; Response to Defendants'

Second Motion); Government's Response in Opposition to Defendants' Third

Motion in Limine (Doc. 209; Response to Defendants' Third Motion);

Government's Response in Opposition to Defendants' Fourth Motion in Limine

(Doc. 210; Response to Defendants' Fourth Motion); Government's Response in

Opposition to Defendants' Fifth Motion in Limine (Doc. 211; Response to

Defendants' Fifth Motion); United States' Response in Opposition to Defendant

Hoover's Motion in Limine to Exclude Trial Testimony of Erica Ibe Hoover (Doc.

---

[1] Defendants filed duplicate versions of their first five motions in limine. See Defendants' First Motion in Limine (Doc. 198); Defendants' Second Motion in Limine (Doc. 199); Defendants' Third Motion in Limine (Doc. 200); Defendants' Fourth Motion in Limine (Doc. 201); Defendants' Fifth Motion in Limine (Doc. 202).  In this Order, the Court will cite the first-filed document when addressing each set of duplicate motions.

212; Response to Hoover's Sixth Motion).  Accordingly, this matter is ripe for review.

## I.    Background

On March 6, 2023, a grand jury returned a Fourth Superseding Indictment, which alleges twelve separate crimes.  See generally Indictment (Doc. 204; Fourth Superseding Indictment).  In Count One, Hoover and Ervin are charged with conspiring to transfer unregistered machinegun conversion devices in violation of 18 U.S.C. § 371.  Id. at 1–10.  In Counts Two through Eight, Hoover and Ervin are charged with substantive counts of transferring, and aiding and abetting the transferring of, unregistered machinegun conversion devices via the U.S. mail to various individuals, in violation of 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2.  Id. at 10–14.  In the remaining counts of the Fourth Superseding Indictment, the Government charges Ervin with structuring and attempting to structure transactions at a federally-insured financial institution to evade reporting requirements (Count Nine) and possessing unregistered machinegun conversion devices (Counts Ten to Twelve).  Id. at 14–16.

The Court summarizes the factual basis for the charges against Defendants in the Fourth Superseding Indictment here.  The Government alleges that beginning in or about October 2020, and continuing through around July 2021, Defendants Ervin and Hoover conspired to transport unregistered

machinegun conversion devices through Ervin's Auto Key Card business. <u>See</u> <u>id.</u> at 2–3.  The Auto Key Cards, which Ervin allegedly designed and sold,

> consisted of cards machined from stainless steel, into which were etched the design for machinegun conversion devices known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b) in that they are a combination of parts designed and intended for use in converting a weapon into a machinegun.

<u>Id.</u> at 2.  The Government explains "[a] lightning link was a particular design of auto sear," which is "a category of machinegun conversion devices that may be installed into an otherwise semi-automatic AR-15 type rifle and function to convert the AR-15 type rifle to fire more than one shot by a single function of the trigger." <u>Id.</u>  As part of the conspiracy, Hoover created and posted various videos to his YouTube Channel, CRS Firearms, in which he "promoted the sale of [Ervin's] Auto Key Cards." <u>Id.</u> at 3.  Shortly after Hoover would post videos identifying autokeycard.com as a sponsor and promoting the sale of Auto Key Cards, Ervin would mail Hoover cash or items of value such as a Louis Vuitton bag or video production equipment. <u>See</u> <u>id.</u> at 4–10.  In anticipation of trial set to begin on April 10, 2023, the parties have filed their motions <u>in</u> <u>limine</u>.

## II.    Legal Standard

A motion <u>in</u> <u>limine</u> asks the Court "to exclude anticipated prejudicial evidence before the evidence is actually offered." <u>Luce v. United States</u>, 469 U.S. 38, 40 n.2 (1984).  During trial, "the district judge is free, in the exercise of

sound judicial discretion, to alter a previous in limine ruling." Id. at 41–42. While irrelevant evidence is never admissible, "[r]elevant evidence is admissible" unless the Constitution, a federal statute, the Federal Rules of Evidence (Rule(s)), or another rule made by the Supreme Court provides otherwise. Rule 402. According to Rule 401, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Rule 401. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403. The Eleventh Circuit Court of Appeals has "long said that Rule 403 'is an extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed.'" United States v. McGregor, 960 F.3d 1319, 1324 (11th Cir. 2020) (quoting United States v. Cross, 928 F.2d 1030, 1051 (11th Cir. 1991)). When resolving a challenge based on Rule 403, the district court "must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" Id. (quoting Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069 (11th Cir. 2014)).

## III.   Discussion

### A.   Government's First Motion

In the Government's First Motion, the Government asks the Court to prohibit Defendants from "arguing that the United States is required to demonstrate that Auto Key Cards were designed and intended 'solely and exclusively' to be used as machinegun conversion devices or otherwise is required to demonstrate a 'plus factor.'" Government's First Motion at 1. The Government contends that both arguments are irrelevant to the offenses charged in the Indictment and would confuse the jury. See id. at 3. The Government also asks that the Court instruct the jury that "a machinegun is defined as 'a combination of parts designed and intended for use in converting a weapon into a machinegun.'" Id.

Ervin argues that, in the relevant statutory definition of "machinegun," the phrase "designed and intended solely and exclusively" applies to a "combination of parts" as well as "any part." Ervin's Response to Government's First Motion at 1–2 (quoting 26 U.S.C. § 5845(b)). Ervin maintains that the Government's reading would violate the principle of construing statutes in pari materia. See id. at 3. Last, Ervin contends that the Court should construe any ambiguity in the statute in Defendants' favor because of the rule of lenity.[2] Id.

_____

[2] Ervin also asserts, "The definition advocated for in the Eleventh Circuit Pattern Jury Instructions is inclusive as to all three clauses and definitions provided for in 26 U.S.C. §

Unlike Ervin, Hoover agrees with the Government that the Court should instruct the jury that a machinegun is a "combination of parts designed and intended[ ] for use in converting a weapon into a machinegun." Hoover's Response at 2. However, with regard to the term "plus factor," Hoover asserts that the term "simply served to connect the design and intent of an item to its status as a 'weapon,' as opposed to a tchotchke or trinket, which the statutes plainly do not target." Id. According to Hoover, granting the Government's First Motion would "impermissibly eliminate the need for the government to logically connect the design and intent of an item, to a machinegun, and to a weapon." Id.

The Court finds that the Government's First Motion is due to be granted with regard to the definition of "machinegun." The statute defines "machinegun" as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, <u>any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun</u>, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

---

5845(b)." <u>Id.</u> at 4. The Court has found no support for Ervin's interpretation of the statute in the Eleventh Circuit Pattern Jury Instructions, Criminal Cases (2022), https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJuryInstructionsRevisedMAR2022.pdf.

26 U.S.C. § 5845(b) (emphasis added).  The statutory text distinguishes between a single "part" and a "combination of parts."  The commas around the phrase "combination of parts designed and intended" exclude the phrase "solely and exclusively."  In the phrase set off by commas, Congress repeated "designed and intended"—showing that those words apply to "combination of parts"—but omitted "solely and exclusively."  Ervin's interpretation would insert the phrase "solely and exclusively" where Congress omitted it.  Thus, the Court concludes that the phrase "solely and exclusively" only applies to the phrase "any part designed and intended."  Because the meaning of the statute is clear, the canon of construing statutes in pari materia and the rule of lenity do not apply.  See United States v. Warren, 820 F.3d 406, 408 (11th Cir. 2016) (per curiam) (in pari materia); United States v. Rivera, 884 F.2d 544, 546 (11th Cir. 1989) (rule of lenity).  Therefore, the Court will grant the Government's First Motion, in part, and prohibit Defendants from arguing that the Government must prove that the Auto Key Cards were designed and intended "solely and exclusively" for use in converting a weapon into a machinegun.  The Court will instruct the jury that a machinegun is "a combination of parts designed and intended for use in converting a weapon into a machinegun."

As the Court previously held, the Government does not need to prove the existence of a "plus factor," as that term is used in United States v. Hammond, 371 F.3d 776 (11th Cir. 2004).  See Order (Doc. 141) at 16–19.  Therefore, the

Court will prohibit any suggestion that the Government must prove more than the elements of the offenses charged.  Of course, Defendants may argue that the Government has not met its burden to prove the statutory elements.  Although the Court doubts that the term "plus factor" will be helpful to the jury, the Court will not prohibit use of the term at this stage.  The Court will reconsider its ruling if Defendants attempt to use "plus factor" to insinuate that the Government must prove something outside the elements of the charged offenses.  In sum, the Court will grant the Government's First Motion, in part, and deny it, in part.

### B.    Government's Second Motion

In the Government's Second Motion, the Government asks the Court to exclude "any testimony or argument at trial that Auto Key Cards constitute 'artwork' protected by the First Amendment, or that statements made in furtherance of advertising and distributing the Auto Key Cards were protected speech."  Government's Second Motion at 3.  The Government also requests an order precluding "any argument that the [National Firearms Act (NFA)] and federal firearms laws are otherwise unconstitutional or that the Second Amendment ensures the right to possess machineguns."  Id.  According to the Government, arguments about the First and Second Amendments are irrelevant, would confuse the jury, and invite jury nullification.  Id. at 8.

Ervin states that he does "not intend to advocate or argue that it is the role of the jury to determine which statutes the jury believes are constitutional." Ervin's Response to Government's Second Motion at 2.  Ervin agrees with the Government that it would be improper for him to argue that, "even if the 'Auto Key Card' is a 'firearm' under 26 U.S.C. § 5845(a), he has a First Amendment right" or "a Second Amendment right to possess and distribute said firearm." Id. at 4–5.  However, Ervin asserts that the Court should allow arguments and evidence about Ervin's intentions "regarding the purpose and nature of the 'Auto Key Card'" and about whether the Auto Key Card is an illegal machinegun conversion device or artwork.  Id. at 3–4.  Similarly, Hoover argues that he "must not be foreclosed from arguing that the drawings—or 'etchings' as the government calls them—are in fact just that."  Hoover's Response at 3.  In addition, Hoover contends that the Court should not forbid as-applied constitutional challenges at trial or bar the mention of the First and Second Amendments.  Id. at 3–4.

The Court finds that the Government's Second Motion is due to be granted to the extent that the Court will prohibit Defendants from arguing that they have a defense under the First and Second Amendments or suggesting that the NFA is unconstitutional.  If the jury finds that Defendants conspired to transfer machinegun conversion devices, the First Amendment would provide them no defense. See Order (Doc. 141) at 30–32; United States v. Williams, 553

U.S. 285, 297–98 (2008).  Similarly, the Second Amendment would not protect their conduct.  See Order (Doc. 141) at 33–34.  While Defendants may dispute the elements of the charged offenses, they may not present a defense that is unsupported by law.  See United States v. Funches, 135 F.3d 1405, 1408 (11th Cir. 1998).  Thus, the Court will prohibit any argument that the jury may find both that the Government has proved all the elements of a charged offense and that the First or Second Amendment excused Defendants' conduct.  However, Defendants may present evidence and argument about the purpose and nature of the Auto Key Card and whether the Auto Key Card is merely a drawing.  Such evidence would properly address an element of the charged offenses— whether the Auto Key Card is designed and intended for use in converting a weapon into a machinegun.

The Court notes that mentioning the First or Second Amendment may be necessary as background information to explain Defendants' actions in this case.  As such, the Court will not prospectively prohibit any mention of the Constitution.  But the Court will not allow counsel to suggest to the jury an improper basis for a verdict.  See United States v. Kelly, No. 2:18-CR-22, 2019 WL 5328722, at *4 (S.D. Ga. Oct. 18, 2019) ("While there is some probative value to such background information, the probative value is low.").[3]  Therefore,

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310

the Court will grant the Government's Second Motion to the extent that the Court will prohibit Defendants from arguing that they have a defense under the First and Second Amendments or suggesting that the NFA is unconstitutional. In all other respects, the Court will deny the Government's Second Motion.

### C.   Defendants' First Motion

In Defendants' First Motion, Defendants ask the Court to exclude "expert testimony from lay witnesses regarding the operation of firearms and other expert opinions with regard to the 'Auto Key Card.'" Defendants' First Motion at 1. Defendants assert that the Government will call to the stand purchasers of the Auto Key Card and elicit testimony about the Auto Key Card's function, legality, and technical aspects. Id. Defendants contend that the Government has not disclosed any of these witnesses as experts and that any expert testimony on firearms would be needlessly cumulative. Id. at 2.

The Government represents that it will not elicit opinions from the purchasers. See Response to Defendants' First Motion at 3. The Government argues that the purchasers will testify about their purchases of the Auto Key Cards, their states of mind and motives for purchasing the cards, their attempts to use the cards, and statements that Defendants made. Id. at 2–4.

---

(11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

The Court finds that Defendants' First Motion is due to be denied because the testimony proffered by the Government is not expert opinion testimony. Unlike the witnesses in the cases cited by Defendants, the witnesses here will not be asked to express opinions about legal issues for the truth of those opinions. See United States v. Ness, 665 F.2d 248, 250 (8th Cir. 1981); United States v. Baskes, 649 F.2d 471, 478 (7th Cir. 1980); United States v. Southers, 583 F.2d 1302, 1306 (5th Cir. 1978).[4] According to the Government, it intends to elicit testimony about the witnesses' personal observations, states of mind, and actions. That kind of evidence is not expert opinion testimony. Compare United States v. Oriedo, 498 F.3d 593, 602 (7th Cir. 2007) (finding that the expert disclosure rules did not apply to a witness who testified about "his own state of mind while observing this particular drug deal"), with id. at 603 (finding that testimony "ostensibly couched" as direct observation was expert testimony because the witness did not limit his testimony "to what he observed in the search" but instead used the "wealth of his experience" to make "connections for the jury based on that specialized knowledge"). Thus, the Court will deny Defendants' First Motion.

---

[4]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### D.    Defendants' Second Motion

In Defendants' Second Motion, Defendants ask the Court to exclude testimony "regarding the belief of lay witnesses . . . that the 'Auto Key Card,' or similar items, are Machineguns." Defendants' Second Motion at 1. Defendants anticipate that the Government will call purchasers of Auto Key Cards to the stand and elicit testimony that the purchasers believed the Auto Key Cards to be machinegun conversion devices and destroyed their Auto Key Cards. See id. at 1–2. Defendants argue that the jury does not need to know the purchasers' intentions or reasons for buying the Auto Key Card. Id. at 4. Defendants assert that the witnesses may not give lay opinions about the legality of Auto Key Cards because those opinions would not be based on the witnesses' perceptions, would not assist the jury, and would be based on specialized knowledge. Id. Defendants contend that such testimony would not be helpful to the jury because it would merely tell the jury what result to reach or would simply repeat what law enforcement officers told the witnesses. Id. at 2–3.

The Government asserts that the purchasers will give factual testimony about "why they bought an Auto Key Card, what they believed the Auto Key Card could do, and what they intended to do or actually did with it." Response to Defendants' Second Motion at 3. The Government maintains that it will not ask the purchasers to state opinions about whether Auto Key Cards actually are machineguns. Id. at 4.

The Court finds that Defendants' Second Motion is due to be denied. Based on the Government's representations, the Court concludes that the expected testimony will be fact testimony about the witnesses' own actions and states of mind, not opinion testimony. See United States v. Toll, 804 F.3d 1344, 1354–55 (11th Cir. 2015) ("What Carness believed when he prepared the statements is a question of fact, so the district court did not err by permitting this testimony."). The purchasers' intentions and understanding of the Auto Key Cards will be relevant evidence making a fact of consequence—Defendants' knowledge and intent—more or less probable. Therefore, most, if not all, of the proffered testimony is likely admissible. However, the Court questions the relevance of some of the proffered testimony. For example, the Court is unsure how the fact that some purchasers later destroyed their Auto Key Cards in fear of prosecution is relevant to any issue. In addition, testimony that a law enforcement officer told a witness that the Auto Key Card is illegal may be inadmissible. Nonetheless, the Court is of the view that objections to issues such as these are more appropriately addressed at trial with the full context of the question and the potential response. As such, the Court will deny Defendants' Second Motion.

### E.   Defendants' Third Motion

In Defendants' Third Motion, Defendants ask the Court to exclude evidence of "hearsay statements made in electronic communications and

platforms, including Youtube comments and electronic mail." Defendants'
Third Motion at 1. According to Defendants, the anticipated statements will
mostly be hearsay without exception and will be irrelevant. Id. Defendants
also contend that many of the comments would be expert testimony or improper
lay opinion testimony. Id. at 3. In addition, Defendants maintain that the
Government cannot prove that Defendants knew of the comments or agreed to
or adopted the comments. Id. Finally, Defendants argue that the comments
would create a substantial danger of unfair prejudice, confusing the issues, and
misleading the jury. Id.

The Government asserts that many of the electronic communications it
intends to introduce are Defendants' own statements with the statements of
others provided only for context. Response to Defendants' Third Motion at 3.
The Government maintains that it will not offer other communications for the
truth of the matters asserted, but rather to show Defendants' knowledge and
notice of their conduct's illegality. Id. at 3–4. According to the Government,
this evidence will be relevant to Defendants' "states of mind, knowledge, and
intent in manufacturing, selling, and transferring Auto Key Cards." Id. at 4.
In addition, the Government argues that comments and emails on the internet
are not expert testimony. Id. at 5. Next, the Government contends that, while
Defendants may argue that they were not aware of these comments and emails,
those arguments are about the weight of the evidence, not its admissibility. Id.

Finally, the Government asserts that Defendants have not shown any way in which the evidence will be unfairly prejudicial or misleading. Id. at 5–6.

The Court finds that Defendants' Third Motion is due to be denied. Statements made by Defendants are not hearsay. See Rule 801(d)(2). Statements made to Defendants are not hearsay if the Government offers the statements for a non-truth purpose, such as context for Defendants' statements or the effect of the statements on Defendants. See Rule 801(c)(2); United States v. Valdes, 214 F. App'x 948, 950 (11th Cir. 2007) (per curiam).[5] The comments and emails proffered by the Government appear to be relevant to Defendants' knowledge and notice about the legality of their conduct. The Court also finds that the statements are not opinion testimony because the Government will not offer them for the truth of the opinions expressed. As Defendants have not identified how these statements would lead to unfair prejudice or confuse the issues, the Court does not find that the evidence is due to be excluded under Rule 403. Therefore, the Court will deny Defendants' Third Motion.[6]

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see also Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[6] Of course, Defendants may raise a hearsay or other objection to a particular item of evidence at trial if warranted.

### F.   Defendants' Fourth Motion

In Defendants' Fourth Motion, Defendants ask the Court to exclude evidence that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) "has determined that drop-in auto [sears], lightning links, or devices similar to the 'Auto Key Card' are Machineguns." Defendants' Fourth Motion at 1. Defendants argue that the ATF's regulatory determinations about what items are subject to be taxed as machineguns have no bearing on what items are machineguns for the purpose of determining criminal penalties. Id. at 2–3. According to Defendants, evidence of the ATF's determination would mislead the jury and improperly bolster the Government's case. Id. at 4. Defendants express particular concern about evidence "that ATF has already 'settled the issue' or otherwise implying that Mr. Ervin and Mr. Hoover had an obligation to affirmatively clear their conduct with ATF." Id.

The Government asserts that historical information about lightning links will be relevant to Ervin's contention that the Auto Key Cards were an original design idea or artwork. Response to Defendants' Fourth Motion at 1. The Government maintains that it will not elicit testimony that the ATF determined that Auto Key Cards are machineguns. Id. The Government argues that evidence about the ATF's process for issuing determination letters will "counter defendants' claims that they had no way to know whether their conduct was illegal." Id. at 2.

The Court finds that Defendants' Fourth Motion is due to be denied. That lightning links exist and that the ATF classifies them as machineguns are relevant to whether an etching of a lightning link on a metal card is designed and intended for use in converting a weapon into a machinegun. This evidence also is relevant to the jury's consideration of Ervin's contention that the Auto Key Card was an original design and merely artwork. Moreover, this evidence is relevant to the Government's theory that Defendants were trying to skirt the requirements of the law by creating not-quite-completed lightning links. In addition, if Defendants suggest at trial that they had no way to know how the ATF would classify the Auto Key Card, the fact that the ATF has a process for issuing determination letters would be relevant.

Defendants' arguments about the separation of powers and the role of the jury are unavailing because the Government is not charging Defendants with violating a regulation. It appears the Government plans to introduce the regulation to explain <u>why</u> Defendants allegedly violated the NFA in a particular manner. <u>See</u> <u>United States v. Moss</u>, 34 F.4th 1176, 1189 (11th Cir. 2022) ("[M]otive . . . is always relevant in a criminal case."). The question for the jury is not whether a lightning link is a machinegun. The question is whether the Auto Key Card is a machinegun. Evidence of the ATF's determination about lightning links would not improperly settle that question.

In addition, the Court does not find that evidence of the ATF's determination about lightning links will create a danger of unfair prejudice that substantially outweighs the probative value of that evidence. The Court will instruct the jury that it must decide for itself whether the Government has proven beyond a reasonable doubt that the Auto Key Card meets the statutory definition of a machinegun. See United States v. Almanzar, 634 F.3d 1214, 1222 (11th Cir. 2011) ("We presume that jurors follow the instructions given by the district court."). Consequently, the Court will deny Defendants' Fourth Motion.

### G.    Defendants' Fifth Motion

In Defendants' Fifth Motion, Defendants ask the Court to exclude evidence about the "auction price of taxable items under the National Firearms Act." Defendants' Fifth Motion at 1. Defendants argue that the price of registered machinegun conversion devices is irrelevant to the facts at issue here. Id. at 2. Defendants contend that such evidence could lead the jury "to believe that the 'Auto Key Card' should have been registered with ATF, which would be impossible." Id.

The Government maintains that evidence of the price of transferable lightning links is relevant to rebut the contention that the Auto Key Card is Ervin's original design and to prove Defendants' state of mind and motive to create a low-cost machinegun conversion device. Response to Defendants' Fifth

Motion at 2. The Government asserts that Defendants have not explained how this evidence would inflame the jury against Defendants or cause the jury to make impermissible inferences. Id. at 1–2.

The Court concludes that evidence of the auction price of legally transferable machinegun conversion devices is relevant to Defendants' motive. See Moss, 34 F.4th at 1189. Moreover, Defendants have not explained how this evidence would lead the jury to impermissible inferences or otherwise cause unfair prejudice. The Government may appropriately try to prove that the Auto Key Card is a machinegun conversion device and, thus, should have been registered under the NFA. As such, the Court finds that Defendants' Fifth Motion is due to be denied.

## H.    Hoover's Sixth Motion

In Hoover's Sixth Motion, Hoover asks the Court to prohibit the Government from calling Hoover's wife Erica Ibe Hoover (Mrs. Hoover) to testify and from soliciting testimony from Mrs. Hoover about her communications with Hoover. Hoover's Sixth Motion at 1. Hoover asserts that the marital communications privilege applies to bar testimony about Mrs. Hoover's communications with Hoover. Id. at 2. Hoover argues that any non-privileged testimony would be needlessly cumulative of other evidence about Ervin's payments to Hoover. Id. at 2–3.

The Government maintains that the marital communications privilege does not apply because the Government plans to elicit evidence of communications that occurred prior to the marriage and much of the testimony would not concern communications with Hoover. Response to Hoover's Sixth Motion at 3. The Government also asserts that the information would not be needlessly cumulative because Mrs. Hoover's testimony would add context and other information to the documentary evidence. Id. at 5.

The Court finds that Hoover's Sixth Motion is due to be denied. The marital communications privilege does not extend to testimony about acts, communications made prior to the marriage, or to communications transmitted to, or in the presence of, third parties. See Pereira v. United States, 347 U.S. 1, 6–7 (1954); United States v. Pensinger, 549 F.2d 1150, 1151 (8th Cir. 1977). Because the Government does not intend to introduce any testimony about communications between Hoover and Mrs. Hoover during their marriage, the marital communications privilege does not apply. In addition, Hoover has not shown that Mrs. Hoover's testimony would be needlessly cumulative or waste time. See United States v. Brown, 441 F.3d 1330, 1363 (11th Cir. 2006). Therefore, the Court will deny Hoover's Sixth Motion.

Accordingly, it is

**ORDERED:**

1.   The Government's Motion in Limine for Jury Instruction (Doc. 189) is **GRANTED, in part**, and **DENIED, in part**.

    A.   The Government's First Motion is **GRANTED** to the extent that the Court will prohibit Defendants from arguing that the Government must prove that the Auto Key Cards were designed and intended "solely and exclusively" for use in converting a weapon into a machinegun and the Court will instruct the jury that a machinegun is "a combination of parts designed and intended for use in converting a weapon into a machinegun."

    B.   In all other respects, the Government's First Motion is **DENIED**.

2.   The Government's Motion in Limine to Exclude Argument and Evidence at Trial That Is Contrary to the Law (Doc. 190) is **GRANTED, in part**, and **DENIED, in part**.

    A.   The Government's Second Motion is **GRANTED** to the extent that the Court will prohibit Defendants from arguing that they have a defense under the First or Second Amendment or suggesting that the National Firearms Act is unconstitutional.

B.    In all other respects, the Government's Second Motion is **DENIED**.

3.    Defendants' First Motion in <u>Limine</u> (Doc. 193) and Defendants' First Motion in <u>Limine</u> (Doc. 198) are **DENIED**.

4.    Defendants' Second Motion in <u>Limine</u> (Doc. 194) and Defendants' Second Motion in <u>Limine</u> (Doc. 199) are **DENIED**.

5.    Defendants' Third Motion in <u>Limine</u> (Doc. 195) and Defendants' Third Motion in <u>Limine</u> (Doc. 200) are **DENIED**.

6.    Defendants' Fourth Motion in <u>Limine</u> (Doc. 196) and Defendants' Fourth Motion in <u>Limine</u> (Doc. 201) are **DENIED**.

7.    Defendants' Fifth Motion in <u>Limine</u> (Doc. 197) and Defendants' Fifth Motion in <u>Limine</u> (Doc. 202) are **DENIED**.

8.    Defendant Hoover's Sixth Motion in <u>Limine</u> Regarding Mrs. Hoover (Doc. 203) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on March 30, 2023.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record
Pro Se Parties