## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

**Kristopher Justinboyer Ervin, et. al,**

**Appellants,**

**v.**

                                        **No. 23-13062**

**United States of America**

**Appellee.**

_____


## APPEAL OF A CRIMINAL CASE FORM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA DISTRICT COURT NASE NO. 3:21-CR-00022

---

## INITIAL BRIEF OF APPELLANT MATTHEW RAYMOND HOOVER

---

Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant Matthew Raymond Hoover*

*USA v. Kristopher Ervin, et al*, Appeal No. 23-13062

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to 11th Cir. R. 26.1-1(a), Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement. The following are all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party known to the undersigned.

1. Barksdale, Hon. Patricia D., United States Magistrate Judge

2. Call, Lisa, Federal Public Defender's Office

3. Corrigan, Hon. Timothy J., United States District Judge

4. Ervin, Kristopher Justinboyer (Defendant)

5. Handberg, Roger B., United States Attorney

6. Hoover, Erica (Defendant's Wife)

7. Hoover, Matthew Raymond (Defendant)

8. Hoppmann, Karin, former Acting United States Attorney

9. Howard, Marcia Morales (Trial Judge)

i

10. King, Alex, Esq.

11. Klindt, Hon. James R., United States Magistrate Judge

12. Larosiere, Matthew (Defendant-Appellant's attorney)

13. Lopez, Maria Chapa, former United States Attorney

14. Mesrobian, David B., Assistant United States Attorney

15. Monroe, Daniel S., Esq.

16. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division

17. Richardson, Montgomery (Magistrate)

18. Siekkinen, Sean, Assistant United States Attorney

19. Taylor, Laura Cofer, Assistant United States Attorney

20. Tran, Mai, Assistant United States Attorney

21. Zermay, Zachary (Defendant's attorney)

22. Zermay-Larosiere Law Group

23. Linnen, Valarie, Esq. (Appellant's attorney)

No publicly traded company or corporation has an interest in the outcome of this appeal to the undersigned's knowledge.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Matthew Raymond Hoover respectfully requests oral argument on this appeal. Counsel believes oral argument will be beneficial to this honorable Court in its resolution of the case, particularly given the complexity, uniquity, and importance of the issues raised.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP) ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS ........................................................iv

TABLE OF AUTHORITIES.................................................. vi

STATEMENT OF JURSIDICTION.....................................ix

STATEMENT OF THE ISSUES............................................1

STATEMENT OF THE CASE ...............................................2

    (i)    Course of Proceedings and Disposition in the Court Below.........2

    (ii)    Statement of the Facts ...............................................11

    (iii)    Standards of Review ................................................13

SUMMARY OF THE ARGUMENTS .....................................14

ARGUMENT ....................................................................16

I.THE DISTRICT COURT ERRED IN FAILING TO REMOVE A CRITICAL QUESTION OF LAW FROM THE JURY............................16

II.VAGUENESS AND LENITY: THE DISTRICT COURT ERRED IN REFUSING TO ENGAGE IN STATUTORY INTERPRETATION .......22

    a.    THE DISTRICT COURT CONFLATED A FACTUAL QUESTION WITH AN ISSUE OF LAW .............................................27

    b.    § 5845 (b) IS AMBIGUOUS .......................................28

c.    THE DISTRICT COURT'S POSITION ITSELF EVINCES EITHER AMBIGUITY OR A FAILED INTERPRETATION ............. 29

III. THE DISTRICT COURT ERRED IN DENYING MR. HOOVER'S MOTIONS FOR JUDGMENT OF ACQUITTAL BECAUSE THE GOVERNMENT FAILED TO PROVE SEVERAL NECESSARY ELEMENTS OF THE CHARGES ......................................................... 31

a.    COUNT ONE: CONSPIRACY TO TRANSFER UNREGISTERED MACHINEGUN CONVERSION DEVICES ......... 32

b.    COUNTS TWO THROUGH EIGHT: SUBSTANTIVE COUNTS ................................................................. 32

c.    DISCUSSION OF THE GOVERNMENT'S INSUFFICIENT EVIDENCE OF ANY ACTUS REA CONSTITUTING AN OFFENSE UNDER SECTION 5861 ..................................................... 33

d.    THE DISTRICT COURT ALLOWED THE JURY TO PUNISH A *MEANS REA* WITHOUT A CORRESPONDING *ACTUS REA* ......... 46

e.    COUNTS 1 – 8: THE SAME ANALYSIS *SUPRA* APPLIES TO 18 U.S.C. § 2, 18 U.S.C § 371, 26 U.S.C. § 5861(e), and § 26 U.S.C. § 5871 ........................................................................ 52

IV. TREATING A DRAWING AS A PROSCRIBABLE MACHINEGUN CONVERSION DEVICE VIOLATES THE FIRST AMENDMENT ...... 53

V. IF THE AKC FALLS WITHIN § 5845(b), ITS APPLICATION VIOLATES THE SECOND AMENDMENT ......................................... 55

CONCLUSION ....................................................................... 59

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................... 60

CERTIFICATE OF SERVICE .................................................... 61

# TABLE OF AUTHORITIES

## Cases

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,
515 U.S. 687 (1995) ................................................................. 29

*Brita Wasser-Filter-Systeme GmbH v. Recovery Eng'g, Inc.*,
No. 97 C 3915, 1998 WL 473467 (N.D. Ill. Aug. 7, 1998) .................... 30

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ................................. 57

*Cargill v. Garland*, 57 F.4th 447 (5th Cir.), *cert. granted*,
144 S. Ct. 374 (2023) ......................................................... 28, 31

*Chapman v. United States*, 500 U.S. 453 (1991) ................................ 28

*Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*,
860 F.3d 461 (7th Cir. 2017) .................................................... 27

*Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007) .................................... 22

*Dennis v. United States*, 384 U.S. 855 (1966) ................................... 47

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................... 56

*Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) ................................. 21

*Geico Marine Ins. Co. v. Shackleford*,
945 F.3d 1135 (11th Cir. 2019) ................................................. 23

*Geudes v. ATF*, 140 S. Ct. 789 (2020) .......................................... 29

*Google LLC v. Oracle Am., Inc.,* 141 S.Ct 1183 (2021) ........................ 27

*Johnson v. United States*, 559 U.S. 133 (2010) ................................. 24

*Lewis v. Barnhart*, 285 F.3d 1329 (11th Cir. 2002) ............................. 46

*Loughrin v. United States*, 134 S.Ct. 2384 (2014) .............................. 28

*Maracich v. Spears*, 570 U.S. 48 (2013) ........................................ 30

*Miller v. Bonta*, No. 19CV01537BENJLB, 2023 WL 6929336
(S.D. Cal. Oct. 19, 2023) ......................................................... 57

*Mohamad v. Palestinian Authority,* 566 U.S. 449 (2012)...................... 46

*Moskal v. United States*, 498 U.S. 103 (1990) ........................................ 28

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
597 U.S. 1 (2022)............................................................ 4, 6, 55, 56, 58

*Pullman-Standard v. Swint*, 465 U.S. 273 (1982).................................. 19

*Riel v. City of Bradford*, 485 F.3d 736 (3d Cir.2007) .............................. 55

*S.W. Daniel, Inc. By & Through Daniel v. United States*,
831 F.2d 253 (11th Cir. 1987)........................................................ 18, 19

*Spence v. State of Wash.*, 418 U.S. 405 (1974) ....................................... 54

*Staples v. United States*, 511 U.S. 600 (1994) ....................................... 47

*Sw. Airlines Co. v. Saxon*, 596 U.S. 450 (2022) ..................................... 21

*U.S. Bank N.A. v. Village at Lakeridge, LLC*, 138 S.Ct. 960 (2018) ...... 27

*U.S. v. Baptista-Rodriguez*, 17 F.3d 1354 (11th Cir. 1994)................... 50

*U.S. v. Parker* 839 F.2d 1473 (11th Cir. 1988) ...................................... 49

*U.S. v. Vest*, 448 F. Supp. 2d 1002 (S.D. Ill. 2006) ................................ 17

*United States v. Anderson*, 523 F.2d 1192 (5th Cir. 1975) .................... 44

*United States v. Apfelbaum*, 445 U.S. 115 (1980).................................. 51

*United States v. Bull,* 8 F.4th 762 (8th Cir. 2021)................................. 16

*United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004) ......... 47, 48, 49

*United States v. Collins*, 779 F.2d 1520 (11th Cir. 1986)...................... 50

*United States v. Corrigan*, 144 F.3d 763 (11th Cir. 1998)..................... 13

*United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010) ............... 14, 39, 45

*United States v. Di Pietro*, 615 F.3d 1369 (11th Cir. 2010) ................... 13

*United States v. Dodson*, 519 F. App'x 344 (6th Cir. 2013) ............. 14, 27

*United States v. Kegler*, 724 F.2d 190 (D.C. Cir. 1983) ........................ 52

*United States v. Maurya,* 25 F.4th 829 (11th Cir. 2022) ....................... 16

*United States v. McCrimmon*, 362 F.3d 725 (11th Cir. 2004) ............... 13

*United States v. Seher*, 562 F.3d 1344 (11th Cir. 2009) ........................ 13

*VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023) .................... 14, 25

*Watchtower Bible & Tract Soc'y of N.Y. v. Village of Stratton*,
    536 U.S 150 (2002)................................................................................ 55

*Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293 (11th Cir. 2017)........... 23

## Statutes

18 U.S.C. § 2 .............................................................................................. 52

18 U.S.C. § 371 .......................................................................................... 43

18 U.S.C. § 5861(e) .............................................................................. 43, 44

26 U.S.C. § 5845(b) ............................................ 16, 17, 23, 43, 48, 49

## Other Authorities

2A Charles Alan Wright & Peter J. Henning, Federal Practice and
    Procedure (4th ed. 2009)...................................................................... 16

*Merriam-Webster.com Dictionary*, Merriam-Webster, Part,
    https://www.merriam-webster.com/dictionary/part............................ 23

The Functions of Judge and Jury in the Interpretation of Statutes,
    46 HARV. L. REV. 7 1086 (1933) ...................................................... 19, 20

## <u>STATEMENT OF JURSIDICTION</u>

The United States District Court, Middle District of Florida, Jacksonville Division, had jurisdiction pursuant to 18 U.S.C. § 3231. The district court entered its final judgment and commitment order on September 14, 2023. (Doc. 327). Mr. Hoover filed a timely notice on September 20, 2023. (Doc. 333). This appeal is from a final judgment that disposes of all parties' claims. This Court has jurisdiction under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court erred in denying the Appellant's motion for judgment of acquittal and to set aside the indictment on charges of conspiring to transfer and transferring unregistered "combination[s] of parts designed and intended for use in converting a weapon into a machinegun" where the purported "combination of parts" was a homogenous piece of steel with an inaccurate drawing etched upon it and the possession or transfer of which thus did not constitute a chargeable actus rea.

II.    Whether the district court erred, where a subsection of a disjunctive criminal statute was charged separately, in refusing to instruct the jury that a single part cannot sustain a conviction thereunder.

III.    Whether applying 26 U.S.C. §§ 5861(e), 5871, and 18 U.S.C. § 2 to an individual who advertised a drawing on a homogenous piece of stainless steel violated the First and Fourteenth Amendments.

IV.    Whether applying 26 U.S.C. §§ 5861(e), 5871, and 18 U.S.C. § 2 to an individual who advertised a drawing on a homogenous piece of stainless steel violated the Second and Fourteenth Amendments.

## <u>STATEMENT OF THE CASE</u>

**(i)**    <u>**Course of Proceedings and Disposition in the Court Below**</u>

Appellant Matthew Hoover is a political provocateur who operated a successful YouTube channel, covering firearms and politics generally. (Doc. 284 at 67-68). His channel, CRS Firearms, has hundreds of thousands of subscribers and tens of millions of views. (Doc. 282 at 21). The charges at issue relate to Mr. Hoover's paid promotion of the Auto Key Card (hereinafter "AKC", singular, and "AKCs", plural), a homogenous piece of stainless steel upon which a design was lightly etched. (Doc. 280 at 64).

AKCs were designed and sold by Defendant-Appellant Mr. Ervin on the internet where, he sold AKCs of different designs, featuring different numbers of etchings, some with cutouts to use the plate as a bottle opener or pen holder, but always as homogenous steel cards. (Doc. 278, 162-165). The government first indicted Defendant-Appellant Ervin in March of 2021, with conspiracy charges and Defendant-Appellant Hoover added January 26, 2022 in the second superseding indictment. (Doc. 57).

The second superseding indictment alleged that the AKCs sold by Ervin "consisted of cards, into which were etched the design for machinegun conversion devices known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b)[,]" and that Messrs. Hoover and Ervin conspired to transfer the devices through Mr. Hoover advertising Mr. Ervin's site on the CRS Firearms YouTube channel. (Doc. 57 at 2-3). The indictment further alleged that Mr. Hoover's attempt to raise funds for Mr. Ervin's legal defense was in furtherance of the conspiracy. (Doc. 57 at 4).

Prior to Mr. Hoover's indictment, the District Court ruled in a motion hearing that "the question of whether this keycard [meets the definition of a machinegun] is a question that only the jury can decide." (Doc. 138 at 12). Notably, the indictment at that point, as with the Second Superseding Indictment, simply asserted that the AKC was a machinegun, rather than the specific sub-definition later chosen by the government.

On the same day as the superseding indictment, the United States moved for an Arrest Warrant as to Mr. Hoover, and Magistrate Judge

Monte Richardson granted it, with the warrant returned executed the following day. (Doc. 58); (Doc. 59); (Doc. 63).

On June 21, 2022, Mr. Hoover moved to dismiss the indictment on the grounds that it did not allege sufficient ultimate facts to sustain an indictment, and raised several Constitutional issues (Doc. 95), moved to transfer venue (Doc. 96), and to sever Defendants (Doc. 97). Two days later, on June 23, 2022, the Supreme Court issued its opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). Mr. Hoover then filed a notice of supplemental authority, and requested leave to file additional briefing on the Motion to Dismiss. (Doc. 98). On July 1, 2022, Mr. Hoover filed a supplement to the motion, and for declaratory relief, challenging the constitutionality of the charged sections facially and as-applied under *Bruen*. (Doc. 101). The United States responded to the motions on July 20, 2022. (Doc. 103); (Doc. 104); (Doc. 105).

On August 31, 2022, the government returned a third superseding indictment, the chief material change from the Second being the government adding that AKCs constituted machineguns "in that they are a combination of parts of parts designed and intended for use in converting a weapon into a machinegun." (Doc. 120 at 2).

4

On September 2, 2022, the District Court denied Mr. Hoover's motions to transfer venue and to sever trial. (Doc. 125). On September 7, 2022, the District Court denied, as moot, Mr. Hoover's motions to dismiss. (Doc. 126). On September 22, 2022, Mr. Hoover filed a renewed motion to dismiss, and a Second Motion to Dismiss for First and Second Amendment Violations and for declaratory relief. (Doc. 132); (Doc. 133). In the motions, Mr. Hoover argued that the government's simple assertion that a homogenous steel card with lines drawn on it was a combination of parts was inconsistent with the charged conduct. (Doc. 132 at 8-9), and that "the government has conclusively demonstrated that the Auto Key Cards are not machinegun conversion devices as a matter of law because as pled in the Indictment, the AKC is not a… 'combination of parts.'" (Doc. 132 at 12-13). Mr. Hoover also argued that the Indictment failed to address scienter or allege facts sufficient to establish the element of scienter, and further raising lenity concerns. (Doc. 132 at 15). The motion further appended a letter from the Chief of ATF's Firearms Technology Industry Services Branch, who admitted in 2018 that "[A] fixture designed to repair and/or manufacture the parts of a [drop in auto

sear]…is not regulated under the [Gun Control Act] or the [National Firearms Act]." (Doc. 132 at 20).

In his Second Motion, Mr. Hoover thoroughly briefed the necessity of the government to carry its burden under the *Bruen* standard both facially and as-applied, and complained of First Amendment violations. (Doc. 133).

On October 7, 2022, the government filed its reply to Mr. Hoover's motions, arguing that Mr. Hoover's positions were foreclosed by rulings in the case prior to his arraignment, that whether a single piece of steel can be considered a "combination of parts" is a jury question, and relying on pre-*Bruen* caselaw for its position that the Second Amendment did not apply. The government's brief made no historical argument regarding the Second Amendment, and referred to the Court's earlier findings on First Amendment arguments. (Doc. 138).

On October 18, 2022, the District Court denied both of Mr. Hoover's motions to dismiss on all grounds. (Doc. 141). The Order declined to evaluate the charged issues under *Bruen*, relying on pre-*Bruen* caselaw from the Ninth Circuit. (Doc. 141 at 32-33). It likewise declined to address

the First Amendment arguments advanced by Mr. Hover. (Doc. 141 at 30-31).

On September 28, 2022, the government moved *in limine* to exclude trial testimony of the Defendant-Appellants' proposed experts, arguing primarily that any testimony as to whether the AKC was a machinegun, whether it was a "part", or otherwise, would constitute conclusions of law, despite previously arguing that same question was a factual matter only the jury could decide. (Doc. 126 at 16-17), and despite its earlier contention that it would rely on ATF experts to opine that the AKC was, in fact, a machinegun (Doc. 103 at 11). This began a protracted series of competing motions regarding experts, culminating in the government's proffers of anticipated testimony that *excluded* any conclusions as to what the AKC constituted. (Doc. 180); (Doc. 181).

At the *Daubert* hearing, counsel for Mr. Hoover specifically brought up concerns about the government expert's testifying as to where the line is drawn between a drawing and a machinegun, to which the Court replied with that "he's not going to testify to the conclusions of law." (Doc. 218 at 41-42). Despite substantial argument about the issues in allowing a government witness to testify about manufacturing a machinegun *from*

7

the AKC, the Court denied Mr. Hoover's motion to exclude testimony that an ATF Firearms Enforcement Officer "saw the item, he believed in his mind or formed a hypothesis that it was a lightning link, and so he then tested that hypothesis. And to test the hypothesis, he cut out the pieces and put them in a firearm, and it resulted in the firearm firing more than one bullet with the action of a single trigger pull. Although in some instance it was -- instances it was less successful than." (Doc. 218 at 61).

 On February 24, 2023, the government filed an opposed motion *in limine* to exclude argument and evidence implicating the First and Second Amendments. (Doc. 190).

On March 6, 2023, the government returned a fourth superseding indictment, removing some counts as to Mr. Ervin. (Doc. 204).

On March 28, 2023, Mr. Hoover moved for a Bill of Particulars, arguing his entitlement to know what "parts" constituted the "combination of parts" the government contends the AKC to be. (Doc. 220). The government responded, asserting that such notice was given as the government had defined the parts of a "lightning link," as opposed to the AKC, which the government contends contains an etching of a

lightning link. (Doc. 236). The magistrate denied Mr. Hoover's motion. (Doc. 237).

On March 30, the Court issued an order granting the government's motion in limine "to the extent that the Court will prohibit Defendants from arguing that they have a defense under the First or Second Amendment or suggesting that the National Firearms Act is unconstitutional," and denying all of Defendants' motions in limine. In the Order, the court notes that "The Government maintains that it will not elicit testimony that the ATF determined that Auto Key Cards are machineguns." (Doc. 223 at 18).

Given the fourth superseding indictment, Mr. Hoover renewed his motion to dismiss, which the Court denied. (Doc. 277, 24-25). The case then proceeded to a jury trial beginning on April 11, 2023. (Doc. 247). The Government called as witnesses various law enforcement officers and laypeople to testify to the facts below.

At the close of the case, Defendant-appellant Hoover moved for judgment of acquittal, asserting that the government has not presented a prima facie case of any of the counts charged against him, that it failed to prove any of the cards were a "combination of parts," failed to prove

9

scienter, and failed to prove the cards were designed and intended to convert a firearm into a machinegun, which the Court took under advisement. (Doc. 283 at 223-236). The arguments for judgment of acquittal are preserved as if made at the close of the government's evidence. (Doc. 283 at 230).

Prior to deliberations, and in light of the government's decision not to proceed generally with all four "machinegun" definitions in the disjunctive, but rather specifically under the "combination of parts" language, counsel for Messrs. Hoover and Ervin moved the court to include a limiting instruction that if the jury finds that the subject item was a singular "part," that they must acquit. The Court declined to add that instruction. (Doc. 283 at 16-23).

On April 21, 2023, the jury returned a verdict of guilty as to counts One, Two, Three, Five, and Seven of the Fourth Superseding Indictment, and not guilty as to counts Four, Six, and Eight. (Doc. 264).

On May 19, 2023, Appellant Hoover filed a motion for judgment of acquittal (Doc. 274), which was denied ahead of the sentencing hearing. (Doc. 310).

On September 7, the Court issued its sentence of sixty months followed by three years of supervised release on each count. (Doc. 326). The court entered judgment on September 14, 2023. (Doc. 327) Mr. Hoover filed a timely notice of appeal on September 20, 2023. (Doc. 333).

Mr. Hoover remains incarcerated on the judgment and sentence at issue.

**(ii)** <u>**Statement of the Facts**</u>

Matthew Raymond Hoover of Coloma, Wisconsin, operates a popular YouTube channel called CRS Firearms. (Doc. 282) at 21. Prior to the indictment, he also worked at Coloma Resale in, a federally licensed firearms dealer and special occupational taxpayer. (Doc 204) at 1. Kristopher Justinboyer Ervin was a resident of Clay County, Florida. He operated an internet site upon which he advertised AKCs for sale. (Doc 204) at 1.

The site advertised the AKC in several forms, each with different numbers of laser etchings. Some with small cutouts—advertised as "pen holders," some with bottle opener cutouts, and some with no internal cuts at all, but all the AKCs were homogenous, singular pieces of steel. The

11

site consistently instructed customers not to cut or modify the AKC in any way. (Doc. 259-278). Mr. Ervin had the AKCs made at Orange Park Machine, and specified that the laser etching only be strong enough so as not to be immediately wiped off, leaving the integrity of the underlying material "unchanged." (Doc. 280 at 64).

At some point, Mr. Ervin purchased a paid sponsorship slot on Mr. Hoover's YouTube channel, where Mr. Hoover began advertising Mr. Ervin's website.

ATF Special Agent Jesse Hooker purchased an AKC from Ervin's site on January 15, 2021 and January 26, 2021. (Doc. 259-37); (Doc. 277 at 259). He sent the AKCs to ATF Firearms Enforcement Officer Cody Toy. (Doc. 277 at 256).

FEO Cody Toy attempted to cut out multiple pieces from the AKCs, describing them as "a template to be cut out." (Doc. 283 at 206). Most of the devices manufactured by FEO Toy did not cause a firearm to fire automatically. FEO Toy cut outside the lines on one, because the drawing was "a little too tall." (Doc. 283 at 192-193). This device induced a hammer-follow malfunction in the test firearm, causing it to fire more than one shot. (Doc. 283, 209-210).

12

State's witness Richard Roberts, who works in precision industry, attempted to manufacture a machinegun conversion device by cutting the etchings out of an AKC first to the outside edge of the etching, then to the inside edge, without success. (Doc. 282, 114-118).

**(iii)** <u>**Standards of Review**</u>

As to Issue I and II, This Court reviews *de novo* a district court's denial of a motion for judgment of acquittal. *United States v. McCrimmon*, 362 F.3d 725, 728 (11th Cir. 2004). This court reviews "*de novo* the legal question of whether an indictment sufficiently alleges a statutorily proscribed offense." *United States v. Seher*, 562 F.3d 1344, 1356 (11th Cir. 2009).

As to Issues III and IV, when a motion to dismiss the indictment raises constitutional questions, this Court reviews *de novo* the constitutionality of a law as applied in a particular case, and the interpretation of the statute by the district court. *United States v. Di Pietro*, 615 F.3d 1369, 1370 (11th Cir. 2010); *United States v. Corrigan*, 144 F.3d 763, 768 n.4 (11th Cir. 1998).

## SUMMARY OF THE ARGUMENTS

Pivotal in this case is "the classification of [the AKCs] as unlawfully [transferred] machineguns…a legal question of statutory interpretation." *United States v. Dodson*, 519 F. App'x 344, 347–48 (6th Cir. 2013). There are no questions of degree when it comes to the National Firearms Act, "something is or is not" a machinegun. *United States v. Crooker*, 608 F.3d 94, 97–98 (1st Cir. 2010). The district court erred in failing to resolve—and then submitting to the jury—this legal question.

Even so, no reasonable jury, properly instructed, could have returned a conviction as to Mr. Hoover. The government charged Mr. Hoover using a sub-part of the federal machinegun definition respecting "a combination of parts designed and intended" in converting a weapon into a machinegun, thereby eliminating the context and limiting language attendant a single "part" under the same statute. The evidence is uncontested that the AKC is a homogenous piece of steel, and thus cannot possibly manifest a "combination of parts." The actus rea are simply absent.

The theory that something *is* what it *resembles* in the firearms context was recently held to be "without any objective hook in the statute" by the Fifth Circuit. *VanDerStok v. Garland*, 86 F.4th 179 at 190 n.13 (5th Cir. 2023). If

14

the statute actually proscribes such conduct, then it is incredibly vague on that point and must be narrowly construed to avoid an absurd result.

The AKC is a drawing on a homogenous piece of steel, nothing more. Prosecuting and punishing Mr. Hoover for his role in *talking about* a drawing on a piece of metal presents substantial First and Second Amendment issues, which the district court failed to address in denying his motion to dismiss the indictment. The First Amendment protects that which manifests an intent to convey a message, which is likely to be understood, like the AKC.

If, on the other hand, the AKC somehow falls under § 5845, then it is an accoutrement qualifying as an arm under the Second Amendment, and thus it was the government's burden to show that criminalizing something like the AKC is deeply rooted in American legal text, history, and tradition. The government refused to do so, and the district court allowed it to shirk this burden.

In all respects, this case is about line drawing. The greatest art is that which goes up to the line without crossing it. In law, drawing lines is exclusively for Congress, interpreting those lines exclusively for the courts, and neither of those duties are to be handled by a jury. To justify a conviction, it must be proven that an individual crossed a clearly defined line. Mr. Hoover merely talked about these lines, he did not cut or cross them.

# ARGUMENT

## I.   THE DISTRICT COURT ERRED IN FAILING TO REMOVE A CRITICAL QUESTION OF LAW FROM THE JURY

The district court erroneously allowed the jury to decide a purely legal question, *viz.*, whether a single, homogenous piece of steel was or could be a "combination of parts" within the meaning of 26 U.S.C. § 5845(b). Challenges to jury instructions are questions of law, subject to *de novo* review by this Court. See *United States v. Maurya,* 25 F.4th 829, 842 (11th Cir. 2022). "It is the duty of the trial judge to charge the jury on all essential questions of law, whether requested or not." *United States v. Bull,* 8 F.4th 762 (8th Cir. 2021), quoting 2A Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure § 485 (4th ed. 2009).

Questions of law are for the court, not the jury. In this case, as a matter of a law, a single piece of homogenous steel cannot be a "combination of parts." Thus, the district court erred in failing to dismiss that allegation of the indictment. This issue was raised in the motion to dismiss the indictment, (Doc. 132 at 3-4); (Doc. 277 at 24-25), which was denied, *id.*, and in the motion for judgment of acquittal, which was denied. (Doc. 274); (Doc. 310).

16

The National Firearms Act's machinegun definition is disjunctive and covers a host of different items.

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). The Act, intended to comprehensively regulate "crime guns," *see U.S. v. Vest*, 448 F. Supp. 2d 1002, 1014 (S.D. Ill. 2006), was amended several times to cover (1) a weapon which actually shoots automatically; (2) a weapon designed to shoot automatically, despite that it might not presently; (3) a weapon which one shot automatically but has had that capability removed in a way it can be readily restored; (4) the frame or receiver of a weapon which shoots, shot, or is designed to shoot automatically; (5) any single part designed and intended, solely and exclusively, in converting a weapon into weapons 1, 2, or 3; (6) a combination of parts designed and intended for converting a weapon into weapons 1, 2, or 3; and (7) any combination of parts from which such a

weapon can be assembled if such parts are in the possession or under the control of a person.

The statutory definition is comprehensive, and has different qualifications for singular parts, combinations of parts—though not necessarily a weapon—that are designed and intended for a certain purpose, and a combination of parts from which a weapon can be assembled. This Court has already grappled with an edge case where it held a purportedly single-shot firearm to be consistent with some, but not all of the possible machinegun definitions in § 5845(b). *S.W. Daniel, Inc. By & Through Daniel v. United States*, 831 F.2d 253, 254 (11th Cir. 1987).

In *S.W. Daniel*, the appellant had manufactured what was ostensibly an M11 submachine gun, but with an extra part preventing the insertion of a magazine, thereby relegating it to only fire a single shot. This Court gave the following illustration:

> Assume, for example, that parts A, B, and C are needed to make a machine gun. If parts A, B, C and D are provided in a single-shot weapon, and D can be eliminated from the gun, then that single-shot gun clearly contains "any combination of parts from which a machine gun can be assembled" 26 U.S.C. § 5845(b), and all of those parts "are in the possession or under the control of a person." *Id.* Similarly, if that single-shot firearm contains parts A, B, and E, and a simple modification of part E can transform it into part C, then

18

> once again all the essential components from which a machine gun
> "*can be* assembled" 26 U.S.C. § 5845(b) (emphasis supplied) are in
> the possession of the one person who holds the single-shot weapon.

*S.W. Daniel, Inc.*, 831 F.2d at 254. This case, though, presents the opposite of the *S.W. Daniel* problem: the government insisted on an inapplicable sub-definition—specifically a "combination of parts designed and intended[] for use in converting a weapon into a machinegun"—and applied it to a single homogenous component. Here, there is no "A, B, or C." There is only the card, the homogenous piece of steel. The "combination of parts" definition does not contemplate a single piece that might, someday, maybe, become parts A and B.

While the distinction between questions of fact and law is often "vexing", such is not always the case. *Pullman-Standard v. Swint*, 465 U.S. 273 at 288 (1982). "Interpretations of statutes, being thus affected by legal principles of construction and rules of law, requires knowledge of a kind different from that of the layman; and hence, so far as such knowledge is involved even in conjunction with the commoner elements, the problem is one of law for the court." The Functions of Judge and Jury in the Interpretation of Statutes, 46 HARV. L. REV. 7 1086 at 1093 (1933). Where a disjunctive statute treats "any part," though not a weapon itself

or a receiver, in one way (in that it must be designed and intended solely and exclusively for a specific use); "a combination[s] of parts," though not together themselves a weapon another way (in that they must be designed and intended, though not necessarily solely and exclusively, for a specific purpose); and "any parts," which together accomplish an objective functional purpose, still another way (in that they must be in the custody and control of a person), it is clear that Congress did not intend for these proverbial streams to be crossed with abandon.

The question of whether a single, homogenous piece of steel can constitute a "combination of parts" under such a regime is one for the court, not the jury. 46 HARV. L. REV. 7 at 1087 ("Naturally, most cases assert very distinctly that interpreting a statute is always a question for the court, often not indicating whether it is always one of law may or may not sometimes be one of fact.") (collecting cases and treatises). Questions of fact incidental to statutory interpretation are often for the court exclusively. *Id*.

Whether the statute at issue presented an ambiguity is of no bearing in addressing the fact that submitting the question of whether a "single piece of metal" can be a "combination of parts" to the jury was

20

inappropriate. (Doc. 283 at 25). When questions regarding statutory text arise, it is the role of the courts to approach these interpretive problems methodically, using traditional tools of statutory interpretation, to confirm any assumptions about the "common understanding" of words. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021).

In any event, courts have a duty to interpret statutory language according to its ordinary, contemporary, common meaning; "to discern that ordinary meaning, those words must be read and interpreted in their context, not in isolation." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (internal quotations omitted). Yet, the lower court here did precisely the opposite. Over objections, it provided jury instructions limiting the charged language to "a combination of parts designed and intended for use in for use in converting a weapon to shoot automatically," (Doc. 254 at 18, 19, 25, and 26). and refused to clarify that, as charged, should the jury find that the AKC was only a single part, or not a part at all, they must acquit. (Doc. 283, 12-25). Indeed, the concern of counsel was that the district court's proposed jury instructions would make the defense, in arguing that a "combination of parts" must consist of multiple components appear to be "quibbling and being

21

technical," when the distinction was of critical legal significance. (Doc. 283 at 21). Further, the court's jury instructions, in failing to clarify as to the part/parts distinction, was materially misleading given the government had elicited testimony from its expert that a single part could be a machinegun, which the district court allowed over the objection of both Defendant-Appellants. (Doc. 282 at 236-37). Thus, not only did the court improperly divest itself of its duty to interpret that statute at the Motions to Dismiss and for Judgment of Acquittal, but it entrusted the jury to interpret and apply a statute absent important context. In both contexts, this is reversible error. *See Curley v. Klem*, 499 F.3d 199 at 211 (3d Cir. 2007) ("When a district court submits that question of law to a jury, it commits reversible error").

## II.   VAGUENESS AND LENITY: THE DISTRICT COURT ERRED IN REFUSING TO ENGAGE IN STATUTORY INTERPRETATION

Mr. Hoover raised issues of vagueness and statutory interpretation implicating the rule of lenity at several stages. (Doc. 101 at 4); (Doc. 132 at 4); (Doc. 274 at 15-17). "A law can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

22

prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1319 (11th Cir. 2017) (cleaned up).

The Government pled that the AKCs are "cards . . . into which were etched the design for machinegun conversion devices known as lightning links[.]" It then, in a conclusory manner, declares that such cards are "machineguns as defined in 26 U.S.C. §[§] 5845(a) and 5845(b) in that they are a combination of parts designed and intended for use in converting a weapon into a machinegun." (Doc. 204 at 2). To embrace the district court's position that a card with a design on it can be a "combination of parts" under § 5845(b) would be to ignore the plain and ordinary language of the word. The term "part" is undefined in the statute, but "[i]f possible, every word and every provision is to be given effect." *Geico Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1141 (11th Cir. 2019). The ordinary meaning of a "part" in the context of machinery like a firearm is "a constituent member of a machine or other apparatus." *See Merriam-Webster.com Dictionary*, Merriam-Webster, Part, https://www.merriam-webster.com/dictionary/part. (last retrieved on January 16, 2024); *See also Johnson v. United States*, 559 U.S. 133, 134

23

(2010) (where a word is undefined, the court must give it its ordinary meaning.). The statute does not refer to something that may one day become a part, nor does it refer to drawings or schematics for parts. As charged, it refers, quite simply, to something that *is* a *combination of parts*. Still, though, the district court disagreed. Either the district court failed in discharging its duty of statutory interpretation, or the statute is sufficiently ambiguous to invoke the rule of lenity. This issue was raised in the motion to dismiss the indictment, (Doc. 132 at 4); (Doc. 277 at 24-25), which was denied, *id.* (district court denying the orally renewed motion as to the fourth superseding indictment), and in the motion for judgment of acquittal, which was denied. (Doc. 274); (Doc. 310).

In no event would a reasonably intelligent person foresee that the conduct charged in this case—talking about a card with a drawing on it— would be deemed criminal, much less that a homogenous piece of steel with a drawing on it would be deemed a combination of parts. As applied against Mr. Hoover, 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth Amendment. Mr. Hoover had no reason to believe, at any point, that he would be engaging in criminal conduct if—as alleged—he entered into an agreement with a tchotchke

salesman to discuss stainless steel cards with a design on them on his YouTube channel. Further, where it comes to templates, schematics, and other things that are not now, but could someday become regulated items, the record reflects that the ATF has opined both that "a fixture for use in manufacturing or repairing a machinegun" is not regulated by the Act, and that "indexing of the location of a hole or feature is equivalent to completing the actual hole or critical feature." (Doc. 132-1). In that the Act only contemplates what is or is not a machinegun, this evinces a history of arbitrary and discriminatory enforcement.

The government attempting to enshrine a similar species of arbitrary and discriminatory enforcement through the APA was recently struck down by the Fifth Circuit in the context of unfinished firearm frames and receivers. *VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023). *VanDerStok* involved an ATF interpretation of "frame or receiver" under the Gun Control Act, where the ATF sought, through notice and comment, to define the terms "frame" and "receiver" to include items that had "reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon." *Id.* at 214. This is the exact same theory the government proceeded under below: that something *is*

what it *resembles*. A theory the Fifth Circuit saw to be "without any objective hook in the statute." *Id.* at 190 n.13. It cannot be the case that a theory of enforcement be so disconnected from that statute that its implementation violates the APA, but simultaneously carry the day in a criminal prosecution.

It is worth emphasizing that no court has ever applied the National Firearms Act to a fact pattern like this one. The conduct at issue certainly isn't in the heartland of machinegun cases. Importantly, despite ample opportunity to do so, the Government did not allege that a consumer was able to convert a firearm into a machinegun using the alleged design etched into a stainless-steel card.

In its order denying Mr. Hoover's motion for judgment of acquittal, the district court addressed the issue of lenity in a footnote conflating the legal meaning of the words "combination of parts" with a factual question:

> For the same reasons, Defendants' argument fails to the extent they rely on the rule of lenity. See Hoover's Motion at 16–18. The rule of lenity applies "where there is a 'grievous ambiguity or uncertainty' in the statute." United States v. Izurieta, 710 F.3d 1176, 1182 (11th Cir. 2013) (quoting Chapman v. United States, 500 U.S. 453, 456 (1991)). Defendants do not identify any ambiguity in 26 U.S.C. §§ 5845, 5861, and 5871. Defendants wrongly equate uncertainty about a factual question (whether the items Defendants transferred

were mere drawings or a combination of parts) with doubt about a legal question (the meaning of the statute itself).

(Doc. 310 at 22, n. 5). This analysis misses the mark on several grounds.

### a. THE DISTRICT COURT CONFLATED A FACTUAL QUESTION WITH AN ISSUE OF LAW

The issue raised was not one of fact. Rather, the issue is, where a statute treats "a part," "any part," "any parts," and "a combination of parts" in four distinct ways, whether the term "a combination of parts" could include a single homogenous item, a legal question. Where the argument "challenges the classification of his auto sears as unlawfully possessed machineguns; this is a legal question of statutory interpretation subject to *de novo* review." *Dodson*, 519 F. App'x 347–48. Even if the ultimate question has elements of fact, "applying the law [here] involves developing auxiliary legal principles for use in other cases" and thus this Court reviews the decision *de novo*. *Google LLC v. Oracle Am., Inc.,* 141 S.Ct 1183, 1199 (2021) (quoting *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 138 S.Ct. 960 at 967 (2018)).

Disparate treatment of singular and plural items in a statute is not an uncommon issue of law. *See Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 473 (7th Cir. 2017) ("When a law employs a

27

specific term at one point, and omits it at another, we assume that 'Congress intended a difference in meaning.'" (quoting *Loughrin v. United States*, 134 S.Ct. 2384, 2390 (2014)).

### b. § 5845 (b) IS AMBIGUOUS

Courts have considered two standards for whether a statute is sufficiently ambiguous to trigger the rule of lenity, though the Supreme Court has not made it clear which governs the rule of lenity. One standard asks whether there exists a "reasonable doubt" as to the statute's meaning. *See Moskal v. United States*, 498 U.S. 103, 108 (1990). The other inquires whether there is a "grievous ambiguity" in the statute. *See, e.g., Chapman v. United States*, 500 U.S. 453, 463 (1991). It matters naught, however, which standard applies because, as the Sixth Circuit has held, § 5845 (b) is sufficiently ambiguous to necessitate the rule of lenity under "the more stringent 'grievously ambiguous' condition." *Cargill v. Garland*, 57 F.4th 447, 469 (5th Cir.), *cert. granted*, 144 S. Ct. 374 (2023).

### c. THE DISTRICT COURT'S POSITION ITSELF EVINCES EITHER AMBIGUITY OR A FAILED INTERPRETATION

If it was the position of the district court that the AKC, as charged—a homogenous piece of steel with lines drawn on it—could be considered "a combination of parts" under a theory that the parts can be "accessed" through "material alteration" and transformative labor, then the statute is incredibly ambiguous on that point and it must be construed narrowly to avoid that result. (Doc. 310 at 7-10). "Before courts may send people to prison, we owe them an independent determination that the law actually forbids their conduct." *Geudes v. ATF*, 140 S. Ct. 789, 790 (2020) (Gorsuch, J., statement respecting denial of writ of certiorari). As the Supreme Court wrote in *Babbit*:

> We have applied the rule of lenity in a case raising a narrow question concerning the application of a statute that contains criminal sanctions to a specific factual dispute . . . where no regulation was present.

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995).

The district court even grappled with its interpretive failure during debate over jury instructions, when it expressed hesitation that it did not

29

want to assert that a single "object" could not be "multiple parts." Turning to traditional tools of statutory interpretation, clearly an "object", such as a music box, can consist of multiple parts, but a *homogenous piece*, such as an unmodified AKC, cannot. *See Brita Wasser-Filter-Systeme GmbH v. Recovery Eng'g, Inc.,* No. 97 C 3915, 1998 WL 473467, at *8 (N.D. Ill. Aug. 7, 1998) (holding Brita's position that a "sleeve" can be a "combination of parts" to be "nothing more than a figment of its imagination" as against the plain meaning of the word). All too pointedly to the issue at hand, the district court stated:

> "What the defendant transferred can both be a singular part and a combination—and ultimately a combination of parts. I mean, if that's what the jury finds. I don't know if the jury is going to find that because you can cut it out and use it, that's a combination of parts. That's why we're here for trial. If any of us knew what the answer to that would be, there wouldn't be a trial. … And that's exactly what this trial is all about, is whether that piece of metal with those etchings is capable of being a combination of parts."

(Doc. 283 at 18). It is clear given the district court's submission of the fundamental legal question of whether a single object, or part, is "capable of being a combination of parts," that the district court was "so unsure" that it would ask the jury to "simply guess as to what Congress intended," thus amounting to a grievous ambiguity. *Maracich v. Spears*, 570 U.S. 48, 76 (2013).

Like in *Cargill*, where the National Firearms Act was held not to unambiguously criminalize the possession of a non-mechanical stock, the same Act cannot unambiguously criminalize pieces of stainless steel with drawings on them. The application of lenity in this case *preserves* separation of powers "by maintaining the legislature as the creator of crimes." *Cargill*, 57 F.4th at 470.

## III.   THE DISTRICT COURT ERRED IN DENYING MR. HOOVER'S MOTIONS FOR JUDGMENT OF ACQUITTAL BECAUSE THE GOVERNMENT FAILED TO PROVE SEVERAL NECESSARY ELEMENTS OF THE CHARGES

For the reasons detailed *infra*, the government has failed to prove the essential elements against Defendant beyond a reasonable doubt. This issue was raised in the motion for judgment of acquittal, which was denied. (Doc. 274); (Doc. 310).

As against Defendant Hoover, the counts and essential elements are:

31

### a. COUNT ONE: CONSPIRACY TO TRANSFER UNREGISTERED MACHINEGUN CONVERSION DEVICES

    **i.** Two or more persons in some way agreed to try to accomplish a shared and **unlawful plan**;

    **ii.** the Defendant **knew the unlawful purpose of the plan** and **willfully** joined in it;

    **iii.** during the **conspiracy**, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

    **iv.** the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

### b. COUNTS TWO THROUGH EIGHT: SUBSTANTIVE COUNTS

    **i.** The Defendant **knowingly** transferred, or aided and abetted the transfer of, a firearm, specifically a **combination of parts** designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger

32

**ii.** the **firearm** was not registered in the National Firearms Registration and Transfer Record; and

**iii.** the Defendant **knew of the specific characteristics or features of the firearm** that made it subject to registration under the National Firearms Registration and Transfer Record.

### c. DISCUSSION OF THE GOVERNMENT'S INSUFFICIENT EVIDENCE OF ANY ACTUS REA CONSTITUTING AN OFFENSE UNDER SECTION 5861

As pled in the indictment, if no parts were transferred, then there was no crime. The government proceeded under a theory that each AKC constituted a combination of parts designed and intended to convert a weapon into a machinegun. At trial, the government and its agents demonstrated that Mr. Hoover advertised a homogenous piece of steel on his YouTube channel. But when it came time to prove up its case, the government's physical evidence and testimony demonstrated that, as transferred (and at best) each AKC was a singular, homogenous piece of stainless steel into which a design was lightly etched *i.e.*, Defendant advertised, and Mr. Ervin sold, a drawing that was on a piece of metal. *See* (Doc. 282 at 151) (A: "The auto key card was a single piece of metal

that had four single individual pieces that were like etched in a diagram form. Q: So it had four etchings on the single piece of metal? A: Correct."); (Doc. 282 at 116) ("the auto key card, the single piece of steel"). The district court even recognized this. (Doc. 283 at 26).

The testimony and evidence elicited from the employees of Orange Park Machine & Fab. demonstrated that Mr. Ervin contracted with them to engrave a design that was provided to the shop by way of a Drawing Exchange Format file ("DXF File"). Testimony showed that the DXF File necessarily contained a two-dimensional image, *i.e.*, a drawing, and could not contain any information for making a 3-dimensional component. (Doc. 280 at 60-61). Mr. Ervin requested that the Drawing be copied onto single, homogenous pieces of stainless steel by way of a laser *only to the extent that* the image could not be wiped off of it. (Doc. 280 at 64). Much to the consternation of the machine shop, and against its advice, he refused to allow them to manufacture the AKCs in such a manner as to be cut out into multiple parts. (Doc. 280 at 45). Employees from Orange Park Machine & Fab. further testified that the etching process was so light that it left the integrity of the steel "unchanged." (Doc. 280 at 64). His intent was clear, and the evidence is what it is. The stainless steel

34

was a canvas for the drawing and the laser was the medium. Agents of the government even admitted that they could construe shoelaces and a paperclip as a machinegun, but that "templates" and "drawings" were not. (Doc. 282, 255-260).



(Doc. 259-173 at 1).

The testimony of the government's own witnesses supports the conclusion that, as transferred, the AKC was not "a combination of

parts." Special Agent Jesse Hooker admitted that the government had to "materially alter" the AKC to become what it alleges in the indictment. (Doc. 278 at 233). The testimony of Mr. Toy buttressed the conclusion that the AKC only became contraband after he performed about an hour of transformative labor upon it. That transformative labor fundamentally changed—materially altered—it from a homogenous piece of steel with a constitutionally protected drawing on it to alleged contraband, *i.e.*, an unregistered combination of parts. Indeed, Toy even referred to the AKC as "a template to be cut out, and that's what I did. I cut the template out." (Doc. 283 at 206) *cf.* (Doc. 282 at 255-260) (government expert Branch Chief Agent Ernest Lintner testifying that "templates" and "drawings" were not subject to regulation under the Act).

The government's theory bears emphasis: that each drawing on the piece of steel constituted a "part." This reading is so inconsistent with the statute as charged that the government even attempted to invert the statute at closing arguments by arguing that the law proscribed something "designed and intended" to *become* a "combination of parts," which is just manifestly not the case. (Doc. 284 at 46) ("The fact remains that the auto key card was designed and intended to be a combination of

parts…whether you do it now or you save it for later."… "In other words, he knew it was designed and intended to be used for parts for lightning links."); *id.* at 169 ("Judge Howard told you what the standard is that you have to apply, and that is was the item that was transferred designed and intended to be a combination of parts that would convert a weapon into a machine gun.") Even more, the government never once provided evidence that the AKC was a combination of parts. It forcefully fought against all attempts to delineate what "parts" were "in" the AKC, instead it simply waxed over the critical statutory distinction between a "part" and "combination of parts", and the distinction between an AKC and a "lightning link" at all stages of the litigation.

The district court, in denying the motion for judgment of acquittal, reasoned that sufficient evidence that the AKCs were a "combination of parts designed and intended for use in converting a weapon into a machinegun" existed because:

> First, the evidence at trial showed that the **etchings** on the Auto Key Card **demarcate** metal pieces that are the **correct shape and size** to be the parts of a machinegun conversion device. Special Agent Jesse Hooker testified that the **etchings** on the Auto Key Card **are recognizable** as the two parts **of a lightning link**, a machinegun conversion device consisting of a longer piece with a slot and a smaller piece that fits in the slot. Toy explained that the

longer piece is called the "body," and the smaller piece is the "paddle" or "connector."

Next, the Government introduced evidence that the pieces identified by the etchings on the Auto Key Card **are the correct material** to function as machinegun conversion devices. Hooker testified that lightning links had to be made of metal to work in a rifle….

In addition, the jury heard evidence suggesting that the metal pieces **demarcated by the etchings** were meant to be removed from the surrounding metal…. A reasonable jury could conclude that Ervin called the cards "3 in 1" because each card **contained the parts for three lightning links**….

Notably, the jury heard Hoover say that the Auto Key Cards **contain** firearm parts that **can be removed from the surrounding metal**. In his first video about the Auto Key Card, Hoover pointed to the different etchings on the card and noted that a person could cut out "this piece right here" and fit the piece in the "slot right here."… In another video, Hoover sait that the Auto key Card "was a great [Special Occupational Taxpayer] resource where you could get machine gun parts."…

Finally, the Government presented evidence from which the jury could reasonably conclude that the parts **identified** by the etchings in the Auto key Card are **reasonably accessible** to an end user and **actually function as a machinegun conversion device**. … Toy cut to the line on the Auto Key Card **except** that he removed "some of the material" off the paddle because it was "**a little bit too tall**."…

Based on Toy's testimony, a reasonable jury could find that, while Toy had to "**materially alter**" the Auto Key Card to <u>access</u> the parts of a lightning link, he did not have to materially alter the parts themselves. Toy merely had to **remove the parts from the surrounding metal** in order to use them to convert a semiautomatic rifle into a machinegun.

Given all of this evidence, the jury could reasonably conclude that Ervin and Hoover transferred and possessed a **combination of parts** designed and intended for use in converting a weapon into a machinegun.

(Doc. 310) at 7-10 (bold added for emphasis, underline in original). This reasoning fails because "something is or is not" a machinegun. *Crooker*, 608 F.3d 97–98. The district court, and the government, casually shift from an "etching" that "resembles" something, to the thing itself. Furthermore, government expert witness Firearms Enforcement Officer Cody Toy himself referred to the AKC as "a template to be cut out, and that's what I did. I cut the template out." (Doc. 283 at 206) *cf.* (Doc. 282 at 255-260) (government expert Branch Chief Agent Ernest Lintner testifying that "templates" and "drawings" were not subject to the Act).

Even if the government's assertion that a drawing on a homogenous piece of steel equates to "parts," such could only logically extend to the contours of the drawing. However, the government provided no evidence that an AKC, if cut along the lines, was designed to, or would actually convert a firearm to fire automatically. One of the government's substantive act witnesses—who worked in precision industry—testified that whether he cut the AKC precisely to the outer or inner edges of the etched lines, he could not get the resulting parts to function. (Doc. 282 at

39

116-117). The cut-out parts simply did not work. Rather, ATF's Mr. Toy had to slice and dice multiple AKCs apart with a "Dremel," a handheld rotary tool to get something that did not even work as the government alleges was intended.



(Doc. 259-172).



767060-20-0017  2021-332-CJT

(Doc. 259-173) at 4.

Specifically, Mr. Toy's testimony and the other evidence makes clear that only after cutting *outside* the Drawing, was Toy able to manufacture a combination of parts from a single piece of stainless steel into a "combination of parts." In effect, Mr. Toy created a re-designed part and even as re-designed, the part was only sufficient to induce a **malfunction** in the weapon and it was that **malfunction** which resulted in its firing more than one shot. (Doc. 283 at 192-193). As a matter of law, such a Frankenstein creation is not a machinegun within the charged meaning of Section 5485(b).



(Doc. 259-173) at 2.



(Doc. 259-173 at 6). Mr. Toy testified that the resultant malfunction did

not reflect how a "lightning link"—the type of machinegun conversion

42

device the government asserted the AKC to be—would have functioned. (Doc. 283 at 209-210). Instead, Mr. Toy testified that the malfunction he induced was identical to the result of removing one part from an otherwise ordinary semi-automatic AR-15. (Doc. 283 at 185). Further, Mr. Toy testified that there would be no meaningful distinction in result were the design drawn with laser or a marker. (Doc. 283 at 203). So, in fewer words: the government *proved* that each AKC was a homogenous piece of steel, *proved* that if that homogenous piece of steel was cut precisely to the lines, was not designed and intended to convert a weapon to fire automatically, and *proved* that the only way its own expert could induce a weapon to fire more than one shot using the AKC was to *ignore the lines thereupon engraved* to spend substantial time manufacturing a combination of parts which *did not even function as the type of machinegun conversion device the government alleged it to be*.

Those facts make clear that defendants never actually engaged in the *actus rea* that is punished by the statute, *viz*, conspiring to, 18 U.S.C. § 371, or the actual "transfer" of, 18 U.S.C. § 5861(e), a "combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). These statutes do not criminalize the

design, standing alone. They do not criminalize intent to possess or transfer, standing alone. Rather, the statutes criminalize the possession or transfer of an actual "part" or, as charged here, "combination of parts" constituting a machinegun conversion device. Until Mr. Toy manufactured the parts by cutting outside the lines, such parts simply did not exist. Stated simply, a chunk of steel is not a part—much less combination of parts—if it cannot be used to assemble a machine gun conversion device.

Stated differently, the homogenous chunk of metal from which Mr. Toy was eventually able to create parts to induce a malfunction was not a "part," much less a "combination of parts" because nothing "can be assembled" from that chunk of metal. In essence, the district court allowed the jury to convict defendants for the mere possession **of a design** of a machine gun part, and a non-functional design at that. Possession or transfer **of a design of a part**, much less possession of a non-functional design of a part, is not a crime under Section 5861. See, e.g., *United States v. Anderson*, 523 F.2d 1192, 1196 (5th Cir. 1975) ("Conviction required proof of both actus rea and mens rea elements of the indicted offenses.").

In its order denying the motion for judgment of acquittal, the district court attempted to rectify this by holding that "Based on Toy's testimony, a reasonably jury could find that, while Toy had to 'materially alter' the Auto Key Card to <u>access</u> the parts of a lightning link, he did not have to materially alter the parts themselves." (Doc. 310 at 10). But that reasoning is nonsense. That something had to be materially altered in order to *become* a machinegun is an unsupportable basis of conviction under the law. *See*, *Crooker*, 608 F.3d 97–98 ("something is or is not an automatic weapon."). Further, the district court's theory of "access," where an individual spent hours and multiple attempts to make parts from sheet metal, ignores the fact that that the items Mr. Toy ultimately tested *did not strictly follow the lines etched on the card*. (Doc. 283 at 192-193). It is undisputed that the AKCs were homogenous pieces of steel, and the evidence is uncontradicted that when the metal is cut strictly to the lines, it could not function to create a machine gun. On this evidence, and if properly instructed that the government must prove beyond a reasonable doubt that the defendants possessed an actual "combination of parts" designed and intended for use in converting a weapon into a machinegun, no rational jury could conclude that this chunk of metal was

45

a machinegun. Otherwise, every piece of metal containing enough mass to have an auto sear "accessed" through "material alteration" is a machinegun, an absurd result. Congress did not enact such a statute. See, e.g., *Mohamad v. Palestinian Authority,* 566 U.S. 449, 455 (2012); *Lewis v. Barnhart*, 285 F.3d 1329, 1332 (11th Cir. 2002) (courts will interpret statutes to avoid "absurdity of results").

### d. THE DISTRICT COURT ALLOWED THE JURY TO PUNISH A *MEANS REA* WITHOUT A CORRESPONDING *ACTUS REA*

While there could have been a less provocative canvas to copy the Drawing onto, during closing arguments, the government asked the rhetorical question of where the jury thinks we ought draw the proverbial line. (Doc. 284 at 185). This exemplifies one of many problems with the holdings below: It is not for the jury to decide where the line is drawn— that is Congress's role alone. The jury does not, and cannot serve as a legislative sub-assembly to define terms of law. The jury's role is to decide if an otherwise clear and validly drawn line has been crossed. The essential lines here are: whether the subject article a combination of parts, whether the Defendant **knew** the article had features subjecting it to NFA requirements, and whether Defendant **knew** and **intend** to be

46

part of an unlawful plan. Not only did the government fail to prove the essential elements, the government **proved** their absence.

In *Staples v. United States*, the Supreme Court held that the government **must** prove that a Defendant has actual knowledge that an item is a machinegun in order to sustain a conviction. 511 U.S. 600 (1994). The government played hours of videos from Defendant's YouTube channel where it is manifest that Defendant believed the AKC to be completely lawful unless cut out and manufactured into a machinegun.

This prosecution reflects concerns addressed by this Court in other multi-defendant conspiracy prosecutions—"that individuals who are not actually members of the group will be swept into the conspiratorial net. Because the government is permitted broad prosecutorial discretion to prove the conspiracy, the likelihood exists that those who associate with conspirators will be found guilty of a crime they **have not intended to commit**[.]" *United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004); *see also Dennis v. United States*, 384 U.S. 855, 860 (1966). Numerous statements of Mr. Ervin, and a video generated by Mr. Ervin inexplicably involving a fish, were presented to the jury with no evidence Mr. Hoover

47

knew or processed the information at all, substantially prejudicing Mr. Hoover. *See, e.g.*, (Doc. 283) at 88 ("And this is the same fish that's firing rapid fire—that appears to be rapid firing?").

Like in *Chandler*, this case reflects the compounded danger "when the grand jury indicts on one theory of the illegal conduct, but the government prosecutes the case on an entirely different theory. This roaming theory of the prosecution can produce trial error of constitutional proportions." *Chandler*, 388 F.3d at 798; *see also Russel v. United States*, 369 U.S. 749, 768 (1962) (ill-defined charges leave "the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal"). The government originally indicted Defendant using the entirety of §5845(b), but over the course of several superseding indictments, likely as a tactical decision to avoid grappling with the "solely and exclusively" language attendant a single "part," narrowed its indictment to a "combination of parts." The district court attempted to distinguish *Chandler* by reasoning that "no impermissible shift in the Government's theory occurred here" (Doc. 310 at 23), but that misses the overall message in *Chandler*—the dangers of ill-defined charges. Essentially, the

48

district court allowed the government to have it both ways. It eliminated the limiting language attendant a single "part" in §5845(b), allowed the government to elicit expert testimony concerning a single part constituting a machinegun, and presented a final jury instruction compounding those issues.

Even more like *Chandler*, "the defendants focused on whether the allegations of the indictment were sufficient to state a crime. Under federal conspiracy law, the government must allege and prove that the defendants *knowingly* entered into an *agreement* to commit an *unlawful act*." 388 F.3d at 799-800 (quoting *U.S. v. Parker* 839 F.2d 1473 (11th Cir. 1988)). *Chandler* dealt, quite interestingly, with counterfeit McDonalds game pieces, and the *Chandler* indictment "did allege an unlawful act in the embezzlement of the game stamps. Nowhere, however, did the indictment allege that any of these defendants *knew* that the game stamps they redeemed had been stolen. The defendants moved to dismiss the indictment, alleging that it was fatally defective in its failure to allege an essential element of the crime of conspiracy —knowing agreement to commit the illegal act." *Id.* In *Chandler*, the motion to dismiss the indictment was denied, as it was here, and the case proceeded to a multi-

week trial, as it did here, where the government put on voluminous evidence of seemingly *everything but* the essential elements of the charged offenses, as it did here, and the jury returned an unsupportable verdict, as it did here.

To prove an illegal attempt, the government must show that the defendant had the specific intent to engage in criminal conduct and that he took a substantial step toward commission of the offense. *United States v. Collins*, 779 F.2d 1520, 1527 (11th Cir. 1986); *U.S. v. Baptista-Rodriguez*, 17 F.3d 1354, 1369 (11th Cir. 1994). But an attempt was not charged here. Here, not only was no evidence of knowledge offered, but the government put up hours of exculpatory evidence in the form of Defendant's YouTube videos where he very manifestly—and reasonably—processes that the AKC is "just a drawing" unless manufactured into something else. *See, e.g.*, (Doc. 259-2 at 4-5) ("to see…an ATF agent walk into a courtroom and argue that this piece of metal with a drawing on it is a machinegun… [Would be] ridiculous.").

The district court, in addressing scienter, focused on statements Mr. Hoover made in his advertisements, such as "if you're actually gonna do this legally, this is just a bottle opener," and referring to the AKC as

a resource "where [licensed Special Occupational Taxpayers] could get machinegun parts." (Doc. 310 at 13). Setting aside the issue of what the item *is* versus what it *could become*, thoroughly discussed above, a guilty mind is not enough. *United States v. Apfelbaum*, 445 U.S. 115, 131 (1980). It would still have to be, in this instance, a combination of parts designed and intended for use in converting a weapon into a machinegun. No amount of culpability can criminalize an innocent action here.

The government, at trial, referred to the provocative and tongue-in-cheek nature of Defendant's videos *ad nauseum*. That Defendant is a political provocateur with more than a healthy distrust of the government is not evidence of criminal intent, nor is the fact that Defendant may be a conspiracy *theorist* evidence that he is a criminal conspirator. The only explanation is the jury impermissibly punished what it perceived to be a guilty mind without the actual act prohibited by the statute. ("In the criminal law, both a culpable mens rea and a criminal actus reus are generally required for an offense to occur.") *Apfelbaum*, 445 U.S. at 131.

For reasons stated *supra*, the Government has failed to plead, much less prove sufficient facts which demonstrate the AKC is a combination

51

of parts designed and intended as a machinegun conversion device. However, it has conclusively demonstrated that the AKCs are not machinegun conversions devices as a matter of law because as pled in the Indictment, the AKC cannot possibly even be a "part," much less "parts" beyond a reasonable doubt. Therefore, no reasonable jury, properly instructed, could have convicted Mr. Hoover.

> ### e. COUNTS 1 – 8: THE SAME ANALYSIS *SUPRA* APPLIES TO 18 U.S.C. § 2, 18 U.S.C § 371, 26 U.S.C. § 5861(e), and § 26 U.S.C. § 5871

While aiding and abetting might commonly be thought of as an offense in and of itself, it is not an independent crime under 18 U.S.C. § 2. That statute provides no penalty, and only collapses common law notions of "principal" and "accessory." *United States v. Kegler*, 724 F.2d 190, 200 (D.C. Cir. 1983). Under it, the acts of the perpetrator become the acts of the aider and abettor and the latter can be charged with having done the acts himself. *Id.* at 200-01. An individual may be indicted as a principal for commission of a substantive crime and convicted by proof showing him to be an aider and abettor. *Id.* Accordingly, the indictment need not specifically charge a violation of 18 U.S.C. § 2.

The Government has charged Mr. Hoover with violating 26 §§ U.S.C. 5861(e) and 5871, 18 U.S.C. §§ 2 and 371 in Counts 1 – 8 of the Indictment. And for reasons thoroughly stated *supra*, the Government has failed to state, much less prove, sufficient ultimate facts to support a conviction, and thus no reasonable jury, properly instructed, could have returned a conviction.

## IV. TREATING A DRAWING AS A PROSCRIBABLE MACHINEGUN CONVERSION DEVICE VIOLATES THE FIRST AMENDMENT

Mr. Hoover raised as-applied First Amendment concerns at several stages of the proceedings below. (Doc. 101), (Doc. 113), (Doc. 277 at 24-25). The district court denied these motions and entered final judgment terminating the claims of the parties. (Doc. 327). The district court, focusing on counsel's invocation of the doctrine of overbreadth and under inclusiveness, shirked this analysis by finding "that the statute at issue here does not implicate the First Amendment[.]" (Doc. 141 at 30). An as-applied First Amendment challenge, though, does not stop at the face of the statute. The inquiry begins with whether the AKC manifests an "intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message

would be understood by those who viewed it." *Spence v. State of Wash.*, 418 U.S. 405, 410 (1974).

The AKC is a piece of steel with a drawing on it, and as Mr. Hoover said in one of his YouTube Videos, "They are a talking piece. That's it, just a little design on a piece of metal. This way you could show it to your friends and be like 'Here, at one point in time, it used to be legal for me to cut this out.' That's how far we went down the freedom hill." (Doc. 259-12 at 1). As discussed earlier, it is largely undisputed that the etching on the AKC *resembles* a machinegun conversion device. That is precisely what makes it expressive. The district court even observed, when, after being foreclosed from making First Amendment arguments, Mr. Hoover listed hypotheticals asking whether they were prohibited by statute "'If the DXF File of the Drawing and instructions how to break the law, like the Anarchist Cookbook, are constitutionally protected speech, is the Drawing with oil-based paint on [a] piece of stainless steel, okay? What about military grade plastic with the etching—is that Kosher?[.]' While those hypotheticals may identify difficult or close cases, they do not explain what is vague about the statutory language itself." (Doc. 310 at 21). The AKC is protected by the First Amendment. Mere possession or

54

transfer of the AKC may not be punished any more than the mere possession of a constitutionally protected material may be punished. *See*, e.g., *Riel v. City of Bradford*, 485 F.3d 736, 754 (3d Cir.2007) (citing *Watchtower Bible & Tract Soc'y of N.Y. v. Village of Stratton*, 536 U.S 150, 165–66 (2002). The district court erred in failing to so hold.

## V.   IF THE AKC FALLS WITHIN § 5845(b), ITS APPLICATION VIOLATES THE SECOND AMENDMENT

Mr. Hoover raised as-applied Second Amendment concerns at several stages of the proceedings below. (Doc. 101), (Doc. 113), (Doc. 277 at 24-25). The district court denied these motions and entered final judgment terminating the claims of the parties. (Doc. 327). The Supreme Court's landmark *Bruen* decision came down during the proceedings below, which laid out a clear legal standard for the evaluation of acts regulating the peaceable keeping and bearing of arms. *Bruen* identified the Court of Appeals "coalesce[ing] around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny," the Court identified this as "one step too many[.]"*Bruen*, 597 U.S. 1, 2. *Bruen* articulated that "when the Second Amendment's plain text covers an individual's conduct, the Constitution

55

**presumptively protects** that conduct. The Government **must *then*** justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation. **Only then** may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (cleaned up) (emphasis added).

As Mr. Hoover predicted in his motion to dismiss the indictment, the government argued the AKC to be "beyond the scope of the Second Amendment by attempting to characterize them as 'dangerous and unusual,' as it has in other cases, but this is not the test. The court's oft-misunderstood invocation of 'dangerous and unusual' weapons—itself a reference to the statute of Northampton, which merely forbid the *carrying* of such weapons *in a particular manner*—in *Heller* and subsequently *Bruen* was for the purpose of discussion of what *might be* a constitutionally acceptable law, rather than the endorsement of any particular extant policy." (Doc. 133) Indeed, it is clear that the *Heller* dicta, misconstrued by the government as a test, was simply the Court cautioning that it was not "undertak[ing] an exhaustive historical analysis…of the full scope of the Second Amendment[.]" *Bruen*, 597 U.S. 1, 21 (quoting *District of Columbia v. Heller*, 554 U.S. 570 at 627 (2008)).

56

Even so, the government refused to engage in a historical analysis, instead relying on pre-*Bruen* decisions and misconstruing *Heller*'s "dangerous and unusual" dicta as a test. (Doc. 138 at 12). The district court refused to apply the *Bruen* standard, instead holding that "the Supreme Court's holding in <u>Bruen</u> did not overturn <u>D.C. v. Heller</u>, in which the Court recognized the importance of "the historical tradition of prohibiting the **carrying** of '**dangerous and unusual weapons**.'" (Doc. 141 at 33) (emphasis added).

The Second Amendment analysis is made difficult by the district court's refusal to make the legal determinations discussed above. They key question, under *Bruen*, is whether the regulated item falls within the "unqualified command" of the Second Amendment, *viz*, whether it is an "arm." Arms, as contemplated by the Second Amendment, are not limited to firearms or offensive weapons, but includes defensive instruments and accoutrement. *See, e.g.*, *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (stun guns); *Miller v. Bonta*, No. 19CV01537BENJLB, 2023 WL 6929336, at *11 (S.D. Cal. Oct. 19, 2023) (ammunition magazines). The Second Amendment's implication hinges upon the answer to the legal question of whether or not the AKC is within the purview § 5845(b). Appellant

57

contends that it is not, but if this Court finds otherwise, then it necessarily becomes an arm, thus falling within the Second Amendment's "unqualified command."

The district court short-circuited the *Bruen* test and relied on pre-*Bruen* caselaw applying means-end scrutiny, in exact contravention of *Bruen*. (Doc. 141 at 32-33). Whether or not the AKC was a "weapon," whether it was a "machinegun," whether it was a "combination of parts," and whether it—whatever it is—was "dangerous and unusual" are questions of law the court failed to address. The district court cannot simultaneously leave the question of whether the AKC was a machinegun to the jury, and dispense with Second Amendment concerns by presupposing its prohibition to be analogous to the carrying of dangerous and unusual weapons.

Even in its reliance on pre-*Bruen* caselaw, the district court exclusively relied upon cases where there was no question as to whether the charged item was a machinegun, while simultaneously submitting the legal question of whether the AKC was a machinegun to the jury. It cannot stand that the district court could relieve the government of its burden under *Bruen* by presupposing that—in an as-applied challenge—

58

the conduct simply fell beyond the scope of the Second Amendment without engaging in the requisite analysis.

If the AKC is regulable under § 5845, there is no historical tradition of regulating designs or drawings that "resemble" arms—or things that might some day, with material alteration—become arms, consistent with the Second Amendment, and the district court erred in failing to so hold.

## **CONCLUSION**

For all the reasons set forth above, appellant Matthew Raymond Hoover respectfully requests this Honorable Court reverse the judgment and sentences imposed in this case and remand the case to the district court with instructions to enter a judgment of acquittal, or, in the alternative, reverse the judgment and sentence of the district court with instructions to dismiss the indictment with prejudice.

Respectfully submitted,

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant Matthew Raymond Hoover*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

The undersigned certifies, pursuant to 11th Cir. Rule 28-1, that this brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure (32)(a) because it contains 11,720 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements and type style requirements for Rule 32(a) because it has been prepared in a proportionally-based typeface with Microsoft Word 2023 in 14 point, Century Schoolbook font.

<u>/s/ Matthew Larosiere</u>
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant Matthew Raymond Hoover*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent by CM/ECF on January 18, 2024, and notice of this filing was electronically served on all parties there registered for service, including:

VALARIE LINNEN, ESQ.
*Counsel for Kristopher Ervin*

SEAN SIEKKINEN,
*Assistant United States Attorney*

I further certify that four hard copies of the foregoing brief are being furnished to the Clerk of this Court by mail.

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant Matthew*
*Raymond Hoover*

61