THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

No. 23-13062
DC DKT NO.: 3:12-cr-22-MMH-MCR-1

---

UNITED STATES OF AMERICA,
Appellee,

v.

KRISTOPHER JUSTINBOYER ERVIN,
Appellant.

---

**APPENDIX I**

---

Valarie Linnen, Esq.
Florida Bar No. 63291
841 Prudential Drive
12th Floor
Jacksonville, FL  32207
888.608.8814
vlinnen@live.com
Attorney for Appellant

1

## TABLE OF APPENDICES

### Appendix I

Docket ......................................................................................................... D

Motion to Dismiss ....................................................................................... 30

Transcripts – Hearing on Motion to Dismiss .............................................. 48

Indictment Superseding - Fourth................................................................. 204

USA Statement of the Case .......................................................................... 226

Mr. Ervin's Statement of the Case .............................................................. 230

Gov't Exhibit 33 – 3-in-1 Auto Key Card.................................................... 259-33

Motion for Judgment of Acquittal................................................................ 273

Motion for Judgment of Acquittal – Mr. Hoover.......................................... 274

Order Denying Motions for Judgment of Acquittal ..................................... 310

Sentencing Memorandum ............................................................................. 319

Judgment ...................................................................................................... 324

Statement of Reasons ................................................................................... 325

### Appendix II

Direct Testimony of Agent Hooker............................................................... 277

Direct Testimony of Agent Hooker, Andrea Useche, Amy Sarkese.............. 278

Direct Testimony of Richard Roberts ........................................................... 282

Direct Testimony of Agent Toy .................................................................... 283

**Appendix III**

Transcript – Sentencing I ...............................................................................329

Transcript – Sentencing II ..............................................................................330

**SEALED**

Presentence Investigation Report FINAL ........................................................311

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished to the following via electronic case mail delivery on this 22ND day of February 2024:

Sean Siekkinen, Esq., Assistant U.S. Attorney

Matthew Larosiere, Esq., Attorney for Mr. Hoover

Erik S. Jaffe, Esq. & Miranda Cherkas Sherrill, Esq., Attorneys for

Firearms Policy Coalition & FPC Action Foundation

**/s/ Valarie Linnen**
VALARIE LINNEN, ESQ.
Florida Bar No.: 63291
841 Prudential Drive
12th Floor
Jacksonville, FL 32207
888-608-8814
vlinnen@live.com
Attorney for Appellant

# U.S. District Court
## Middle District of Florida (Jacksonville)
## CRIMINAL DOCKET FOR CASE #: 3:21-cr-00022-MMH-MCR-1

Case title: USA v. Ervin

Magistrate judge case number:  3:21-mj-01127-PDB

Date Filed: 03/11/2021

Date Terminated: 09/14/2023

Assigned to: Judge Marcia Morales Howard
Referred to: Magistrate Judge Monte C. Richardson

Appeals court case numbers: 22-12005-E USCA, 23-13062 USCA

### Defendant (1)

**Kristopher Justinboyer Ervin**
*Custody*
*TERMINATED: 09/14/2023*

represented by **Alex King**
First Coast Criminal Defense
1805 Copeland St.
Jacksonville, FL 32204
904-355-7777
Fax: 904-720-2886
Email: Alex@MonroeKingLaw.com
*TERMINATED: 11/29/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lisa Call**
Federal Public Defender's Office
Suite 1240
200 W Forsyth St
Jacksonville, FL 32202
904/232-3039
Fax: 904/232-1937
Email: Lisa_Call@fd.org
*TERMINATED: 06/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Daniel Scott Monroe**
Scott Monroe Law, P.A.

200 E. Forsyth St.
Jacksonville, FL 32202
904/891-7362
Fax: 904-353-5801
Email: scott@monroekinglaw.com
*TERMINATED: 11/29/2023*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Valarie Linnen**
Valarie Linnen, ESQ.
841 Prudential Drive
12th Floor
Jacksonville, FL 32207
888-608-8814
Email: vlinnen@live.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| | Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1ssss) | |
| | Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2ssss-8ssss) | |
| | Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE |
| STRUCTURING TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (9ssss) | |

(3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00

Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00

UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED
(10ssss-12ssss)

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
| --- | --- |
| UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED (1) | Dismissed on Government's Motion |
| STRUCTURING TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (1s-7s) | Dismissed on Government's Motion |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1ss) | Dismissed on Government's Motion |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1sss) | Dismissed on Government's Motion |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2ss-7ss) | Dismissed on Government's Motion |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2sss-8sss) | Dismissed on Government's Motion |
| TRANSP./DELIVER/RECEIVE IN INTERSTATE COMMERCE-UNREGISTERED (8s) | Dismissed on Government's Motion |
| STRUCTURING TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (8ss-14ss) | Dismissed on Government's Motion |

| | |
|---|---|
| UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED (9s-14s) | Dismissed on Government's Motion |
| STRUCTURING TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (9sss-15sss) | Dismissed on Government's Motion |
| UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED (15ss-17ss) | Dismissed on Government's Motion |
| UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED (16sss-18sss) | Dismissed on Government's Motion |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 26:5861D.F UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED | |

---

**Movant**

| **John Crump** | represented by | **Eric J. Friday**<br>Kingry & Friday, Esq.<br>1919 Atlantic Blvd.<br>Jacksonville, FL 32207<br>(904) 722-3333<br>Email: efriday@kingryfriday.com<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |
|---|---|---|
| | | **James D Phillips , Jr**<br>Katz & Phillips, PA<br>509 W Colonial Dr<br>Orlando, FL 32804<br>321/332-6864<br>Fax: 407/657-1526<br>Email: jphillips@kplegalteam.com<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |
| | | **Robert J Olson**<br>William J. Olson, P.C.<br>370 Maple Ave W<br>Suite 4<br>Vienna, VA 22180<br>703-356-5070 |

Fax: 703-356-5085
Email: rob@wjopc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Ronald J. Shook , II**
The Law Offices of Ronald J. Shook
121 E. Main Ave.
Gastonia, NC 28052
(704) 671-2390
Fax: (704) 671-4431
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Stephen D Stamboulieh**
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440
Email: stephen@sdslaw.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Plaintiff**

**USA**                                   represented by   **David B. Mesrobian**
US Attorney's Office - FLM
Suite 700
300 N Hogan St
Jacksonville, FL 32202
904/301-6300
Fax: 904/301-6310
Email: david.mesrobian@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Laura Cofer Taylor**
US Attorney's Office - FLM*
Suite 700
300 N Hogan St
Jacksonville, FL 32202
904-301-6249
Email: Laura.C.Taylor@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Michele Harrington**
United States Attorney's Office
400 W. Washington Street, Suite 3100
Orlando, FL 32801
407-648-7651
Fax: 407-648-7643
Email: Jennifer.harrington2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Mai Tran**
United States Attorney's Office
Suite 700
300 N. Hogan Street
Jacksonville, FL 32202
904-301-6300
Fax: 904-301-6310
Email: mai.tran2@usdoj.gov
*TERMINATED: 11/16/2023*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/03/2021 | 1 | COMPLAINT as to Kristopher Justinboyer Ervin (filed in open court). (ASL) [3:21-mj-01127-PDB] (Entered: 03/04/2021) |
| 03/03/2021 | | ARREST of Kristopher Justinboyer Ervin on 3/3/2021 (ASL) [3:21-mj-01127-PDB] (Entered: 03/04/2021) |
| 03/03/2021 | 3 | MINUTE entry for in person proceedings held before Magistrate Judge Patricia D. Barksdale: initial appearance held on 3/3/2021. (Digital) (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 4 | ORAL MOTION for detention by USA. (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 5 | JOINT MOTION to continue the detention hearing. (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 6 | **ORDER OF TEMPORARY DETENTION granting 5 the joint oral motion to continue the detention hearing and scheduling the detention hearing for 3/5/2021 at 10:00 AM in Jacksonville Courtroom 5B before Magistrate Judge Patricia D. Barksdale. Signed by Magistrate Judge Patricia D. Barksdale on 3/3/2021.** (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 7 | NOTICE OF HEARING: The preliminary hearing is scheduled for 3/17/2021 at 10:00 AM in Jacksonville Courtroom 5B before Magistrate Judge Patricia D. Barksdale. (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/05/2021 | 8 | MINUTE entry for the in person status-of-counsel and detention hearings held on |

| | | |
|---|---|---|
| | | 3/5/2021 before Magistrate Judge Patricia D. Barksdale: The defendant moved for appointment of counsel and to continue the detention hearing. (Digital) (ASL) [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/05/2021 | 9 | ORAL MOTION to appoint counsel by Kristopher Justinboyer Ervin. (ASL) [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/05/2021 | 10 | ORAL MOTION to continue the detention hearing by Kristopher Justinboyer Ervin. (ASL) [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/05/2021 | 11 | **ORDER granting 9 the defendant's oral motion to appoint counsel and appointing the Federal Defender's Office to represent him in this case. Signed by Magistrate Judge Patricia D. Barksdale on 3/5/2021. (ASL)** [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/05/2021 | 12 | **ORDER OF TEMPORARY DETENTION granting 10 the defendant's oral motion to continue the detention hearing and scheduling the detention hearing for 3/9/2021 at 02:30 PM in Jacksonville Courtroom 5D before Magistrate Judge James R. Klindt. Signed by Magistrate Judge Patricia D. Barksdale on 3/5/2021. (ASL)** [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/08/2021 | 13 | **STANDING ORDER as to Kristopher Justinboyer Ervin: Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to do so. Failing to do so in a timely manner may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and sanctions. Signed by Judge Timothy J. Corrigan on 12/1/2020. (KEM)** [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/09/2021 | 14 | MINUTE entry for the in person detention hearing held on 3/9/2021 before Magistrate Judge James R. Klindt: The defendant moved to continue the detention hearing. Judge Klindt granted the motion and scheduled the detention hearing for 3/15/21 at 2:00 p.m. before Magistrate Judge Patricia Barksdale. (Digital) (ASL) [3:21-mj-01127-PDB] (Entered: 03/10/2021) |
| 03/09/2021 | 15 | ORAL MOTION to continue the detention hearing by Kristopher Justinboyer Ervin. (ASL) [3:21-mj-01127-PDB] (Entered: 03/10/2021) |
| 03/09/2021 | 16 | **ORDER OF TEMPORARY DETENTION granting 15 the defendant's oral motion to continue the detention hearing and scheduling the detention hearing for 3/15/2021 at 02:00 PM in Jacksonville Courtroom 5B before Magistrate Judge Patricia D. Barksdale. Signed by Magistrate Judge James R. Klindt on 3/9/2021. (ASL)** [3:21-mj-01127-PDB] (Entered: 03/10/2021) |
| 03/11/2021 | 17 | INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1. (BGR) (Entered: 03/12/2021) |
| 03/15/2021 | 20 | **ORDER allowing a credentialed member of the press to bring a laptop computer or tablet to the 3/15/2021 detention hearing. Signed by Magistrate Judge Patricia D. Barksdale on 3/15/2021. (ASL)** (Entered: 03/15/2021) |
| 03/15/2021 | 21 | MINUTE entry for the in person arraignment and detention hearings held on 3/15/2021 before Magistrate Judge Patricia D. Barksdale: The defendant entered a plea of not guilty to count one of the indictment and was remanded to the custody of |

| | | the Attorney General to await trial. (Digital) (ASL) (Entered: 03/16/2021) |
|---|---|---|
| 03/15/2021 | 22 | NOTICE of acceptance of general discovery by Kristopher Justinboyer Ervin (filed in open court). (ASL) (Entered: 03/16/2021) |
| 03/25/2021 | 23 | **ORDER OF DETENTION PENDING TRIAL as to Kristopher Justinboyer Ervin Signed by Magistrate Judge Patricia D. Barksdale on 3/15/2021. (ASL)** (Entered: 03/25/2021) |
| 03/25/2021 | 24 | **SCHEDULING ORDER as to Kristopher Justinboyer Ervin: A status conference is scheduled for 4/19/2021 at 03:00 PM in Jacksonville Courtroom 10B before Judge Marcia Morales Howard; the jury trial is scheduled for 5/3/2021 at 09:00 AM in Jacksonville Courtroom 10B before Judge Marcia Morales Howard; discovery, dispositive, and suppression motions are due by 4/12/2021. Signed by Deputy Clerk on 3/25/2021. (ASL)** (Entered: 03/25/2021) |
| 04/01/2021 | 25 | SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1s-7s, 8s, 9s-14s. (RH) Modified on 3/16/2023 to edit text (AET). (Entered: 04/01/2021) |
| 04/02/2021 | 27 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin: Arraignment on the Superseding Indictment set for 4/7/2021 at 10:30 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 04/02/2021) |
| 04/05/2021 | 28 | MOTION to Withdraw as Attorney *and Memorandum of Law* by Lisa Call and Office of the Federal Public Defender. by Kristopher Justinboyer Ervin. (Call, Lisa) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 04/05/2021) |
| 04/07/2021 | 29 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: denying 28 Motion to Withdraw as Attorney as to Kristopher Justinboyer Ervin (1); MOTION hearing as to Kristopher Justinboyer Ervin held on 4/7/2021 re 28 MOTION to Withdraw as Attorney *and Memorandum of Law* by Lisa Call and Office of the Federal Public Defender. filed by Kristopher Justinboyer Ervin ; ARRAIGNMENT as to Kristopher Justinboyer Ervin (1) Count 1, 1s-7s, 8s, 9s-14s held on 4/7/2021 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 04/07/2021) |
| 04/12/2021 | 30 | MOTION to Dismiss *Superseding Indictment* by Kristopher Justinboyer Ervin. (Call, Lisa) (Entered: 04/12/2021) |
| 04/13/2021 | 31 | MOTION to Extend Time to Respond to Defendant's Motion to Dismiss by USA as to Kristopher Justinboyer Ervin. (Taylor, Laura) (Entered: 04/13/2021) |
| 04/15/2021 | 32 | NOTICE: The status conference set for April 19, 2021, at 3:00 p.m. will be held telephonically. The Courtroom Deputy Clerk will separately provide counsel with the call-in information. (JW) (Entered: 04/15/2021) |
| 04/16/2021 | 33 | **ENDORSED ORDER granting 31 Government's Motion to Extend Time to Respond to Defendant's Motion to Dismiss. Counsel for the United States shall have up to and including May 7, 2021, to respond to Defendant's Motion to Dismiss. Signed by Judge Marcia Morales Howard on 4/16/2021. (JW)** (Entered: 04/16/2021) |
| 04/19/2021 | 34 | Minute Entry for Telephonic proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 4/19/2021. Status conference set for May 24, 2021, at 3:00 p.m. Jury trial set for trial term commencing |

| | | |
|---|---|---|
| | | on June 7, 2021, at 9:00 a.m. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 04/21/2021) |
| 04/22/2021 | | Set/Reset Deadlines/Hearings as to Kristopher Justinboyer Ervin: Jury Trial set for trial term commencing on 6/7/2021 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Status Conference set for 5/24/2021 at 03:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard (RH) (Entered: 04/22/2021) |
| 05/07/2021 | 35 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin re 30 MOTION to Dismiss *Superseding Indictment* (Taylor, Laura) (Entered: 05/07/2021) |
| 05/19/2021 | 36 | NOTICE: The status conference set for May 24, 2021, at 3:00 p.m. will be held telephonically. The Courtroom Deputy Clerk will separately provide counsel with the call-in information. (JW) (Entered: 05/19/2021) |
| 05/24/2021 | 37 | Minute Entry for Telephonic proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 5/24/2021. Status conference set for July 19, 2021, at 3:00 p.m. Jury trial set for trial term commencing on August 2, 2021, at 9:00 a.m. A hearing on the Motion to Dismiss will be set for July 7, 2021, at 2:00 p.m. or July 8, 2021, at 2:00 p.m., depending upon the availability of the case agent. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 05/25/2021) |
| 05/25/2021 | 38 | NOTICE OF HEARING ON 30 Motion to Dismiss Superseding Indictment. Motion Hearing set for 7/8/2021 at 02:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 05/25/2021) |
| 06/02/2021 | 39 | MOTION to Withdraw as Attorney by Lisa Call. by Kristopher Justinboyer Ervin. (Call, Lisa) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 06/02/2021) |
| 06/04/2021 | 40 | NOTICE OF ATTORNEY APPEARANCE: Alex King appearing for Kristopher Justinboyer Ervin (King, Alex) (Entered: 06/04/2021) |
| 06/04/2021 | 41 | **ORDER granting 39 Motion to Withdraw as Attorney Lisa Call withdrawn from case. as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 6/4/2021. (SHS)** (Entered: 06/04/2021) |
| 07/01/2021 | 42 | MOTION for Miscellaneous Relief, specifically to Adopt Motion to Dismiss (Doc. 30) re 30 MOTION to Dismiss *Superseding Indictment* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 07/01/2021) |
| 07/02/2021 | 43 | **ENDORSED ORDER granting 42 Motion to Adopt Motion to Dismiss Superseding Indictment. Signed by Judge Marcia Morales Howard on 7/2/2021. (JW)** (Entered: 07/02/2021) |
| 07/08/2021 | 44 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin. (JW) (Entered: 07/08/2021) |
| 07/08/2021 | 45 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin held on 7/8/2021; denying 30 Motion to Dismiss as to Kristopher Justinboyer Ervin (1); granting 44 Oral Motion to Continue as to Kristopher Justinboyer Ervin (1). Status Conference set for 9/20/2021 at 09:30 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. |

| | | Defendant is required to be present. Jury Trial set for trial term commencing on 10/4/2021 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Plea deadline is September 27, 2021. The United States is directed to file a Bill of Particulars no later than July 16, 2021. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 07/08/2021) |
|---|---|---|
| 07/16/2021 | 46 | BILL of particulars as to Kristopher Justinboyer Ervin. (Taylor, Laura) (Entered: 07/16/2021) |
| 08/10/2021 | 47 | NOTICE OF ATTORNEY APPEARANCE Mai Tran appearing for USA. (Tran, Mai) (Entered: 08/10/2021) |
| 08/12/2021 | 48 | TRANSCRIPT of Motion Hearing as to Kristopher Justinboyer Ervin held on July 8, 2021 before Judge Marcia Morales Howard. Court Reporter/Transcriber Cindy Packevicz Jarriel, Telephone number 904-301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/2/2021 Redacted Transcript Deadline set for 9/13/2021 Release of Transcript Restriction set for 11/10/2021. (CLP) (Entered: 08/12/2021) |
| 08/12/2021 | 49 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Kristopher Justinboyer Ervin. Court Reporter: Cindy Packevicz Jarriel; cindyrprfcrr@gmail.com (CLP) (Entered: 08/12/2021) |
| 09/20/2021 | 50 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin. (JW) (Entered: 09/20/2021) |
| 09/20/2021 | 51 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 9/20/2021; granting 50 Oral Motion to Continue as to Kristopher Justinboyer Ervin (1). Special Status Conference set for 11/22/2021 at 01:30 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Defendant is required to be present. Jury Trial set for trial term commencing on 12/6/2021 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 09/20/2021) |
| 11/22/2021 | 52 | ORAL MOTION to Continue Trial by USA and Kristopher Justinboyer Ervin. (JW) (Entered: 11/23/2021) |
| 11/22/2021 | 53 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 11/22/2021; granting 52 Joint Oral Motion to Continue as to Kristopher Justinboyer Ervin (1). Status Conference and Motion Hearing set for 3/21/2022 at 01:30 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Jury Trial set for trial term commencing on 4/4/2022 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. The Court requests that the parties hold the weeks of April 11, April 18, and April 25, 2022 for trial. See Minutes for additional deadlines. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 11/23/2021) |

| | | |
|---|---|---|
| 12/15/2021 | 54 | **ORDER SCHEDULING TRIAL. Jury selection shall commence on April 11, 2022, at 9:00 a.m. Opening statements and evidence will begin on April 12, 2022, at 9:00 a.m. Jury instructions, proposed Voir Dire, proposed brief statement of the case, and proposed verdict form due no later than February 18, 2022. Signed by Judge Marcia Morales Howard on 12/15/2021. (Attachments: # 1 Instructions Regarding Jury Selection, # 2 Instructions Regarding Premarking Exhibits)(JW)** (Entered: 12/15/2021) |
| 12/21/2021 | 55 | NOTICE *of Disclosure of Summary of Expert Testimony in Compliance with Fed. R. Crim. P. 16(a)(1)(G)* by USA as to Kristopher Justinboyer Ervin (Taylor, Laura) (Entered: 12/21/2021) |
| 01/13/2022 | 56 | NOTICE *of Disclosure of Summary Expert Testimony in Compliance with Fed. R. Crim. P. 16(b)(1)(C)* by Kristopher Justinboyer Ervin (Attachments: # 1 Exhibit A) (King, Alex) (Entered: 01/13/2022) |
| 01/26/2022 | 57 | SECOND SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1ss, 2ss-7ss, 8ss-14ss, 15ss-17ss, Matthew Raymond Hoover (2) count(s) 1, 2-7. (BGR) (Additional attachment(s) added on 1/27/2022: # 1 Restricted Unredacted Indictment) (BGR). Modified on 3/16/2023 to edit text (AET). (Entered: 01/27/2022) |
| 01/28/2022 | 64 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin: Initial Appearance on the Second Superseding Indictment set for 2/2/2022 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 01/28/2022) |
| 01/28/2022 | 65 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin: Arraignment on the Second Superseding Indictment set for 2/2/2022 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 01/28/2022) |
| 02/02/2022 | 69 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Second Superseding Indictment as to Kristopher Justinboyer Ervin (1) Count 1, 1s-7s, 1ss, 2ss-7ss, 8s, 8ss-14ss, 9s-14s, 15ss-17ss held on 2/2/2022 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 02/02/2022) |
| 02/07/2022 | 71 | Consent MOTION for Miscellaneous Relief, specifically to Hold in Abeyance Previously Ordered Motion Deadline by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 02/07/2022) |
| 02/08/2022 | 72 | **ORDER granting 71 Defendant Ervin's Consent Motion to Hold in Abeyance Previously Ordered Motion Deadline. The parties are relieved of the obligation of complying with the motions deadline of February 11, 2022, and the responses deadline of February 25, 2022. The hearing scheduled for March 21, 2022, at 1:30 p.m. remains set. Signed by Judge Marcia Morales Howard on 2/8/2022. (JW)** (Entered: 02/08/2022) |
| 03/04/2022 | 78 | JOINT MOTION to Hold Motions Deadlines in Abeyance and For a Status Hearing by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Modified on 3/4/2022, to edit text) (BGR). (Entered: 03/04/2022) |
| 03/07/2022 | 79 | **ORDER granting 78 Joint Motion to Hold Motions Deadlines in Abeyance and** |

| | | |
|---|---|---|
| | | **for a Status Hearing. The parties are relieved of the obligation of complying with the motions deadlines. The hearing scheduled for March 21, 2022, at 1:30 p.m. is cancelled. A status conference as to all parties is set for March 23, 2022, at 1:30 p.m. Signed by Judge Marcia Morales Howard on 3/7/2022. (JW) (Entered: 03/07/2022)** |
| 03/21/2022 | 81 | **ENDORSED ORDER granting 80 Motion to Appear Telephonically. Zachary Zermay and Matthew Larosiere are permitted to appear telephonically at the status conference set for March 23, 2022, at 1:30 p.m. The Courtroom Deputy Clerk will separately provide counsel with the call-in information for the hearing. Signed by Judge Marcia Morales Howard on 3/21/2022. (JW) (Entered: 03/21/2022)** |
| 03/23/2022 | 82 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin and Matthew Raymond Hoover. (JW) (Entered: 03/23/2022) |
| 03/23/2022 | 83 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 3/23/2022; granting 82 Oral Motion to Continue Trial as to Kristopher Justinboyer Ervin (1) and Matthew Raymond Hoover (2). Special Status Conference set for 6/27/2022 at 02:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Jury Trial set for trial term commencing on 7/5/2022 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for additional deadlines. Court Reporter: Shannon Bishop (JW) (Entered: 03/23/2022) |
| 03/25/2022 | 84 | NOTICE OF ATTORNEY APPEARANCE David B. Mesrobian appearing for USA. (Mesrobian, David) (Entered: 03/25/2022) |
| 03/25/2022 | 85 | TRANSCRIPT of Digitally recorded arraignment and detention hearing as to Kristopher Justinboyer Ervin held on 3/15/2021 before Judge Patricia D. Barksdale. Court Reporter/Transcriber Katharine M. Healey, Telephone number (904) 301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/15/2022 Redacted Transcript Deadline set for 4/25/2022 Release of Transcript Restriction set for 6/23/2022. (KMH) (Entered: 03/25/2022) |
| 03/25/2022 | 86 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Kristopher Justinboyer Ervin. Court Reporter: Katharine Healey (904) 301-6843 (KMH) (Entered: 03/25/2022) |
| 04/27/2022 | 87 | MOTION for Reconsideration re 23 Order of Detention by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 04/27/2022) |
| 05/02/2022 | 88 | **ENDORSED ORDER directing to respond to 87 MOTION for Reconsideration re 23 Order of Detention as to Kristopher Justinboyer Ervin. Responses due by 5/13/2022 Signed by Magistrate Judge Monte C. Richardson on 5/2/2022. (SHS)** Modified on 5/2/2022 (SHS). (Entered: 05/02/2022) |

| 05/12/2022 | 89 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin re 87 MOTION for Reconsideration re 23 Order of Detention (Taylor, Laura) (Entered: 05/12/2022) |
|---|---|---|
| 05/24/2022 | 90 | MOTION for Leave to File Document *to Government's Response in Opposition to Defendant's Motion to Reconsider Detention of Defendant* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 05/24/2022) |
| 06/01/2022 | 91 | **ORDER denying 87 Motion for Reconsideration re 23 Order of Detention filed by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 6/1/2022. (SHS)** (Entered: 06/01/2022) |
| 06/02/2022 | 92 | **ENDORSED ORDER denying 90 Motion for Leave to File as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 6/2/2022. (SHS)** (Entered: 06/02/2022) |
| 06/15/2022 | 93 | NOTICE of APPEAL by Kristopher Justinboyer Ervin re 91 Order on Motion for Reconsideration / Clarification. Filing fee paid $ 505, receipt number AFLMDC-19679305. (King, Alex) . (Entered: 06/15/2022) |
| 06/16/2022 | 94 | TRANSMITTAL of initial appeal package as to Kristopher Justinboyer Ervin to USCA consisting of copies of notice of appeal, order/judgment being appealed, and motion, if applicable to USCA re 93 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (Attachments: # 1 Notice of appeal, # 2 Order)(SJW) (Entered: 06/16/2022) |
| 06/21/2022 | 95 | MOTION to Dismiss by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice, # 2 Request for Oral Argument)(Zermay, Zachary) (Entered: 06/21/2022) |
| 06/21/2022 | 96 | MOTION to Change Venue / Transfer Case by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice, # 2 Declaration of Zachary Z. Zermay, # 3 Request for an Evidentiary Hearing and Oral Argument)(Zermay, Zachary) (Entered: 06/21/2022) |
| 06/21/2022 | 97 | MOTION to Sever Trial by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Oral Argument) (Zermay, Zachary) (Modified on 6/22/2022, to edit text) (BGR). (Entered: 06/21/2022) |
| 06/21/2022 | | USCA Case Number as to Kristopher Justinboyer Ervin. USCA Number: 22-12005-E for 93 Notice of Appeal filed by Kristopher Justinboyer Ervin. (SJW) (Entered: 06/22/2022) |
| 06/27/2022 | 98 | NOTICE of filing supplemental authority by Kristopher Justinboyer Ervin, Matthew Raymond Hoover re: 95 MOTION to Dismiss filed by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 06/27/2022) |
| 06/27/2022 | 99 | JOINT ORAL MOTION to Continue Trial as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (CKS) (Entered: 06/28/2022) |
| 06/27/2022 | 100 | Minute Entry for Virtual proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 6/27/2022; granting 99 Joint Oral Motion to Continue Trial as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover(2). Jury Trial set for the November 2022 trial term, scheduled to commence on 11/1/2022 at 09:00 AM in Jacksonville |

| | | Courtroom 10 B before Judge Marcia Morales Howard, Court Reporter: Katharine Healey (CKS) (Entered: 06/29/2022) |
|---|---|---|
| 07/01/2022 | 101 | SUPPLEMENT re 95 MOTION TO DISMISS & to Declare Unconstitutional the National Firearms Act of 1934 by Matthew Raymond Hoover (Zermay, Zachary) Modified on 7/7/2022 to edit text (AET). (Entered: 07/01/2022) |
| 07/12/2022 | 102 | NOTICE *Regarding Expert Disclosure* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 07/12/2022) |
| 08/01/2022 | 106 | NOTICE *REGARDING JURY SELECTION* by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 08/01/2022) |
| 08/02/2022 | 107 | NOTICE *REGARDING EXPERT DISCLOSURE* by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 08/02/2022) |
| 08/03/2022 | 108 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover: Motion Hearing/Status Conference set for 10/11/2022 at 10:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Defendants are required to be present. (JW) (Entered: 08/03/2022) |
| 08/04/2022 | 110 | MOTION for Leave to File Reply to 103 Response in Opposition by Matthew Raymond Hoover. (Zermay, Zachary) Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | 111 | MOTION for Leave to File Reply to 105 Response in Opposition to Sever Defendant by Matthew Raymond Hoover. (Zermay, Zachary) Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | 112 | MOTION for Leave to File Reply to 104 Response in Opposition to Change Venue/Transfer Case by Matthew Raymond Hoover. Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | 113 | NOTICE of filing supplemental authority by Matthew Raymond Hoover re: 95 MOTION to Dismiss filed by Matthew Raymond Hoover (Zermay, Zachary) Modified on 8/5/2022 to edit text and to confirm with counsel page 3 is intentionally blank (AET). (Entered: 08/04/2022) |
| 08/05/2022 | 114 | NOTICE OF RESCHEDULING HEARING: The Motion Hearing/Status Conference previously scheduled for October 11, 2022, at 10:00 a.m. is rescheduled as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. New hearing date and time: Motion Hearing/Status Conference set for 10/12/2022 at 2:30 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 08/05/2022) |
| 08/23/2022 | 118 | MOTION in Limine by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 56 Notice of Disclosure of Summary Expert Testimony in compliance with Fed. R. Crim. P. 16(b)(1)(C) and 107 Notice Regarding Expert Disclosure. (Attachments: # 1 Exhibit A, video on disk filed separately, # 2 Exhibit B, # 3 Exhibit C)(AET) (Entered: 08/24/2022) |
| 08/30/2022 | 119 | JOINT UNOPPOSED MOTION to Continue trial by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 9/2/2022 to edit text (AET). (Entered: 08/30/2022) |

| | | |
|---|---|---|
| 08/31/2022 | 120 | THIRD SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1sss, 2sss-8sss, 9sss-15sss, 16sss-18sss, Matthew Raymond Hoover (2) count(s) 1s, 2s-8s. (Attachments: # 1 Restricted Unredacted Indictment) (AET) Modified on 3/16/2023 to edit text (AET). (Entered: 08/31/2022) |
| 08/31/2022 | 123 | NOTICE OF HEARING ON 119 Joint and Unopposed Motion to Continue Trial. Motion Hearing set for September 6, 2022, at 3:00 p.m. before Judge Marcia Morales Howard. The hearing will be held via Zoom. The Courtroom Deputy Clerk will separately send participants the Zoom link. (JW) (Entered: 08/31/2022) |
| 09/01/2022 | 124 | USCA Order Dismissed as to Kristopher Justinboyer Ervin re 93 Notice of Appeal USCA number: 22-12005. Issued as mandate on 8/30/22. (SJW) (Entered: 09/01/2022) |
| 09/07/2022 | 126 | Minute Entry for Virtual proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 9/7/2022; granting 119 Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2); denying, without prejudice, as moot 95 Defendant Hoover's Motion to Dismiss. Hoover's renewed motion to dismiss due September 22, 2022. Response due October 7, 2022. Motion hearing set for December 9, 2022, at 10:00 a.m. Jury Trial set for 1/9/2023 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for additional deadlines. Court Reporter: Katharine Healey (JW) (Entered: 09/12/2022) |
| 09/13/2022 | 127 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: re: 120 Third Superseding Indictment,. Arraignment set for 9/22/2022 at 11:30 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 09/13/2022) |
| 09/14/2022 | 128 | UNOPPOSED MOTION for Zachary Z. Zermay; Matthew Larosiere and Defendant Matthew Hoover to appear telephonically by Matthew Raymond Hoover. (Zermay, Zachary) Motions referred to Magistrate Judge Monte C. Richardson. Modified on 9/15/2022 (AET). (Entered: 09/14/2022) |
| 09/16/2022 | 130 | NOTICE of Disclosure of Summary of Expert Testimony by Matthew Raymond Hoover as to Matthew Raymond Hoover (Zermay, Zachary) Modified on 9/19/2022 to edit text (AET). (Entered: 09/16/2022) |
| 09/22/2022 | 131 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Third Superseding Indictment as to Kristopher Justinboyer Ervin (1) Count 1, 1s-7s, 1ss, 1sss, 2ss-7ss, 2sss-8sss, 8s, 8ss-14ss, 9s-14s, 9sss-15sss, 15ss-17ss, 16sss-18sss, and Matthew Raymond Hoover (2) Count 1, 1s, 2-7, 2s-8s, held on 9/22/2022 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 09/22/2022) |
| 09/22/2022 | 132 | MOTION to Dismiss by Matthew Raymond Hoover as to Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice)(Zermay, Zachary) Modified text on 9/26/2022 (BD). (Entered: 09/22/2022) |
| 09/22/2022 | 133 | Second MOTION to Dismiss for First And Second Amendment Violations & to Declare Unconstitutional The National Firearms Act Of 1934 by Matthew Raymond Hoover as to Matthew Raymond Hoover. (Zermay, Zachary) Modified text on 9/26/2022 (BD). (Entered: 09/22/2022) |
| 09/28/2022 | 134 | MOTION to Extend Time to Filing Deadline by Kristopher Justinboyer Ervin. (King, |

| 09/28/2022 | 135 | **ENDORSED ORDER granting 134 Defendant Ervin's Motion for Extension of Time of Filing Deadline. Defendant Ervin shall have up to and including October 7, 2022, to file his Daubert motion. The United States shall have up to and including October 24, 2022, to file a response. Signed by Judge Marcia Morales Howard on 9/28/2022. (JW)** (Entered: 09/28/2022) |
|---|---|---|
| 09/28/2022 | 136 | MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 09/28/2022) |
| 10/07/2022 | 139 | Unopposed MOTION to Continue Daubert Motion Deadline by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) (Entered: 10/07/2022) |
| 10/11/2022 | 140 | **ENDORSED ORDER granting 139 Unopposed Motion to Continue Daubert Deadline. Defendants shall have up to and including October 21, 2022, to file Daubert motions. The United States shall have up to and including November 7, 2022, to file responses. Signed by Judge Marcia Morales Howard on 10/11/2022. (JW)** (Entered: 10/11/2022) |
| 10/21/2022 | 142 | MOTION in Limine *to Exclude Trial Testimony of Government's Purported Expert Witnesses* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 10/21/2022) |
| 10/28/2022 | 145 | **ORDER granting 143 Motion to Continue Motion in Limine Deadline. Motions in limine due 11/10/2022. Responses due 11/28/2022. Signed by Judge Marcia Morales Howard on 10/28/2022. (JCM)** (Entered: 10/28/2022) |
| 10/31/2022 | 146 | TRANSCRIPT of Digitally Recorded Initial Appearance and Arraignment Proceedings as to Matthew Raymond Hoover held on 02/22/2022 before Judge Monte C. Richardson. Court Reporter/Transcriber Katharine M. Healey, RMR, CRR, FPR-C, Telephone number (904) 301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 11/21/2022 Redacted Transcript Deadline set for 12/1/2022 Release of Transcript Restriction set for 1/30/2023. (KMH) (Entered: 10/31/2022) |
| 10/31/2022 | 147 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT (02/22/2022 Digitally Recorded Initial Appearance and Arraignment of Matthew Raymond Hoover). The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Matthew Raymond Hoover. Court Reporter: Katharine Healey (KMH) (Entered: 10/31/2022) |
| 11/07/2022 | 149 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 142 MOTION in Limine *to Exclude Trial Testimony of Government's Purported Expert Witnesses* (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Taylor, Laura) (Entered: 11/07/2022) |
| | | |

| 11/10/2022 | 152 | Joint MOTION to Extend Time to Filing Deadline and Request for Status Conference by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) (Entered: 11/10/2022) |
|---|---|---|
| 11/10/2022 | 153 | RESPONSE to Motion re 152 Joint MOTION to Extend Time to Filing Deadline and Request for Status Conference by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 11/10/2022) |
| 11/10/2022 | 154 | **ENDORSED ORDER granting 152 Joint Emergency Motion for Extension of Time of Filing Deadline and Request for Status Conference. Motions in limine must be filed on or before November 18, 2022. A telephonic status conference is set for Thursday, November 17, 2022, at 1:00 p.m. The Courtroom Deputy Clerk will separately send participants the call-in information for the hearing. Absent a continuance of the trial, no further extensions of time will be granted. Signed by Judge Marcia Morales Howard on 11/10/2022. (JW) (Entered: 11/10/2022)** |
| 11/17/2022 | 158 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 11/21/2022) |
| 11/17/2022 | 159 | Minute Entry for Telephonic proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 11/17/2022; terminating 136 Government's Motion in Limine; granting 158 Oral Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2). A Daubert hearing will be held on February 7, 2023. The time will be set at a later date. Jury Trial set for 4/10/2023 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for deadlines. The Court emphasized its expectation that the deadlines would be met and that the trial date is firm and will not change. Order Scheduling Trial to enter. Court Reporter: Katharine Healey (JW) (Entered: 11/21/2022) |
| 12/09/2022 | 165 | NOTICE *Amended of Disclosure of Expert Testimony in Compliance with Fed. R. Crim. P. 16(b)(1)(C) Testimony* by Kristopher Justinboyer Ervin (King, Alex) (Entered: 12/09/2022) |
| 01/03/2023 | 169 | **ORDER SCHEDULING TRIAL. As previously directed, Daubert motions are due January 4, 2023, and responses are due January 18, 2023. A Daubert hearing is set for February 7, 2023, at 10:00 a.m. in Courtroom 10B. Motions in limine shall be filed by February 24, 2023, and responses are due March 10, 2023. Jury selection and trial shall commence on April 10, 2023, at 9:00 a.m. Trial documents due no later than April 3, 2023. Signed by Judge Marcia Morales Howard on 1/3/2023. (Attachments: # 1 Instructions Regarding Jury Selection, # 2 Instructions Regarding Premarking Exhibits)(JW) (Entered: 01/03/2023)** |
| 01/04/2023 | | Set/Reset Deadlines as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: Exhibit List due by 4/10/2023. (AET) (Entered: 01/04/2023) |
| 01/04/2023 | 170 | MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 01/04/2023) |
| 01/18/2023 | 171 | RESPONSE to Motion re 170 MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 01/18/2023) |

| 02/01/2023 | 177 | **ORDER directing the parties to file a written proffer of each proposed expert witness's opinions by 12:00 noon on Monday, February 6, 2023. Signed by Judge Marcia Morales Howard on 2/1/2023. (JCM)** (Entered: 02/01/2023) |
|---|---|---|
| 02/03/2023 | 178 | NOTICE *of Withdrawal of Notice of Disclosure of Expert Testimony in Compliance with Fed. R. Crim. P. 16(b)(1)(C) and Request for Relief from this Court's February 1, 2023 Order* by Kristopher Justinboyer Ervin re 165 Notice (Other), 177 Order. (King, Alex) (Entered: 02/03/2023) |
| 02/06/2023 | 180 | NOTICE *of Filing Written Proffer of Testimony by Ernest Lintner in Anticipation of Trial* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 02/06/2023) |
| 02/06/2023 | 181 | NOTICE *of Filing Written Proffer of Opinions of Cody Toy in Anticipation of Trial* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 02/06/2023) |
| 02/06/2023 | 182 | NOTICE *of Written Proffer of Testimony by Daniel O'Kelly in Anticipation of Trial* by Kristopher Justinboyer Ervin re 177 Order. (King, Alex) (Entered: 02/06/2023) |
| 02/07/2023 | 184 | NOTICE *of Filing* by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Exhibit A)(King, Alex) (Entered: 02/07/2023) |
| 02/07/2023 | 185 | NOTICE *of supplemental authority* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Attachment 1)(Mesrobian, David) (Entered: 02/07/2023) |
| 02/07/2023 | 186 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 2/7/2023; terminating as moot 118 Government's Motion In Limine to Exclude Trial Testimony of Defendants' Proposed Expert Witness; denying without prejudice 142 Defendants' Motion In Limine to Exclude Trial Testimony of Government's Purported Expert Witnesses; denying as moot, in part, and withdrawing, in part, 170 Government's Motion In Limine to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses. Proposed limiting instruction(s) due February 24, 2023. Court Reporter: Katharine Healey (JW) (Entered: 02/08/2023) |
| 02/23/2023 | 187 | JOINT EMERGENCY MOTION to Extend Time to Filing Deadline by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/24/2023 to edit text (AET). (Entered: 02/23/2023) |
| 02/23/2023 | 188 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 187 Emergency MOTION to Extend Time to Filing Deadline -- *Joint* (Mesrobian, David) (Entered: 02/23/2023) |
| 02/24/2023 | 189 | MOTION in Limine for Jury Instruction by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) Modified on 2/27/2023 to edit text (AET). (Entered: 02/24/2023) |
| 02/24/2023 | 190 | MOTION in Limine to exclude argument and evidence at trial that is contrary to the law by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) Modified on 2/27/2023 to edit text (AET). (Entered: 02/24/2023) |
| 02/24/2023 | 191 | **ORDER granting in part and denying in part 187 Emergency Joint Motion for** |

| | | **Extension of Filing Deadline. Motions in Limine due no later than 1:00 p.m. on Monday, February 27, 2023. See Order for details. Signed by Judge Marcia Morales Howard on 2/24/2023. (JCM) (Entered: 02/24/2023)** |
|---|---|---|
| 02/27/2023 | 193 | FIRST MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 194 | SECOND MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 195 | THIRD MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 196 | FOURTH MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Exhibit A)(King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 197 | FIFTH MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 198 | FIRST MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 199 | SECOND MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 200 | THIRD MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 201 | FOURTH MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 202 | FIFTH MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 03/06/2023 | 204 | FOURTH SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1ssss, 2ssss-8ssss, 9ssss, 10ssss-12ssss, Matthew Raymond Hoover (2) count(s) 1ss, 2ss-8ss. (Attachments: # 1 Restricted Unredacted Indictment) (BD) Modified on 3/16/2023 to edit text (AET). (Entered: 03/06/2023) |
| 03/08/2023 | 205 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: re: 204 Fourth Superseding Indictment. Arraignment set for 3/14/2023 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 03/08/2023) |
| 03/10/2023 | 207 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 198 FIRST MOTION in Limine , 193 FIRST MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 208 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 199 SECOND MOTION in Limine , 194 SECOND MOTION in |

| | | |
|---|---|---|
| | | Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 209 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 200 THIRD MOTION in Limine , 195 THIRD MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 210 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 201 FOURTH MOTION in Limine , 196 FOURTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 211 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 197 FIFTH MOTION in Limine , 202 FIFTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 212 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 203 SIXTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 213 | RESPONSE 189 MOTION in Limine for Jury Instruction by Kristopher Justinboyer Ervin (King, Alex) (Entered: 03/10/2023) |
| 03/10/2023 | 214 | RESPONSE 190 MOTION in Limine to exclude argument and evidence at trial that is contrary to the law by Kristopher Justinboyer Ervin (King, Alex) (Entered: 03/10/2023) |
| 03/14/2023 | 217 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Fourth Superseding Indictment as to Kristopher Justinboyer Ervin (1) Counts 1ssss through 12ssss and Matthew Raymond Hoover (2) Counts 1ss through 8ss, held on 3/14/2023 Defendant(s) pled not guilty. (Digital) (SHS) Modified on 3/16/2023 to edit text (AET). (Entered: 03/15/2023) |
| 03/20/2023 | 218 | TRANSCRIPT of Motion Hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 02/07/2023 before Judge Marcia Morales Howard. Court Reporter: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2023. Redacted Transcript Deadline set for 4/20/2023. Release of Transcript Restriction set for 6/20/2023. (KMH) (Entered: 03/20/2023) |
| 03/22/2023 | 219 | TRIAL BRIEF by USA as to Kristopher Justinboyer Ervin (Tran, Mai) (Entered: 03/22/2023) |
| 03/30/2023 | 222 | Unopposed MOTION to Allow Electronic Equipment, specifically cell phone and laptop by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 03/30/2023) |
| 03/30/2023 | 223 | **ORDER granting in part and denying in part 189 Government's Motion in Limine for Jury Instruction; granting in part and denying in part 190 Government's Motion in Limine to Exclude Argument and Evidence; denying** |

| | | |
|---|---|---|
| | | **193** Defendants' First Motion in Limine; denying **194** Defendants' Second Motion in Limine; denying **195** Defendants' Third Motion in Limine; denying **196** Defendants' Fourth Motion in Limine; denying **197** Defendants' Fifth Motion in Limine; denying **198** Defendants' First Motion in Limine; denying **199** Defendants' Second Motion in Limine; denying **200** Defendants' Third Motion in Limine; denying **201** Defendants' Fourth Motion in Limine; denying **202** Defendants' Fifth Motion in Limine; denying 203 Defendant Hoover's Sixth Motion in Limine. Signed by Judge Marcia Morales Howard on 3/30/2023. (JCM) (Entered: 03/30/2023) |
| 03/31/2023 | 224 | **ORDER granting 222 Motion to Allow Electronic Equipment as to Kristopher Justinboyer Ervin (1). Signed by Judge Marcia Morales Howard on 3/31/2023. (JW)** (Entered: 03/31/2023) |
| 04/03/2023 | 225 | Proposed Jury Instructions by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 226 | STATEMENT of the case for trial by USA. (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 227 | PROPOSED verdict form filed by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 228 | PROPOSED Voir Dire by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 229 | PROPOSED Voir Dire by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/03/2023) |
| 04/03/2023 | 230 | STATEMENT of the case for trial (King, Alex) (Entered: 04/03/2023) |
| 04/03/2023 | 231 | PROPOSED verdict form filed by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/03/2023) |
| 04/03/2023 | 232 | Proposed Jury Instructions by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/03/2023) |
| 04/08/2023 | 240 | WITNESS LIST by Kristopher Justinboyer Ervin. (King, Alex) Modified on 4/10/2023 to edit text (AET). (Entered: 04/08/2023) |
| 04/10/2023 | 241 | EXHIBIT LIST by Kristopher Justinboyer Ervin (King, Alex) Modified on 4/11/2023 See Docket Entry 245 for corrected Exhibit List (AET). (Entered: 04/10/2023) |
| 04/10/2023 | 242 | WITNESS LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/10/2023) |
| 04/10/2023 | 243 | EXHIBIT LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/10/2023) |
| 04/10/2023 | 244 | EXHIBIT LIST by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 04/10/2023) |
| 04/10/2023 | 245 | EXHIBIT LIST by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/10/2023) |
| 04/10/2023 | 246 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY SELECTION AND TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/10/2023. Court Reporter: Katharine Healey (JW) |

| 04/11/2023 | 247 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/11/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/12/2023) |
|---|---|---|
| 04/12/2023 | 248 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/12/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/13/2023) |
| 04/13/2023 | 249 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/13/2023. Court Reporter: Shelli Kozachenko (JW) (Entered: 04/14/2023) |
| 04/14/2023 | 251 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/14/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/17/2023) |
| 04/17/2023 | 250 | REQUEST for Judicial Notice by Kristopher Justinboyer Ervin (Attachments: # 1 Exhibit A)(King, Alex) Modified on 4/18/2023 to edit text (AET). (Entered: 04/17/2023) |
| 04/17/2023 | 252 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/17/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/18/2023) |
| 04/18/2023 | 253 | SUPPLEMENT re 225 Proposed Jury Instructions by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/18/2023) |
| 04/19/2023 | 254 | COURT'S FINAL JURY INSTRUCTIONS as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 04/19/2023) |
| 04/19/2023 | 256 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/19/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/21/2023) |
| 04/20/2023 | 255 | **PARTIAL SEQUESTRATION ORDER. Signed by Judge Marcia Morales Howard on 4/20/2023. (JW)** (Entered: 04/20/2023) |
| 04/20/2023 | 257 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/20/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 258 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/21/2023. Court Reporter: Katharine Healey (Attachments: # 1 Government's Exhibit 1 Regarding Remand, # 2 Government's Exhibit 2 Regarding Remand) (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 259 | EXHIBIT LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Additional attachment(s) added on 4/26/2023: # 1 Exhibit 1, # 2 Exhibit 1A, # 3 Exhibit 2, # 4 Exhibit 2A, # 5 Exhibit 3, # 6 Exhibit 3A, # 7 Exhibit 4, # 8 Exhibit 4A, # 9 Exhibit 5, # 10 Exhibit 5A, # 11 Exhibit 6, # 12 Exhibit 6A, # 13 Exhibit 7, # 14 Exhibit 7A, # 15 Exhibit 8, # 16 Exhibit 8A, # 17 Exhibit 9, # 18 Exhibit 9A, # 19 Exhibit 10, # 20 Exhibit 10A, # 21 Exhibit 11, # 22 Exhibit 11A, # 23 Exhibit 12, # 24 Exhibit 12A, # 25 Exhibit 14, # 26 |

Exhibit 14A, # 27 Exhibit 15, # 28 Exhibit 15A, # 29 Exhibit 16, # 30 Exhibit 16A, # 31 Exhibit 17.1, # 32 Exhibit 17.1A, # 33 Exhibit 17.2, # 34 Exhibit 17.2A, # 35 Exhibit 17.3, # 36 Exhibit 17.3A, # 37 Exhibit 18, # 38 Exhibit 19, # 39 Exhibit 20, # 40 Exhibit 20A, # 41 Exhibit 21, # 42 Exhibit 22, # 43 Exhibit 23, # 44 Exhibit 24, # 45 Exhibit 25, # 46 Exhibit 25A, # 47 Exhibit 25B, # 48 Exhibit 26) (JW). (Additional attachment(s) added on 4/26/2023: # 49 Exhibit 27A, # 50 Exhibit 27B, # 51 Exhibit 28, # 52 Exhibit 29, # 53 Exhibit 30, # 54 Exhibit 30A, # 55 Exhibit 30B, # 56 Exhibit 30C, # 57 Exhibit 30D, # 58 Exhibit 30E, # 59 Exhibit 30F, # 60 Exhibit 30G, # 61 Exhibit 30H, # 62 Exhibit 30I, # 63 Exhibit 30J, # 64 Exhibit 30K, # 65 Exhibit 30L, # 66 Exhibit 30M, # 67 Exhibit 30N, # 68 Exhibit 30O, # 69 Exhibit 30P, # 70 Exhibit 30Q, # 71 Exhibit 30R, # 72 Exhibit 30S, # 73 Exhibit 30T, # 74 Exhibit 30U, # 75 Exhibit 30V, # 76 Exhibit 31, # 77 Exhibit 32) (JW). (Additional attachment(s) added on 4/26/2023: # 78 Exhibit 33, # 79 Exhibit 33A, # 80 Exhibit 33B, # 81 Exhibit 33C, # 82 Exhibit 33D, # 83 Exhibit 33E, # 84 Exhibit 33F, # 85 Exhibit 33G, # 86 Exhibit 33H, # 87 Exhibit 33I, # 88 Exhibit 33J, # 89 Exhibit 33K, # 90 Exhibit 33L, # 91 Exhibit 33M, # 92 Exhibit 33N, # 93 Exhibit 33O, # 94 Exhibit 33P, # 95 Exhibit 33Q, # 96 Exhibit 33R, # 97 Exhibit 33S, # 98 Exhibit 33T, # 99 Exhibit 33U, # 100 Exhibit 33V, # 101 Exhibit 33W, # 102 Exhibit 33X, # 103 Exhibit 33Y, # 104 Exhibit 33Z, # 105 Exhibit 34, # 106 Exhibit 35, # 107 Exhibit 36, # 108 Exhibit 37, # 109 Exhibit 38, # 110 Exhibit 39, # 111 Exhibit 40, # 112 Exhibit 41, # 113 Exhibit 42, # 114 Exhibit 43, # 115 Exhibit 44, # 116 Exhibit 45, # 117 Exhibit 46, # 118 Exhibit 47, # 119 Exhibit 48, # 120 Exhibit 49) (JW). (Additional attachment(s) added on 4/26/2023: # 121 Exhibit 49A, # 122 Exhibit 49B, # 123 Exhibit 49C, # 124 Exhibit 49D, # 125 Exhibit 49E, # 126 Exhibit 49F, # 127 Exhibit 49G, # 128 Exhibit 49H, # 129 Exhibit 49I, # 130 Exhibit 49J, # 131 Exhibit 49K, # 132 Exhibit 49L, # 133 Exhibit 49M, # 134 Exhibit 49N, # 135 Exhibit 49O, # 136 Exhibit 49P, # 137 Exhibit 49Q, # 138 Exhibit 50A, # 139 Exhibit 50B, # 140 Exhibit 50C, # 141 Exhibit 50D, # 142 Exhibit 50E, # 143 Exhibit 50F, # 144 Exhibit 50G, # 145 Exhibit 50H, # 146 Exhibit 50I, # 147 Exhibit 50J, # 148 Exhibit 50K, # 149 Exhibit 50L, # 150 Exhibit 50M, # 151 Exhibit 50N, # 152 Exhibit 50O, # 153 Exhibit 50P, # 154 Exhibit 51, # 155 Exhibit 52, # 156 Exhibit 53, # 157 Exhibit 54, # 158 Exhibit 55, # 159 Exhibit 56) (JW). (Additional attachment(s) added on 4/26/2023: # 160 Exhibit 57A, # 161 Exhibit 57B, # 162 Exhibit 57C, # 163 Exhibit 58A, # 164 Exhibit 58B, # 165 Exhibit 58C, # 166 Exhibit 58D, # 167 Exhibit 59, # 168 Exhibit 60, # 169 Exhibit 61, # 170 Exhibit 63, # 171 Exhibit 64, # 172 Exhibit 65, # 173 Exhibit 66, # 174 Exhibit 67, # 175 Exhibit 67A, # 176 Exhibit 67B, # 177 Exhibit 67C, # 178 Exhibit 67D, # 179 Exhibit 67E, # 180 Exhibit 67F, # 181 Exhibit 67G, # 182 Exhibit 67H, # 183 Exhibit 67I, # 184 Exhibit 67J, # 185 Exhibit 67K, # 186 Exhibit 67L, # 187 Exhibit 67M, # 188 Exhibit 67N, # 189 Exhibit 67O, # 190 Exhibit 67P, # 191 Exhibit 67Q, # 192 Exhibit 67R, # 193 Exhibit 67S, # 194 Exhibit 67T, # 195 Exhibit 67U, # 196 Exhibit 67V, # 197 Exhibit 67W, # 198 Exhibit 67X, # 199 Exhibit 67Y, # 200 Exhibit 67Z) (JW). (Additional attachment(s) added on 4/26/2023: # 201 Exhibit 67AA, # 202 Exhibit 67BB, # 203 Exhibit 67CC, # 204 Exhibit 67DD, # 205 Exhibit 67EE, # 206 Exhibit 67FF, # 207 Exhibit 67GG, # 208 Exhibit 67HH, # 209 Exhibit 67II, # 210 Exhibit 67JJ, # 211 Exhibit 67KK, # 212 Exhibit 67LL, # 213 Exhibit 67MM, # 214 Exhibit 67NN, # 215 Exhibit 67OO, # 216 Exhibit 67PP, # 217 Exhibit 67QQ, # 218 Exhibit 67RR, # 219 Exhibit 67SS, # 220 Exhibit 67TT, # 221 Exhibit 67UU, # 222 Exhibit 67VV, # 223 Exhibit 67WW, # 224 Exhibit 67XX, # 225 Exhibit 67YY, # 226 Exhibit 67ZZ, # 227 Exhibit 67AAA, # 228 Exhibit 67BBB, # 229 Exhibit 67CCC, # 230 Exhibit 68, # 231 Exhibit 69, # 232 Exhibit 70, # 233 Exhibit 71, # 234 Exhibit

72, # 235 Exhibit 73, # 236 Exhibit 74, # 237 Exhibit 75, # 238 Exhibit 76, # 239 Exhibit 77, # 240 Exhibit 78, # 241 Exhibit 79, # 242 Exhibit 80, # 243 Exhibit 81, # 244 Exhibit 82, # 245 Exhibit 83, # 246 Exhibit 84, # 247 Exhibit 85, # 248 Exhibit 86, # 249 Exhibit 87, # 250 Exhibit 88, # 251 Exhibit 89) (JW). (Additional attachment(s) added on 4/26/2023: # 252 Exhibit 89A, # 253 Exhibit 89B, # 254 Exhibit 89C, # 255 Exhibit 89D, # 256 Exhibit 89E, # 257 Exhibit 89F, # 258 Exhibit 89G, # 259 Exhibit 89H, # 260 Exhibit 89I, # 261 Exhibit 90, # 262 Exhibit 90A, # 263 Exhibit 90B, # 264 Exhibit 90C, # 265 Exhibit 90D, # 266 Exhibit 90E, # 267 Exhibit 90F, # 268 Exhibit 90G, # 269 Exhibit 90H, # 270 Exhibit 91) (JW). (Additional attachment(s) added on 4/26/2023: # 271 Exhibit 91A, # 272 Exhibit 91B, # 273 Exhibit 91C, # 274 Exhibit 91D, # 275 Exhibit 91E, # 276 Exhibit 91F, # 277 Exhibit 91G, # 278 Exhibit 91H, # 279 Exhibit 91I, # 280 Exhibit 91J, # 281 Exhibit 91K, # 282 Exhibit 91L, # 283 Exhibit 91M, # 284 Exhibit 91N, # 285 Exhibit 92, # 286 Exhibit 92A, # 287 Exhibit 92B, # 288 Exhibit 92C, # 289 Exhibit 92D, # 290 Exhibit 92E, # 291 Exhibit 92F, # 292 Exhibit 92G, # 293 Exhibit 92H, # 294 Exhibit 92I, # 295 Exhibit 92J, # 296 Exhibit 92K, # 297 Exhibit 93, # 298 Exhibit 94, # 299 Exhibit 95, # 300 Exhibit 95A, # 301 Exhibit 95B, # 302 Exhibit 95C, # 303 Exhibit 95D, # 304 Exhibit 95E) (JW). (Additional attachment(s) added on 4/26/2023: # 305 Exhibit 96, # 306 Exhibit 97, # 307 Exhibit 97A, # 308 Exhibit 97B, # 309 Exhibit 97C, # 310 Exhibit 97D, # 311 Exhibit 98, # 312 Exhibit 98A, # 313 Exhibit 98B, # 314 Exhibit 98C, # 315 Exhibit 98D, # 316 Exhibit 98E, # 317 Exhibit 99, # 318 Exhibit 99A, # 319 Exhibit 99B, # 320 Exhibit 99C, # 321 Exhibit 99D, # 322 Exhibit 100, # 323 Exhibit 101, # 324 Exhibit 101A) (JW). (Additional attachment(s) added on 4/26/2023: # 325 Exhibit 102, # 326 Exhibit 103, # 327 Exhibit 103A, # 328 Exhibit 104, # 329 Exhibit 105, # 330 Exhibit 105A, # 331 Exhibit 108, # 332 Exhibit 109A, # 333 Exhibit 109B, # 334 Exhibit 109C, # 335 Exhibit 109D, # 336 Exhibit 110) (JW). (Additional attachment(s) added on 4/27/2023: # 337 Exhibit 111, # 338 Exhibit 112, # 339 Exhibit 114, # 340 Exhibit 115, # 341 Exhibit 116A, # 342 Exhibit 116B, # 343 Exhibit 116C, # 344 Exhibit 116D, # 345 Exhibit 117, # 346 Exhibit 118, # 347 Exhibit 119, # 348 Exhibit 120, # 349 Exhibit 120A, # 350 Exhibit 120B, # 351 Exhibit 120C, # 352 Exhibit 120D, # 353 Exhibit 123, # 354 Exhibit 124, # 355 Exhibit 124.1, # 356 Exhibit 124.1A, # 357 Exhibit 124.2, # 358 Exhibit 124.3, # 359 Exhibit 124.3A, # 360 Exhibit 125, # 361 Exhibit 125A, # 362 Exhibit 126) (JW). (Entered: 04/24/2023)

| | | |
|---|---|---|
| 04/21/2023 | 260 | EXHIBIT LIST by Kristopher Justinboyer Ervin (FILED IN OPEN COURT). (Attachments: # 1 Defendant Ervin's Exhibit 8, # 2 Defendant Ervin's Exhibit 26)(JW) (Entered: 04/24/2023) |
| 04/21/2023 | 261 | Court's Proposed Jury Instructions as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 262 | Court's Revised Proposed Jury Instructions as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 263 | JURY VERDICT as to Kristopher Justinboyer Ervin (FILED IN OPEN COURT). (Attachments: # 1 Restricted Unredacted Jury Verdict)(JW) (Entered: 04/24/2023) |
| 04/21/2023 | 266 | Court Exhibits as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 04/24/2023) |
| 04/24/2023 | 267 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: Sentencing set for July 31, 2023, at 9:30 a.m. in Jacksonville Courtroom 10 B |

| | | before Judge Marcia Morales Howard. (JW) (Entered: 04/24/2023) |
|---|---|---|
| 04/27/2023 | | Remark: The flash drives containing the closing argument PowerPoint presentations by all counsel are stored with the exhibits in the trial exhibit storage room in the Clerk's Office. (JW) (Entered: 04/27/2023) |
| 05/03/2023 | 270 | Unopposed MOTION to Continue Deadline to File Motion for Judgment of Acquittal by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 05/03/2023) |
| 05/04/2023 | 271 | **ORDER granting 270 Unopposed Motion to Continue Deadline to File Motion for Judgment of Acquittal. Motion due May 19, 2023. Signed by Judge Marcia Morales Howard on 5/4/2023. (JW)** (Entered: 05/04/2023) |
| 05/05/2023 | 272 | TRANSCRIPT of Excerpt of Jury Trial Proceedings (remand arguments as to Hoover) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/21/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 5/26/2023. Redacted Transcript Deadline set for 6/5/2023. Release of Transcript Restriction set for 8/3/2023. (KMH) (Entered: 05/05/2023) |
| 05/19/2023 | 273 | POST-VERDICT MOTION for Judgment of Acquittal by Kristopher Justinboyer Ervin. (King, Alex) (Modified on 5/22/2023, to edit text) (BGR). (Entered: 05/19/2023) |
| 05/19/2023 | 274 | MOTION for Judgment of Acquittal by Matthew Raymond Hoover. (Zermay, Zachary) (Modified on 5/22/2023, to edit text) (BGR). (Entered: 05/19/2023) |
| 05/25/2023 | 275 | MOTION to Extend Time to Respond to Defendants' Motions for Judgment of Acquittal by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 05/25/2023) |
| 05/26/2023 | 276 | **ENDORSED ORDER granting 275 Motion to Extend Time to Respond to Defendants' Motions for Judgment of Acquittal. The United States shall have up to and including June 16, 2023, to file its responses to Defendants' Motions for Judgment of Acquittal. Signed by Judge Marcia Morales Howard on 5/26/2023. (JW)** (Entered: 05/26/2023) |
| 06/06/2023 | 277 | TRANSCRIPT of Jury Selection and Trial (Volume 1 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/10/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is |

| | | filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/06/2023) |
|---|---|---|
| 06/06/2023 | 278 | TRANSCRIPT of Jury Trial (Volume 2 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/11/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Modified on 6/6/2023, to edit text) (BGR). (Entered: 06/06/2023) |
| 06/06/2023 | 279 | TRANSCRIPT of Jury Trial (Volume 3 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/12/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Modified on 6/6/2023, to edit text) (BGR). (Entered: 06/06/2023) |
| 06/06/2023 | 280 | TRANSCRIPT of Jury Trial (Volume 4 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/13/23 before Judge Howard. Court Reporter/Transcriber: Shelli Kozachenko. Email address: shellikoz@gmail.com. Telephone number: 904.301.6842.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (SMK) (Entered: 06/06/2023) |

| 06/07/2023 | 281 | TRANSCRIPT of Jury Trial (Volume 5 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/14/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| --- | --- | --- |
| 06/07/2023 | 282 | TRANSCRIPT of Jury Trial (Volume 6 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/17/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 283 | TRANSCRIPT of Jury Trial (Volume 7 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/19/23 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: 9043016843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 284 | TRANSCRIPT of Jury Trial (Volume 8 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/20/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the |

| | | |
|---|---|---|
| | | court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 285 | TRANSCRIPT of Jury Trial (Volume 9 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/21/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/12/2023 | 286 | MOTION to Continue Sentencing Hearing by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 06/12/2023) |
| 06/13/2023 | 287 | MOTION for Forfeiture of a Preliminary Order for Involved-In Property and Substitute Assets by USA as to Kristopher Justinboyer Ervin. (Tran, Mai) (Entered: 06/13/2023) |
| 06/13/2023 | 288 | **ENDORSED ORDER as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover regarding 286 United States' Motion to Continue Sentencing Hearing. Defendants shall have up to and including June 20, 2023, to file responses to this motion. Signed by Judge Marcia Morales Howard on 6/13/2023. (JW)** (Entered: 06/13/2023) |
| 06/16/2023 | 289 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 274 MOTION for Judgment of Acquittal (Taylor, Laura) (Entered: 06/16/2023) |
| 06/16/2023 | 290 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin re 273 MOTION for Judgment of Acquittal (Taylor, Laura) (Modified on 6/20/2023, to edit text) (BGR). (Entered: 06/16/2023) |
| 06/20/2023 | 291 | RESPONSE 286 MOTION to Continue Sentencing Hearing by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (King, Alex) (Entered: 06/20/2023) |
| 06/21/2023 | 293 | **ORDER granting 286 Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2). Sentencing hearing continued to September 6, 2023, at 9:30 a.m. Signed by Judge Marcia Morales Howard on 6/21/2023. (JW)** (Entered: 06/21/2023) |

| | | |
|---|---|---|
| 08/01/2023 | 295 | RULE 32(e)(2) INITIAL PRESENTENCE INVESTIGATION REPORT as to Kristopher Justinboyer Ervin. E-copies made available to selected parties.(TH) (Entered: 08/01/2023) |
| 08/07/2023 | 296 | MOTION for Miscellaneous Relief, specifically Order Prohibiting Dissemination of Presentence Investigation Report by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 08/07/2023) |
| 08/08/2023 | 297 | **ORDER taking under advisement 296 United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report. An IN PERSON hearing on the motion is set for Friday, August 11, 2023, at 2:00 p.m. in Courtroom 10B. Defendants and all counsel of record are required to be present. Signed by Judge Marcia Morales Howard on 8/8/2023. (JW)** (Entered: 08/08/2023) |
| 08/09/2023 | 298 | NOTICE OF RESCHEDULING HEARING (AS TO TIME ONLY): The Motion Hearing previously scheduled for August 11, 2023, at 2:00 p.m. is rescheduled as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. New hearing time: Motion Hearing set for August 11, 2023, at 1:30 p.m. in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 08/09/2023) |
| 08/09/2023 | 299 | JOHN CRUMP'S EMERGENCY MOTION to Intervene for the Limited Purpose of Responding to the United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (MDC) (Entered: 08/09/2023) |
| 08/09/2023 | 300 | First MOTION for Stephen D. Stamboulieh to appear pro hac vice, Special Admission fee paid, Receipt No. FLMDC-21130611 for $150 by John Crump as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Phillips, James) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/09/2023) |
| 08/09/2023 | 301 | First MOTION for Robert J. Olson to appear pro hac vice, Special Admission fee paid, Receipt No. FLMDC-21130715 for $150 by John Crump as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Phillips, James) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/09/2023) |
| 08/09/2023 | 302 | SUPPLEMENT to 296 Motion for Order Prohibiting Dissemination of Presentence Investigation Report by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Exhibits not scanned, filed separately)(MDC) (Entered: 08/09/2023) |
| 08/10/2023 | 303 | **ENDORSED ORDER granting 300 Motion for Special Admission by Stephen D. Stamboulieh, Esq. If Mr. Stamboulieh has not already done so, he shall immediately register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Monte C. Richardson on 8/9/2023. (SHS)** Modified on 8/10/2023 (SHS). (Entered: 08/10/2023) |
| 08/10/2023 | 304 | **ENDORSED ORDER granting 301 Motion for Special Admission by Robert J. Olson, Esq. If Mr. Olson has not already done so, he shall immediately register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Monte C. Richardson on 8/9/2023. (SHS)** (Entered: 08/10/2023) |
| 08/10/2023 | 305 | **ENDORSED ORDER taking under advisement 299 John Crump's Emergency Motion to Intervene. The Court intends to resolve the Motion at the August 11,** |

| | | |
|---|---|---|
| | | **2023 Hearing. Signed by Judge Marcia Morales Howard on 8/10/2023. (MHM)** (Entered: 08/10/2023) |
| 08/10/2023 | 306 | MOTION for Leave to File Amicus Curiae Brief and Brief Amicus Curiae of Eric Blandford, et al. in Support of 299 Emergency Motion by Eric J. Friday as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (BGR) (Entered: 08/11/2023) |
| 08/11/2023 | 307 | **ORDER permitting members of the press to enter the courthouse with laptop computers, tablets, and/or cell phones to attend the hearing set for today, August 11, 2023, at 1:30 p.m. Signed by Judge Marcia Morales Howard on 8/11/2023. (JW)** (Entered: 08/11/2023) |
| 08/11/2023 | 308 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 8/11/2023; denying as moot 299 John Crump's Emergency Motion to Intervene; denying as moot 306 Motion for Leave to File Amicus Curiae Brief; withdrawing, in part, and denying, in part, 296 United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report. Court Reporter: Katharine Healey (JW) (Entered: 08/14/2023) |
| 08/14/2023 | 309 | TRANSCRIPT of Motion as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 08/11/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/5/2023. Redacted Transcript Deadline set for 9/14/2023. Release of Transcript Restriction set for 11/13/2023. (KMH) (Entered: 08/14/2023) |
| 08/23/2023 | 310 | **ORDER denying 273 Ervin's Motion for Judgment of Acquittal; denying 274 Hoover's Motion for Judgment of Acquittal. Signed by Judge Marcia Morales Howard on 8/23/2023. (JCM)** (Entered: 08/23/2023) |
| 08/30/2023 | 311 | RULE 32(g) FINAL PRESENTENCE INVESTIGATION REPORT as to Kristopher Justinboyer Ervin. E-copies made available to selected parties.(MW) (Entered: 08/30/2023) |
| 08/30/2023 | 313 | SENTENCING MEMORANDUM by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 08/30/2023) |
| 08/31/2023 | 316 | **PRELIMINARY ORDER OF FORFEITURE (granting 287 Motion for Forfeiture of Property as to Kristopher Justinboyer Ervin (1)). Signed by Judge Marcia Morales Howard on 8/31/2023. (JW)** (Entered: 08/31/2023) |
| 09/01/2023 | 319 | SENTENCING MEMORANDUM by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Exhibit A, # 2 Exhibit B)(King, Alex) (Entered: 09/01/2023) |

| | | |
|---|---|---|
| 09/02/2023 | 320 | SENTENCING MEMORANDUM by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 09/02/2023) |
| 09/06/2023 | 321 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: SENTENCING held on 9/6/2023. The Court heard argument from counsel regarding the objections to the Presentence Investigation Report, resolved the objections, and announced the guidelines on the record. The parties made their presentations, and the Court heard from Defendants and their mitigation witnesses. The Court will pronounce sentence on September 7, 2023, at 11:30 a.m. Court Reporter: Katharine Healey (JW) (Entered: 09/08/2023) |
| 09/07/2023 | 323 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: SENTENCING held on 9/7/2023 for Kristopher Justinboyer Ervin (1), Counts 1, 15ss-17ss, 16sss-18sss, 1s-7s, 1ss, 1sss, 2ss-7ss, 2sss-8sss, 8s, 8ss-14ss, 9s-14s, 9sss-15sss, Dismissed on Government's Motion; Counts 1ssss, 2ssss-8ssss, 9ssss, 10ssss-12ssss, Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00. Court Reporter: Katharine Healey (JW) (Entered: 09/14/2023) |
| 09/14/2023 | 324 | **JUDGMENT as to Kristopher Justinboyer Ervin (1), Counts 1, 15ss-17ss, 16sss-18sss, 1s-7s, 1ss, 1sss, 2ss-7ss, 2sss-8sss, 8s, 8ss-14ss, 9s-14s, 9sss-15sss, Dismissed on Government's Motion; Counts 1ssss, 2ssss-8ssss, 9ssss, 10ssss-12ssss, Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 Signed by Judge Marcia Morales Howard on 9/14/2023. (JW)** (Entered: 09/14/2023) |
| 09/14/2023 | 325 | STATEMENT OF REASONS as to Kristopher Justinboyer Ervin. E-copies made available to selected parties. (JW) (Entered: 09/14/2023) |
| 09/14/2023 | 329 | TRANSCRIPT of Sentencing (Volume 1 of 2) as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 09/06/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/5/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/13/2023. (KMH) (Entered: 09/14/2023) |
| 09/14/2023 | 330 | TRANSCRIPT of Sentencing (Volume 2 of 2) as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 09/07/2023 before Judge Marcia Morales Howard. |

| | | Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/5/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/13/2023. (KMH) (Entered: 09/14/2023) |
|---|---|---|
| 09/19/2023 | 331 | NOTICE OF APPEAL by Kristopher Justinboyer Ervin re 310 Order on Motion for Judgment of Acquittal, 324 Judgment. Filing fee paid $ 505, receipt number AFLMDC-21268505. (King, Alex) (Entered: 09/19/2023) |
| 09/20/2023 | 332 | TRANSMITTAL of initial appeal package as to Kristopher Justinboyer Ervin to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 331 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (CTR) (Entered: 09/20/2023) |
| 09/21/2023 | | USCA Case Number as to Kristopher Justinboyer Ervin. USCA Number: 23-13062 for 331 Notice of Appeal filed by Kristopher Justinboyer Ervin. (SJW) (Entered: 09/22/2023) |
| 10/02/2023 | 335 | PROOF OF PUBLICATION as to Kristopher Justinboyer Ervin newspaper: Official Government Internet Site (www.forfeiture.gov) dates of publication: 30 consecutive days from September 2, 2023 through October 1, 2023. (Tran, Mai) (Entered: 10/02/2023) |
| 10/20/2023 | 337 | Judgment Returned Executed as to Kristopher Justinboyer Ervin on 9/29/2023. Institution: FCI Jesup. (BD) (Entered: 10/20/2023) |
| 10/25/2023 | 338 | MOTION to Withdraw as Attorney by Alex King., MOTION to Appoint Counsel , MOTION to Extend Time to appeal filings deadline by Kristopher Justinboyer Ervin. (King, Alex) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 10/25/2023) |
| 11/06/2023 | 339 | **ORDER Setting Hearing on Motion to Withdraw as Counsel and denying 338 Motion to Extend Time as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 11/6/2023. (SHS)** (Entered: 11/06/2023) |
| 11/06/2023 | 340 | Writ of Habeas Corpus ad Testificandum Issued for Kristopher Justinboyer Ervin for an in camera ex parte hearing to be held on 11/29/2023 at 11:00 a.m. as to Kristopher Justinboyer Ervin. Signed by Judge Magistrate Judge Monte C. Richardson. (SHS) (Entered: 11/06/2023) |
| 11/16/2023 | 341 | Notice of substitution of AUSA. Jennifer Michele Harrington substituting for Mai Tran. (Harrington, Jennifer) (Entered: 11/16/2023) |
| 11/29/2023 | 342 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. |

| | | |
|---|---|---|
| | | Richardson: granting [338] Motion to Withdraw as Attorney Alex King and Daniel Scott Monroe withdrawn from case. as to Kristopher Justinboyer Ervin (1); EX PARTE Hearing as to Kristopher Justinboyer Ervin held on 11/29/2023 re [338] MOTION to Withdraw as Attorney by Alex King. MOTION to Appoint Counsel MOTION to Extend Time to appeal filings deadline filed by Kristopher Justinboyer Ervin. (Digital) (SHS) (Entered: 11/29/2023) |
| 11/29/2023 | 343 | ***CJA 23 Financial Affidavit (FILED IN OPEN COURT) by Kristopher Justinboyer Ervin. (SHS) (Entered: 11/29/2023) |
| 12/01/2023 | 344 | **ORDER of Appointment of CJA Counsel as to Kristopher Justinboyer Ervin: Appointment of Attorney Valarie Linnen for Kristopher Justinboyer Ervin. Signed by Magistrate Judge Monte C. Richardson on 11/29/2023. (SHS)** (Entered: 12/01/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/05/2023 09:15:40 | | |
| **PACER Login:** | vlinnen0063291 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cr-00022-MMH-MCR |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt CJA |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case number: 3:21-CR-22(S1)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
_____

## MOTION TO DISMISS SUPERSEDING INDICTMENT AND MEMORANDUM OF LAW

The Defendant, **KRISTOPHER JUSTINBOYER ERVIN**, by and through the undersigned attorney, moves to dismiss the Superseding Indictment (Doc 25). Particularly, the Defendant, Mr. Ervin, moves to dismiss Counts 1 through 7 in part, and Counts 8 through 14 in full, for (1) Failure to State an Offense; (2) Unconstitutional Vagueness; (3) First Amendment Violations; and (4) Exceeding Congress's Power under the Tax and Spend Clause.

As relevant to this Motion, the charges in the Superseding Indictment (Doc. 25) all relate (at least in part) to sales of artwork—laser-etched images on small, flat pieces of metal called "autokeycards"—which the government has alleged are machine gun conversion devices.

## I.    Factual Background

The relevant underlying factual allegations are relatively simple, and they can be found in the Complaint (Doc. 1). An ATF agent obtained at least one

1

autokeycard. Evidently something of a machinist, the agent used a dremel to drill the autokeycard metal into multiple pieces of different sizes and shapes, which took about thirty-seven minutes. Doc. 1 at 19. The agent then used some of those pieces to fabricate a "lightning link," which the agent "installed" in a semiautomatic rifle. *Id.* Essentially, the agent treated the autokeycard as a raw material and made it into something different, apparently expecting that, with a little gunsmithing, he could convert his rifle into a machine gun. Predictably, however, mutilating the metal card and sticking the mangled pieces of it inside the rifle simply caused the weapon to malfunction. "Tests" of the Frankensteinian rifle revealed that the agent's crude alterations made the weapon fire erratically, and, at times, fire more than once per single trigger pull.  Doc. 1 at 19.

## II.   Argument

First, 26 U.S.C. § 5845's definitions of firearms and machine guns do not reach laser-etched images or raw materials, so by charging Mr. Ervin for laser-etched images on metal, the government has failed to state an offense under §5861 or §5871. And, because the government alleges that Counts I-7 were committed while violating another United States law, those Counts fail to state an offense in part for the same reason. Second, assuming *arguendo* that § 5845's definitions could include a laser-etched image on a piece of metal, the

statutory scheme (1) violates the First Amendment as applied to Mr. Ervin, and (2) is void for vagueness as applied to Mr. Ervin. Finally, even if the statutory scheme is otherwise constitutional, it exceeds Congress's power under the Tax and Spend Clause of the United States Constitution.

### A. Counts 1-7 should be dismissed in part.

Mr. Ervin moves to dismiss Counts 1-7 in part, for the same reasons addressed below with respect to Counts 8-14, insofar as they allege that he engaged in various transactions "while violating another law of the United States." Doc. 25 at 1, 2. There is no sufficient allegation that Mr. Ervin violated "another law of the United States," as discussed below. To the extent that the laser-etched images at issue here could violate the law, those laws would be unconstitutional as applied for the same reasons discussed below.[1]

### B. Failure to State an Offense

The Superseding Indictment fails to state an offense as to Counts 8-14. This issue is properly resolved on a motion to dismiss, because "the infirmity in the prosecution is essentially one of law." *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974). Where, as here, "the indictment tracks the language of the

---

[1] If, alternatively, the government is alleging violation of an additional law not specified in the Superseding Indictment, the Superseding Indictment does not adequately put Mr. Ervin on notice of the charges against him. If this Court declines to partially dismiss Counts 1-7, Mr. Ervin moves for a bill of particulars.

statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). As an initial matter, the Superseding Indictment fails to do this, and Counts 8-14 should be dismissed for that reason alone. But even considering and taking as true the facts laid out in the Complaint, the Superseding Indictment fails as a matter of law. The object described by the government does not constitute a machine gun conversion device under § 5845.

It is clear from the face of the statute that machine gun conversion devices are not laser-etched images on what amounts to raw materials. And, any "ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity." *Huddleston v. United States*, 415 U.S. 814, 831 (1974). This is because "principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 112 (1979). The statute defines "machinegun" (hereinafter "machine gun") as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use

in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (2019). The Superseding Indictment indicates that Mr. Ervin possessed "machinegun conversion devices," so the only potentially applicable part appears to be "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun."[2] *See* Doc. 25 at 3.

The Complaint alleged that Mr. Ervin's website was selling "auto sears or similar devices that convert weapons into machineguns."[3] Doc. 1 at 4. Initially, the Complaint implied that Mr. Ervin was selling metal cards with some kind of perforated design, such that an "auto sear" could be "punch[ed] out." Doc. 1 at 4. Later, however, it explained that

---

[2] Bizarrely, the Complaint states that, according to the FTCB report, the lightning link is "a 'combination of parts designed and intended, for use in converting a weapon to a machinegun' and is therefore a regulated firearm under the National Firearms Act." Doc. 1 at 18. However, the autokeycards are individual objects, not sets or combinations of objects. *Cf. United States v. Was*, 684 F. Supp. 350, 353 (D. Conn. 1988), *aff'd*, 869 F.2d 34 (2d Cir. 1989) (explaining that a finished auto sear fell within the "combination of parts" language of § 5845(b) because it was "physically made up of more than one part").

[3] Notably, the complaint's definition of "auto sear" is, at best, overly simplistic. It treats the terms "auto sear" and "lightning link" as interchangeable.

"lightning link"[4] machine gun-conversion devices were "laser etched" on a metal card. *Id.* at 17. The ATF agent's use of a dremel for thirty-seven minutes to create something new out of the metal card is not the same as using a "part" to convert a weapon into a machine gun. *See id.* at 19.

To the degree that the agent's kludgy weapon can be called a machine gun, making it required the agent to fabricate a part, using the autokeycard as raw material. The statutory scheme does not restrict raw materials or card-sized sheets of metal.

Previously, ATF had issued guidance stating that a shoestring with two loops tied in it was a "machine gun" under the statute. After the guidance was used to impeach expert witnesses, the ATF reversed its position, but still maintained that a shoestring added to a semiautomatic firearm would be a machine gun. *See* Conversion kits, Firearms Law Deskbook § 6:10 (citing Letter from Richard Vasquez,

---

[4] Allegedly, lightning link devices can "slip over the hook in the top of the disconnector in an AR-15 type receiver and be positioned in the receiver over the top of the selector and under the rear intake pin." Doc. 1 at 17. This can purportedly "replicate[ ] the function of an automatic-sear and convert[ ] a semi-automatic AR-15 type firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* at 17-18.

acting Chief, ATF Firearms Technology Branch, June 25, 2007, to Brian A. Blakely, 903050:JPV, 3311/2007-615).

Although the tied shoestring requires no modification whatsoever before being attached to the semiautomatic firearm, it is not a machine gun. And yet, the government claims that a piece of metal that needs to be drilled for thirty-seven minutes by a skilled firearms agent in order to be added to a gun that might then inconsistently shoot multiple times per trigger-pull is a machine gun. *Cf. Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 454 (5th Cir. 2016) (discussing "an unfinished piece of metal that looks quite a bit like a lower receiver but is not legally considered one and may therefore be bought and sold freely" that "requires additional milling and other work to turn into a functional lower receiver"). An image on a metal card does not fit within the statutory definition of a "machine gun" any more than a shoestring does.

At least one district court has held that flat pieces of metal are not firearms under federal law—even if they have laser perforations:

> However, the court simply does not believe that a flat piece of metal with laser perforations and holes constitutes a "receiver," i.e., a "firearm." Rather, the flat piece of metal is somewhat akin to a piece of paper with lines drawn on it as a guide to make a paper airplane. Although making the paper airplane might be the intended use, it is not an airplane until it is properly folded. Until that time, it is a patterned piece of paper. Simply put, this court

has no evidentiary or legal basis for holding that a flat piece of metal with laser perforations and some holes constitutes, ultimately, a "firearm." It may become part of a firearm at some point, but not until further work has been accomplished to allow it to secure the stock, chamber, barrel and other parts. Until that time, it is not even a true component of a firearm, only a potential component of a firearm.

*United States v. Prince*, No. 09-10008-JTM, 2009 WL 1875709, at *3 (D. Kan. June 26, 2009), *rev'd on other grounds*, 593 F.3d 1178 (10th Cir. 2010). Autokeycards are, unlike the flats in *Prince*, mere images etched into metal. There is no legal basis for holding that they are machine guns.

### C. The statutory scheme is unconstitutionally vague as applied to Mr. Ervin.

To the extent that the statutory definition of machine gun does include Mr. Ervin's laser-etched image, the statute is unconstitutionally vague under the Fifth Amendment as applied to Mr. Ervin.   The void-for-vagueness doctrine requires that a criminal statute define an offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited and so as to avoid arbitrary and discriminatory enforcement. *See, e.g., Skilling v. United States*, 561 U.S. 358, 402-03 (2010).

"The question of fair warning must begin with the language of the statute itself." *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008). The statute's restriction of a part designed solely and exclusively for use

in converting a weapon to a machine gun does not put on ordinary person on fair notice that a laser-etched image on a metal card is a machine gun.

There is nothing in the statutory scheme that appears to criminalize images, and whether or not the image appears on a piece of metal does not change the analysis. Many materials could be drilled into shapes that could cause certain firearms to fire more than once with a single pull of a trigger. That does not bring them all within the statute's reach, regardless of whether they could be manipulated or fabricated into a "conversion device."

Plastic is one such material, as in the recent case, *United States v. Watson*, No. 3:20-cr-00042-GMG-RWT (N.D. W. Va. 2020). In *Watson*, the government alleged that the defendant 3d printed coat hangers that could be used as auto sears; he did not merely draw pictures that looked like them. *See id.* A closer analogy to Mr. Ervin's case would be if that defendant had taken an ultra-fine-point permanent marker and drawn a picture that looked like a lightning link on a solid LEGO piece,[5] or on

---

[5] LEGO bricks and pieces are popular toys for children, and they are made out of ABS plastic. *See* "What are Lego bricks made of, and why is treading on them so painful?" Explorations of Everyday Chemical Compounds (April 9, 2018) *available at* https://www.compoundchem.com/2018/04/09/lego/ (last accessed March 30, 2021). ABS plastic is commonly used for 3D printing. *See* "The Free Beginner's Guide," 3D Printing Industry: The Authority on Additive

a PETG plastic[6] food container. Where, as here, the medium is not itself a firearm, no ordinary person would have fair warning that using a particular medium to draw an image would result in criminal machine gun charges.

### D.  The statutory scheme violates the First Amendment as applied to Mr. Ervin.

#### 1.  The autokeycard is protected expression.

To the extent that the statute does indeed criminalize a laser-etched image, it violates the First Amendment as applied. Ultimately, Mr. Ervin is before this Court because of a drawing of what the government says is a lightning link.  Artistic works, like drawings, are protected expression under the First Amendment.

It is clearly the design of the image, rather than the material itself, that the government is targeting. Similarly-sized pieces of metal are abundant on the consumer market, used as credit cards, pocket survival tools, and more. It cannot be that the law criminalizes any piece of metal that could be drilled into something that could be used to make a machine gun. What the government

---

Manufacturing, *available at* https://3dprintingindustry.com/3d-printing-basics-free-beginners-guide/ (last accessed April 8, 2021).

[6] The coat hangers in *Watson* were printed using PETG plastic. *Watson*, Doc. 1-1 at 15-16.

finds blameworthy here is not the metal. It is the drawing. That is the only thing that separates Mr. Ervin's autokeycard from the popular titanium Apple Card. Notably, Mr. Ervin printed the same autokeycard design on t-shirts and hats, which shows that the design itself was a form of expression.

### 2. The restriction on Mr. Ervin's expression is content-based and cannot survive strict scrutiny.

Because Mr. Ervin has been charged based on what his image depicts, it is a content-based restriction on his expression. Heightened judicial scrutiny is applied to specific, content-based restrictions on protected expression. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000). To survive strict scrutiny, the government must demonstrate that the law is "justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011).

Criminalizing basic drawings of lightning links serves no compelling government interest. The definition at issue is part of the Internal Revenue Code. While increasing revenue through firearm taxes might be a substantial government interest, it is not compelling. *See Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987). There is no option for someone like Mr.

Ervin to pay a tax on the images. If the government is aiming to limit available information on lightning links, the statutory scheme does not accomplish that: blueprints for lightning links are freely available on the internet.[7] Artistic replicas and renderings of both legal and illegal gun parts are common forms of political speech used to show support of Second Amendment rights.[8] Restricting such artwork is not narrowly-tailored to any compelling government interest, and it cannot survive strict scrutiny.

### E. To the extent that the statute reaches Mr. Ervin's conduct, it exceeds Congress's power under the Tax and Spend Clause.

"Congress cannot punish felonies generally." *Cohens v. State of Virginia*, 19 U.S. 264, 428 (1821). Accordingly, every criminal penalty it enacts "must have some relation to the execution of a power of Congress" (*Bond*, 572 U.S. at 854), such as the "power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States," so long as they are "uniform throughout the United States." U.S. Const., Art. I, § 8, cl. 1.

---

[7] *See, e.g.*, Free Lightning Link Template, *available at* https://www.pinterest.com/pin/347973508706397446/ (last accessed March 31, 2021). The autokeycard image does not even rise to the level of a blueprint—it lacks any scale markings.

[8] *See, e.g.*, AR-15 Keychains, *available at* https://www.etsy.com/market/ar_15_keychain?ref=pagination&page=2 (last accessed March 31, 2021).

In *Nat'l Fed'n of Indep. Bus. v. Sebelius*, the Supreme Court upheld the Affordable Care Act's ("ACA") "penalty" as a "tax" properly within the scope of the Tax and Spend Clause. 567 U.S. 519, 561-75 (2012). *Sebelius* held that the ACA was not punitive because "[n]either the Act nor any other law attaches negative legal consequences to not buying health insurance, beyond requiring a payment to the IRS." *Id.* at 567-68. Those factors distinguished the ACA from "a mere penalty with the characteristics of regulation and punishment." *Id.* at 573 (citing *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994); *Drexel Furniture*, 259 U.S. at 38) (internal quotations omitted).

Individuals who produce items like the autokeycard have no option to pay a tax. If they carve the wrong image into the wrong material, they face prosecution, regardless of their willingness to pay. That is not a tax; it is a mere penalty with the characteristics of regulation and punishment. The US Attorney's Manual acknowledges as much: " because it is impossible to comply with the registration and taxation provisions in the NFA, prosecutors should charge the unlawful possession or transfer of a machine gun made after May 19, 1986 under § 922(o)." *United States Justice Manual* 9-63.516, "Charging Machinegun Offenses Under 18 U.S.C. § 922(o), Instead of Under the National Firearms Act," 1999 WL 33219894, at *1. Accordingly, to the extent that the

statutory scheme criminalizes Mr. Ervin's conduct here, it exceeds Congress's power under the Tax and Spend Clause.

### III.    Prayer for Relief

For the foregoing reasons, Mr. Ervin respectfully requests that this Court (1) dismiss Counts 1-7 in part, to the extent they allege a violation of another United States law; (2) dismiss Counts 1-8 in full; or, in the alternative (3) direct the government to file a bill of particulars detailing any other violations of United States law it intends to rely on and describing the particular objects that it believes constitute "machine gun conversion devices."

Dated:    April 12, 2021.

JAMES T. SKUTHAN
ACTING FEDERAL PUBLIC DEFENDER

s/ Lisa Call

_____

Lisa Call
Assistant Federal Defender
Florida Bar No. 0896144
200 West Forsyth Street, Suite 1240
Jacksonville, FL 32202
Telephone: (904) 232-3039
Facsimile: (904) 232-1937
Lisa_Call@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic filing through the United States District Court to Cyrus Beatriz Zomorodian, US Attorney's Office, 300 North Hogan Street, 7th Floor, Jacksonville, FL 32202 on March 19, 2021.

s/ Lisa Call

_____

Lisa Call
Assistant Federal Defender

15

1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO:  3:21-cr-22(S1)-MMH-MCR

UNITED STATES OF AMERICA          Jacksonville, Florida

     -vs-                         Date:  July 8, 2021

KRISTOPHER JUSTINBOYER ERVIN,     Time:  2:03 p.m. - 2:39 p.m.

     Defendant.                   Courtroom:  10B
_____

**MOTION HEARING**
BEFORE THE HONORABLE MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

COUNSEL FOR GOVERNMENT:

**LAURA TAYLOR, ESQ.**
U.S. Attorney's Office - FLM
300 N. Hogan Street, Suite 700
Jacksonville, FL  32202


COUNSEL FOR DEFENDANT:

**ALEX KING, ESQ.**
**FINLEY WILLIAMS, ESQ.**
Monroe & King, P.A.
200 East Forsyth Street
Jacksonville, FL  32202


OFFICIAL COURT REPORTER:

Cindy Packevicz Jarriel, RPR, FCRR
221 N. Hogan Street, #128
Jacksonville, FL  32202
Telephone:  904.301.6843
e-mail:  cindyrprfcrr@gmail.com
     (Proceedings reported by stenography; transcript
produced by computer.)

2

P R O C E E D I N G S

July 8, 2021                                              2:03 p.m.

- - -

COURT SECURITY OFFICER:  All rise.

The United States District Court, in and for the Middle District of Florida, is now in session.  The Honorable Marcia Morales Howard presiding.

Please be seated.

THE COURT:  Give me one moment to get my computer going.

All right.  This is Case No. 3:21-cr-MMH-MCR -- I think it's 3:21-cr-22(S1)-MMH-MCR, United States of America versus Kristopher Justinboyer Ervin.

Ms. Taylor is here on behalf of the United States.

And, Ms. Taylor, if you could introduce the case agent, please.

MS. TAYLOR:  Your Honor, with me is Special Agent Jesse Hooker of the Bureau of Alcohol, Tobacco, Firearms & Explosives.

THE COURT:  Excuse me one second.

And Mr. King is here on behalf of Mr. Ervin.

Mr. Ervin is in the courtroom.

And who else do we have?

MR. KING:  Your Honor, this is Mr. Williams.  He's an attorney with my firm.

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 3 of 22 PageID 137
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 54 of 234

3

THE COURT:  All right.  So we're set for a hearing on the motion that was filed by Mr. Ervin's previous counsel. It's Document No. 30.  And Mr. Ervin's current counsel has adopted the motion.

Ms. Taylor, I was a little confused.  You had indicated previously your belief that we needed a hearing and that you would be calling Agent Hooker to testify.

Can you help me understand what I need evidence for to resolve this motion?

MS. TAYLOR:  Your Honor, I think actually what I stated at the status was that I did not expect to present any witnesses and believed that this was a legal motion where we would not be presenting evidence beyond what was in my written response.

THE COURT:  Okay.  That -- that makes a little bit more sense to me.

All right.  So, Madam Deputy, may I see you one moment.

(Pause in proceedings.)

THE COURT:  All right.  So, Mr. King, you opted to adopt the motion.

I guess my question to you is, why isn't -- I mean, Mr. Ervin's argument appears to me to be a challenge to the sufficiency of the evidence.  And if it's a challenge to the sufficiency of the evidence, isn't it foreclosed by

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 4 of 22 PageID 138
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 55 of 234

4

Eleventh Circuit precedent?

MR. KING:  Your Honor, I think because the essential factual issue is not in dispute, it's -- in terms of what was actually the part.  Because of that, it does bring a First Amendment issue in terms of, you know, whether or not this can be resolved by the Court.

And essentially the reason -- for reasons of judicial economy as well, you know, considering that there really is no factual dispute, you know, we believe a motion to dismiss would be appropriate, understanding that there -- you know, if there were factual disputes in terms of the actual item, then this Court would be foreclosed and that would be for a motion for judgment of acquittal at the time of the trial.  But because there really is no factual dispute, I think it would be appropriate for the Court to review the underlying statute, and, you know, how it applies to Mr. Ervin and the First Amendment issue to make a resolution, you know, short of testimony.

THE COURT:  To the extent it does raise a First Amendment issue, isn't there, in fact, a factual dispute, in that wouldn't a jury have to determine whether this is art or whether this is an actual item of utility?

MR. KING:  I would think that because of the nature of what's on there -- and I think it could be a legal issue, because it's -- the information is placed on a piece of metal.

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 5 of 22 PageID 139
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 56 of 234

5

It's not -- in terms of whether or not it would be a factual issue -- whether or not something is protected speech is a legal determination for a court to make, not for a jury.

THE COURT:  Can you point me to any authority that suggests that I can do that on a motion to dismiss in a criminal case?

MR. KING:  I have not been able to find any, no.  I have looked quite extensively.

THE COURT:  I'm confident of that, because I can't.

So I guess -- so Mr. Ervin is charged in Counts One through Seven with unlawful structuring of monetary transactions to avoid reporting requirements while committing another violation of law.

And so in the motion to dismiss, Mr. Ervin argues that Counts Eight through Fourteen should be dismissed because the item that he manufactured, possessed, and arguably transported is not a machine gun under the law.

It's not a firearm because it doesn't fall within the definition of machine gun in 26 U.S.C. 5845; right?

That's his argument, Mr. King?

MR. KING:  Yes, Your Honor.

THE COURT:  And Mr. Ervin argues that the superseding indictment doesn't include a sufficient statement of facts and circumstances to inform Mr. Ervin of the offense that's charged.

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 6 of 22 PageID 140
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 57 of 234

6

And I think the truth of the matter is, looking at the indictment, nothing could be further from accurate.

The indictment in this case gives far more detail than is often given.  And to the extent -- well, I guess, let's address two different things.  I think I'll start first with whether it gives him enough information.

Rule 7(c)(1) of *The Federal Rules of Criminal Procedure* requires that an indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged.

And the Eleventh Circuit Court of Appeals has given us a three-part test to determine the sufficiency of an indictment.

It's sufficient if it presents the essential elements of the charged offense; if it notifies the accused of the charges to be defended against; and if it enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution.

The Eleventh Circuit and the Supreme Court have instructed fairly unequivocally that:  An indictment is sufficient if it sets forth the offense in the words of the statute -- which with regard to all 14 of the counts, this indictment does -- as long as those words address all of the elements of the offense.

And so what the Eleventh Circuit says is:  If it

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 7 of 22 PageID 141
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 58 of 234

7

tracks the language of the statute, it's sufficient as long as the language sets forth the essential elements of the crime.

And so looking at the indictment with regard to -- well, it's true, all three sets of charges -- I'm not going to go through them individually, but with regard to each of the charges, the indictment charges the offense in the language of the statute.  And then with -- and addresses each of the elements of the charges.

And in addition to that, the indictment alleges the factual underpinning of the charges.

So if we look at Counts One through Seven, the indictment charges that Mr. Ervin, knowingly and for the purpose of evading the reporting requirements of federal law, 31 U.S.C. § 5313, structured money transactions while he was violating another law of the United States; and Counts Eight through Fourteen charge the underlying other law violation.

Right, Ms. Taylor?

MS. TAYLOR:  That's correct, Your Honor.

THE COURT:  The indictment goes on to identify the specific date of the transaction, the amount of each transaction, and the financial institution at which the transaction was made.

If there were anything lacking from Count One, it would only be the identification of what other law of the United States was being violated, but I think that's addressed

8

in Counts Eight through Fourteen, and also addressed by Ms. Taylor here today.

As to Count Eight, the indictment alleges a violation of 26 U.S.C. 5861(j).  And it alleges the offense in the language of the statute, but it doesn't just refer to delivering a firearm, it specifies what portion of the firearm definition is implicated, that is, the machine gun conversion device, constituting a machine gun.

So it not only alleges that it's a firearm, it alleges how it is a firearm.  And it alleges how what -- alleges the interstate commerce nexus by alleging that the offense -- that the materials were sent throughout the U.S. mail, and that they were not registered in the National Firearms Registration and Transfer Record as required, and it cites the statute there.

It goes on, having alleged the elements of the offense, to explain or to allege with specificity the date on which the knowing transportation or delivery of firearms is alleged to have occurred, and the number of mailings on each date.  And that goes over the course of three pages.

And then lastly, in Counts Nine through Fourteen, Mr. Ervin is charged with possession of a firearm, specifically a machine-gun conversion device, constituting a machine gun, as that object is defined under 26 U.S.C. § 5845(a) and 5845(b), alleges that it was not then registered in the National

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 9 of 22 PageID 143
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 60 of 234

9

Firearms Registration and Transfer Record as required.

So the -- there's no question that the indictment is sufficient in terms of satisfying the requirements that the Eleventh Circuit articulated, and that is it presents -- as to each of the charges, it presents the essential elements of the charged offense; it notifies Mr. Ervin of the charges to be defended against; and particularly in light of the specificity in this indictment, there's no question that it would enable him to rely upon a judgment under the indictment as a bar against double jeopardy.

So Mr. Ervin's argument seems to be that the Court should rule, as a matter of law, that the item isn't a firearm. And my -- I guess what I would say to you, Mr. King, is why isn't that a sufficiency of the evidence argument that is foreclosed by Eleventh Circuit precedent?

MR. KING:  May I just have a moment, Your Honor?

THE COURT:  Sure.

MR. KING:  And, Your Honor, I understand the question you previously asked me about the case law that I have to support the position, and I don't have a dearth of information as it goes there.

The argument is essentially that, as a matter of law, because this is essentially not a factual issue; we're not asking the Court to resolve a factual issue.  We're asking the Court to resolve a legal issue, which is, as a matter of law,

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 10 of 22 PageID 144
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 61 of 234

10

is this a firearm or not.  Essentially, that was what we would be asking the Court to do, understanding that the Court may view that as a factual issue rather than a legal issue, and would then be precluded from making that determination until judgment -- motion for judgment of acquittal.

THE COURT:  All right.  Ms. Taylor, you want to respond?

MS. TAYLOR:  Your Honor, it's, of course, a mixed question of fact and law, and the facts simply aren't before this Court, and this is not the way in which things are intended to be decided.

The United States has to be allowed the opportunity to present all of its evidence.

I would anticipate this being a trial that would take several days for us to present all of the evidence that we would have, including from an expert witness about what his experience was with using the item as a machine gun, testimony from -- from witnesses about Mr. Ervin's intentions, the presentation of documentary evidence about what his intentions were for the use of the item, and then, at the end of that, to allow a jury to decide this issue, which is the appropriate procedure.

And it would not be appropriate for this Court to make a ruling, not having the facts in front of it, about whether factually an item meets the definition of a machine gun

11

before the United States has had an opportunity to present its evidence in this case.

THE COURT:  So I want to make sure I address all the different arguments that Mr. Ervin has raised.

Mr. Ervin has argued that the item that he produced is essentially a raw material, and that the agent had to make significant efforts in order to convert it into a device that would render a rifle into an either machine gun or an automatic weapon.

And Mr. Ervin's argument -- and I'm going to quote for it.  Mr. Ervin argues the agent essentially -- the agent treated the autokeycard as a raw material and made it into something different, apparently expecting that with a little gunsmithing, he could convert his rifle into a machine gun. Predictably, however, mutilating the metal card and sticking the mangled pieces of it inside the rifle simply caused the weapon to malfunction.

Tests of the Frankensteinian rifle revealed that the agent's crude alterations made the weapon fire erratically and at times fire more than once per single trigger.

And relying on -- on those arguments, Mr. Ervin asks the Court to determine that as a matter of law the object that he was transmitting through the mail and that he possessed doesn't fall within the definition of a firearm.

26 U.S. Code § 5845 defines a firearm and it also

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 12 of 22 PageID 146
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 63 of 234

12

defines a machine gun.  And the definition of a machine gun includes the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machine gun.

And so, in my view, the question of whether this keycard is a part that was designed and intended, whether exclusively or combined with other parts, to convert a weapon into a machine gun is a question that only the jury can decide. It is not a question that the Court can decide.

And there are a couple of problems with Mr. Ervin's argument to the contrary.

The first problem is that even if the facts were undisputed, The *Federal Rules of Criminal Procedure* do not provide any sort of summary-judgment type of remedy.

Unlike civil cases where you can say:  Judge, the facts are undisputed; who wins, who loses?

The Eleventh Circuit has firmly said there is no summary judgment procedure in criminal cases, nor do the rules provide for a pretrial determination of the sufficiency of the evidence.

And the Eleventh Circuit has said that in the *United States versus Salman*, S-a-l-m-a-n, 378 F.3d 1266 at 1268, and also in *United States versus Critzer*, C-r-i-t-z-e-r, 951 F.2d 306 at 307.

13

And the -- what Mr. Ervin is asking the Court to do is -- is to look at the keycard and decide that as a matter of law that that cannot constitute a firearm.

In doing that, Mr. Ervin is asking the Court to do something the Court is prohibited from doing, and making the same mistake that was made in the *Salman* case where the -- on a motion to dismiss the indictment, the judge determined, as a matter of law, that the individual was not unlawfully in the United States and dismissed the indictment.  And it went to the Eleventh Circuit; the Eleventh Circuit reversed.

And the Eleventh Circuit said:  By looking beyond the face of the indictment and ruling on the merits of the charges against the defendant, the district court, in effect, granted summary judgment in favor of the defendant.  In doing so, the court overlooked binding Eleventh Circuit precedent citing to *Critzer*.

And the Eleventh Circuit said what Ms. Taylor just argued, and that is that the Government is entitled to present its evidence at trial and have its sufficiency tested by a motion for judgment of acquittal.

So that -- so in my view, there are two problems with the argument.  One is there is no summary judgment procedure at all, so the Court can't view the -- judge the sufficiency of the evidence.  But the other problem is that even if the Court were to evaluate the evidence, Mr. Ervin is asking the Court to

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 14 of 22 PageID 148
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 65 of 234

14

evaluate the evidence based on his version of the evidence. And when rule -- looking at the sufficiency of the indictment, the Court is limited to the face of the indictment, limited to the charges brought by the Government, and can't consider the information that I read earlier about Mr. Ervin's version of whether the keycard was intended to be used in the fashion that the agent used it.

And so for all of those reasons, the indictment is sufficient and Mr. Ervin's challenge to Counts Eight through Fourteen are simply unavailing.

I'll say -- we didn't discuss it here today, but in the pleading that was authored -- I know not by current counsel but by the previous counsel, there was an argument that one case has previously made a similar determination. I'll just note that reliance on that, the *Prince* case, which is at WL 1875709, is really not persuasive for a myriad of reasons.

One, it does require the Court to conduct that pretrial sufficiency of the evidence review, which the Eleventh Circuit does not permit. It's for a jury to decide whether the item constitutes a machine gun as that term is defined under the statute. But -- but also fails to recognize that the Court in the *Prince* case was reviewing a statute with a different definition, and so that's unavailing.

Mr. Ervin argued that the statute -- oh, I'm sorry, I need to back up. Because Mr. Ervin's challenge to Counts Eight

Case 3:21-cr-00022-MMH-MCR   Document 48   Filed 08/12/21   Page 15 of 22 PageID 149
USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 66 of 234

15

through Fourteen is due to be denied, his motion to dismiss Counts One through Seven is also due to be denied, because it depended entirely upon a finding that there was no violation of another law of the United States.

Mr. Ervin also argues with regard to Counts Eight through Fourteen that the statute is unconstitutionally vague under the Fifth Amendment.  But the Fifth Circuit has rejected that challenge in pre-1981 case law.

So in the *United States versus Campbell*, 427 F.2d 892, the defendant argued that the portion of the statute that referred to any combination of parts designed and intended for use in converting a weapon into a machine gun was unconstitutionally vague, and the Fifth Circuit rejected that decision.

So it's simply not a -- not a meritorious argument.

Mr. Ervin also argues that the statute violates his First Amendment rights because it targets his artistic work, and that it's a content-based restriction on his expression.

The first problem with that argument is, again, it asks the Court to rule on facts that aren't in the indictment.

If Mr. Ervin wishes to defend against these charges by presenting evidence that it's an artistic work, then a jury may well find that it is not a part designed and intended solely and exclusively for use in converting a weapon into a machine gun, but that's a decision that the jury has to make.

16

It's not a decision that the Court can make pretrial.

So Mr. Ervin's argument in that regard is unavailing.

Mr. Ervin also argues that the statute exceeds Congress' taxing power.  But that argument, too, appears to be foreclosed by Eleventh Circuit precedent.

The Eleventh Circuit has rejected that argument in -- well, most recently in *United States versus Bolatete*, B-o-l-a-t-e-t-e, 977 F.3d 1022 at 1032.

And also previously in *United States versus Ross*, and *United States versus Spoerke*, S-p-o-e-r-k-e.  And the *Ross* and *Bolatete* dealt with firearms -- dealt with the individuals who received the firearm, but the *Spoerke* case is more similar to Mr. Ervin's in that the individual there was the individual who had created the item.  I think there was a pipe bomb, if I'm not mistaken.  But in either event, the Eleventh Circuit has rejected the challenge based on the statute exceeding Congress' taxing power.

So for all those reasons, it seems to me that the motion is due to be denied.

Mr. King, did I fail to address any argument that Mr. Ervin's prior counsel had raised?

MR. KING:  No, Your Honor, I don't believe so.

The only -- the only issue is, you know, as the Court said, for the Counts One through, I believe, Seven, dealing with the structuring, you know, the request for a bill of

17

particulars, and even if it's, you know, if the Government made an oral assurance that that's based on the other counts, I think that would be sufficient.

THE COURT: Yeah.

Ms. Taylor, is there any reason why just -- since there was -- that's probably the only ambiguity. Any reason that I shouldn't direct the Government to file a bill of particulars identifying the other law of the United States that is implicated in Counts One through Seven?

MS. TAYLOR: I can do that, Your Honor.

THE COURT: I think that would clear up any ambiguity in the record.

So then Mr. -- yes, Mr. King?

MR. KING: I was going to say, I'm sorry, that was it. Otherwise I think the Court's addressed everything. I wasn't sure if I'd said that.

THE COURT: All right. So then I think that -- so that there's no further delay, and I -- and, Ms. Taylor, maybe I misunderstood, because I probably could have ruled on this in the papers, but it -- for some reason, I -- Madam Deputy and I both understood that you had intended for Agent Hooker to testify to something, and that's -- so there was probably some miscommunication there.

MS. TAYLOR: I apologize if that was on my part, Your Honor. But, of course, my position is that this is not -- not

18

something that would be appropriate for the Court to receive evidence on, so I did not intend to present a witness.

THE COURT:  Yeah.  No, I agree with you.

I don't think I need to enter a written order.  I think I've made -- made my findings here on the record.

I think that the bottom line is that the *United States versus Salman* case, in which the Eleventh Circuit reversed a district court for doing exactly what Mr. Ervin is asking me to do now, and that is, make a pretrial determination of the sufficiency of the evidence, simply -- simply forecloses any relief.  And further, because all of his arguments would also require the Court to consider evidence other than the face of the indictment, for that reason, it would also be due to be denied.

So the motion, which is Document No. 30, is denied.

Mr. -- I don't -- what trial term is Mr. Ervin currently on, Mr. King, do you know?

MS. TAYLOR:  The August trial term, Your Honor.

THE COURT:  Okay.  And, Mr. King, were you -- do you-all anticipate being ready for trial at that time?

MR. KING:  Your Honor, I don't anticipate being ready for trial.

I spoke with Ms. Taylor earlier in the week.  I have not had an opportunity to speak with Mr. Ervin about how much time we would need, and potentially an expert witness for him,

19

and the amount of time that's going to take to prepare.

I spoke with -- I haven't shared this with Mr. Ervin yet because we have not had an opportunity to speak, but I would anticipate us filing a motion to continue probably at least 60 days as we try to get an expert to respond to some of the more technical aspects of this.

THE COURT:  Okay.  Well, to save you-all some time, do you want to talk to Mr. Ervin now so that you don't have to file a written motion?

MR. KING:  That would be --

THE COURT:  Sure.

MR. KING:  Thank you, Your Honor.

THE COURT:  Certainly.

(Pause in proceedings.)

MR. KING:  I have spoken with Mr. Ervin.  He has authorized me to make an *ore tenus* motion to continue the trial term for an additional 60 days.  I think that would take us to the October trial term.

THE COURT:  Ms. Taylor, any objection?

MS. TAYLOR:  No, Your Honor.

THE COURT:  And, Mr. King, just so that I can make an ends-of-justice finding, my understanding is that now that the Court has ruled -- has denied the motion to dismiss, that you need additional time in order to prepare for trial and specifically to investigate whether you need an expert and to

20

allow that expert sufficient time to consult with you and provide his or her assistance; is that correct?

MR. KING:  That's correct, Your Honor.

THE COURT:  All right.  Then the Court, without objection by the United States, will grant the motion, and for the reasons I've just stated will find that the ends of justice served by granting the motion outweigh the best interests of the public and the defendant in a speedy trial.

We'll move the case 60 days to the October trial term.

Madam Deputy, can you give me the information about the October trial term, please.

COURTROOM DEPUTY:  October 4.  And the status -- do you want to set a special status conference, Your Honor?

THE COURT:  Yeah, we should.

So since we'll be getting ready for trial likely then, we'll set it for a special status.

That doesn't mean that if circumstances warranted that you can't ask for another continuance, Mr. King.  As long as you can show good cause, of course.

9:30, Monday, September 20th.

And the plea deadline for that trial term, Madam Deputy?

COURTROOM DEPUTY:  September 27th.

THE COURT:  All right.  So it's on the October 4

21

trial term.  We'll have a status at 9:30 on September 20th, and the plea deadline is September 27th.

          Oh, Ms. Taylor, can you file -- today is July 8th.  Can you file your bill of particulars by July 16th?

          MS. TAYLOR:  Yes, Your Honor.

          THE COURT:  All right.  So the Government is directed to file a bill of particulars with regard to the other law of the United States as charged in Counts One through Seven no later than July 16th.

          All right.  So, Mr. Ervin, your attorney filed a motion to dismiss the charges.  I've now denied that motion.

          Do you understand what happened here today?

          THE DEFENDANT:  Yes, ma'am, I understand.

          THE COURT:  Okay.  Anything further, Mr. King?

          MR. KING:  No, Your Honor.  It's good seeing you.

          THE COURT:  Good to see you, too.

          Ms. Taylor, anything else?

          MS. TAYLOR:  No, Your Honor.

          THE COURT:  All right.  We're in recess.

          COURT SECURITY OFFICER:  All rise.

     (Proceedings concluded at 2:39 p.m.)

                         -  -  -

22

C E R T I F I C A T E

UNITED STATES DISTRICT COURT)

MIDDLE DISTRICT OF FLORIDA  )

    I hereby certify that the foregoing transcript is a true and correct computer-aided transcription of my stenotype notes taken at the time and place indicated herein.

        Dated this 11th day of August 2021.

                /s/Cindy Packevicz Jarriel
                Cindy Packevicz Jarriel, RPR, FCRR

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2023 MAR -6  AM 10: 30

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

UNITED STATES OF AMERICA

v.

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

CASE NO.  3:21-cr-22(S4)-MMH-MCR
18 U.S.C. § 371
26 U.S.C. § 5861(e)
31 U.S.C. § 5324(a)(1)
31 U.S.C. § 5324(a)(3)
26 U.S.C. § 5861(d)

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
(Conspiracy)

A.  Introduction

At all times material to this Indictment:

1.     KRISTOPHER JUSTINBOYER ERVIN was a resident of Clay County, Florida, within the Middle District of Florida.  Free Speech Industries LLC was a Florida Limited Liability Company incorporated by ERVIN on or about January 26, 2021.  ERVIN operated the web domains www.autokeycard.com and www.autokeycards.com on which he advertised for sale products that he referred to as Auto Key Cards.

2.     MATTHEW RAYMOND HOOVER was a resident of Coloma, Wisconsin, and operated a retail store in Coloma called Coloma Resale.  Coloma Resale was a federally licensed firearms dealer and held a special occupation tax

license.  HOOVER also operated a content channel on YouTube called CRS Firearms.

3.    Auto sears were a category of machinegun conversion devices that may be installed into an otherwise semi-automatic AR-15 type rifle and function to convert the AR-15 type rifle to fire more than one shot by a single function of the trigger.  A lightning link was a particular design of auto sear.

4.    The Auto Key Cards designed and sold by ERVIN consisted of cards machined from stainless steel, into which were etched the design for machinegun conversion devices known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b) in that they are a combination of parts designed and intended for use in converting a weapon into a machinegun.

## B.  The Conspiracy

5.    Beginning in or about October 2020, and continuing through at least July 2021, in the Middle District of Florida, and elsewhere, the defendants,

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly and willfully combine, conspire, confederate, and agree with each other and others, both known and unknown to the grand jury, to commit offenses against the United States, specifically, to transfer firearms, that is, machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), which firearms were not then registered

2

in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841, in violation of 26 U.S.C. §§ 5861(e) & 5871.

### C.  Manner and Means

6.      The manner and means by which the conspirators carried out the conspiracy included, among other things:

a.      It was part of the conspiracy that ERVIN would and did operate the websites www.autokeycard.com and www.autokeycards.com, which were e-commerce portals on which ERVIN advertised Auto Key Cards for sale.

b.      It was further part of the conspiracy that ERVIN, and others assisting him with his Auto Key Cards business, would and did receive orders for Auto Key Cards directly from the websites www.autokeycard.com and www.autokeycards.com as well as through a mail-in order form that was available on those websites.

c.      It was further part of the conspiracy that ERVIN, and others assisting him with his Auto Key Cards business, would and did fulfill orders for Auto Key Cards by shipping those items via the U.S. Mail from the Middle District of Florida, resulting in the transfer of Auto Key Cards to ERVIN's customers.

d.      It was further part of the conspiracy that HOOVER would and did create videos posted to the CRS Firearms YouTube channel in which HOOVER promoted the sale of Auto Key Cards.

e.      It was further part of the conspiracy that sales of ERVIN's Auto Key Cards would and did increase substantially as a result of HOOVER's promotion of the sale of Auto Key Cards.

f.      It was further part of the conspiracy that ERVIN would and did compensate HOOVER for his promotion and sponsorship of Auto Key Cards on HOOVER's CRS Firearms YouTube channel by shipping U.S. currency and other items of value to HOOVER and HOOVER's designees.

g.      It was further part of the conspiracy that the conspirators would and did engage in acts and make statements to promote and achieve the objects of the conspiracy and to hide and conceal the purposes of the conspiracy and the acts committed in furtherance thereof.

### D.  Overt Acts

7.      In furtherance of the conspiracy and to effect the objects thereof, the defendants and other conspirators committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

a.      Beginning in or about October 2020, ERVIN retained a machine shop in Orange Park, Florida, to manufacture approximately 300 prototype Auto Key Cards.

b.      On or about November 4, 2020, a video created by HOOVER was posted to the YouTube channel CRS Firearms.  In the video, titled "Is this An ATF Trap And How Does It Work," HOOVER described how to order an Auto Key Card and further described

4

how to cut the lightning link from the Auto Key Card and install it into an AR-15 style rifle, thus converting the AR-15 style rifle into a machinegun.

c.  On or about November 11, 2020, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "The Parts The ATF Wishes Never Existed," HOOVER discussed various methods for manufacturing a machinegun or silencer, including the Auto Key Card, which HOOVER described as the sponsor of his video.

d.  On or about November 30, 2020, ERVIN would and did conduct a withdrawal in the amount of $5000 in U.S. currency, consisting of proceeds of sales of Auto Key Cards, at Community First Credit Union in Orange Park, Florida, within the Middle District of Florida.

e.  On or about November 30, 2020, ERVIN ordered approximately 1400 Auto Key Cards from the Orange Park machine shop, for which he paid approximately $3230 using U.S. currency.

f.  On or about November 30, 2020, ERVIN purchased a Louis Vuitton brand handbag and keychain using approximately $1958 in U.S. currency, which he provided to HOOVER and HOOVER's designee as compensation for HOOVER's

5

promotion of Auto Key Cards on the CRS Firearms YouTube channel.

g.   On or about December 4, 2020, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "How to Make Body Armor Fail," HOOVER described autokeycards.com as the sponsor of his video and promoted sales of Auto Key Cards.

h.   On or about December 9, 2020, ERVIN purchased approximately $841 of video production equipment, which ERVIN had shipped to the residence of HOOVER and E.I. as compensation for HOOVER's promotion of Auto Key Cards on the CRS Firearms YouTube channel.

i.   On or about December 15, 2020, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "How To Buy A Truly Untraceable Firearm," HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

j.   On or about December 28, 2020, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "This Is A Strange Turn Of Events," HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

6

k.    On or about December 30, 2020, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "The Real Difference Between The Two Platforms," HOOVER described autokeycards.com as the sponsor of his video and promoted sales of Auto Key Cards.

l.    On or about January 8, 2021, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "This Makes an illegal Machine gun," HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

m.    On or about January 12, 2021, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "The Great Purge," HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

n.    On or about January 15, 2021, ERVIN ordered approximately 1200 Auto Key Cards from the Orange Park machine shop, for which he paid approximately $3600.

o.    In or about a date in February 2021, ERVIN ordered approximately 2400 Auto Key Cards from the Orange Park machine shop, for which he made a down payment of approximately $5000.

7

p.    On or about February 6, 2021, ERVIN withdrew $5000, representing sales proceeds from Auto Key Cards, at Community First Credit Union in Orange Park, Florida, within the Middle District of Florida.

q.    On or about February 7, 2021, ERVIN shipped a package via UPS Next Day Air to the residence of HOOVER, which package contained U.S. currency and other items of value to compensate HOOVER for his promotion of Auto Key Cards on the CRS Firearms YouTube channel.

r.    On or about February 16, 2021, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "Important Development," HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

s.    On or about February 17, 2021, ERVIN shipped a package via FedEx Priority Overnight to the residence of HOOVER, which package contained U.S. currency and other items of value to compensate HOOVER for his promotion of Auto Key Cards on the CRS Firearms YouTube channel.

t.    On or about February 18, 2021, a video created by HOOVER was posted to the YouTube channel CRS Firearms. In the video, titled "Leveling The Scope To The Rifle Is A Waste Of Time,"

8

HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

u.  On or about February 23, 2021, a video created by HOOVER was posted to the YouTube channel CRS Firearms.  In the video, titled "Unexpected Ammunition Problems," HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

v.  On or about February 25, 2021, a video created by HOOVER was posted to the YouTube channel CRS Firearms.  In the video, titled "ATF Reclassification On H&K Clones," HOOVER described autokeycard.com as the sponsor of his video and promoted sales of Auto Key Cards.

w.  On or about the dates specified in the chart below, each of which constitutes a separate overt act, ERVIN, and others assisting him with his Auto Key Cards business, fulfilled orders for Auto Key Cards by shipping and transferring Auto Key Cards from the Middle District of Florida to purchasers via the U.S. Mail:

| OVERT ACT | DATE | INITIALS OF PURCHASER |
|---|---|---|
| w1 | November 14, 2020 | D.S. |
| w2 | November 30, 2020 | J.M. |
| w3 | December 12, 2020 | R.D. |
| w4 | December 16, 2020 | S.D. |
| w5 | December 23, 2020 | J.A. |
| w6 | January 17, 2021 | R.W. |

9

| OVERT ACT | DATE | INITIALS OF PURCHASER |
|---|---|---|
| w7 | February 1, 2021 | A.O. |

x.    On or about March 30, 2021, ERVIN, HOOVER, and E.I. participated in a phone call in which they discussed plans to continue selling Auto Key Cards and create additional videos promoting ERVIN and his Auto Key Cards business.

y.    Beginning in late March 2021, and continuing through at least July 2021, HOOVER and E.I. operated a GoFundMe fundraiser to benefit ERVIN with the intention that funds raised would be used, in part, to obtain the release of ERVIN so that ERVIN and HOOVER could continue to pursue their conspiratorial goals.

All in violation of 18 U.S.C. § 371.

## COUNT TWO

On or about November 14, 2020, in the Middle District of Florida, and elsewhere, the defendants,

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly transfer firearms, and aid and abet the transfer of firearms, that is, one or more machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), via the U.S. Mail to a person with the initials D.S., which firearms were not then registered in the

10

National Firearms Registration and Transfer Record as required by 26 U.S.C.

§ 5841.

In violation of 26 U.S.C. §§ 5861(e) & 5871 and 18 U.S.C. § 2.

## COUNT THREE

On or about November 30, 2020, in the Middle District of Florida, and

elsewhere, the defendants,

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly transfer firearms, and aid and abet the transfer of firearms, that is, one

or more machinegun conversion devices each consisting of a combination of parts

designed and intended for use in converting a weapon into a machinegun,

constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), via the U.S.

Mail to a person with the initials J.M., which firearms were not then registered in the

National Firearms Registration and Transfer Record as required by 26 U.S.C.

§ 5841.

In violation of 26 U.S.C. §§ 5861(e) & 5871 and 18 U.S.C. § 2.

## COUNT FOUR

On or about December 12, 2020, in the Middle District of Florida, and

elsewhere, the defendants,

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly transfer firearms, and aid and abet the transfer of firearms, that is, one

or more machinegun conversion devices each consisting of a combination of parts

11

designed and intended for use in converting a weapon into a machinegun,

constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), via the U.S.

Mail to a person with the initials R.D., which firearms were not then registered in the

National Firearms Registration and Transfer Record as required by 26 U.S.C.

§ 5841.

In violation of 26 U.S.C. §§ 5861(e) & 5871 and 18 U.S.C. § 2.

## COUNT FIVE

On or about December 16, 2020, in the Middle District of Florida, and

elsewhere, the defendants,

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly transfer firearms, and aid and abet the transfer of firearms, that is, one

or more machinegun conversion devices each consisting of a combination of parts

designed and intended for use in converting a weapon into a machinegun,

constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), via the U.S.

Mail to a person with the initials S.D., which firearms were not then registered in the

National Firearms Registration and Transfer Record as required by 26 U.S.C.

§ 5841.

In violation of 26 U.S.C. §§ 5861(e) & 5871 and 18 U.S.C. § 2.

## COUNT SIX

On or about December 23, 2020, in the Middle District of Florida, and

elsewhere, the defendants,

12

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly transfer firearms, and aid and abet the transfer of firearms, that is, one or more machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), via the U.S. Mail to a person with the initials J.A., which firearms were not then registered in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841.

In violation of 26 U.S.C. §§ 5861(e) & 5871 and 18 U.S.C. § 2.

## COUNT SEVEN

On or about January 17, 2021, in the Middle District of Florida, and elsewhere, the defendants,

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly transfer firearms, and aid and abet the transfer of firearms, that is, one or more machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), via the U.S. Mail to a person with the initials R.W., which firearms were not then registered in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841.

In violation of 26 U.S.C. §§ 5861(e) & 5871 and 18 U.S.C. § 2.

13

## COUNT EIGHT

On or about February 1, 2021, in the Middle District of Florida, and elsewhere, the defendants,

KRISTOPHER JUSTINBOYER ERVIN and
MATTHEW RAYMOND HOOVER,

did knowingly transfer firearms, and aid and abet the transfer of firearms, that is, one or more machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), via the U.S. Mail to a person with the initials A.O., which firearms were not then registered in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841.

In violation of 26 U.S.C. §§ 5861(e) & 5871 and 18 U.S.C. § 2.

## COUNT NINE

On the dates listed below, in the Middle District of Florida, the defendant,

KRISTOPHER JUSTINBOYER ERVIN,

knowingly and for the purpose of evading the reporting requirements of 31 U.S.C. § 5313, and the regulations promulgated pursuant thereunder with respect to currency transactions in excess of $10,000, structured, and attempted to structure, the following transactions, each being a cash withdrawal at a federally-insured financial institution:

| DATE | AMOUNT | CREDIT UNION |
|---|---|---|
| December 28, 2020 | $9000 | Community First (Orange Park) |
| December 28, 2020 | $5000 | Community First (Fleming Island) |
| December 29, 2020 | $9000 | Community First (Orange Park) |
| December 30, 2020 | $9000 | Community First (Orange Park) |
| December 31, 2020 | $9000 | Community First (Orange Park) |
| January 2, 2021 | $9000 | Community First (Orange Park) |
| January 5, 2021 | $9000 | Community First (Orange Park) |
| January 6, 2021 | $9000 | Community First (Orange Park) |

In violation of 31 U.S.C. § 5324(a)(3) and (d)(1).

## COUNT TEN

On or about February 22, 2021, in the Middle District of Florida, the defendant,

KRISTOPHER JUSTINBOYER ERVIN,

did knowingly possess firearms, that is, machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), which were not then registered to the defendant in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841.

In violation of 26 U.S.C. §§ 5861(d) & 5871.

## COUNT ELEVEN

On or about February 24, 2021, in the Middle District of Florida, the defendant,

KRISTOPHER JUSTINBOYER ERVIN,

15

did knowingly possess firearms, that is, machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), which were not then registered to the defendant in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841.

In violation of 26 U.S.C. §§ 5861(d) & 5871.

## COUNT TWELVE

On or about March 2, 2021, in the Middle District of Florida, the defendant,

KRISTOPHER JUSTINBOYER ERVIN,

did knowingly possess firearms, that is, machinegun conversion devices each consisting of a combination of parts designed and intended for use in converting a weapon into a machinegun, constituting machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b), which were not then registered to the defendant in the National Firearms Registration and Transfer Record as required by 26 U.S.C. § 5841.

In violation of 26 U.S.C. §§ 5861(d) & 5871.

## FORFEITURE

1.     The allegations contained in Counts One through Eight and Counts Ten through Twelve, as well as Count Nine are incorporated by reference for the purpose of alleging forfeiture pursuant to 26 U.S.C. § 5872, 26 U.S.C. § 7302, 28

U.S.C. § 2461(c), and 49 U.S.C. § 80303, and 31 U.S.C. § 5317(c)(1)(A), respectively.

2.    Upon conviction of a conspiracy to violate 26 U.S.C. § 5861(e), in violation of 18 U.S.C. § 371, the defendants, KRISTOPHER JUSTINBOYER ERVIN and MATTHEW RAYMOND HOOVER, shall forfeit to the United States, pursuant to 26 U.S.C. § 5872 and 28 U.S.C. § 2461(c), any firearms involved in the violation, pursuant to 26 U.S.C. § 7302, any property intended for use or that has been used in committing the violation, and, pursuant to 49 U.S.C. § 80303 and 28 U.S.C. § 2461(c), any aircraft, vehicle, or vessel used to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of such firearm.

3.    Upon conviction of a violation 26 U.S.C. § 5861, the defendants, KRISTOPHER JUSTINBOYER ERVIN and MATTHEW RAYMOND HOOVER, shall forfeit to the United States, pursuant to 26 U.S.C. § 5872 and 28 U.S.C. § 2461(c), any firearms involved in the violation, pursuant to 26 U.S.C. § 7302, any property intended for use or that has been used in committing the violation, and, pursuant to 49 U.S.C. § 80303 and 28 U.S.C. § 2461(c), any aircraft, vehicle, or vessel used to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of such firearm.

4.    Upon conviction of a violation of 31 U.S.C. § 5324, the defendant, KRISTOPHER JUSTINBOYER ERVIN, shall forfeit to the United States, pursuant

17

to 31 U.S.C. § 5317(c)(1)(A), all property, real or personal, involved in the offense and any property traceable to such property.

5.     Upon conviction of a violation of 26 U.S.C. § 5861, the defendant, KRISTOPHER JUSTINBOYER ERVIN, shall forfeit to the United States, pursuant to 26 U.S.C. § 5872 and 28 U.S.C. § 2461(c), any firearms involved in the violation, and, pursuant to 49 U.S.C. § 80303 and 28 U.S.C. § 2461(c), any aircraft, vehicle, or vessel used to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of such firearm.

6.     The property to be forfeited includes, but is not limited to approximately $68,000.00, representing the amount of funds involved in the structuring offense charged in Count Nine.

7.     If any of the property described above, as a result of any act or omission of the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 31 U.S.C. § 5317(c),

18

including, but not limited to the $3,700 seized from KRISTOPHER JUSTINBOYER

ERVIN on March 2, 2021.

A TRUE BILL,

Foreperson

ROGER B. HANDBERG
United States Attorney

By: LAURA COFER TAYLOR
Assistant United States Attorney

By: SARA SWEENEY
First Assistant United States Attorney

19

FORM OBD-34
3/6/23 Revised

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

### KRISTOPHER JUSTINBOYER ERVIN
### MATTHEW RAYMOND HOOVER

## INDICTMENT

Violations: 18 U.S.C. § 371, 26 U.S.C. §§ 5861(e) & 5871, 2, 31 U.S.C. § 5324(a)(3) & (d)(1), & 26 U.S.C.§ 5861(d)

A true bill,



Foreperson

Filed in open court this __6th__ day

of March, 2023.

_____
Clerk

Bail   $_____

GPO 863 525

USCA11 Case: 23-13062   Document: 42-1   Date Filed: 03/11/2024   Page: 93 of 234

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

**UNITED STATES' BRIEF STATEMENT OF THE CASE**

The United States of America, through its undersigned Assistant United States Attorneys, submits the following brief statement of the case to be read at the beginning of jury selection:

Ladies and Gentlemen, in this case, the United States has charged the defendants, Kristopher Justinboyer Ervin and Matthew Raymond Hoover, with conspiring to transfer unregistered machinegun conversion devices in violation of federal law.   Additionally, Mr. Ervin and Mr. Hoover are charged with individual substantive counts of transferring unregistered machinegun conversion devices.   Mr. Ervin is also charged with several counts of possessing unregistered machinegun conversion devices and with structuring cash withdrawals from his bank account in order to evade currency transaction reporting requirements.

These offenses are alleged to have taken place beginning around October of 2020 and continuing through at least July of 2021.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   */s/ Laura Cofer Taylor*
LAURA COFER TAYLOR
Assistant United States Attorney
USA No. 170
E-mail: Laura.C.Taylor@usdoj.gov

DAVID B. MESROBIAN
Assistant United States Attorney
USA No. 188
E-mail: David.Mesrobian@usdoj.gov

300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
Telephone:   (904) 301-6300
Facsimile:   (904) 301-6310

2

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2023, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

> Alex King, Esq.
>> *Counsel for defendant KRISTOPHER JUSTINBOYER ERVIN*
>
> Zachary Z. Zermay
> Matthew Larosiere
>> *Counsel for defendant MATTHEW RAYMOND HOOVER*

> *s/ Laura Cofer Taylor*
> LAURA COFER TAYLOR
> Assistant United States Attorney

3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No:        3:21-cr-00022-MMH-MCR

KRISTOPHER ERVIN

_____/

## DEFENDANT ERVIN'S PROPOSED STATEMENT OF THE CASE FOR THE VENIRE

The Indictment charges Kristopher Ervin and Matthew Hoover with various offenses related to an alleged conspiracy to transfer unregistered machinegun conversion devices, which are alleged to constitute machineguns, in that they are a combination of parts designed and intended for use in converting a weapon into a machinegun.  Mr. Ervin is further charged with possession of unregistered machinegun conversion devices on various dates.  Mr. Ervin and Mr. Hoover deny these allegations.  In addition, Mr. Ervin is charged with knowingly evading a currency transaction reporting requirement by structuring a transaction, alleging he knowingly and for the purpose of evading the reporting requirements, structured transactions by withdrawing funds from his bank account to intentionally avoid the reporting requirement.  Mr. Ervin denies these allegations.

Respectfully submitted,
**Monroe & King, P.A.**

  /s/ Alex King
Alex King, Esq.
Florida Bar No.: 0086034
Scott Monroe, Esq.
Florida Bar No.: 0086801
1805 Copeland Street
Jacksonville, Florida 32204
Tel: (904) 355-7777
E-mail: Admin@MonroeKingLaw.com
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email to: (1) Laura C. Taylor, Esq., Office of the United States Attorney, Laura.C.Taylor@usdoj.gov, (2) Zachary Z. Zermay, Esq., zach@zermaylaw.com, and (3) Matthew Larosiere, Esq., larosieremm@gmail.com, this 3rd day of April, 2023.

   /s/ Alex King

ATTORNEY









00047

00048

Case 3:21-cr-00022-MMH-MCR    Document 259-38    Filed 04/21/23    Page 3 of 3 PageID 2340





UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                  Case No:        3:21-cr-00022-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER
_____/

**POST-VERDICT MOTION FOR
JUDGMENT OF ACQUITTAL**

COMES NOW the Defendant, Kristopher Ervin, by and through his undersigned counsel, pursuant to Rule 29(c), Fed. R. Crim. P., and hereby respectfully files his Post Verdict Motion for Judgment of Acquittal, and in support hereof, states as follows:

**PROCEDURAL HISTORY**

1.      On March 3, 2021, Mr. Ervin was arrested, and a Criminal Complaint was filed against him alleging that he knowingly possessed a firearm as defined under Title 26, United States Code, Section 5845(a) and (b), that is, a machinegun conversion device, that was not then registered in the National Firearms Registration and Transfer Record, as well as a structuring count.  Doc. 1.

2.      On March 11, 2021, Mr. Ervin was indicted, charging him with the same counts alleged in the Criminal Complaint.  Doc. 17.

3.      On April 1, 2021, a Superseding Indictment was filed adding 13 additional counts. Doc. 25.

4.      On January 26, 2022, a Second Superseding Indictment was filed adding 17 additional counts.  Doc. 57. This Superseding Indictment not only contains new allegations but an additional co-defendant who was previously not charged but has been subsequently arrested.

5. On August 31, 2022, a Third Superseding Indictment was filed against the Defendants. Doc. 120.

6. On March 6, 2023, a month before trial was to commence, a Fourth Superseding Indictment was filed. Doc. 204.

7. On April 21, 2023, after a two-week trial, a Jury Verdict was reached (Doc. 263), finding Mr. Ervin guilty on all counts.

8. On May 4, 2023, the Court granted a continuance to file a motion for a judgment of acquittal on or before May 19, 2023.  Doc. 271.

## **ARGUMENT**

9. Mr. Ervin adopts and incorporates by reference the legal and factual arguments made in Mr. Hoover's Motion for Judgment of Acquittal as to Counts One through Eight and Ten through Twelve of the Fourth Superseding Indictment.

10. Although Mr. Hoover was acquitted of some of the substantive offense counts that Mr. Ervin was acquitted of, and Mr. Ervin was further convicted of possession offenses in Counts Ten through Twelve, Mr. Ervin requests this Honorable Court to consider the legal arguments as to the counts addressed by Mr. Hoover, as they address near identical issues of fact and law.

11. Additionally, Mr. Ervin would supplement said argument with regard to Count Six and Count Nine.  Mr. Hoover was acquitted of Count Six, a substantive transfer offense, and not charged with Count Nine, which charged structuring of currency transactions to avoid a reporting requirement.

12. Count Six alleged a transfer to an individual with the initials J.A.  Unlike all of the other substantive counts two through five, seven, and eight, no individual with the initials J.A.

testified at trial. Additionally, witnesses with initials consistent with those alleged in the aforementioned counts testified that they had both ordered and received an "Auto Key Card".

13. However, there is no record evidence that an individual with the initials J.A. actually ordered or received an "Auto Key Card". Furthermore, there is no record evidence that an individual with the initials J.A. who may have ordered an "Auto Key Card" actually existed, as the record was replete with examples of orders made under fictitious names, *nom de guerres,* and other aliases. For example, Government Exhibit 32 at page 1 is a mailing to an individual by the name "John Doe" and Government Exhibit 32 at page 4 is a mailing to an individual by the name "Ole Shoota".

14. There is insufficient record evidence, and no reasonable jury could find beyond a reasonable doubt that a machinegun conversion device was actually transferred to an individual with the initials J.A., as the record does not contain any testimony or documentary evidence that an individual with those initials actually existed or obtained a machine gun conversion device. Although the Government listed an individual by the name of James Acs (Doc. 242 at 2; enumerated paragraph 25), that individual was not called as a witness by either party. Although there is extra record evidence that suggests Mr. Acs was the alleged purchaser in Count Six, there was no evidence in the record that the jury had before it to make that determination. As such, the verdict as to Count Six is wholly unsupported by the record evidence and notwithstanding the other arguments in Mr. Hoover's Motion for Judgment of Acquittal, a Judgment of Acquittal should be entered as to Count Six of the Fourth Superseding Indictment.

15. With respect to Count Nine, Mr. Ervin was convicted of structuring a cash financial transaction to avoid the filing of a Currency Transaction Report pursuant to 31 U.S.C. §5313, in violation of 31 U.S.C. §5324(a)(3) and (d)(1).

16.     The evidence at trial is that on December 28, 2020, after getting into a dispute with his bank about the cashing of a money order for his "Auto Key Card" business, Mr. Ervin demanded to remove all of his money in cash. Such a request would have been well in excess of the reporting requirements for a Currency Transaction Report. Mr. Ervin's request was denied due to what the bank employees testified to, was an insufficient amount of United States Currency to fulfill the requested transaction.

17.     The bank employee, after denying Mr. Ervin's request, told him he could take out an amount under the Currency Transaction Report threshold, even though it was Mr. Ervin's stated desire to remove a greater amount of United States Currency than the Currency Transaction Report threshold. According to the testimony regarding the account notes for Community First Credit Union, Mr. Ervin stated "I'll just come back everyday or try other branches until I get it". Government Exhibit 95b.

18.     In fact, Mr. Ervin went to another Community First Credit Union branch on December 28 and attempted to withdraw a large sum of United States Currency (the individual who testified could not recall the exact amount and there are no known records regarding the exact amount requested). Mr. Ervin was told that only $5000 was available to him, which he withdrew and a Currency Transaction Report was completed. In the Fourth Superseding Indictment, it is alleged that both the $9000 dollars initially withdrawn on December 28, 2020 and the $5000 withdrawn later that day were structured transactions. However, the record evidence is that Mr. Ervin attempted to withdraw more than $10,000, the amount that triggers the filing of a Currency Transaction Report pursuant to 31 U.S.C. §5313. The only reason the December 28, 2020 transactions were under the reporting amounts was due to a lack of liquidity from the financial institution, not a desire to structure a transaction to avoid a reporting requirement.

4

19.     Although Mr. Ervin returned, as he stated he would, each day to withdraw more funds, there is no record evidence that Mr. Ervin was attempting to avoid the reporting requirement, but merely to retrieve his money from a bank with which he was having a dispute. He withdrew the same amount of money, the amount he had been allowed to withdraw on December 28, 2020, everyday the bank was open until he drew the account down, as he stated he would.

20.     There was testimony from Ms. Amy Sarkese that Mr. Ervin at one point inquired about the reporting requirement, she stated that she did not recall when it was. Ms. Sarkese further testified on cross examination that she would have noted a conversation about the reporting requirements in the bank system, as was her practice.  She further testified that the conversation must have occurred after the time period the withdrawals alleged to be structuring in Count Nine were to have taken place, as there were no notes about it in Government Exhibit 95b, which has a last note date of 02/02/2021, which is almost a full month after January 6, 2021, the last day an alleged structured transaction took place.

21.     The Government has argued that the fact Ms. Sarkese offered at all times to only provide a currency amount under the reporting amount is immaterial, as Mr. Ervin need not know the actual reporting requirement in order to commit a structuring offense.  However, the law does, in fact, require such knowledge, as the Supreme Court has stated an "intent to require for conviction proof that the defendant knew not only of the bank's duty to report cash transactions in excess of $10,000, but also of his duty not to avoid triggering such a report."  *Ratzlaf v. United States*, 510 U.S. 135, 146–47 (1994).  In this case, a conviction is unsupported by the record and this Honorable Court should enter a Judgment of Acquittal as to Count 9.

WHEREFORE, it is respectfully requested that this Honorable Court grant this motion and acquit Mr. Ervin of all charges.

Respectfully submitted,

**Monroe & King, P.A.**

  /s/ Alex King
Alex King, Esq.
Florida Bar No.: 0086034
Scott Monroe, Esq.
Florida Bar No.: 0086801
1805 Copeland Street
Jacksonville, Florida 32204
Tel: (904) 355-7777
E-mail: Admin@MonroeKingLaw.com
Attorneys for Defendant

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email to: Laura Cofer Taylor, Esq., Office of the United States Attorney, Laura.C.Taylor@usdoj.gov, this 19th day of May, 2023.

  /s/ Alex King
ATTORNEY

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE №: 3:21-cr-00022-MMH-MCR

UNITED STATES OF AMERICA,

v.

MATTHEW RAYMOND HOOVER.

_____/

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Matthew Raymond Hoover ("Defendant") respectfully submits this Post-Verdict Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. In support of this Motion, Defendant hereby states:

### I.   INTRODUCTION

Defendant requests this honorable Court to grant a judgment of acquittal on all charges against him on the grounds that the evidence presented by the prosecution is insufficient to support a conviction. Pursuant to Rule 29, a judgment of acquittal is warranted if the evidence, when viewed in the light most favorable to the prosecution, is insufficient for any rational trier of fact to find guilt beyond a reasonable doubt.

As has been the theme for much of the motion practice in the instant matter, the question of whether the Auto Key Card can be considered a

1

"combination of parts" lies near the core.[1] That question is underlined with concerns about whether an item all evidence demonstrated was a homogenous piece of steel that had to be "materially altered" can be considered a "combination of parts" beyond a reasonable doubt, further whether requisite scienter could have been proven in that instance.

It is further essential that "we are mindful that the Supreme Court recently cautioned against federal criminal statutes being read too expansively." *United States v. David McLean*, No. 14-10061 (11th Cir. Sept. 24, 2015) (citing *Yates v. United States*, 135 S. Ct. 1074 (2015) (concluding the term "tangible object" within the Sarbanes-Oxley Act not to apply to an undersized red grouper thrown overboard by a commercial fishing vessel's captain) in upholding a judgment of acquittal). This case presents a similar issue to the ones discussed in *Yates* and *McLean*: an aggressive, novel application of a federal criminal statute. Even more problematic here, though, is the way the government proceeded with this case. This is not a matter of a broad word like "tangible object," as was the case in *Yates*, but a specific sub-definition of "machinegun" under federal law, referring to a "combination of parts designed and intended" for use in converting a firearm into a machinegun, where the law contained another definition for a singular "part." Like in *Yates*, the

---

[1] Defendant also moved to dismiss the indictment on constitutional grounds, which were never adequately addressed, and the required *Bruen* analysis was not conducted by this Honorable Court. *See* ECF 132 – 133; 141; 246.

government could have proceeded under different parts of the statute, but instead pursued an "aggressive" interpretation. *Yates*, 135 S.Ct. at 1080, 1087 (Rejecting the government's "aggressive interpretation" after employing traditional tools of statutory interpretation to examine markers of congressional intent.). The government, be it for tactical reasons or otherwise, chose to prosecute the Defendant for conspiracy and substantive acts relating to what it proved to be a homogenous piece of steel as a "combination of parts" rather than a "part." Quite simply, no reasonable trier of fact could have found the items here at issue to be a "combination of parts," much less a "combination of parts" beyond a reasonable doubt.

## II.   LEGAL STANDARDS

The standards for a judgment of acquittal are governed by Rule 29 of the Federal Rules of Criminal Procedure and established caselaw. The court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. While this is a stringent standard, it is not *carte blanche* to approve any finding of any jury where any evidence was presented. Rather, it is an essential check on the government's burden to prove all essential elements beyond a reasonable doubt, thereby having provided sufficient evidence to support the jury's verdict.

In evaluating the sufficiency of the evidence, the court should consider the totality of the circumstances. While the jury's inferences are due some deference, that deference is *provided* that the ultimate conclusions are *reasonable* and *supported by the evidence*.

## III.   INSUFFICIENCY OF THE GOVERNMENT'S EVIDENCE

For the reasons detailed *infra*, the government has failed to prove the essential elements against Defendant beyond a reasonable doubt. As against Defendant Hoover, the counts and essential elements are:

**a. COUNT ONE: CONSPIRACY TO TRANSFER UNREGISTERED MACHINEGUN CONVERSION DEVICES**

    **i.** Two or more persons in some way agreed to try to accomplish a shared and **unlawful plan**;

    **ii.** the Defendant **knew the unlawful purpose of the plan** and **willfully** joined in it;

    **iii.** during the **conspiracy**, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

    **iv.** the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

   **b. COUNTS TWO, THREE, FIVE, AND SEVEN: SUBSTANTIVE COUNTS**

      **i.** The Defendant **knowingly** transferred, or aided and abetted the transfer of, a firearm, specifically a **combination of parts** designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger

     **ii.** the **firearm** was not registered in the National Firearms Registration and Transfer Record; and

    **iii.** the Defendant **knew of the specific characteristics or features of the firearm** that made it subject to registration under the National Firearms Registration and Transfer Record.

   **c. DISCUSSION OF THE GOVERNMENT'S INSUFFICIENT EVIDENCE**

As pled in the indictment, if no parts were transferred, then there was no crime. The government proceeded under a theory that each Auto Key Card constituted a combination of parts designed and intended to convert a weapon into a machinegun. At trial, the government and its agents demonstrated that Defendant advertised a homogenous piece of steel called the Auto Key Card on his YouTube channel. But when it came time to prove up its case, the

government's physical evidence and testimony demonstrated that, as transferred (and at best) each Auto Key Card was a singular, homogenous piece of stainless steel into which a design was lightly etched *i.e.*, Defendant advertised, and Mr. Ervin sold, a drawing that was on a piece of metal.

The testimony and evidence elicited from the employees of Orange Park Machine & Fab. demonstrated that Mr. Ervin contracted with them to engrave a design that was provided to the shop by way of a Drawing Exchange Format file ("DXF File"). Testimony showed that the DXF File necessarily contained a two-dimensional image, *i.e.*, a drawing (the "Drawing"). Mr. Ervin requested that the Drawing be copied onto single, homogenous pieces of stainless steel by way of a laser *only to the extent that* the image could not be wiped off of it. Much to the consternation of the machine shop, and against its advice, he refused to allow them to manufacture the Auto Key Cards in such a manner as to be cut out into multiple parts. His intent was clear, and the evidence is what it is. The stainless steel was a canvas for the Drawing and the laser was the medium. Agents of the government even admitted that they could construe shoelaces and a paperclip as a machinegun, but that "templates" and "drawings" were not.

The testimony of the government's own witnesses supports the conclusion that, as transferred, the Auto Key Card was not "a combination of

6

parts." Special Agent Jesse Hooker admitted that the government had to "materially alter" the Auto Key Card to become what it alleges in the indictment is a "combination of parts" that are "designed and intended to convert a weapon into a machinegun." The testimony of Mr. Toy buttressed the conclusion that the Auto Key Cards only became contraband only after he performed about an hour of transformative labor upon the Auto Key Card. Transformative labor that fundamentally changed—materially altered—it from a homogenous piece of steel with a constitutionally protected Drawing on it to contraband, *i.e.*, an unregistered combination of parts designed and intended to convert a weapon into a machinegun.

The government's theory bears emphasis: that each drawing on the piece of steel constituted a "part." This reading is so inconsistent with the statute as charged that the government even attempted to invert the statute at closing arguments by arguing that the law proscribed something "designed and intended" to *become* a "combination of parts," which is just manifestly not the case. Even more, the government never once provided evidence that the Auto Key Card was a combination of parts. It forcefully fought against all attempts to delineate what "parts" were "in" the Auto Key Card, instead simply waxing over the critical statutory distinction between a "part" and "combination of parts" and telling the jury, quite literally, not to "worry" about it.

Even if the government's assertion that a drawing on a homogenous piece of steel equates to "parts"—an assertion that is patently absurd—such could only logically extend to the contours of the drawing. However, the government provided no evidence that an Auto Key Card, if cut along the lines, would convert a firearm to fire automatically. One of the government's substantive act witnesses—who claimed to work at a tool and die shop—testified that when cut precisely to the lines, he could not get the resulting parts to function. On the other hand, ATF's Mr. Toy sliced and diced multiple Auto Key Cards apart with a Dremel. He kept at it, and his testimony, and the government's evidence, showed that only after cutting *outside* the Drawing by re-contouring a piece he described as a "flap" did he manufacture a combination of parts from a single piece of stainless steel into a "combination of parts" he re-designed to induce a malfunction in the weapon which resulted in its firing more than one shot. A malfunction, it bears emphasis, Mr. Toy testified that did not reflect how a "lightning link"—the type of machinegun conversion device the government asserted the Auto Key Card to be—would have functioned. Further, Mr. Toy testified that there would be no meaningful distinction in result were the design drawn with laser or marker. So, in fewer words: the government *proved* that each Auto Key Card was a homogenous piece of steel, *proved* that if that homogenous piece of steel was cut precisely to the lines, was not designed and intended to convert a weapon to fire

8

automatically, and *proved* that the only way its own expert could induce a weapon to fire more than one shot using the Auto Key Card was to *ignore the lines thereupon engraved* to spend substantial time manufacturing a combination of parts which *did not even function as the type of machinegun conversion device the government alleged it to be.*

Indeed, at no point in the trial did the government attempt to remedy that its witnesses and physical evidence exclusively referred to each Auto Key Card as a homogenous piece of steel and the parts the government manufactured from it as being "materially altered." There was not a shred of evidence that the Auto Key Card, as sold, met *even a single element* of the charged definition. This honorable Court even grappled with this issue during debate over jury instructions, when the Court expressed hesitation that it did not want to assert that a single "object" could not be "multiple parts." Turning to traditional tools of statutory interpretation, it is clear that an "object", such as a music box, can consist of multiple parts, as this Court noted, but that a *homogenous piece*, such as an unmodified Auto Key Card, cannot.

### d. ARGUMENT: THE JURY'S VERDICT IS NOT ONLY UNSUPPORTED BY EVIDENCE, BUT SIMPLY UNSUPPORTABLE

We stress these points of statutory interpretation and settled law as essentially related to the insufficiency of the government's evidence. Clearly,

while there could have been a less provocative canvas to copy the Drawing onto, during closing arguments, the government asked the rhetorical question of where we draw the proverbial line while displaying the sliced-up remnants of an Auto Key Card as a table sculpture. And therein lies one of many problems with the government's case: It is not for the jury to decide where the line is drawn—that is Congress's role alone. The jury does not, and cannot serve as a legislative sub-assembly to define terms of law. The jury's role is to decide if an otherwise clear and validly drawn line has been crossed. The essential lines here, which the government provided no evidence of are: was the subject article a combination of parts, did the Defendant **know** the article had features subjecting it to NFA requirements, and did Defendant **know** and **intend** to be part of an unlawful plan. Not only did the government fail to prove the essential elements, the government **proved** their absence.

In *Staples v. United States*, the Supreme Court held that the government **must** prove that a Defendant has actual knowledge that an item is a machinegun in order to sustain a conviction. 511 U.S. 600 (1994). The government played hours of videos from Defendant's YouTube channel where it is manifest that Defendant believed the Auto Key Card to be completely lawful unless cut out and manufactured into a machinegun.

This prosecution reflects concerns addressed by the Eleventh Circuit in other multi-defendant conspiracy prosecutions—"that individuals who are not

10

actually members of the group will be swept into the conspiratorial net. Because the government is permitted broad prosecutorial discretion to prove the conspiracy, the likelihood exists that those who associate with conspirators will be found guilty of a crime they **have not intended to commit**[.]" *U.S. v. Chandler*, 388 F.3d 796 (11th Cir. 2004); *see also Dennis v. United States*, 384 U.S. 855, 860 (1966). Numerous statements of Mr. Ervin, and a video generated by Mr. Ervin inexplicably involving a fish, were slip-shoddily presented to the jury with no evidence Defendant knew or processed the information at all, substantially prejudicing Defendant.

Like in *Chandler*, this case reflects the compounded danger "when the grand jury indicts on one theory of the illegal conduct, but the government prosecutes the case on an entirely different theory. This roaming theory of the prosecution can produce trial error of constitutional proportions." *Chandler*, 388 F.3d at 798; *see also* Russel v. United States, 369 U.S. 749, 768 (1962) (ill-defined charges leave "the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal"). The government originally indicted Defendant using the "part" definition, but over the course of several superseding indictments, shifted strategy to a "combination of parts."

Even more like *Chandler*, "the defendants focused on whether the allegations of the indictment were sufficient to state a crime. Under federal

11

conspiracy law, the government must allege and prove that the defendants *knowingly* entered into an *agreement* to commit an *unlawful act*., 839 F.2d 1473 (11th Cir. 1988)." 388 F.3d at 799-800. *Chandler* dealt, quite interestingly, with counterfeit McDonalds game pieces, and the *Chandler* indictment "did allege an unlawful act in the embezzlement of the game stamps. Nowhere, however, did the indictment allege that any of these defendants *knew* that the game stamps they redeemed had been stolen. The defendants moved to dismiss the indictment, alleging that it was fatally defective in its failure to allege an essential element of the crime of conspiracy — knowing agreement to commit the illegal act." *Id.* In *Chandler*, the motion to dismiss the indictment was denied, as it was here, and the case proceeded to a multi-week trial, as it did here, where the government put on voluminous evidence of seemingly *everything but* the essential elements of the charged offenses, as it did here, and the jury returned an unsupportable verdict, as it did here.

To prove an illegal attempt, the government must show that the defendant had the specific intent to engage in criminal conduct and that he took a substantial step toward commission of the offense. *United States v. Collins*, 779 F.2d 1520, 1527 (11th Cir. 1986); *U.S. v. Baptista-Rodriguez*, 17 F.3d 1354, 1369 (11th Cir. 1994). Here, not only was no evidence of knowledge offered, but the government put up hours of exculpatory evidence in the form

12

of Defendant's YouTube videos where he very manifestly—and reasonably—processes that the Auto Key Card is "just a drawing" unless manufactured into something else.

The government, at trial, referred to the provocative and tongue-in-cheek nature of Defendant's videos *ad nauseum*. That Defendant is a political provocateur with a more than a healthy distrust of the government is not evidence of criminal intent, nor is the fact that Defendant may be a conspiracy *theorist* evidence that he is a criminal conspirator.

The vagueness doctrine requires that a criminal statute "clearly define the conduct it proscribes." *Skilling v. United States*, 561 U.S. 358, 415 (2010) (Scalia, J., concurring in part and concurring in the judgment); *accord Johnson v. United States*, 576 U.S. 591, 596 (2015) (Fifth Amendment guarantees that every criminal law provides "ordinary people fair notice of the conduct it punishes" and is not "so standardless that it invites arbitrary enforcement"). In *United States v. Lanier*, 520 U.S. 259 (1997), the Supreme Court described three aspects of the requirement that criminal statutes give "fair warning" of what is outlawed. First, "the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* at 266. Second, any ambiguity in a criminal statute must be resolved in favor of applying the statute only to conduct which is **clearly**

13

**covered**. *Id.* Third, although clarity may be applied by judicial gloss, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.; see also United States v. Denmark*, 779 F.2d 1559 (11th Cir. 1986). Central to each inquiry is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. It should not be controversial to state that a statute proscribing a "combination of parts" gives no notice that a drawing, or even a drawing that could *become* a combination of parts through transformative labor, be covered.

"A penal statute maybe void for vagueness 'for either of two independent reasons.'" *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). First, a statute may be unconstitutionally vague if it "fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A statute may also be unconstitutionally vague if it "fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." *Lim*, 444 F.3d at 915 (citing *Karlin v. Foust*, 188 F.3d 446, 458-59 (7th Cir. 1999)). As observed by the United States Supreme Court, the requirement that a penal statute provide minimal guidelines to discourage arbitrary enforcement is "perhaps the most meaningful aspect of the vagueness

doctrine." *Smith v. Goguen*, 415 U.S. 566, 574 (1974). Without these minimal enforcement guidelines, "policemen, prosecutors, and juries are allowed to pursue their personal predilections." *Kolender*, 461 U.S. at 358.

"Before courts may send people to prison, we owe them an independent determination that the law actually forbids their conduct." *Geudes v. ATF*, 140 S. Ct. 789, 790 (2020) (Gorsuch, J., statement respecting denial of writ of certiorari). The rules of statutory construction require that all words be given effect. "[T]he purpose of Firearms Act, of which § 5861 is a part, is to go after crime weapons," not tchotchkes or cards into which were allegedly etched a design. *See U.S. v. Vest*, 448 F. Supp. 2d 1002, 1014 (S.D. Ill. 2006).

A regulation may "provide such inadequate notice of potential liability so as to offend the rule of lenity." *Gun Owners of Am., Inc.*, 19 F.4th at 901. "The Attorney General has directed the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to administer, enforce, and exercise the functions and powers of the Attorney General with respect to Chapter 44 of Title 18 and Chapter 53 of Title 26. 28 C.F.R. § 0.130(a)." *Gun Owners of Am., Inc.*, 19 F.4th at 897. Unlike the widely publicized situation of bump stocks, suppressors, and other items, ATF has issued no guidance—and has no congressional authority—relating to drawings. In fact, ATF recently rescinded *all* guidance in the context of what is and is not a "firearm" when it comes to incomplete or "partially finished" articles. *See Definition of "Frame or Receiver"*

*and Identification of Firearms*, 87 F.R. 24652 at 24672 ("Any such classifications, to include weapon or frame or receiver parts kits, would need to be resubmitted for evaluation.").

As the Supreme Court wrote in *Babbitt*:

> We have applied the rule of lenity in a case raising a narrow question concerning the application of a statute that contains criminal sanctions to a specific factual dispute . . . where no regulation was present.

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995).

Where there is ambiguity in a criminal statute—or regulation interpreting that statute—doubts are resolved in favor of the defendant. *See Yates v. United States*, 574 U.S. 528 (2015); *Skilling v. United States*, 561 U.S. 358 (2010); *United States v. Santos*, 553 U.S. 507 (2008); *Jones v. United States*, 529 U.S. 848 (2000); *United States v. Izurieta*, 710 F.3d 1176 (11th Cir. 2013); *United States v. Trout*, 68 F.3d 1276 (11th Cir. 1995). In addition to these circuit decisions, the Navy-Marine Corps Court of Criminal Appeals considered the bump stock Final Rule in the context of a criminal prosecution for possession of a machinegun. *See United States v. Alkazahg*, 81 M.J. 764, 780–81 (N–M. Ct. Crim. App. 2021). That court determined that, under the best reading of the statutory language, a bump stock is not a machinegun. But it ultimately found that the statute is ambiguous and applied the rule of lenity to construe the statute against imposing criminal liability. It dismissed the

16

charge for possession of a machinegun. Here, similarly, there is no regulation on point.

The Supreme Court in *Yates* explained that if the statute "leaves any doubt" about the application of the statute to the facts to which the government seeks to have the statute apply, the rule of lenity precludes such application. *I.e.,* "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547-48 (quoting *Cleveland v. United States*, 531 U. S. 12, 25 (2000); *see also Liparota v. United States*, 471 U. S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). In determining the meaning of "machinegun" under the National Firearms Act, "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Yates*, 574 U.S. at 548, (quoting *Cleveland*, 531 U.S. at 25, and *United States v. Universal C. I. T. Credit Corp.*, 344 U. S. 218, 222 (1952)); *see also Jones v. United States*, 529 U. S. 848, 858–859 (2000). *Santos* explained that the rule of lenity "not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best

17

induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Santos*, 553 U.S. at 514.

As pled in the Indictment, the Government defined Auto Key Cards as "cards machined from stainless steel, into which were etched the design for machinegun conversion devices." As was proven by the government, the Auto Key Card would require significant transformative labor and machining of the card to cause it to fit into the rear internal area of the receiver, where the machinegun automatic sear would be installed. Further torturing the language of the Indictment to the Government's benefit for the purposes of argument, the Auto Key Card could, at most, constitute a trinket from which the parts of a DIAS could possibly be made. Such tchotchkes are not regulated under the Gun Control Act or the National Firearms Act. *See also United States v. Prince*, No. 09-10008-JTM, 2009 WL 1875709, at *3 (D. Kan. June 26, 2009), rev'd on other grounds, 593 F.3d 1178 (10th Cir. 2010) ("However, the court simply does not believe that a flat piece of metal with laser perforations and holes constitutes a 'receiver,' *i.e.*, a 'firearm.' Rather, the flat piece of metal is somewhat akin to a piece of paper with lines drawn on it as a guide to make a paper airplane. Although making the paper airplane might be the intended use, it is not an airplane until it is properly folded. Until that time, it is a patterned piece of paper.").

18

The rule of lenity "is premised on two ideas: First, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'; second, 'legislatures and not courts should define criminal activity." *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.,* 515 U.S. 687, 704 n.18, 115 S. Ct. 2407, 2416 (1995). If the DXF File of the Drawing and instructions how to break the law, like the Anarchist Cookbook, are constitutionally protected speech, is the Drawing with oil-based paint on piece of stainless steel, okay? What about military grade plastic with the etching—is that Kosher? While the government pawned off on the jury the question of where to draw the line, that is not—and cannot—be their job, and the government cannot be allowed to unload its failure to prove its case on the jury. For penal statutes, Congress must decide where the line is, and then looking at all the evidence, the jury decides whether the government has shown beyond a reasonable doubt that the line has been crossed.

For reasons stated *supra*, the Government has failed to plead, much less prove sufficient facts which demonstrate the Auto Key Card is a combination of parts designed and intended as a machinegun conversion device. However, it has conclusively demonstrated that the Auto Key Cards are not machinegun conversions devices as a matter of law because as pled in the Indictment, the

Auto Key Card cannot possibly even be a "part," much less "parts" beyond a reasonable doubt.

The Government pled that the Auto Key Cards are "cards . . . into which were etched the design for machinegun conversion devices known as lightning links[.]" It then, in a conclusory manner, declares that such cards are "machineguns as defined in 26 U.S.C. §[§] 5845(a) and 5845(b)." To embrace the Government's position that a card with design on it is a "combination of parts" under § 5845(b) would be to ignore the plain and ordinary language of the word. The term "part" is undefined in the statute, but "[i]f possible, every word and every provision is to be given effect." *Geico Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1141 (11th Cir. 2019) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 26, at 174 (2012); The ordinary meaning of a "part" in the context of machinery like a firearm is "a constituent member of a machine or other apparatus." *See* Webster's Dictionary, Part, https://www.merriam-webster.com/dictionary/part#:~:text=1%20%3A%20one%20of%20the%20secti ons,My%20dog%20is%20part%20husky. (last retrieved on June 7, 2022); *See also Johnson v. United States*, 559 U.S. 133, 134 (2010) (where a word is undefined, the court must give it its ordinary meaning.). The statute does not refer to something that may one day become a part, nor does it refer to

drawings or schematics for parts. It refers, quite simply, to something that *is* a *combination of parts.*

In no event would a reasonably intelligent person foresee that the conduct charged in this case—talking about a card with a drawing on it—would be deemed criminal, much less that a homogenous piece of steel with a drawing on it would be deemed a combination of parts. As applied against Mr. Hoover, 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth Amendment as applied. Mr. Hoover had no reason to believe, at any point, that he would be engaging in criminal conduct if—as alleged—he entered into an agreement with a tchotchke salesman to discuss stainless steel cards with a design on them on his YouTube channel. The government provided no evidence, and no evidence could likely even exist, to prove the requisite knowledge and intent here beyond a reasonable doubt.

It is worth emphasizing that no court has ever applied the National Firearms Act to a fact pattern like this one. The conduct at issue certainly isn't in the heartland of machinegun cases. Despite ample opportunity to do so, the Government did not allege that a consumer was able to convert a firearm into a machinegun using the alleged design scratched into a stainless-steel card.

### e. COUNTS 2 – 8: THE SAME ANALYSIS *SUPRA* APPLIES TO 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2

While aiding and abetting might commonly be thought of as an offense in and of itself, it is not an independent crime under 18 U.S.C. § 2. That statute provides no penalty, and only collapses common law notions of "principal" and "accessory." *United States v. Kegler*, 724 F.2d 190, 200 (D.C. Cir. 1983). Under it, the acts of the perpetrator become the acts of the aider and abettor and the latter can be charged with having done the acts himself. *Id.* at 200-01. An individual may be indicted as a principal for commission of a substantive crime and convicted by proof showing him to be an aider and abettor. *Id.* Accordingly, the indictment need not specifically charge a violation of 18 U.S.C. § 2.

The Government has charged Mr. Hoover with violating 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 in Counts 2 – 8 of the Indictment. And for reasons thoroughly stated *supra*, the Government has failed to state, much less prove, sufficient ultimate facts to support a conviction.

## IV.   CONCLUSION

In light of the insufficiency of evidence presented by the prosecution, the Defendant respectfully requests this Honorable Court to enter a judgment of acquittal on all charges. The evidence presented is legally insufficient to sustain a conviction, and no reasonable trier of fact could find the Defendant

guilty beyond a reasonable doubt. Granting the motion is necessary to preserve

Defendant's constitutional rights to due process and a fair trial.

**WHEREFORE** Defendant Matthew Raymond Hoover respectfully

moves this Honorable Court to enter a judgment of acquittal on all counts in

which he was convicted, and for any further relief that this Court deems just

and proper.

DATED:  May 19, 2023

Zachary Z. Zermay, Esq.　　　　　　　/s/Matthew Larosiere_____
1762 Windward Way　　　　　　　　　　Matthew Larosiere, Esq.
Sanibel, FL 33957　　　　　　　　　　　6964 Houlton Circle
Email: zach@zermaylaw.com　　　　　Lake Worth, FL 33467
Telephone: 239-699-3107　　　　　　　Email: larosieremm@gmail.com
*Lead Counsel for Defendant*　　　　　Telephone: 561-452-7575
　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on  May 19, 2023 I electronically filed the
foregoing document with the Clerk of the Court using CM/ECF. I also certify
that the foregoing document is being served this day on all counsel of record
via transmission of Notices of Electronic Filing generated by CM/ECF.

Zachary Z. Zermay, Esq.

23

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                              Case No.  3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER

_____

**O R D E R**

**THIS CAUSE** is before the Court on Defendant Kristopher Justinboyer

Ervin's Post-Verdict Motion for Judgment of Acquittal (Doc. 273; Ervin's

Motion), filed May 19, 2023, and Defendant Matthew Raymond Hoover's Motion

for Judgment of Acquittal (Doc. 274; Hoover's Motion), filed May 19, 2023.

Following a nine-day jury trial, on April 21, 2023, the jury returned a verdict

finding Ervin guilty as to all twelve counts of the Fourth Superseding

Indictment (Doc. 204; Indictment) and a verdict finding Hoover guilty of five of

the eight counts charged against him.  See Verdict (Doc. 263; Ervin Verdict);

Verdict (Doc. 264; Hoover Verdict).  Specifically, the jury found Ervin guilty of

conspiring to transfer unregistered machinegun conversion devices in violation

of 18 U.S.C. § 371 (Count One); transferring unregistered machinegun

conversion devices in violation of the National Firearms Act (NFA), 26 U.S.C.

§§ 5861(e) and 5871 and 18 U.S.C. § 2 (Counts Two–Eight); structuring currency

transactions in violation of 31 U.S.C. § 5324(a)(3) and (d)(1) (Count Nine); and possessing unregistered machinegun conversion devices in violation of the NFA, 26 U.S.C. §§ 5861(d) and 5871 (Counts Ten–Twelve). Ervin Verdict at 1–5; see also Indictment at 1–16. As to Hoover, the jury returned guilty verdicts on the charges of conspiring to transfer unregistered machinegun conversion devices (Count One) and four counts of transferring unregistered machinegun conversion devices (Counts Two, Three, Five, and Seven). Hoover Verdict at 1–3; see also Indictment at 1–14. But the jury found Hoover not guilty of three counts of transferring unregistered machinegun conversion devices (Counts Four, Six, and Eight). Hoover Verdict at 2–4.

In their motions, Defendants request that the Court enter judgments of acquittal as to all counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure (Rule(s)) because "the evidence presented by the prosecution is insufficient to support a conviction." Hoover's Motion at 1; see Ervin's Motion at 1–2. The Government filed responses to both motions on June 16, 2023. See Government's Response in Opposition to Defendants' Motion for Judgment of Acquittal (Doc. 289); Government's Response in Opposition to Defendant Ervin's Post-Verdict Motion for Judgment of Acquittal (Doc. 290). Accordingly, this matter is ripe for review.

## I.     Legal Standard

Rule 29 provides the Court with authority, where appropriate, to enter a judgment of acquittal following a guilty verdict.  See Rule 29(c)(2).  A motion for judgment of acquittal under Rule 29 "is a direct challenge to the sufficiency of the evidence presented against the defendant."  United States v. Aibejeris, 28 F.3d 97, 98 (11th Cir. 1994); see also United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999) ("In considering a motion for the entry of judgment of acquittal under [Rule 29(c)], a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction.").  In ruling on such a motion, "a district court must 'determine whether, viewing all the evidence in the light most favorable to the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'"  United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)).

## II.     Discussion

Having carefully reviewed the record, the applicable law, and the parties' arguments, the Court finds that Ervin's Motion and Hoover's Motion are both due to be denied.

### A.     Firearms Charges (Counts One–Eight and Ten–Twelve)

The conspiracy charge in Count One and the firearms charges in Counts Two through Eight and Ten through Twelve arise from Ervin's "Auto Key Card"

business.  See generally Indictment.  The evidence at trial showed that Ervin's Auto Key Cards are stainless steel cards into which the designs of "lightning links," a type of machinegun conversion device, were etched.  See Jury Trial (Volume 1 of 9) (Doc. 277; Tr. Vol. 1) at 244–45; Gov't Ex. 64 (Doc. 259-171). Hoover partnered with Ervin to create several videos advertising the sale of the Auto Key Cards.  See, e.g., Gov't Ex. 2 (Doc. 259-3; Gov't Ex. 2); Gov't Ex. 2A (Doc. 259-4; Gov't Ex. 2A) at 3; Gov't Ex. 3 (Doc. 259-5); Gov't Ex. 3A (Doc. 259-6) at 2–3.  In its closing argument, the Government urged the jury to find that the Auto Key Card is "a combination of parts designed and intended for use in converting an AR-15 [rifle] into a machine gun."  Jury Trial (Volume 8 of 9) (Doc. 284; Tr. Vol. 8) at 35.  The Government contended that the Auto Key Card is "an NFA item disguised as something innocuous."  Id. at 36.  In contrast, Ervin and Hoover argued that the Auto Key Card is merely artwork and a novelty, not a machinegun conversion device.  See id. at 73 ("It's not a machine gun.  It's lines on a piece of steel."); id. at 155 (asserting that the Auto Key Card is a "conversation piece").  Apparently rejecting Defendants' theory of the case, the jury found Ervin guilty of each of the machinegun conversion device charges and Hoover guilty of Counts One, Two, Three, Five, and Seven.  See Ervin Verdict at 1–5; Hoover Verdict at 1–3.

In Hoover's Motion, Hoover presents several arguments as to why the Court should acquit him of the firearms-related charges.  See Hoover's Motion

at 5–23.  Ervin adopts Hoover's arguments to the extent that they are applicable to Ervin's convictions.  See Ervin's Motion at 2.  Ervin also raises a challenge specific to his conviction for Count Six.  See id. at 2–3.  The Court will address each argument in turn.

### 1.  Sufficiency of the Evidence

Ervin and Hoover argue that there was insufficient evidence to support each element of the firearms-related offenses.  See Hoover's Motion at 1; Ervin's Motion at 2–3.  To find a Defendant guilty of a conspiracy to transfer unregistered machinegun conversion devices as charged in Count One, the jury had to find that the Government proved all of the following facts beyond a reasonable doubt:

> (1) two or more persons in some way agreed to try to accomplish a shared and unlawful plan;
>
> (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it;
>
> (3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and
>
> (4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Court's Final Jury Instructions (Doc. 254; Jury Instructions) at 16.  To find Ervin and Hoover guilty of the substantive counts of transferring unregistered

machinegun conversion devices, the jury had to find the following facts to be

true beyond a reasonable doubt:

> (1) the Defendant knowingly transferred, or aided and abetted the transfer of, a firearm, specifically, a combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger;
>
> (2) the firearm was not registered in the National Firearms Registration and Transfer Record; and
>
> (3) the Defendant knew of the specific characteristics or features of the firearm that made it subject to registration under the National Firearms Registration and Transfer Record.

Id. at 18–19.  The jury had to find nearly identical elements to convict Ervin of

possessing unregistered machinegun conversion devices as charged in Counts

Ten through Twelve.  See id. at 25–26.

> **a. Evidence that the Auto Key Card Is a "Combination of Parts Designed and Intended" for Use in Converting a Weapon into a Machinegun**

Hoover argues that no evidence at trial proved that Ervin and Hoover

transferred a "combination of parts."  Hoover's Motion at 5–6.  According to

Hoover, the Government's evidence demonstrated that "each Auto Key Card

was a singular, homogenous piece of stainless steel into which a design was

lightly etched."  Id. at 6.  Hoover also maintains that no evidence showed that

the alleged parts would be functional if cut along the lines of the drawing.  Id.

at 8.  In support of this argument, Hoover contends that the Government's

expert witness, Firearms Enforcement Officer Cody Toy, had to materially alter the Auto Key Card to create parts that caused a malfunction leading to multiple rounds being fired.  Id. at 7–8.

The Court finds that the Government presented sufficient evidence from which a reasonable jury could conclude that Ervin and Hoover transferred, and Ervin possessed, a combination of parts designed and intended for use in converting a weapon into a machinegun.  First, the evidence at trial showed that the etchings on the Auto Key Card demarcate metal pieces that are the correct shape and size to be the parts of a machinegun conversion device. Special Agent Jesse Hooker testified that the etchings on the Auto Key Card are recognizable as the two parts of a lightning link, a machinegun conversion device consisting of a longer piece with a slot and a smaller piece that fits in the slot.  Tr. Vol. 1, at 244–45.  Toy explained that the longer piece is called the "body," and the smaller piece is the "paddle" or "connector."  Jury Trial (Volume 7 of 9) (Doc. 283; Tr. Vol. 7) at 144.

Next, the Government introduced evidence that the pieces identified by the etchings on the Auto Key Card are the correct material to function as machinegun conversion devices.  Hooker testified that lightning links had to be made of metal to work in a rifle.  Tr. Vol. 1, at 245.  Indeed, Ervin advertised the Auto Key Card as "High strength stainless steel.  Durable" and "Full Auto

laser engraved to scale graphic design." Jury Trial (Volume 2 of 9) (Doc. 278; Tr. Vol. 2) at 119–120, 124 (emphasis added).

In addition, the jury heard evidence suggesting that the metal pieces demarcated by the etchings were meant to be removed from the surrounding metal. Two employees at the company that Ervin contracted to manufacture the Auto Key Cards thought that the etchings identified pieces of a tool to be cut out of the card because Ervin said the card was a tool. Transcript of Jury Trial (Volume 4 of 9) (Doc. 280; Tr. Vol. 4) at 27, 111–12. One employee testified that Ervin was concerned about the narrow spacing between two etchings on some of the Auto Key Cards. Id. at 85–87. The jury could reasonably infer that the spacing between the etchings mattered because a customer needed to be able to cut out both parts without damaging them. Moreover, Carolanne Wolfe testified that Ervin decided to include "1 in 1," "2 in 1," or "3 in 1" in the name of each Auto Key Card, even though those names did not describe the number of etchings on each card. Id. at 195. For example, the "3 in 1" Auto Key Card actually contained six separate etchings. Tr. Vol. 2, at 34. A reasonable jury could conclude that Ervin called the cards "3 in 1" because each card contained the parts for three lightning links.

Notably, the jury heard Hoover say that the Auto Key Cards contain firearm parts that can be removed from the surrounding metal. In his first video about the Auto Key Card, Hoover pointed to the different etchings on the

card and noted that a person could cut out "this piece right here" and fit the piece in the "slot right here." Gov't Ex. 1 (Doc. 259-1; Gov't Ex. 1); Gov't Ex. 1A (Doc. 259-2; Gov't Ex. 1A) at 7–8. Hoover explained how these pieces can interact with the other parts of an AR-15 rifle to produce automatic fire. Gov't Ex. 1; Gov't Ex. 1A, at 7–8. In another video, Hoover said that the Auto Key Card "was a great [Special Occupational Taxpayer] resource where you could get machine gun parts." Gov't Ex. 14 (Doc. 259-25; Gov't Ex. 14); Gov't Ex. 14A (Doc. 259-26; Gov't Ex. 14A) at 2–3 (emphasis added).

Finally, the Government presented evidence from which the jury could reasonably conclude that the parts identified by the etchings in the Auto Key Card are reasonably accessible to an end user and actually function as a machinegun conversion device. Using a commonly available Dremel tool and a hand file, Toy was able to cut out the parts of the lightning link from the first Auto Key Card that he received. Tr. Vol. 7, at 148–50. The whole process took him approximately 37 minutes. See id. at 150. Toy cut to the line on the Auto Key Card except that he removed "some of the material" off the paddle because it was "a little bit too tall." Id. at 151–53. Toy explained that "hand fitting" a part is not uncommon because firearms from different manufacturers have different tolerances. Id. at 151–52. Counsel for the Government placed the cut-out piece over the uncut etching on an Auto Key Card. See id. at 153. Toy agreed that it appeared to be a millimeter or less of a difference between the

dimensions of the piece he cut out and the etching on the card.  Id.  The jury could see for itself whether the pieces that Toy cut out conformed to the etchings on the Auto Key Card.  See id.; Gov't Ex. 20A (Doc. 259-40); Gov't Ex. 25A (Doc. 259-46); Tr. Vol. 1, at 256–57, 272–73.  Once Toy installed the pieces from that Auto Key Card, a formerly semiautomatic rifle fired more than one shot with a single function of the trigger.  Tr. Vol. 7, at 155–156.  Toy conducted an additional test fire in Jacksonville, Florida.  Id. at 167–168.  At that test, with the parts from this Auto Key Card installed, the weapon fired automatically with both a machine gun bolt carrier and with an SP1 bolt carrier.  Id. at 168.

With the second Auto Key Card that Toy received, he used a Dremel tool and a drill press.  Id. at 159–61.  It took him 53 minutes to successfully cut out the parts of a lightning link from that card.  Id. at 162.  Once Toy installed these parts into his rifle, the rifle fired automatically.  Id. at 163.  Based on Toy's testimony, a reasonable jury could find that, while Toy had to "materially alter" the Auto Key Card to access the parts of a lightning link, he did not have to materially alter the parts themselves.  Toy merely had to remove the parts from the surrounding metal in order to use them to convert a semiautomatic rifle into a machinegun.

Given all of this evidence, the jury could reasonably conclude that Ervin and Hoover transferred and possessed a combination of parts designed and intended for use in converting a weapon into a machinegun.

- 10 -

### b. Evidence that Defendants Knew the Specific Characteristics of the Firearm that Made It Subject to Registration

Hoover argues that the Government did not prove that he had the <u>mens rea</u> required to be convicted of transferring unregistered machineguns. <u>See</u> Hoover's Motion at 10 (citing <u>Staples v. United States</u>, 511 U.S. 600 (1994)). In <u>Staples</u>, the Supreme Court expressed concern that a gun "may give no externally visible indication that it is fully automatic," leaving the gun's possessor with "absolute ignorance of the gun's firing capabilities." 511 U.S. at 615. The Court concluded that Congress did not intend "to subject such law-abiding, well-intentioned citizens" to a lengthy prison sentence if "what they genuinely and reasonably believed was a conventional semi-automatic [weapon] turns out to have worn down into or been secretly modified to be a fully automatic weapon.'" <u>Id.</u> (alteration in original) (quoting <u>United States v. Anderson</u>, 885 F.2d 1248, 1254 (5th Cir. 1989) (en banc)). Thus, the Court concluded that, to obtain a conviction, the Government must prove that a defendant "knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." <u>Id.</u> at 602, 619.[1]

---

[1] The Court did not hold that the Government must prove that the defendant knew his possession was <u>unlawful</u>. In her concurrence, Justice Ginsburg noted that "[t]he <u>mens rea</u> presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption, 'deeply rooted in the American legal system,' that, ordinarily, 'ignorance of the law or a mistake of law is no defense to criminal prosecution.'" <u>Id.</u> at 622 n.3 (Ginsburg, J., concurring) (quoting <u>Cheek v. United States</u>, 498 U.S. 192, 199 (1991)).

Here, the jury could reasonably conclude that Ervin and Hoover knew of the characteristics or features that brought the Auto Key Card within the statutory definition of a machinegun.  Jonathan Monger testified that Ervin told him that the Auto Key Card is a "gray market item" that resembles the lightning link.  Tr. Vol. 4, at 266–67.  According to Monger, Ervin told him that, if the pieces of the Auto Key Card "were cut out correctly and formed in a certain way, it could make a certain model AR-15 fully auto."  Id. at 267–68.  In addition, in an advertisement video, Ervin interspersed videos and sounds suggesting automatic fire with images of the Auto Key Card.  Gov't Ex. 49A (Doc. 259-121).  Moreover, when a customer asked Ervin about the "proper use of the card," Ervin provided directions on how to find instructions for using the Auto Key Card as a machinegun conversion device.  Gov't Ex. 67E (Doc. 259-179; Gov't Ex. 67E); Tr. Vol. 2, at 115–16.  Ervin also told the customer,

> The auto key card is a conversation piece as sold and as with many legal products, illegal use can occur.  Think of brass knuckles sold as paperweights.  Please be smart and careful you don't get into trouble.  It is intended to stay in the sold as form.  Individuals may make the choice to use it in a different way under certain dire circumstances in the future.  Please share our product with others and friends that may need it someday.

Gov't Ex. 67E.  From this evidence, the jury could reasonably conclude that Ervin knew of the characteristics or features of the Auto Key Card that brought it within the scope of the NFA.

Similarly, the Government presented evidence from which a reasonable jury could find that Hoover knew that the Auto Key Card is a combination of parts designed and intended for use in converting a weapon to shoot automatically.  In one of his videos, Hoover instructed viewers how to get a functioning lightning link out of an Auto Key Card.  See Gov't Ex. 1; Gov't Ex. 1A, at 7–8.  Hoover explained that the Auto Key Card is "awesome" because it is "stupid cheap. You could drop it in your rifle – or, you know, if you're actually gonna do this legally, this is just the bottle opener."  Gov't Ex. 1; Gov't Ex. 1A, at 8–9.  And Hoover called the Auto Key Card a great resource "where you could get machine gun parts."  Gov't Ex. 14; Gov't Ex. 14A, at 2–3.  This evidence sufficiently supports the jury's finding that Hoover knew of the characteristics or features of the Auto Key Card that brought it within the scope of the NFA.

The jury also could reasonably conclude that Ervin and Hoover knew that parts could fall within the definition of "machinegun" even when the parts could not immediately be used.  Ervin told Wolfe that a lightning link that she found online was a "no-no" because it was "like 95 percent."  Tr. Vol. 4, at 227–29.  Similarly, Hoover stated that the "old Lightning Links" caused problems because there were "just a couple of small pieces of metal holding them in the original piece.  All's you had to do was take your finger, pop it out.  Boom.  You have a machine gun."  Gov't Ex. 2; Gov't Ex. 2A, at 3.  Hoover described another conversion device called the "swift link" and mentioned how they were

"disguised as a little stick-on coat rack. You just snapped off the back of it." Gov't Ex. 1; Gov't Ex. 1A, at 6. In the video "This Makes an Illegal Machine Gun," Hoover argued that the "portable wall hanger" is not a machinegun conversion device because "modification needs to happen." Gov't Ex. 7 (Doc. 259-13; Gov't Ex. 7); Gov't Ex. 7A (Doc. 259-14; Gov't Ex. 7A) at 3. He then admitted that the ATF "considered it" a machinegun conversion device "for whatever reason." Gov't Ex. 7; Gov't Ex. 7A, at 3. Finally, Hoover discussed drilling a third hole in a receiver and noted how "dimpling," or merely marking in the metal where the third hole would go, would mean that the ATF classified the receiver as a machinegun. Gov't Ex. 1; Gov't Ex. 1A, at 7. Based on this evidence, the jury could reasonably find that Ervin and Hoover knew that they were transferring and possessing a combination of parts designed and intended for use in converting a weapon into a machinegun, notwithstanding the extra material surrounding the parts in the Auto Key Card.

### c. Evidence that Ervin Transferred Machinegun Conversion Devices to J.A.

With regard to Count Six of the Indictment, the jury found Ervin guilty of transferring unregistered machinegun conversion devices to a person with the initials "J.A." See Ervin Verdict at 3. Ervin argues that no evidence showed that an individual with the initials J.A. existed or ordered and received an Auto Key Card. Ervin's Motion at 3. However, the Court finds that the jury heard

- 14 -

sufficient evidence to conclude that Ervin transferred an Auto Key Card 2 in 1 Pen Holder Edition (containing two conversion devices) to a real individual named James Acs.  See Gov't Ex. 89E (Doc. 259-256); Jury Trial (Volume 3 of 9) (Doc. 279; Tr. Vol. 3) at 40; Tr. Vol. 2, at 164–65; Gov't Ex. 110 (Doc. 259-336). Therefore, Ervin's Motion is due to be denied as to Count Six.

### d. Evidence that Defendants Knew of the Conspiracy's Unlawful Purpose

As to Count One, Hoover argues that there was no evidence that he knew the unlawful purpose of the conspiracy.  See Hoover's Motion at 10–11.  Hoover's argument is unavailing because the Government presented sufficient evidence of each Defendant's knowledge and intent.  As discussed above, a reasonable jury could conclude that Ervin and Hoover knew that they were transferring parts subject to the NFA.  In addition, the evidence showed that Ervin set up, and Hoover advertised, discrete mail-in ordering for the Auto Key Card because they knew that customers would worry about their names being connected with the product.  Gov't Ex. 1; Gov't Ex. 1A, at 5; Gov't Ex. 2; Gov't Ex. 2A, at 3.  The evidence also revealed that Ervin explicitly discussed the possibility of prosecution and professed his belief that law enforcement could not prove his intent unless they got into his head.  Tr. Vol. 4, at 221.  Moreover, in a video, Hoover says that he told Ervin that "it's kind of an edgy product."   Gov't Ex. 14; Gov't Ex. 14A, at 1.  According to Hoover, the gist of what Ervin said in reply

is, "Look, if a drawing on a piece of metal that I have scribed in there is gonna be illegal, that's my line in the sand.  That's where I want to fight."  Gov't Ex. 14; Gov't Ex. 14A, at 1–2.   Hoover responded, "I got your back, man." Gov't Ex. 14; Gov't Ex. 14A, at 2.  In another video, Hoover said that it would be ridiculous for an ATF agent to argue in a courtroom that the Auto Key Card is a machinegun, but he acknowledged that "they probably will do that at some point in time. . . . But these are so incredibly affordable, it doesn't really matter." Gov't Ex. 1; Gov't Ex. 1A, at 4–5 (emphasis added).  In the video "The Parts the ATF Wishes Never Existed," Hoover discusses several products, including the Auto Key Card, and refers to them as "these parts that are currently legal – well, kind of legal."  Gov't Ex. 2; Gov't Ex. 2A, at 2 (emphasis added).  After speaking about cutting out the parts contained in the Auto Key Card, Hoover told his viewers, "Definitely don't go on the internet and upload videos with you using this."  Gov't Ex. 2; Gov't Ex. 2A, at 3.  Based on this evidence, the jury could reasonably conclude that each Defendant knew the unlawful purpose of their plan and willfully joined it.

In sum, the Court concludes that sufficient evidence supported each of the jury's guilty verdicts as to the conspiracy charge in Count One and the related firearms offenses in Counts Two through Eight and Ten through

Twelve.[2]  Therefore, Defendants' requests for judgments of acquittal are due to be denied.

### 2. Vagueness

Hoover argues that "[a]s applied against Mr. Hoover, 26 U.S.C. §§ 5861(e) and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth Amendment."  Hoover's Motion at 21; see also id. at 13–15 (citing several cases that applied the vagueness doctrine).  He asserts, "In no event would a reasonably intelligent person foresee that the conduct charged in this case— talking about a card with a drawing on it—would be deemed criminal, much less that a homogenous piece of steel with a drawing on it would be deemed a combination of parts."  Id. at 21.

Challenging a statute for vagueness is an assertion that "criminal responsibility should not attach [because] one could not reasonably understand that his contemplated conduct is proscribed."  United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32–33 (1963).  A statute must "define the criminal

---

[2] Defendants raise several additional arguments based on evidence that they contend shows their innocence.  See Hoover's Motion at 6 (Ervin's instructions to Orange Park Machine & Fab.); id. (testimony that drawings and templates are not machineguns); id. at 8 (witness who failed to convert his rifle to fire automatically); id. at 10 (Hoover's statements about the legality of the Auto Key Card); id. at 21 (no evidence showing that a purchaser of the Auto Key Card successfully converted a weapon to shoot automatically).  However, to succeed on a motion for judgment of acquittal, "[t]he defendant must do more than 'put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.'"  United States v. Toll, 804 F.3d 1344, 1354 (11th Cir. 2015) (quoting United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006)).

offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Awan, 966 F.2d 1415, 1424 (11th Cir. 1992) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)). If a vagueness challenge to a statute does not involve the First Amendment, then the analysis must be applied to the facts of the case.[3] United States v. Duran, 596 F.3d 1283, 1290 (11th Cir. 2010). Notably, the Supreme Court has instructed that there is a "strong presumption supporting the constitutionality of legislation." Nat'l Dairy Prods. Corp., 372 U.S. at 32. The Eleventh Circuit has instructed that "[i]n analyzing a vagueness claim, the first step in determining whether a statute provides fair warning is to begin with the language of the statute itself. Where the language alone sets forth plainly perceived boundaries, no further inquiry is necessary." Duran, 596 F.3d at 1291 (citation omitted).

Here, the language of the relevant statutory provisions sets forth plainly perceived boundaries. The NFA prohibits possessing or transferring unregistered machineguns. See 26 U.S.C. § 5861(d)–(e). The statute defines the term "machinegun" as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function

---

[3] Defendants do not argue that their vagueness challenge involves the First Amendment, and they specifically state that they are challenging the statutes "as applied." Hoover's Motion at 21.

- 18 -

of the trigger.  The term shall also include . . . any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . . .

26 U.S.C. § 5845(b).  This language is clear and definite.  In the context of a prosecution for possessing and transferring machinegun conversion devices, the former Fifth Circuit rejected a defendant's argument that the statute is unconstitutionally vague.  See United States v. Campbell, 427 F.2d 892, 893 (5th Cir. 1970) (per curiam).[4]  Notably, Hoover does not identify which portion of this definition is supposedly vague.  He does not explain how the statute fails to define the crime "with sufficient definiteness that ordinary people can understand what conduct is prohibited."  Awan, 966 F.2d at 1424.  Nor does he explain how the statute encourages "arbitrary and discriminatory enforcement."  Id.

Instead, Hoover emphasizes that the NFA does not give notice that drawings and tchotchkes are illegal.  For example, Hoover asserts, "[i]t should not be controversial to state that a statute proscribing a 'combination of parts' gives no notice that a drawing, or even a drawing that could become a

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. However, because vagueness challenges are "as applied" and the court in Campbell faced somewhat different facts, the holding in Campbell likely is not controlling in this case.  It is nevertheless persuasive authority that the statutory language generally is sufficiently clear to put a person of reasonable intelligence on notice as to what is forbidden.

combination of parts through transformative labor, [is] covered." Hoover's Motion at 14; see also id. at 18 ("Such tchotchkes are not regulated under the Gun Control Act or the [NFA]."); id. at 20–21 ("The statute does not refer to something that may one day become a part, nor does it refer to drawings or schematics for parts. It refers, quite simply, to something that is a combination of parts."). However, the Government has never suggested that the NFA applies to mere drawings or novelties. And, the Court did not instruct the jury that it could convict based on the transfer of a mere tchotchke, drawing, or drawing that could become a combination of parts. Rather, the Court instructed the jury that it could only find Defendants guilty if the Government proved beyond a reasonable doubt that Defendants had possessed and transferred a "combination of parts designed and intended" for use in converting a weapon into a machinegun. Jury Instructions at 18, 25. Thus, Hoover's arguments about drawings and trinkets are unavailing.

Hoover also lists hypotheticals and asks whether they are prohibited by the statute. See Hoover's Motion at 19 ("If the DXF File of the Drawing and instructions how to break the law, like the Anarchist Cookbook, are constitutionally protected speech, is the Drawing with oil-based paint on [a] piece of stainless steel, okay? What about military grade plastic with the etching—is that Kosher?"). While those hypotheticals may identify difficult or

close cases, they do not explain what is vague about the statutory language itself. The Eleventh Circuit has instructed,

> [Void for vagueness] does not mean that the statute must define every factual situation that may arise. The existence of "marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." Moreover, ignorance of the fact that one's conduct is a violation of the law is no defense to criminal prosecution.

United States v. Nelson, 712 F.3d 498, 508 (11th Cir. 2013) (citations omitted) (quoting United States v. Biro, 143 F.3d 1421, 1430 (11th Cir. 1998)); see also Johnson v. United States, 576 U.S. 591, 601 (2015) ("[E]ven clear laws produce close cases . . . ."). The Supreme Court also has noted, "As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" Johnson, 576 U.S. at 603–04 (alteration in original) (quoting Nash v. United States, 229 U.S. 373, 377 (1913)). Whether Defendants transferred a "combination of parts" may not have been obvious in this particular case. But the law itself provides a meaningful standard. Applying that standard to Defendants' real-world conduct, the jury found that Defendants went too far and, rather than transferring mere art, they were, in

fact, transferring a combination of machinegun parts. Resolving that factual question was well-within the province of the jury.[5]

In addition, "[b]ecause 'objections to vagueness under the Due Process Clause rest on the lack of notice,' an as-applied vagueness challenge 'may be overcome in any specific case where reasonable persons would know that their conduct is at risk.'" United States v. Edgar, 304 F.3d 1320, 1327 (11th Cir. 2002) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)). Here, the Court concludes that a reasonable person would know that selling an Auto Key Card would place him at risk. In fact, as discussed above, the evidence showed that Ervin and Hoover knew their conduct was at risk. See id. at 1328 (rejecting a vagueness challenge in light of the defendant's "knowledge and experience," which showed that he "[s]urely" knew his conduct was unlawful). The Supreme Court has found that it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1952). Ervin and Hoover acted deliberately to sell a product that they knew was

---

[5] For the same reasons, Defendants' argument fails to the extent they rely on the rule of lenity. See Hoover's Motion at 16–18. The rule of lenity applies "where there is a 'grievous ambiguity or uncertainty' in the statute." United States v. Izurieta, 710 F.3d 1176, 1182 (11th Cir. 2013) (quoting Chapman v. United States, 500 U.S. 453, 456 (1991)). Defendants do not identify any ambiguity in 26 U.S.C. §§ 5845, 5861, and 5871. Defendants wrongly equate uncertainty about a factual question (whether the items Defendants transferred were mere drawings or a combination of parts) with doubt about a legal question (the meaning of the statute itself).

"edgy," Gov't Ex. 14; Gov't Ex. 14A, at 1, and a "gray-market item," Tr. Vol. 4, at 266–67. Having knowingly taken that risk, Defendants may not now complain that the statute provided them insufficient notice. For all of these reasons, Defendants' vagueness challenge is unavailing.

### 3. Constructive Amendment of the Indictment

Hoover argues that the Government impermissibly shifted from prosecuting a "part" theory to prosecuting a "combination of parts" theory. Hoover's Motion at 11. In support of this argument, Hoover cites United States v. Chandler for the proposition that it is error for the grand jury to indict on one theory of illegal conduct and the Government to prosecute the case on another, entirely different theory. See 388 F.3d 796, 798 (11th Cir. 2004). But no impermissible shift in the Government's theory occurred here. In the operative Indictment, the Government charged that Defendants had transferred and possessed a "combination of parts designed and intended for use in converting a weapon into a machinegun." Indictment at 2, 10–16. At trial, the Government presented proof and argued that the Auto Key Card is a combination of parts. See Tr. Vol. 8, at 35. And, consistent with the language of the Indictment, the Court instructed the jury on the "combination of parts" portion of the definition of a machinegun. Jury Instructions at 18, 25. Because the Government did not impermissibly shift its theory of the case, Defendants' argument is unavailing.

### B.    Structuring Currency Transactions (Count Nine)

With regard to Count Nine of the Indictment, the jury found Ervin guilty of structuring, and attempting to structure, currency transactions for the purpose of evading currency transaction reporting requirements.  See Ervin Verdict at 4.  Ervin argues that "there is no record evidence that [he] was attempting to avoid the reporting requirement."[6]  Ervin's Motion at 5.

The Court finds that the record contains sufficient evidence from which the jury could reasonably conclude that Ervin acted with the purpose to evade the transaction-reporting requirements.  An employee of Ervin's bank Amy Sarkese testified that Ervin asked her what the threshold to trigger the reporting requirement was.  See Tr. Vol. 3, at 162 ("Well, how much can I take out so it's not reported?").  Sarkese stated that Ervin asked this question sometime before he started repeatedly withdrawing $9,000 in cash from his account.  See id. at 197.  On the day of the first structured transaction,

---

[6] Ervin also argues that the law requires the Government to prove that he knew of the "actual reporting requirement" and of his duty not to avoid triggering a transaction report. Ervin's Motion at 5 (citing Ratzlaf v. United States, 510 U.S. 135, 146–47 (1994)).  This argument misstates the law because Congress amended 31 U.S.C. § 5324 after the Supreme Court's decision in Ratzlaf.  See United States v. Vazquez, 53 F.3d 1216, 1218 n.2 (11th Cir. 1995).  "[T]he only mental state apparently required under the new penalty provision is a purpose to evade the filing requirement."  Id.; see United States v. Hernandez, 490 F. App'x 250, 253 (11th Cir. 2012) (per curiam).

In citing Hernandez, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

December 28, 2020, Ervin initially asked to withdraw all of the money in his account in cash. See id. at 170–71. According to Sarkese, she informed him that he could not withdraw all of the money in cash that day. See id. at 171. Sarkese instead offered to allow him to withdraw $10,000. See id. Although Ervin at first agreed to withdraw this amount, he changed his mind and asked to withdraw $9,000. See id. at 171–73. Based on this testimony, the jury could reasonably infer that Ervin heard "$10,000," became concerned about the reporting threshold, and requested a lower amount to avoid triggering the reporting requirement. In addition, Sarkese testified that Ervin had the option of withdrawing all of his money in cash at once through a special order that could have been available by the end of the following week. See id. at 171. Instead of requesting a special order and waiting less than two weeks to receive all of his money, Ervin returned to a branch of his bank on seven separate days over the course of a week and a half and withdrew $9,000 in cash each time. See Gov't Ex. 95C (Doc. 259-302) at 22–23, 26. This course of conduct readily supports an inference that Ervin was acting with the intent to evade the reporting requirement. See United States v. Vigil-Montanel, 753 F.2d 996, 999 (11th Cir. 1985) ("A defendant's intent can be inferred from his conduct and all the surrounding circumstances."). Therefore, the Court will deny Ervin's Motion as to Count Nine.

## III.   Conclusion

Viewing all of the evidence in the light most favorable to the jury's verdict, the Court finds that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt as to each conviction. And Defendants' legal challenges are unavailing. Accordingly, it is

**ORDERED:**

Defendant Kristopher Justinboyer Ervin's Post-Verdict Motion for Judgment of Acquittal (Doc. 273) and Defendant Matthew Raymond Hoover's Motion for Judgment of Acquittal (Doc. 274) are **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on August 23, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No:      3:21-cr-22(S4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN

_____/

**SENTENCING MEMORANDUM
AND
INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Defendant, Kristopher J. Ervin, by and through his undersigned

counsel, and hereby files this Sentencing Memorandum and Incorporated Memorandum of Law,

and in support thereof, states as follows:

A.      Introduction – Background on Kristopher J. Ervin

1.      Family Background

Mr. Ervin is 43 years of age.  He was born in Jacksonville, Florida, and has resided in

the Jacksonville area, all but three years of his life.  PSI at ¶78.  Mr. Ervin's parents are Kris

and Karen Ervin.   His father resides in Orange Park and is employed as a project manager.   His

mother died in 2017.   Prior to her passing, Mr. Ervin was her caretaker for approximately four

years.  PSI at ¶79.  Mr. Ervin's parents were married for 43 years before his mother's death.

PSI at ¶81. Mr. Ervin had a good upbringing and was raised in a caring and loving family.

Mr. Ervin has one brother and one sister.   His brother, Jonathan Ervin, is employed with

the Jacksonville Sheriff's Office.   His sister, Kristen Ervin, is a corporate trainer in Orange Park.

PSI at ¶80.   Mr. Ervin has a healthy relationship with his father and siblings.

Mr. Ervin has never been married, nor has any children.   PSI at ¶82.

2.      Education

Mr. Ervin graduated from Orange Park High School in 1999. Thereafter, he enrolled in Florida State College at Jacksonville, but did not complete classes to earn a degree.

3.      Employment

As noted above, from 2014 until 2018, when Mr. Ervin's mother was ill, Mr. Ervin was her primary caregiver until she passed. PSI at ¶100. Mr. Ervin has attempted to find his niche as an entrepreneur. Between 2018 and 2019, Mr. Ervin operated an online store named Crazy Uncle Justin. He sold toys (such as slime and mini drones) on Amazon. PSI at ¶99.

4.      Medical

Mr. Ervin has a medical history that includes back pain and frequent sinus and ear infections. Since his incarceration, Mr. Ervin has been treated for back pain, as well as sinus infections. PSI at ¶86-87.

5.      Substance Abuse

Mr. Ervin reports a history of drug use, including smoking marijuana daily as a "coping mechanism." PSI at 89. As a result of his urine screening prior to his initial appearance, Mr. Ervin tested positive for the presence of marijuana. *Id.* Mr. Ervin reports daily marijuana use for the last 21 years. *Id.* Mr. Ervin recognizes he would greatly benefit from substance abuse treatment and requests the Court to consider ordering him into a RDAP.

6.      Criminal History

It is important to note that Mr. Ervin has no juvenile history, arrest history (other than this matter), or prior convictions. In 2001, when Mr. Ervin was 21 years old, he was issued a citation for an open house party. He received a withhold of adjudication and was ordered to pay court costs and fines. Mr. Ervin does not score for his prior criminal history. PSI at ¶71-75.

2

B.    Character Letters

Attached as Composite Exhibit A are four character letters from friends of family of Mr. Ervin.

The first letter is from Louis Bono, who has known the Ervin family for over 45 years. His son and Mr. Ervin were born within a year of each other, and spent a lot of family time together, canoeing, hiking and attending sporting events. Mr. Bono states that Mr. Ervin "grew up in a good supportive family," and even through these tough times, "his family fully supports him." Mr. Bono confirms how Mr. Ervin's father has been "devastated by all of this." Mr. Bono has firsthand knowledge that he has never seen Mr. Ervin even remotely indicate a willingness to break the law, and, to the contrary, that "he [Mr. Ervin] has always avoided people and situations that may be questionable."

The second letter is from Dr. Charles Hudgins. He has known the Ervin family over 30 years. Upon learning of Mr. Ervin's arrest, Dr. Hudgins offered Mr. Ervin to live with him, although that option never materialized. Dr. Hudgins spent a lot of time with Mr. Ervin, who also provided technical support for his dental practice. They shared stories about hiking the Appalachian trail and Mr. Ervin's love of nature. Dr. Hudgins knows Mr. Ervin would "never willingly break the law," and opines this was "an error in judgement."

The third letter is from James Wucher, who is the stepfather of Mr. Ervin's sister-in-law. Mr. Wucher has known the Ervin family for over 30 years as well. He is a retired U.S. Naval Aviator and is currently a pilot and Captain for a major U.S. airline. He speaks very highly of Mr. Ervin and refers to him as some who "has always been one to help and do the right thing." Mr. Wucher also comments on Mr. Ervin's relationship with his grandson, who is Mr. Ervin's

3

nephew.   Mr. Ervin adores his nephew and they miss each other terribly. Mr. Wucher's grandson is who inspired Mr. Ervin to begin his Amazon store, selling children's toys.  Mr. Wucher refers to the Ervin family as "top notch" and who "support each other fully." Similar to Dr. Hudgins, Mr. Wucher states how this has to be a "judgement situation," as he has "never known Justin to be in any type of trouble except this situation."

The fourth and final letter is from Darren Nichols, another over 30-year family friend of the Ervin family.   Mr. Nichols and Mr. Ervin's father were business associates, and Mr. Ervin's sister was an employee of his.   Over the course of the last 30 years, Mr. Nichols also grew to know Mr. Ervin and his brother.   Mr. Nichols refers to the Ervin family as "nothing but the type of American family that has made our country great."   He refers to Mr. Ervin as "very patriotic and [a] law-abiding citizen."   Mr. Nichols has "never known Mr. Ervin to be in any trouble or cause any type of trouble," and how Mr. Ervin thought was he was doing was legal.   In closing, Mr. Nichols states how Mr. Ervin is a "good solid person, always helpful and assists the less fortunate by helping where and when he has an opportunity."

All four of these letter state how Mr. Ervin is a proud American and law-abiding citizen, who would never do anything willfully or intentionally to break the law.  It is apparent by speaking with Mr. Ervin that the only thing he loves more than his patriotic beliefs, is his family.

C.    PSI Objections

The PSI (Doc. 311) was thoroughly prepared by the United States Probation Office and has been revised with the Defendant's minor factual revisions.  Mr. Ervin has one objection to the calculation of the guidelines and the Government has an objection as well.

1.      Mr. Ervin's Objection

The guidelines provide a two level enhancement for Mr. Ervin with regard to the structuring transaction Mr. Ervin was convicted of in Count 9 of the Second Superseding Indictment. The relevant guideline, U.S.S.G. §2S1.3(b)(1)(A), provides that "if the defendant knew or believed that the funds were proceeds of unlawful activity, or were intended to promote unlawful activity, increase by 2 levels."  However, Mr. Ervin denies said knowledge or belief that the funds were proceeds of unlawful activity.   At the time the transactions were completed, Mr. Ervin subjectively did not know or believe that the money he was earning from the Auto Key Card business was unlawful.   Mr. Ervin has maintained his plea of not guilty through trial and subjectively did not believe or know that the proceeds of the business activities he was conducting were unlawful.   During this time and course of conduct, the record is clear that Mr. Ervin was conducting business open and notoriously, which belies any allegation that Mr. Ervin knew or believed his underlying conduct was unlawful.   Although the jury did not agree with the lawfulness of Mr. Ervin's conduct through their verdict, he believed it was lawful at the time.

The clear purpose of this enhancement is to punish individuals who engage in structuring to attempt to hide the proceeds of illicit activity.   Mr. Ervin, while maintaining his innocence as to this count, clearly, albeit erroneously, believed that his conduct selling Auto Key Cards was entirely lawful.   When actually providing information for a currency transaction report completed in the course of conduct Mr. Ervin was convicted of, Mr. Ervin said that his business was the Auto Key Card business.   Specifically, U.S.S.G. §2S1.3(b)(1)(A) only provides for an enhancement if Mr. Ervin "knew or believed that the funds were proceeds of unlawful activity." If the guideline was intended to capture conduct where a defendant engaged in a structuring

5

transaction while believing the underlying conduct was lawful, even incorrectly, the guideline would merely state "if the funds were proceeds of unlawful activity, or were intended to promote unlawful activity, increase by 2 levels." The plain language of the guideline requires knowledge or belief of the illegality of the underlying conduct, rather than a mere determination as to its illegality.  If the intention of the enhancement was to punish any transaction that involved proceeds of illegal activity, the enhancement would say so.  As worded, the enhancement is intended to punish individuals who knowingly structure financial transactions to conceal evidence of a crime, not to punish individuals who erroneously believe their underlying conduct is lawful.  As such, we do not believe this guideline is appropriately applied in this situation.

2.      The Government's Objection

The Government provided a nine-page objection letter that undersigned counsel anticipates the Government will argue at sentencing, so counsel is providing a response to those arguments for the Court's consideration prior to sentencing.

The Government's specific objection is their position that it is their belief the Probation Office fails to apply the applicable Specific Offense Characteristics ("SOC") in USSG §2K2.1, specifically, §2K2.1(b)(1)(E) for the offense involving in excess of 200 firearms, and §2K2.1(b)(5) for the defendants being engaged in the trafficking of firearms.  It is the Government's position that failure to apply the SOCs contradicts the plain language of the Guidelines, that results in a massive undercalculation of the Defendants' respective Guideline ranges.

The PSI specifically addresses the Government's issue. The PSI states,

> The Defendant possessed approximately 6,600 auto-sears which according to 26 U.S.C. § 5861 are machineguns.  However, because auto-sears do not meet the definition of "firearm" pursuant

> to 18 U.S.C. § 921(a)(3), the specific offense characteristics at USSG § 2K2.1 for the number of firearms possessed is not applicable.   If auto-sears were considered firearms, 10-levels would have been added to Ervin's offense level, resulting in an advisory range of 97 months to 121 months.

PSI at ¶120.

At trial, it was a question for the jury if the Auto Key Card was a machinegun conversion device consisting of a combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.   Pursuant to 26 U.S.C. § 5845(a), the definition of "firearm" means "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."   26 U.S.C. § 5845(b).

The Government prevailed at trial, as the jury determined that the Auto Key Card was a combination of parts designed and intended for use in converting a weapon into a machinegun. As a result, the Defendant was convicted on all counts.   However, the Government fails to recognize the standard and application of the law for a jury to either convict or acquit a defendant of any similar charge, does not apply to the Sentencing Guidelines.

Attached as Exhibit B is a Memorandum Opinion and Order issued in *United v. Hixson*, 624 F. Supp. 3d 930 (N.D. Ill. 2022).   The district court found as follows:

> The Guidelines do *not* include machine guns–including devices that convert semiautomatic weapons into fully automatic weapons–in the definition of "firearms." *Compare* 18 U.S.C. §921(a)(23) (definition of

7

machinegun) *with* § 2K2.1 Application Note 1 (defining firearm to mean the definition in 18 U.S.C. § 921(a)(3)). Whether that void is intentional and whether the United States Sentencing Commission intends to fill that void now that it finally has a quorum is beyond the Court's knowledge. [*footnote omitted*]. But, in fashioning a just sentence, the Court can look to the Sentencing Guidelines when it considers the statutory factors identified in 18 U.S.C. § 3553(a). Counsel and the Court were unable to locate any reported decision on the issue raised in this case. It appears that only a few other judges have addressed the issue but not in a written decision. [*footnote omitted*]

Exhibit B at 1.

In *Hixson*, the court specifically addresses the distinction between definitions of "firearm" and "machinegun."

Section 921(a)(3) defines "firearm" to mean "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3). The definition of "machinegun" is stated elsewhere in Title 18. Section 921(a)(23) defines "machinegun" by referencing the National Firearms Act, so that the term "machinegun" "has the meaning given such term in section 5845(b) of the National Firearms Act." 18 U.S.C. § 921(a)(23). Section 5845(b) of the National Firearms Act defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, *any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*, and any combination of parts

8

from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845 (emphasis added).

In contrast, the Sentencing Guidelines define "firearm" as only having "the meaning given that term in 18 U.S.C. 921(a)(3)." § 2K2.1 Application Note 1. But there exist three references to the statutory definition of a machinegun in § 2K2.1. Specifically, in setting the base offense level, a base level of 26 is required, if the offense involved a machinegun and the defendant committed any part of the offense after receiving at least two felony convictions for either a crime of violence or a controlled substance offense. § 2K2.1(a)(1). Next, in setting the base offense level, a base level of 20 is required if the offense involved a machinegun and the defendant meets three other requirements. § 2K2.1(a)(4). Finally, in setting the base offense level, a base level of 18 is required if the offense simply involved a machinegun. § 2K2.1(a)(5). All specific offense characteristics ("enhancements" providing for an increase in the offense level) under § 2K2.1 refer to "firearm," including the enhancement when three or more "firearms" are involved, and the enhancement for "trafficking of firearms." § 2K2.1(b)(1); § 2K2.1(b)(5). Exhibit B at 4.

Mr. Ervin believes the analysis by the United States Probation Office accurately reflects the correct application of the sentencing guidelines. The Government contends that it is erroneous to look to the commentary to determine what a "firearm" is, because the definition is clear in the plain language of the Guidelines. *See generally United States v. Dupree,* 57 F.4th 1269 (11th Cir. 2023). However, it is clear that the Auto Key Card does not fit any normal definition of a firearm, thus reference to the Application Notes is entirely appropriate. Outside of any individual with specific knowledge of the requirements of the National Firearms Act and

expert level familiarity with the operation of semi-automatic weapons, nobody would believe the Auto Key Card is a firearm.  As Judge Merryday has held, devices like the Auto Key Card "are not necessarily readily recognizable as either a machine gun or a mischievous implement of any kind at all. They are only statutory machine guns. For example, a sere appears disarmingly innocent, but it is a statutory machine gun." *United States v. Aguilar-Espinosa*, 57 F. Supp. 2d 1359, 1367 (M.D. Fla. 1999).  As the Auto Key Card is not clearly a firearm under any plain definition or understanding of the word, it is entirely appropriate to look to the Application Notes for further guidance.  In doing so, it is clear that the items at issue in trial do not meet the definition in the Application Notes and therefore, as to that issue, the guidelines are correctly calculated.

The Government not only disagrees with the *Hixson* court's findings, but the Probation Office's PSI.  The Government is maintaining the position that if the Court decides that the commentary definition of "firearm" controls and that the number of firearms and trafficking enhancements do not apply, it should depart and/or vary upward to account for the large number of auto sears manufactured, marketed, and sold by Ervin and Hoover.  For all the reasons set forth in *Hixson*, and referenced herein, we ask the Court to not accept the Government's arguments in this regard.

D.    Conclusion

Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory only, and the Court has discretion to impose a sentence below any guidelines range determined by the Court, as well as to consider a variance.  Thus, although the PSI and Mr. Ervin's Sentencing Memorandum has addressed grounds for departure, Mr. Ervin respectfully

requests the Court consider them not only as traditional grounds for departure, but as grounds supporting the Court's exercise of discretion, after ascertaining the guideline range.

Indeed, not only are the Guidelines merely advisory only, but any presumption that a sentence imposed within the Guidelines is "reasonable" – is in error. *Nelson v. United States*, 555 U.S. 350 (2009). *Nelson*, decided January 26, 2009, held that:

> The Guidelines are not only <u>not mandatory</u> on sentencing courts; they are also not to be <u>presumed</u> reasonable.
>
> * * *
>
> Under our recent precedents, [applying a presumption of reasonableness to the Guidelines] constitutes error.

*Id.* at 351.

Thus, the Court is authorized, and indeed, respectfully, required, to impose, and Mr. Ervin is entitled to have imposed, a sentence that "is appropriate for the individual defendant in light of the statutory sentencing factors [of] 18 U.S.C. § 3553(a)." *Id*.

The Sentencing Commission has commented on "the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision." Accordingly, the Commission has empowered judges to employ "downward departures" as a means for imposing sentencing below the guideline sentencing range. As the Supreme Court has confirmed, the Sentencing Guidelines "place essentially no limit on the number of potential factors that may warrant a departure." *Koon v. United States*, 518 U.S. 81, 106 (1996).

In closing, Mr. Ervin is an upstanding citizen, with no prior convictions. He is a proud American citizen, who believes in the law and in the Constitution. Mr. Ervin is an appropriate

11

candidate for RDAP, and we ask this Honorable Court to consider all of the above mitigation and sentencing issues to determine an appropriate sentence for Mr. Ervin.

WHEREFORE, it is respectfully requested that this Honorable Court consider the personal characteristics of Mr. Ervin in fashioning a sentence that is sufficient, but not greater than necessary, in comportment with 18 U.S.C. §371, 18 U.S.C. §5871 and 18 U.S.C. §3424(d)(1).

**Respectfully submitted,**

**Monroe & King, P.A.**

_____/s/ Alex King_____

Alex King, Esq.
Florida Bar No:   86034
Monroe & King, P.A.
1805 Copeland Street
Jacksonville, Florida 32204
**Pleadings to**: admin@monroekinglaw.com
(904) 355-7777 Telephone
Attorneys for Defendant

Exhibits

A.  Character Letters – Composite
B.  Copy of Memorandum Opinion and Order issued in _United States v. Hixson_, 624 F. Supp. 3d 930 (N.D. Ill. 2022)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email to:   Laura Cofer Taylor, Esq., Office of the United States Attorney, Laura.C.Taylor@usdoj.gov, this 1st day of September, 2023.

_____/s/ Alex King_____
ATTORNEY

12

# EXHIBIT A

Orange Park, FL 32065

September 6. 2023

Your Honorable Judge Howard,

I have been a lifelong friend of the Ervin family for over 45 years. My son and Justin were born within one year of each other and I have seen Justin, his brother and sister grow up. We went canoeing and hiking. attended sporting events, all of the normal activities. Justin grew up in a good supportive family. Even through these tough times, his family fully supports him. His father has been devastated by all of this.

During all of this time, I have never seen Justin even remotely indicate a willingness to break the law. He has always avoided people and situations that may be questionable. I am aware of the charges against Justin and truly find this outside of the Justin I have known for so many years. I am sure he did not intentionally break the law.

I am happy to provide this letter to the court in the hopes that the court will have leniency.

Sincerely,

Louis M. Bono

Dr. Charles Hudgins,

767 Blanding Blvd # 109,

Orange Park, FL 32065


September 6, 2023


Your Honorable Judge Howard,


I am Dr. Charles Hudgins, the Ervin's family dentist since the 1990's. My daughter and Kristen Ervin (Justin's sister) played softball together for many years and I came to know this family very well.

When Justin was arrested in March of 2021, I spoke with his father about, if Justin needed an option of an alternative place to stay my family would be open to the possibility. As you know that option did not materialize. However, I am aware of the charges against Justin Ervin and his upcoming sentencing date. It is my pleasure to provide this letter to the court in the hopes that the court will have leniency.

As stated, previously Justin and I spent time together watching softball games, he provided technical support for my dental practice, and we shared lots of stories about him hiking the Appalachian trail. He absolutely loves nature. This gave me the opportunity to really know Justin as a person, I cannot imagine this was anything more than an error in judgement. The Justin I know would never willingly break the law.

Your honor, please consider his outstanding character in your decision.


Sincerely,


Dr. Charles Hudgins

James Wucher

2292 Salt Myrtle Ln

Fleming Is FL 32003


September 6, 2023


Your Honorable Judge Howard,

I am James Wucher. My stepdaughter (Megan Ervin) is married to Johnathan Ervin (Justin's brother).

I have known the Ervin family since the 1990's, including Justin Ervin. Since Justin's arrest in March of 2021, I have kept up with the legal process and am aware of the charges against Justin Ervin and his upcoming sentencing date. I am happy to write this letter for Justin so the court may have a better insight into what Justin's character truly is.

A little about my background. I am a retired US Navy aviator and currently a pilot and captain for a major US airline. These positions require me to make solid judgements and I take this letter just as seriously. I would have liked to have spoken on Justin's behalf but my flight schedule prevented my attendance.

Justin has always been one to help and do the right thing. One example that comes to mind is when hurricane Irma hit Jacksonville, Justin brought over his generator, sandbags, and extension cords so we could have power and prevent flooding. He did this of his own good will.

His love for his nephew Cameron (my 8-year-old grandson) is unsurpassed. Cameron and Justin have long had a good relationship and Cameron misses him terribly. It is hard to hear an 8-year-old say his uncle is "in jail".

Justin and his family are top notch and support each other fully. I have never known Justin to be in any type of trouble except this situation. He has never expressed a desire to break the law or participate in any criminal activity. This has to be a one off, poor judgement situation.

Your honor, please give Justin as much leniency as possible.


Sincerely,


James Wucher

September 6, 2023

Your Honorable Judge Howard,

My name is Darren Nichols and I have been a friend of the Ervin family for over 30 years. Mr. Ervin (Kris) and I were business associates in the early 90's, Kristen Ervin was an employee of mine in the 90s for Clearwire Communications, and I know Justin and Jonathan very well. Currently, I am Vice President of Sales for Cassia Networks.

I am very aware of the charges; the guilty verdict and the potential sentencing Justin Ervin is facing. It would have been my pleasure to speak in person on his behalf, however when the sentencing date changed to September 6th, I unfortunately have an out of town Labor Day family commitment. However, I wanted to express my support for Justin.

For as long as I have known Justin and his family, they have been nothing but the type of American family that has made our country great. Justin is very patriotic and law-abiding citizen. I have never known him to be in any trouble or cause any type of trouble. This situation is so out of character that I can only surmise that he felt, right or wrong, that what he was doing was legal. He never expressed, that know of, any other sentiment. He is a good solid person, always helpful and assists the less fortunate by helping where and when he has an opportunity.

Hopefully Your Honor, our justice system can bestow appropriate leniency to Justin in this most unique case.

Sincerely,

Darren M Nichols

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | ) No. 21 CR 50016 |
| | ) Judge Iain D. Johnston |
| Javaughn A. Hixson. | ) |

## MEMORANDUM OPINION AND ORDER[1]

### ISSUE

The United States Sentencing Guidelines have a void.[2] The Guidelines do *not* include machine guns—including devices that convert semiautomatic weapons into fully automatic weapons—in the definition of "firearms". *Compare* 18 U.S.C. § 921(a)(23) (definition of machinegun) *with* § 2K2.1 Application Note 1 (defining firearm to mean the definition in 18 U.S.C. § 921(a)(3)). Whether that void is intentional and whether the United States Sentencing Commission intends to fill that void now that it finally has a quorum is beyond the Court's knowledge.[3] But, in fashioning a just sentence, the Court can look to the Sentencing Guidelines when it considers the statutory factors identified in 18 U.S.C. § 3553(a). Counsel and the Court were unable to locate any reported decision on the issue raised in this case. It appears that only a few other judges have addressed the issue but not in a written decision.[4] With the proliferation of these devices and the ease by which they can be created using a 3-D printer, the Court anticipates many more sentences in the future.

---

[1] This memorandum opinion and order supplements the Court's statement of reasons.

[2] Nothing in this order should be read as disparaging the good people at the United States Sentencing Commission. In the Court's experience, the Commission's staff is diligent, smart, knowledgeable, and helpful. In addition to studying and reporting on sentencing issues, each year, the staff at the Commission fields countless calls from judges and attorneys, seeking input and guidance. The Court commends them for their work.

[3] The Sentencing Guidelines explicitly recognize that they cannot anticipate every sentencing circumstance. § 5K2.0(a)(2).

[4] Judge David Godbey is likely the first judge to have addressed this issue. https://www.justice.gov/usao-ndtx/pr/man-sentenced-four-years-machinegun-crime. Judge C.J. Williams appears to have followed shortly afterwards. https://www.justice.gov/usao-ndia/pr/man-who-possessed-3d-printed-glock-switch-sentenced-federal-prison. And Judge John A. Gibney recently sentenced a defendant who used a Glock switch during a shootout. https://www.justice.gov/usao-edva/pr/virginia-beach-man-sentenced-possessing-machine-gun-used-norfolk-shootout.

## FACTS

On May 4, 2022, Mr. Hixson pleaded guilty to two counts: (1) possession of a machinegun in violation of 18 U.S.C. § 922(o), and (2) unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The statutory maximum sentence and fine for both counts is the same—ten years' imprisonment and a $250,000 fine.

These charges result from Mr. Hixson's relevant conduct from October 2020 to January 2021. All of this relevant conduct occurred while he was on parole after a felony conviction.

On about October 22, 2020, Mr. Hixson exchanged Facebook messages with a confidential informant to sell a device that is a machinegun as defined by statute. As discussed in detail later, these devices are called auto sears, or more specifically in this case, Glock switches. These devices are designed solely and exclusively to convert a semiautomatic weapon into a fully automatic weapon. After Mr. Hixson communicated with the confidential informant, they met on the west side of Rockford, Illinois, so that Mr. Hixson could sell the switch. During this transaction, Mr. Hixson obtained the switch from his source and then sold the switch to the confidential informant for $400.

On November 5, 2020, Mr. Hixson again communicated with the confidential informant to sell two additional Glock switches for $800. The confidential informant told Mr. Hixson that he was going to sell the switches to a third party. Mr. Hixson and the confidential informant agreed to meet at a restaurant on the west side of Rockford for the sale. When Mr. Hixson arrived at the restaurant, the confidential informant got into Mr. Hixson's vehicle, and they drove to meet Mr. Hixson's source. The source arrived in a separate vehicle. Mr. Hixson exited his vehicle, obtained two switches, and returned to his vehicle. Mr. Hixson then sold the two switches for $800.

On November 16, 2020, Mr. Hixson exchanged messages with the confidential informant notifying him that Mr. Hixson had about six switches at that time.

On December 8, 2020, Mr. Hixson and the confidential informant engaged in a nearly identical transaction for the sale of another switch. But this time the price was $350.

In total, Mr. Hixson sold four switches to the confidential informant—one on October 22, 2020, two on November 5, 2020, and one on December 8, 2020. He also admitted to possession of about six switches on November 16, 2020. Assuming the switch sold on December 8, 2020, was one of the switches mentioned on November 16, 2020, the evidence establishes possession of 9 switches.

Finally, at about 2:00 a.m. on January 4, 2021, a Rockford Police Department officer attempted to stop a vehicle. Mr. Hixson was in the front passenger seat. His cousin was driving. But after the officer activated the squad's lights, the vehicle accelerated and did not stop. According to Mr. Hixson, he told his cousin "to go."

Dkt. 48, at 7. Eventually, the cousin stopped the vehicle. Mr. Hixson then jumped out and ran but he slipped in the snow. Before the officer could reach Mr. Hixson, Mr. Hixson discarded a firearm in the snow a few feet from where he was caught. The firearm was a 9 mm Glock with an extended magazine, loaded with 28 rounds of ammunition. Dkt. 48, at 7.

## AUTO SEARS CONVERT SEMIAUTOMATIC WEAPONS INTO FULLY AUTOMATIC WEAPONS

It appears that as long as semiautomatic weapons have existed, humans have attempted to create devices to make those weapons fully automatic. Indeed, auto sears have existed for decades, if not longer. *See, e.g., United States v. Cash*, 149 F.3d 706 (7th Cir. 1998) (discussing ATF Ruling 81-4 addressing auto sears); *United States v. Bradley*, 892 F.2d 634 (7th Cir. 1990) (same). But what were once previously handcrafted metal pieces are now small plastic pieces created by a 3-D printer. Those devices are often referred to as "switches." Unsurprisingly, when installed in Glock handguns,[5] they are referred to as "Glock switches." *Internet Arms Trafficking*, https://www.atf.gov/our-history/internet-arms-trafficking. They are also referred to as Glock conversion devices, Glock conversion kits, and Glock auto sears. When a Glock switch is attached to a semiautomatic Glock, the firearm becomes a fully automatic weapon—essentially a machinegun. So, when the trigger of a Glock with an attached Glock switch is depressed, the firearm can empty a standard magazine in about a second or an extended magazine in about two seconds. The resulting weapon can be difficult to control and is extremely dangerous,[6] which can result in "pray and spray." *Moran v. Clark*, No. 1:08-cv-

---

[5] Glock semiautomatic handguns are the type of weapons often used by drug traffickers. *See United States v. Wren*, 528 F. App'x 500, 509 (6th Cir. 2013); *United States v. Williams*, 345 F. App'x 979, 980 (6th Cir. 2009). But Glocks are common firearms. *Houston v. State*, No. CA CR 06-1043, 2007 Ark. App. LEXIS 471, at *11 (Ct. App. Ark. June 13, 2007). Indeed, much of the law enforcement community is armed with Glocks. Just as the ubiquity of cell phones among drug dealers does not mean that all cell-phone users are drug dealers, so too is the fact that possessing a Glock does not necessarily make a person a criminal. In this case, because Mr. Hixon is a felon and knew he was a felon, his possession of the Glock was illegal. 18 U.S.C. § 922(g)(1).

[6] Media outlets as diverse as Vice News and FOX affiliates have reported on Glock switches, providing video of the weapon firing. *See, e.g.,* Alain Stephens, *Tiny "Glock Switches" Have Quietly Flooded the US With Deadly Machine Guns*, March 24, 2022, https://www.vice.com/en/article/pkp8p8/glock-switches-auto-sears; Dennis Shanahan, *What are auto sears and how are they becoming a rising issue?*, April 7, 2022 https://fox40.com/news/sacramento-mass-shooting/gun-recovered-at-mass-shooting-scene-had-been-modified/. In fact, news outlets across the country have recently done stories on Glock switches. https://abc13.com/glock-switches-are-illegal-downtown-houston-officers-shot-hpd-shooting/11518379/; https://www.fox2detroit.com/news/man-charged-with-buying-glock-switches-that-turn-pistols-to-machine-guns; https://www.youtube.com/watch?v=vCzbQubIFhY.

01788, 2013 U.S. Dist. LEXIS 146300, at *18 (E.D. Cal. Oct. 9, 2013) ("pray and spray" shooting is a "method of shooting in which [the shooter] fire[s] off shots in a general direction without too much concern as to the specific location where the bullets [will] land). It has been reported that Glocks equipped with switches have been used in mass shootings. Dennis Shanahan, *What are auto sears and how are they becoming a rising issue?*, April 7, 2022 https://fox40.com/news/sacramento-mass-shooting/gun-recovered-at-mass-shooting-scene-had-been-modified/. One can only imagine the surprise of a law enforcement officer—let alone the average person—who encounters a criminal armed with one of these machineguns.

## DEFINITIONS OF "FIREARM" AND "MACHINEGUN"

Section 921(a)(3) defines "firearm" to mean "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3). The definition of "machinegun" is stated elsewhere in Title 18. Section 921(a)(23) defines "machinegun" by referencing the National Firearms Act, so that the term "machinegun" "has the meaning given such term in section 5845(b) of the National Firearms Act." 18 U.S.C. § 921(a)(23). Section 5845(b) of the National Firearms Act defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, *any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845 (emphasis added).

In contrast, the Sentencing Guidelines define "firearm" as only having "the meaning given that term in 18 U.S.C. 921(a)(3)." § 2K2.1 Application Note 1. But there exist three references to the statutory definition of a machinegun in § 2K2.1. Specifically, in setting the base offense level, a base level of 26 is required, if the offense involved a machinegun and the defendant committed any part of the offense after receiving at least two felony convictions for either a crime of violence or a controlled substance offense. § 2K2.1(a)(1). Next, in setting the base offense level, a base level of 20 is required if the offense involved a machinegun and the defendant meets three other requirements. § 2K2.1(a)(4). Finally, in setting the base offense level, a base level of 18 is required if the offense simply involved a machinegun. § 2K2.1(a)(5). All specific offense characteristics ("enhancements" providing for an increase in the offense level) under § 2K2.1 refer to "firearm," including the enhancement when three or more "firearms" are involved, and the enhancement for "trafficking of firearms." § 2K2.1(b)(1); § 2K2.1(b)(5).

Assuming a sentencing court equated each Glock switch (which, again, is statutorily a machinegun) as a "firearm" under the Guidelines Manual, an offense

4

level would increase based on the number of switches involved over 3.  § 2K2.1(b)(1).  Likewise, assuming a sentencing court equated a Glock switch as a "firearm" under the Guidelines Manual, the offense level would be increased by 2 levels if the switch were stolen.  § 2K2.1(b)(4).  Similarly, using the same assumption, the offense level would increase 4 levels if the defendant possessed a switch while leaving or attempting to leave the United States or possessed or transferred the switch with knowledge, intent, or reason to believe that the switch would be transported out of the United States or if the switch was used in connection with another felony offense or with the knowledge, intent, or reason to believe that the switch would be used or possessed in connection with another felony offense.  § 2K2.1(b)(6).

### SENTENCING PROCEDURE IN THE SEVENTH CIRCUIT

For those judges who prefer the structure of a clear, mechanical sentencing process like that articulated in § 1B1.1 of the Guidelines Manual, determining whether the Seventh Circuit requires two, three, or four steps might be a little vexing.  *See United States v. Settles*, No. 21-2780, __ F.4th __, 2022 U.S. App. LEXIS 22001, at*7 (7th Cir. Aug. 9, 2022) (four steps); *United States v. Loving*, 22 F.4th 630, 636 (7th Cir. 2022) (three steps); *United States v. Pankow*, 884 F.3d 785, 793 (7th Cir. 2018) (three steps); *United States v. Brown*, 732 F.3d 781, 786 (7th Cir. 2013). But it shouldn't be.  *See United States v. Hite*, No. 3:11-CR-78, 2012 U.S. Dist. LEXIS 132995, at *3-5 (N.D. Ind. Sept. 18, 2012) ("So long as it does not give undue weight to 'departure' provisions at the expense of non-guideline factors under § 3553(a), and thereby put a thumb on the scale favoring the guidelines framework, the Court sees no inconsistency between following the instructions in section 1B1.1 and the Seventh Circuit's treatment of 'departures.'").

Regardless of the number of steps, the sentencing process has two fundamental requirements: (1) correctly calculating the guideline range, and (2) applying § 3553(a).  *Brown*, 732 F.3d at 786.  In applying § 3553(a), the sentencing court can take guidance from the Guidelines Manual, *Loving*, 22 F.4th at 636, and must give due consideration to counsel's arguments, *United States v. Stephens*, 986 F.3d 1004, 1009 (7th Cir. 2021), as well as the defendant's allocution, *United States v. Griffin*, 521 F.3d 727, 731 (7th Cir. 2008).  If that process results in a sentence outside the guideline range, then the sentencing court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the variance.  *Settles*, 2022 U.S. App. LEXIS 22001, at *7.  The sentencing court must then show its work by explaining how and why it reached the sentence imposed, during which it must address the defendant's main arguments.  *Pankow*, 884 F.3d at 793; *see also Stephens*, 986 F.3d at 1009.  The *Pankow* decision succinctly stated the process: "A sentencing court is under no *duty*, however, to follow rigidly the §1B1.1 construct.  The sentencing court's only *duty* is to calculate the correct guidelines range, consider in the context of §3553(a) the factors the parties have set before it, and respond to those considerations in a meaningful way." 884 F.3d at 794 (emphasis in original).

The Court addresses these requirements later. But, to avoid any possible confusion, the Court first makes a major detour to explain how it is *not* determining Mr. Hixson's sentence. The Court recognizes that it entered a Rule 32(h) order and notified the parties that it was considering a departure under § 5K2.0, and that after *Booker*, Rule 32(h) "has lost all utility" because departures are obsolete. *Brown*, 732 F.3d at 786; Dkt. 55. The Court also recognizes that the traditionally very precise and careful Assistant United States Attorney argued that adding two sets of enhancements—one under § 2K2.1(b)(1)(B) and one under § 2K2.1(b)(5)— would increase the offense level to an advisory guideline range of 70 – 87 months, which was also referred to as a "modified range of 70 – 87 months' imprisonment." Dkt. 50, at 4, 7; Dkt. 48, at 31-32. Based on these statements, the Presentence Investigation Report noted that "the government [was] requesting that the Court consider" the § 2K2.1(b)(1)(B) and § 2K2.1(b)(5) enhancements. Dkt. 48, at 8. The Assistant United States Attorney also stated this 70 – 87 month range would "tether" the sentence. The Court acknowledges that—at first blush—its Rule 32(h) order and the United States' position might appear to "come[] dangerously close to formal departure analysis." *Settles*, 2022 U.S. App. LEXIS 22001, at *9. And an improper formal departure analysis might be inferred if "tether" means "anchor." *See United States v. Bravo*, 26 F.4th 387, 396-97 (7th Cir. 2022); *United States v. Davis*, No. 21-2114, 2022 U.S. App. LEXIS 13120, at *6-7 (7th Cir. May 16, 2022) (if guideline range is erroneous, then procedural error occurs because the guideline range anchors the sentencing court's discretion).

But the Court entered the order to give notice to Mr. Hixson's counsel to be prepared to address the precise issue of Glock switches being statutorily defined machineguns but not "firearms" under the Guidelines Manual. The Court often enters orders before hearings, notifying counsel to be prepared to discuss issues that cause the Court concern. This seems not only just but also best practices. Moreover, a fair reading of the United States' official version and its sentencing memorandum shows that the position is more nuanced and consistent with the Court's analysis below. As the Court sees it, the United States' position is that considering the enhancements under § 2K2.1(b)(1)(B) and § 2K2.1(b)(5) allows the Court to sentence Mr. Hixson under a more accurate reflection of the nature and circumstances and severity of the offense using the § 3553(a) factors. Dkt. 50, at 3; Dkt. 48, at 32. The Assistant United States Attorney confirmed the Court's understanding at the sentencing hearing. And, as to the "tether" comment, the Assistant United States Attorney immediately renounced that term. Indeed, she did so in the very next sentence.

The Court is not simply considering the Guidelines Manual's void under § 5K2.0, equating each Glock switch with a "firearm," totaling up the number of switches, and applying § 2K2.1(b)(1)(B) to increase the offense level by 4 levels. Similarly, the Court is not simply equating each Glock switch as a "firearm" to find that Mr. Hixson engaged in firearm trafficking under § 2K2.1(b)(5) to increase the offense level another 4 on top of the § 2K2.1(b)(1)(B) enhancement, resulting in a new total offense level of 25 instead of 17. Engaging in that process might be a

6

mechanical departure analysis inconsistent with Seventh Circuit precedent. *Settles*, 2022 U.S. App. LEXIS 22001, at *10. Instead, as explained in more detail later, the Court is sentencing Mr. Hixson based on who he is and what he did, not whether an enhancement applies under the Guidelines Manual's definition of "firearm." *United States v. Price*, 16 F.4th 1263, 1266 (7th Cir. 2021) ("[A] judge is entitled to impose sentence based on what the defendant actually did, whether or not a particular enhancement applies.").

## APPLYING THE PROCEDURE TO FACTS OF THIS CASE

### Calculating Correct Guideline Range

The parties and the Court agree that the offense level for Mr. Hixson is 17. His base level is 20 under § 2K2.1(a)(4)(B) because the offense involved a semiautomatic firearm that was capable of accepting a large capacity magazine and Mr. Hixson was a prohibited person—a felon—at the time he committed the offense. Because Mr. Hixson clearly demonstrated acceptance of responsibility for the offense, the offense level is decreased two levels under § 3E1.1(a). Another decrease of one level applies because of his timely notification to authorities of his intention to plead guilty under § 3E1.1(b). (20 - 2 - 1 = 17)

It is also undisputed that Mr. Hixson's criminal history category is III. He had six criminal history points.[7]

So, the correct and undisputed 2021 Sentencing Guidelines Manual guideline range is 30 – 37 months. (The guideline range would have been identical under the 2018 Sentencing Guidelines Manual.)

The 9 Glock switches involved in this case have not been used to enhance the guideline range. How the Court has considered those switches in fashioning a just sentence is explained next.

---

[7] Most of Mr. Hixson's criminal history points are the result of his previous felony conviction for aggravated unlawful use of a weapon. Dkt. 48, at 11-12. This conviction involved a July 15, 2018, arrest, when Mr. Hixson was unemployed. (In fact, he's never held a legitimate job.) At almost 1:00 a.m., Mr. Hixon—who was then 19 years old—was at a liquor store. He then got into a friend's car. After they drove off, they were stopped by a Winnebago County Sheriff's deputy. During the stop, the deputy could smell "a strong order of cannabis coming from the vehicle." Dkt. 48, at 12. A search of the vehicle uncovered three bags of cannabis and two loaded firearms. A search of Mr. Hixson produced two cell phones and $256 in cash—mostly $5 and $20 bills. In a post-arrest interview, Mr. Hixson admitted that one of the loaded firearms—a Taurus Millennium PT111 G2—and one of the bags of cannabis—which contained 17.5 grams of cannabis—were his. He denied knowledge and possession of the other contraband. Mr. Hixson was sentenced to 30 months' probation for this conviction. Two petitions to revoke probation were filed for failing to comply with several conditions of probation. After the second revocation petition, Mr. Hixson's probation was revoked, and he was sentenced to 18 months' imprisonment in the Illinois Department of Corrections. This conviction resulted in three criminal history points.

7

### Applying §3553(a) Factors

Section 3553(a) states, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection." 18 U.S.C. § 3553(a). The Court in determining the particular sentence to be imposed shall consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range; any pertinent Sentencing Commission policy statement; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a).

Mr. Hixson is being sentenced for two offenses: possessing a machinegun (the Glock switches on November 5, 2020) and possessing a firearm as a felon on January 4, 2021.

### Nature and Circumstances of the Offenses / Seriousness of the Offenses

The nature and circumstances of both offenses are extremely serious.

Mr. Hixson's felon-in-possession conviction alone is very serious. While on parole for an aggravated unlawful use of a weapon felony conviction, Mr. Hixson was armed with a firearm with an extended magazine containing 28 rounds of ammunition. Instead of stopping when confronted by law enforcement, he instructed his cousin to flee. And when his cousin finally stopped the vehicle, Mr. Hixson bolted again. Mr. Hixson was only apprehended after he slipped in the snow, but not before he discarded his loaded firearm onto a sidewalk next to a brick building.

Not to minimize the felon-in-possession conviction, but the nature and circumstances of the possession of a machinegun conviction are even more serious. Unfortunately, the seriousness of this offense is not captured by the correctly calculated Sentencing Guidelines' range. The range completely ignores this offense, which simply does not result in a just punishment.

Formerly denominated "departures" and "offense characteristics" are relevant in the sentencing process and courts should give them conscientious consideration. *Pankow*, 884 F.3d at 794. In this case, there are at least one departure and two offense characteristics that the Court considers by way of analogy. *Id*. at 793. The

8

departure provision in § 5K2.0(a)(2)(B) recognizes that circumstances may be present that the Sentencing Guidelines may not have identified but are nevertheless "relevant to determining the appropriate sentence." And the offense characteristics in § 2K2.1(b) counsel that the total number of firearms involved is a relevant factor as is when firearms are being trafficked. So, the failure to incorporate machineguns—here, including Glock switches—into the definition of "firearms" is a void in the Sentencing Guidelines, but selling multiple machineguns is undoubtably "relevant in determining the appropriate sentence." By way of analogy and to use the language of the Sentencing Guidelines, the number of Glock switches involved in Mr. Hixson's offense and that he was essentially trafficking these devices is relevant conduct that must be considered. It is inconceivable that a court could not consider possessing and selling multiple devices that are statutorily defined as machineguns in determining a defendant's sentence. As a result, the Court has considered these facts in determining a sentence for Mr. Hixson.

The sole and exclusive purpose of Glock switches, which are easily manufactured, is to convert an already dangerous firearm into an extremely dangerous machinegun. The dangerousness manifests itself not only in the sheer number of bullets that can be emptied from the magazine in the blink of an eye but also in the resulting lack of control of the firearm when discharging it. The damage a machinegun can inflict is enormous. The damage—intended and unintended—a handheld machinegun can inflict is just as great. This offense involved 9 Glock switches, some of which Mr. Hixson sold believing they would be resold to others.

### History and Characteristics of Mr. Hixson

Mr. Hixson's history and characteristics are not positive. Obviously, he has a prior felony conviction, which occurred when he was only 19 years old. Like these offenses, the prior felony conviction involved a firearm. Aggravated unlawful use of a weapon is serious. But Mr. Hixson did not take that conviction seriously, as evidenced by his repeated probation violations resulting in the revocation of probation. Then within mere months of being released from the Illinois Department of Corrections, while on parole, he committed the offenses for which he is being sentenced. Mr. Hixson has no educational or employment background. Although he claims to want to obtain his general equivalency diploma, he has taken no steps in that direction. The Court is aware that the Winnebago County Jail has offered classes for the last several years and that some inmates have obtained their diplomas. Additionally, Mr. Hixson has never held legitimate employment, which leads to the question of how he survived. The answer to that question is provided by information surrounding his aggravated unlawful use of a weapon felony conviction. The evidence shows during that time Mr. Hixson was riding around in a vehicle containing multiple bags of cannabis and two loaded firearms in the wee hours of the morning. Police found two cell phones as well as $256 in cash, mostly $5 and $20 bills on Mr. Hixson. This evidence shows that more likely than not Mr. Hixson was selling cannabis.

9

### Promote Respect for the Law

The sentence imposed promotes respect for the law.  At the time of both offenses, Mr. Hixson was on parole after his probation was revoked.  And he was merely seven months removed from his release from the Illinois Department of Corrections when his criminal conduct restarted.  Absent a significant sentence for these offenses, respect for the law is undermined.

### Provide Just Punishment

In considering all of these factors as well as the unique circumstances of the offenses and Mr. Hixson's individual history and characteristics, the Court has imposed a just punishment for the offenses.  The sentence is sufficient but not greater than necessary to meet Congress' mandates.

### Afford Adequate Deterrence

Without doubt, general deterrence does not trump all other factors under § 3553(a).  It is just one of many factors.  But so long as the court provides individualized sentencing to a particular defendant, a court's sentence is allowed to send a message to the larger community.  *See United States v. Barker*, 771 F.2d 1362, 1368 (9th Cir. 1985) ("We do not find this desire to 'send a message' through sentencing inappropriate *per se*.  Indeed, perhaps paramount among the purposes of punishment is the desire to deter similar misconduct by others.").  The Court is under no illusion that criminals peruse the Federal Supplements, the Chicago Daily Law Bulletin, or Law360.  But, at the sentencing hearing, the Court informed Mr. Hixson and the multiple family members who were present that the possession and sale of Glock switches is an extremely serious offense requiring a serious sentence.  The Court is confident that word of mouth—supplemented by social media, of course—is a common mode of communication among criminal defendants and their friends and family.  Regardless of whether they are in state or federal custody, inmates housed at the Winnebago County Jail talk about the sentences they receive.  In fact, they talk about their sentences among each other during the short ride from the Stanley J. Roszkowski United States Courthouse back to the Winnebago County Jail.  Those engaged in the sale and distribution of Glock switches must be put on notice that doing so potentially subjects them to a significant sentence.  The same is true for felons possessing firearms with extended magazines.  This community is awash with people who are prohibited from possessing weapons possessing weapons.

### Protect the Public from Further Crimes By Mr. Hixson

In Mr. Hixson's brief lifetime, the evidence shows that he has a propensity for criminal conduct, often very serious criminal conduct.  As his multiple probation

10

violations and revocation shows, his criminal behavior is not deterred when he is not incarcerated. He simply reoffends. The fact that these offenses occurred while Mr. Hixson was on parole also evidences that the public needs protection from his criminal behavior. Both of Mr. Hixson's offenses involve a complete lack of concern for the safety of others. In one offense, he fled law enforcement and threw a loaded weapon on a sidewalk next to a brick building. In the other offense, without hesitation, he sold Glock switches that he was told would be sold to others.

### Provide Mr. Hixson with Training, Medical Care, or Treatment

At the sentencing hearing, the Court asked Mr. Hixson and his counsel what types of programs would benefit Mr. Hixson during his incarceration in the Bureau of Prisons. The Court will recommend that Mr. Hixson be considered for these programs. Mr. Hixson's counsel requested that Mr. Hixson be enrolled in the Residential Drug Abuse Program. The Court agrees that this program would be beneficial and will recommend it. Mr. Hixson has no specific medical needs that need care.

### Kinds of Sentences Available

Although both offenses are statutorily eligible for probation, the advisory Sentencing Guidelines do not recommend probation. Moreover, a sentence of probation would be unreasonable as it would not adequately or properly take the other factors into account.

### Sentencing Range

The Court has correctly calculated the advisory Sentencing Guidelines range. But that sentencing range of 30 – 37 months woefully underrepresents the seriousness of the offenses. In particular, the range completely ignores the Glock switches, which Congress has defined as machineguns. Sentencing Mr. Hixson within the sentencing range does not account for the possession, sale, and distribution of the Glock switches.

### Sentencing Commission Policy Statements

The Court has considered the generally applicable Sentencing Commission Policy Statements. No applicable Sentencing Commission Policy Statements exist in § 2K2.1. Moreover, Mr. Hixson has not directed the Court to policy statements that it should consider.

### Avoid Unwarranted Sentencing Disparities

Through its research, the Court has attempted to address any unwarranted sentencing disparities. Because there are currently so few cases involving this situation, it is difficult to account for this factor. No nationwide sentencing information exists with the United States Sentencing Commission on this circumstance.

### Provide Restitution

Restitution is not applicable in this case for either offense.

### Mitigating Factors

At the sentencing hearing, the Court fully addressed Mr. Hixson's arguments in mitigation. For the sake of completeness, however, some are briefly reiterated here. The Court has considered the lack of much adult supervision in Mr. Hixson's life, particularly the absence of his father who was often incarcerated. Although, in the sentencing memorandum, it was represented that Mr. Hixson's mother believes his behavior will change, that belief is not supported by the evidence in the Presentence Investigation Report. In particular, Mr. Hixson's repeated violations of probation and then his nearly immediate return to criminal activity while on parole are strong evidence that his behavior has not and will not change absent significant intervention. Mr. Hixson's admission to the offenses and acceptance of responsibility have also been considered and are incorporated into the sentence, both during the offense level calculations and under the § 3553(a) factors. Although Mr. Hixson's age could be a mitigating factor, his young age also suggests he will likely reoffend, particularly for firearm offenses. *Recidivism of Federal Firearm Offenders Released in 2010*, p. 40, United States Sentencing Commission (November 2021). Finally, in the sentencing memorandum, Mr. Hixson expressed his desire to obtain his general equivalency diploma, but Mr. Hixson has never taken any steps either during his various incarcerations or while out of custody to obtain that diploma despite the opportunities.

### SENTENCE

In its discretion and after applying the § 3553(a) factors, the Court sentences Mr. Hixson to 66 months' imprisonment on each count to run concurrently.

No fine or restitution is imposed.

In addition to the 66 months' imprisonment, for each count, the Court also sentences Mr. Hixson to 3 years' supervised release with the conditions identified in open court. The terms of supervised release run concurrently.

Mr. Hixson will also pay a special assessment of $100 for each count, for a total of $200.

The Court will recommend the place of incarceration as well as the programs available in the Bureau of Prisons that were identified in court.

Counts 1 and 3 of the superseding indictment are dismissed under the plea agreement. And the original indictment is dismissed.


Entered: August 30, 2022                         By:_____
                                                 Iain D. Johnston
                                                 U.S. District Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case Number: 3:21-cr-22(S4)-MMH-MCR |
| v. | USM Number: 32680-509 |
| KRISTOPHER JUSTINBOYER ERVIN | Alex King, Retained<br>1805 Copeland Street<br>Jacksonville, FL 32204 |

## JUDGMENT IN A CRIMINAL CASE

The defendant was found guilty of Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve of the Fourth Superseding Indictment. The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 371 | Conspiracy to Transfer Unregistered Machinegun Conversion Devices | July 2021 | One |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials D.S. | November 2020 | Two |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials J.M. | November 2020 | Three |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials R.D. | December 2020 | Four |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials S.D. | December 2020 | Five |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials J.A. | December 2020 | Six |

AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

| | | | |
|---|---|---|---|
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials R.W. | January 2021 | Seven |
| 26 U.S.C. §§ 5861(e) and 5871 and 18 U.S.C. § 2 | Transferring Unregistered Machinegun Conversion Devices to a Person with the Initials A.O. | February 2021 | Eight |
| 31 U.S.C. §§ 5324(a)(3) and (d)(1) | Structuring, and Attempting to Structure, Currency Transactions for the Purpose of Evading Currency Transaction Reporting Requirements | January 2021 | Nine |
| 26 U.S.C. §§ 5861(d) and 5871 and 18 U.S.C. § 2 | Possessing Unregistered Machinegun Conversion Devices on February 22, 2021 | February 2021 | Ten |
| 26 U.S.C. §§ 5861(d) and 5871 and 18 U.S.C. § 2 | Possessing Unregistered Machinegun Conversion Devices on February 24, 2021 | February 2021 | Eleven |
| 26 U.S.C. §§ 5861(d) and 5871 and 18 U.S.C. § 2 | Possessing Unregistered Machinegun Conversion Devices on March 2, 2021 | March 2021 | Twelve |

The defendant is sentenced as provided in pages 2 through 9 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The original Indictment, Superseding Indictment, Second Superseding Indictment, and Third Superseding Indictment are dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

Date of Imposition of Sentence:
September 7, 2023


MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

September ___, 2023

AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of **SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently.**

The Court makes the following recommendations to the Bureau of Prisons:

- Incarceration at a facility located as close as possible to Jacksonville, Florida.
- Defendant receive mental health treatment.
- Defendant enroll in any educational and vocational programs available.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.


_____
UNITED STATES MARSHAL


By: _____
Deputy United States Marshal

AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of **THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently**.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
4. You must cooperate in the collection of DNA as directed by the probation officer.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchucks or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13.  You must follow the instructions of the probation officer related to the conditions of supervision.


## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.


Defendant's Signature:_____          Date:_____


AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

## ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

1.  You shall participate in a substance abuse program (outpatient and/or inpatient) and follow the probation officer's instructions regarding the implementation of this court directive. Further, you shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Substance Abuse Treatment Services. During and upon the completion of this program, you are directed to submit to random drug testing.

2.  You shall participate in a mental health treatment program (outpatient and/or inpatient) and follow the probation officer's instructions regarding the implementation of this court directive. Further, you shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Mental Health Treatment Services.

3.  You shall provide the probation officer access to any requested financial information.

4.  You shall submit to a search of your person, residence, place of business, any storage units under your control, or vehicle, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. You shall inform any other residents that the premises may be subject to a search pursuant to this condition. Failure to submit to a search may be grounds for revocation.

## CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments set forth in the Schedule of Payments.

|        | Assessment | AVAA Assessment[1] | JVTA Assessment[2] | Fine | Restitution |
|--------|-----------|---------------------|---------------------|------|-------------|
| TOTALS | $1,200.00 | $0.00 | $0.00 | $0.00 | $0.00 |

---

[1] Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.

[2] Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

AO245B (Rev. 09/19) Judgment in a Criminal Case

Kristopher Justinboyer Ervin
3:21-cr-22(S4)-MMH-MCR

## SCHEDULE OF PAYMENTS

The Special Assessment in the amount of **$1,200.00** is due in full and immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

## FORFEITURE

The defendant shall forfeit the defendant's interest in the following property to the United States:

See Preliminary Order of Forfeiture (Dkt. No. 16).

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

AO245B (Rev. 09/19) Judgment in a Criminal Case

AO 245 SOR   (Rev. 09/19) Judgment in a Criminal Case
Attachment (Page 1) — Statement of Reasons

---

DEFENDANT:        Ervin, Kristopher Justinboyer
CASE NUMBER:      3:21-cr-22(S4)-MMH-MCR
DISTRICT:         Middle District of Florida

## STATEMENT OF REASONS
### (Not for Public Disclosure)
*Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony and Class A misdemeanor cases.*

## I.    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT

A. ☐ **The court adopts the presentence investigation report without change.**

B. ☒ **The court adopts the presentence investigation report with the following changes:** *(Use Section VIII if necessary)*
*(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report)*

1. ☒ **Chapter Two of the United States Sentencing Commission Guidelines Manual** determinations by court: *(briefly summarize the changes, including changes to base offense level, or specific offense characteristics)*
The Court finds that 10 levels should be added pursuant to USSG §2K2.1(b)(1)(E), because Ervin is attributable with 6,600 firearms. Additionally, four levels should be added pursuant to USSG §2K2.1(b)(5), because Ervin engaged in trafficking firearms.

2. ☐ **Chapter Three of the United States Sentencing Commission Guidelines Manual** determinations by court: *(briefly summarize the changes, including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility)*

3. ☐ **Chapter Four of the United States Sentencing Commission Guidelines Manual** determinations by court: *(briefly summarize the changes, including changes to criminal history category or scores, career offender status, or criminal livelihood determinations)*

4. ☐ **Additional Comments or Findings:** *(include comments or factual findings concerning any information in the presentence report, including information that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions; any other rulings on disputed portions of the presentence investigation report; identification of those portions of the report in dispute but for which a court determination is unnecessary because the matter will not affect sentencing or the court will not consider it)*

C. ☐ **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**
Applicable Sentencing Guideline: *(if more than one guideline applies, list the guideline producing the highest offense level)*

## II.    COURT FINDINGS ON MANDATORY MINIMUM SENTENCE *(Check all that apply)*

A. ☐ One or more counts of conviction carry a mandatory minimum term of imprisonment and the sentence imposed is at or above the applicable mandatory minimum term.

B. ☐ One or more counts of conviction carry a mandatory minimum term of imprisonment, but the sentence imposed is below the mandatory minimum term because the court has determined that the mandatory minimum term does not apply based on:

☐ findings of fact in this case: *(Specify)*
☐ substantial assistance *(18 U.S.C. § 3553(e))*
☐ the statutory safety valve *(18 U.S.C. § 3553(f))*

C. ☒ No count of conviction carries a mandatory minimum sentence.

## III.    COURT DETERMINATION OF GUIDELINE RANGE: *(BEFORE DEPARTURES OR VARIANCES)*

Total Offense Level:    32
Criminal History Category:    I
Guideline Range: *(after application of §5G1.1 and §5G1.2)*    121 months-151 months
Supervised Release Range:    1 year-3 years per count
Fine Range: $  $35,000-$250,000

☒    Fine waived or below the guideline range because of inability to pay.

AO 245 SOR  (Rev. 09/15) Judgment in a Criminal Case
Attachment (Page 2) — Statement of Reasons                                                            Not for Public Disclosure

===

DEFENDANT:       Ervin, Kristopher Justinboyer
CASE NUMBER:   3:21-cr-22(S4)-MMH-MCR
DISTRICT:            Middle District of Florida

# STATEMENT OF REASONS

## IV.   GUIDELINE SENTENCING DETERMINATION *(Check all that apply)*

A.  ☐  The sentence is within the guideline range and the difference between the maximum and minimum of the guideline range does not exceed 24 months.

B.  ☐  The sentence is within the guideline range and the difference between the maximum and minimum of the guideline range exceeds 24 months, and the specific sentence is imposed for these reasons: *(Use Section VIII if necessary)*

C.  ☐  The court departs from the guideline range for one or more reasons provided in the Guidelines Manual.
        *(Also complete Section V)*

D.  ☒  The court imposed a sentence otherwise outside the sentencing guideline system (*i.e.*, a variance).  *(Also complete Section VI)*

## V.   DEPARTURES PURSUANT TO THE GUIDELINES MANUAL *(If applicable)*

A.  **The sentence imposed departs:** *(Check only one)*
    ☐  above the guideline range
    ☐  below the guideline range

B.  **Motion for departure before the court pursuant to:** *(Check all that apply and specify reason(s) in sections C and D)*
    1.  **Plea Agreement**
        ☐  binding plea agreement for departure accepted by the court
        ☐  plea agreement for departure, which the court finds to be reasonable
        ☐  plea agreement that states that the government will not oppose a defense departure motion
    2.  **Motion Not Addressed in a Plea Agreement**
        ☐  government motion for departure
        ☐  defense motion for departure to which the government did not object
        ☐  defense motion for departure to which the government objected
        ☐  joint motion by both parties
    3.  **Other**
        ☐  Other than a plea agreement or motion by the parties for departure

C.  **Reasons for departure:** *(Check all that apply)*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.12 | Coercion and Duress |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.13 | Diminished Capacity |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.14 | Public Welfare |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.16 | Voluntary Disclosure of Offense |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.17 | High-Capacity Semiautomatic Weapon |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon | ☐ | 5K2.18 | Violent Street Gang |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.20 | Aberrant Behavior |
| ☐ | 5H1.11 | Military Service | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ | 5H1.11 | Charitable Service/Good Works | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.22 | Sex Offender Characteristics |
| ☐ | 5K1.1 | Substantial Assistance | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.23 | Discharged Terms of Imprisonment |
| ☐ | 5K2.0 | Aggravating/Mitigating Circumstances | ☐ | 5K2.11 | Lesser Harm | ☐ | 5K2.24 | Unauthorized Insignia |
| | | | | | | ☐ | 5K3.1 | Early Disposition Program (EDP) |

☐  Other Guideline Reason(s) for Departure, to include departures pursuant to the commentary in the Guidelines Manual: *(see "List of Departure Provisions" following the Index in the Guidelines Manual.)*  *(Please specify)*

_____

D.  **State the basis for the departure.** *(Use Section VIII if necessary)*

AO 245 SOR    (Rev. 09/15) Judgment in a Criminal Case                                    Not for Public Disclosure
                   Attachment (Page 3) — Statement of Reasons

DEFENDANT:       Ervin, Kristopher Justinboyer
CASE NUMBER:   3:21-cr-22(S4)-MMH-MCR
DISTRICT:         Middle District of Florida

# STATEMENT OF REASONS

**VI.  COURT DETERMINATION FOR A VARIANCE** *(If applicable)*

  A.  **The sentence imposed is:** *(Check only one)*

      ☐  above the guideline range
      ☒  below the guideline range

  B.  **Motion for a variance before the court pursuant to:** *(Check all that apply and specify reason(s) in sections C and D)*

    1.  **Plea Agreement**

        ☐  binding plea agreement for a variance accepted by the court
        ☐  plea agreement for a variance, which the court finds to be reasonable
        ☐  plea agreement that states that the government will not oppose a defense motion for a variance

    2.  **Motion Not Addressed in a Plea Agreement**

        ☐  government motion for a variance
        ☐  defense motion for a variance to which the government did not object
        ☒  defense motion for a variance to which the government objected
        ☐  joint motion by both parties

    3.  **Other**

        ☐  Other than a plea agreement or motion by the parties for a variance

  C.  **18 U.S.C. § 3553(a) and other reason(s) for a variance** *(Check all that apply)*

    ☒  The nature and circumstances of the offense pursuant to 18 U.S.C. § 3553(a)(1):

| | | |
|---|---|---|
| ☐ Mens Rea | ☐ Extreme Conduct | ☐ Dismissed/Uncharged Conduct |
| ☐ Role in the Offense | ☐ Victim Impact | |
| ☒ General Aggravating or Mitigating Factors: *(Specify)* | | |

        See sentencing transcript

    ☒  The history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1):

| | |
|---|---|
| ☐ Aberrant Behavior | ☐ Lack of Youthful Guidance |
| ☐ Age | ☐ Mental and Emotional Condition |
| ☐ Charitable Service/Good Works | ☐ Military Service |
| ☒ Community Ties | ☐ Non-Violent Offender |
| ☐ Diminished Capacity | ☐ Physical Condition |
| ☐ Drug or Alcohol Dependence | ☐ Pre-sentence Rehabilitation |
| ☐ Employment Record | ☐ Remorse/Lack of Remorse |
| ☒ Family Ties and Responsibilities | ☐ Other: *(Specify)* |

        ☒  Issues with Criminal History: *(Specify)*   Lack of criminal history

    ☒  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense *(18 U.S.C. § 3553(a)(2)(A))*

    ☒  To afford adequate deterrence to criminal conduct *(18 U.S.C. § 3553(a)(2)(B))*

    ☒  To protect the public from further crimes of the defendant *(18 U.S.C. § 3553(a)(2)(C))*

    ☐  To provide the defendant with needed educational or vocational training *(18 U.S.C. § 3553(a)(2)(D))*

    ☐  To provide the defendant with medical care *(18 U.S.C. § 3553(a)(2)(D))*

    ☐  To provide the defendant with other correctional treatment in the most effective manner *(18 U.S.C. § 3553(a)(2)(D))*

    ☒  To avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6)) *(Specify in section D)*

    ☐  To provide restitution to any victims of the offense *(18 U.S.C. § 3553(a)(7))*

| | | |
|---|---|---|
| ☐ Acceptance of Responsibility | ☐ Conduct Pre-trial/On Bond | ☐ Cooperation Without Government Motion for Departure |
| ☐ Early Plea Agreement | ☐ Global Plea Agreement | |
| ☐ Time Served *(not counted in sentence)* | ☐ Waiver of Indictment | ☐ Waiver of Appeal |
| ☐ Policy Disagreement with the Guidelines *(Kimbrough v. U.S.*, 552 U.S. 85 (2007): *(Specify)* | | |

    ☐  Other: *(Specify)*

  D.  **State the basis for a variance.** *(Use Section VIII if necessary)*

    See sentencing transcript.

AO 245 SOR     (Rev. 09/15) Judgment in a Criminal Case                                    Not for Public Disclosure
               Attachment (Page 4) — Statement of Reasons

---

DEFENDANT:      Ervin, Kristopher Justinboyer
CASE NUMBER:    3:21-cr-22(S4)-MMH-MCR
DISTRICT:       Middle District of Florida

# STATEMENT OF REASONS

## VII.  COURT DETERMINATIONS OF RESTITUTION

A.  ☒    **Restitution not applicable.**

B.  **Total amount of restitution:**  $ _____

C.  **Restitution not ordered:** *(Check only one)*

   1.  ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).
   2.  ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).
   3.  ☐   For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).
   4.  ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. §§ 1593, 2248, 2259, 2264, 2327 or 3663A, restitution is not ordered because the victim(s)'(s) losses were not ascertainable (18 U.S.C. § 3664(d)(5)).
   5.  ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. §§ 1593, 2248, 2259, 2264, 2327 or 3663A, restitution is not ordered because the victim(s) elected to not participate in any phase of determining the restitution order (18 U.S.C. § 3664(g)(1)).
   6.  ☐   Restitution is not ordered for other reasons: *(Explain)*

D.  ☐    **Partial restitution is ordered for these reasons:** *(18 U.S.C. § 3553(c))*

## VIII.  ADDITIONAL BASIS FOR THE SENTENCE IN THIS CASE *(If applicable)*

Defendant's Soc. Sec. No.:  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                       Date of Imposition of Judgment:     September 7, 2023

Defendant's Date of Birth:  March 3, 1980

*[signature: Marcia Morales Howard]*
Signature of Judge

Marcia Morales Howard
United States District Judge
Name and Title of Judge

Defendant's Residence      Baker County Jail
Address:                   1 Sheriff's Office Drive
                           Macclenny, Florida  32063

Defendant's Mailing        Baker County Jail
Address:                   1 Sheriff's Office Drive
                           Macclenny, Florida  32063        Date:     Sept. 14, 2023

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No:        3:21-cr-22-MMH-MCR

KRISTOPHER ERVIN

_____/

## NOTICE OF APPEAL

COMES NOW the Defendant, Kristopher Ervin, by and through the undersigned counsel,

pursuant to Rule 4(b), Fed. R. App. P., and hereby gives notice of his appeal of the (1) Order

Denying Motion for Judgment of Acquittal (Doc. 310), (2) September 8, 2023 sentenced imposed,

and (3) the subsequent September 14, 2023 Judgment in a Criminal Case (Doc. 324) issued by

United States District Court Judge Marcia Morales Howard.

Respectfully submitted,
**First Coast Criminal Defense**

  /s/ Alex King
Alex King, Esq.
Florida Bar No.: 0086034
1805 Copeland Street
Jacksonville, Florida 32204
Tel: (904) 355-7777
E-mail: Admin@MonroeKingLaw.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by
email to:   Laura Cofer Taylor, Esq., Office of the United States Attorney,
Laura.C.Taylor@usdoj.gov, this 19th day of September, 2023.

  /s/ Alex King
ATTORNEY

APPEAL CLOSED CUSTODY TRLSET

# U.S. District Court
## Middle District of Florida (Jacksonville)
## CRIMINAL DOCKET FOR CASE #: 3:21-cr-00022-MMH-MCR-1

Case title: USA v. Ervin

Magistrate judge case number: 3:21-mj-01127-PDB

Date Filed: 03/11/2021

Date Terminated: 09/14/2023

---

Assigned to: Judge Marcia Morales
Howard
Referred to: Magistrate Judge Monte C.
Richardson

Appeals court case numbers: 22-12005-E
USCA, 23-13062 USCA

**Defendant (1)**

**Kristopher Justinboyer Ervin**
*Custody*
*TERMINATED: 09/14/2023*

represented by **Alex King**
First Coast Criminal Defense
1805 Copeland St.
Jacksonville, FL 32204
904-355-7777
Fax: 904-720-2886
Email: Alex@MonroeKingLaw.com
*TERMINATED: 11/29/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lisa Call**
Federal Public Defender's Office
Suite 1240
200 W Forsyth St
Jacksonville, FL 32202
904/232-3039
Fax: 904/232-1937
Email: Lisa_Call@fd.org
*TERMINATED: 06/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or
Community Defender Appointment*

**Daniel Scott Monroe**
Scott Monroe Law, P.A.

200 E. Forsyth St
Jacksonville, FL 32202
904/891-7362
Fax: 904-353-5801
Email: scott@monroekinglaw.com
*TERMINATED: 11/29/2023*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Valarie Linnen**
Valarie Linnen, ESQ.
841 Prudential Drive
12th Floor
Jacksonville, FL 32207
888-608-8814
Email: vlinnen@live.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| | Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1ssss) | |
| | Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2ssss-8ssss) | |
| | Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE |
| STRUCTURING TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (9ssss) | |

|  |  |
|---|---|
| UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED (10ssss-12ssss) | (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 |
|  | Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| UNLAWFUL TO RECEIVE A FIREARM NOT REGISTERED (1) | Dismissed on Government's Motion |
| STRUCTURING TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (1s-7s) | Dismissed on Government's Motion |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1ss) | Dismissed on Government's Motion |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (1sss) | Dismissed on Government's Motion |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2ss-7ss) | Dismissed on Government's Motion |
| UNLAWFUL TO TRANSFER A FIREARM IN VIOLATION (2sss-8sss) | Dismissed on Government's Motion |
| TRANSP./DELIVER/RECEIVE IN INTERSTATE COMMERCE-UNREGISTERED (8s) | Dismissed on Government's Motion |
| STRUCTURING TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (8ss-14ss) | Dismissed on Government's Motion |

UNLAWFUL TO RECEIVE A FIREARM
NOT REGISTERED
(9s-14s)

Dismissed on Government's Motion

STRUCTURING TRANSACTIONS TO
EVADE REPORTING REQUIREMENTS
(9sss-15sss)

Dismissed on Government's Motion

UNLAWFUL TO RECEIVE A FIREARM
NOT REGISTERED
(15ss-17ss)

Dismissed on Government's Motion

UNLAWFUL TO RECEIVE A FIREARM
NOT REGISTERED
(16sss-18sss)

Dismissed on Government's Motion

## Highest Offense Level (Terminated)

Felony

| Complaints | Disposition |
| --- | --- |

26:5861D.F UNLAWFUL TO RECEIVE
A FIREARM NOT REGISTERED

---

## Movant

**John Crump**                          represented by **Eric J. Friday**
                                        Kingry & Friday, Esq.
                                        1919 Atlantic Blvd.
                                        Jacksonville, FL 32207
                                        (904) 722-3333
                                        Email: efriday@kingryfriday.com
                                        *ATTORNEY TO BE NOTICED*
                                        *Designation: Retained*

                                        **James D Phillips , Jr**
                                        Katz & Phillips, PA
                                        509 W Colonial Dr
                                        Orlando, FL 32804
                                        321/332-6864
                                        Fax: 407/657-1526
                                        Email: jphillips@kplegalteam.com
                                        *ATTORNEY TO BE NOTICED*
                                        *Designation: Retained*

                                        **Robert J Olson**
                                        William J. Olson, P.C.
                                        370 Maple Ave W
                                        Suite 4
                                        Vienna, VA 22180
                                        703-356-5070

Fax: 703-356-5085
Email: rob@wjopc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Ronald J. Shook , II**
The Law Offices of Ronald J. Shook
121 E. Main Ave.
Gastonia, NC 28052
(704) 671-2390
Fax: (704) 671-4431
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Stephen D Stamboulieh**
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440
Email: stephen@sdslaw.us
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Plaintiff**

**USA**                     represented by **David B. Mesrobian**
US Attorney's Office - FLM
Suite 700
300 N Hogan St
Jacksonville, FL 32202
904/301-6300
Fax: 904/301-6310
Email: david.mesrobian@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Laura Cofer Taylor**
US Attorney's Office - FLM*
Suite 700
300 N Hogan St
Jacksonville, FL 32202
904-301-6249
Email: Laura.C.Taylor@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Michele Harrington**
United States Attorney's Office
400 W. Washington Street, Suite 3100
Orlando, FL 32801
407-648-7651
Fax: 407-648-7643
Email: Jennifer.harrington2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Mai Tran**
United States Attorney's Office
Suite 700
300 N. Hogan Street
Jacksonville, FL 32202
904-301-6300
Fax: 904-301-6310
Email: mai.tran2@usdoj.gov
*TERMINATED: 11/16/2023*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/03/2021 | 1 | COMPLAINT as to Kristopher Justinboyer Ervin (filed in open court). (ASL) [3:21-mj-01127-PDB] (Entered: 03/04/2021) |
| 03/03/2021 | | ARREST of Kristopher Justinboyer Ervin on 3/3/2021 (ASL) [3:21-mj-01127-PDB] (Entered: 03/04/2021) |
| 03/03/2021 | 3 | MINUTE entry for in person proceedings held before Magistrate Judge Patricia D. Barksdale: initial appearance held on 3/3/2021. (Digital) (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 4 | ORAL MOTION for detention by USA. (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 5 | JOINT MOTION to continue the detention hearing. (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 6 | **ORDER OF TEMPORARY DETENTION granting 5 the joint oral motion to continue the detention hearing and scheduling the detention hearing for 3/5/2021 at 10:00 AM in Jacksonville Courtroom 5B before Magistrate Judge Patricia D. Barksdale. Signed by Magistrate Judge Patricia D. Barksdale on 3/3/2021. (ASL)** [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/03/2021 | 7 | NOTICE OF HEARING: The preliminary hearing is scheduled for 3/17/2021 at 10:00 AM in Jacksonville Courtroom 5B before Magistrate Judge Patricia D. Barksdale. (ASL) [3:21-mj-01127-PDB] (Entered: 03/05/2021) |
| 03/05/2021 | 8 | MINUTE entry for the in person status-of-counsel and detention hearings held on |

| | | 3/5/2021 before Magistrate Judge Patricia D. Barksdale: The defendant moved for appointment of counsel and to continue the detention hearing. (Digital) (ASL) [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
|---|---|---|
| 03/05/2021 | 9 | ORAL MOTION to appoint counsel by Kristopher Justinboyer Ervin. (ASL) [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/05/2021 | 10 | ORAL MOTION to continue the detention hearing by Kristopher Justinboyer Ervin. (ASL) [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/05/2021 | 11 | **ORDER granting 9 the defendant's oral motion to appoint counsel and appointing the Federal Defender's Office to represent him in this case. Signed by Magistrate Judge Patricia D. Barksdale on 3/5/2021. (ASL)** [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/05/2021 | 12 | **ORDER OF TEMPORARY DETENTION granting 10 the defendant's oral motion to continue the detention hearing and scheduling the detention hearing for 3/9/2021 at 02:30 PM in Jacksonville Courtroom 5D before Magistrate Judge James R. Klindt. Signed by Magistrate Judge Patricia D. Barksdale on 3/5/2021. (ASL)** [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/08/2021 | 13 | **STANDING ORDER as to Kristopher Justinboyer Ervin: Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to do so. Failing to do so in a timely manner may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and sanctions. Signed by Judge Timothy J. Corrigan on 12/1/2020. (KEM)** [3:21-mj-01127-PDB] (Entered: 03/08/2021) |
| 03/09/2021 | 14 | MINUTE entry for the in person detention hearing held on 3/9/2021 before Magistrate Judge James R. Klindt: The defendant moved to continue the detention hearing. Judge Klindt granted the motion and scheduled the detention hearing for 3/15/21 at 2:00 p.m. before Magistrate Judge Patricia Barksdale. (Digital) (ASL) [3:21-mj-01127-PDB] (Entered: 03/10/2021) |
| 03/09/2021 | 15 | ORAL MOTION to continue the detention hearing by Kristopher Justinboyer Ervin. (ASL) [3:21-mj-01127-PDB] (Entered: 03/10/2021) |
| 03/09/2021 | 16 | **ORDER OF TEMPORARY DETENTION granting 15 the defendant's oral motion to continue the detention hearing and scheduling the detention hearing for 3/15/2021 at 02:00 PM in Jacksonville Courtroom 5B before Magistrate Judge Patricia D. Barksdale. Signed by Magistrate Judge James R. Klindt on 3/9/2021. (ASL)** [3:21-mj-01127-PDB] (Entered: 03/10/2021) |
| 03/11/2021 | 17 | INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1. (BGR) (Entered: 03/12/2021) |
| 03/15/2021 | 20 | **ORDER allowing a credentialed member of the press to bring a laptop computer or tablet to the 3/15/2021 detention hearing. Signed by Magistrate Judge Patricia D. Barksdale on 3/15/2021. (ASL)** (Entered: 03/15/2021) |
| 03/15/2021 | 21 | MINUTE entry for the in person arraignment and detention hearings held on 3/15/2021 before Magistrate Judge Patricia D. Barksdale: The defendant entered a plea of not guilty to count one of the indictment and was remanded to the custody of |

| | | the Attorney General to await trial. (Digital) (ASL) (Entered: 03/16/2021) |
|---|---|---|
| 03/15/2021 | 22 | NOTICE of acceptance of general discovery by Kristopher Justinboyer Ervin (filed in open court). (ASL) (Entered: 03/16/2021) |
| 03/25/2021 | 23 | **ORDER OF DETENTION PENDING TRIAL as to Kristopher Justinboyer Ervin Signed by Magistrate Judge Patricia D. Barksdale on 3/15/2021. (ASL)** (Entered: 03/25/2021) |
| 03/25/2021 | 24 | **SCHEDULING ORDER as to Kristopher Justinboyer Ervin: A status conference is scheduled for 4/19/2021 at 03:00 PM in Jacksonville Courtroom 10B before Judge Marcia Morales Howard; the jury trial is scheduled for 5/3/2021 at 09:00 AM in Jacksonville Courtroom 10B before Judge Marcia Morales Howard; discovery, dispositive, and suppression motions are due by 4/12/2021. Signed by Deputy Clerk on 3/25/2021. (ASL)** (Entered: 03/25/2021) |
| 04/01/2021 | 25 | SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1s-7s, 8s, 9s-14s. (RH) Modified on 3/16/2023 to edit text (AET). (Entered: 04/01/2021) |
| 04/02/2021 | 27 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin: Arraignment on the Superseding Indictment set for 4/7/2021 at 10:30 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 04/02/2021) |
| 04/05/2021 | 28 | MOTION to Withdraw as Attorney *and Memorandum of Law* by Lisa Call and Office of the Federal Public Defender. by Kristopher Justinboyer Ervin. (Call, Lisa) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 04/05/2021) |
| 04/07/2021 | 29 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: denying 28 Motion to Withdraw as Attorney as to Kristopher Justinboyer Ervin (1); MOTION hearing as to Kristopher Justinboyer Ervin held on 4/7/2021 re 28 MOTION to Withdraw as Attorney *and Memorandum of Law* by Lisa Call and Office of the Federal Public Defender. filed by Kristopher Justinboyer Ervin ; ARRAIGNMENT as to Kristopher Justinboyer Ervin (1) Count 1, 1s-7s, 8s, 9s-14s held on 4/7/2021 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 04/07/2021) |
| 04/12/2021 | 30 | MOTION to Dismiss *Superseding Indictment* by Kristopher Justinboyer Ervin. (Call, Lisa) (Entered: 04/12/2021) |
| 04/13/2021 | 31 | MOTION to Extend Time to Respond to Defendant's Motion to Dismiss by USA as to Kristopher Justinboyer Ervin. (Taylor, Laura) (Entered: 04/13/2021) |
| 04/15/2021 | 32 | NOTICE: The status conference set for April 19, 2021, at 3:00 p.m. will be held telephonically. The Courtroom Deputy Clerk will separately provide counsel with the call-in information. (JW) (Entered: 04/15/2021) |
| 04/16/2021 | 33 | **ENDORSED ORDER granting 31 Government's Motion to Extend Time to Respond to Defendant's Motion to Dismiss. Counsel for the United States shall have up to and including May 7, 2021, to respond to Defendant's Motion to Dismiss. Signed by Judge Marcia Morales Howard on 4/16/2021. (JW)** (Entered: 04/16/2021) |
| 04/19/2021 | 34 | Minute Entry for Telephonic proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 4/19/2021. Status conference set for May 24, 2021, at 3:00 p.m. Jury trial set for trial term commencing |

| | | |
|---|---|---|
| | | on June 7, 2021, at 9:00 a.m. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 04/21/2021) |
| 04/22/2021 | | Set/Reset Deadlines/Hearings as to Kristopher Justinboyer Ervin: Jury Trial set for trial term commencing on 6/7/2021 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Status Conference set for 5/24/2021 at 03:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard (RH) (Entered: 04/22/2021) |
| 05/07/2021 | 35 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin re 30 MOTION to Dismiss *Superseding Indictment* (Taylor, Laura) (Entered: 05/07/2021) |
| 05/19/2021 | 36 | NOTICE: The status conference set for May 24, 2021, at 3:00 p.m. will be held telephonically. The Courtroom Deputy Clerk will separately provide counsel with the call-in information. (JW) (Entered: 05/19/2021) |
| 05/24/2021 | 37 | Minute Entry for Telephonic proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 5/24/2021. Status conference set for July 19, 2021, at 3:00 p.m. Jury trial set for trial term commencing on August 2, 2021, at 9:00 a.m. A hearing on the Motion to Dismiss will be set for July 7, 2021, at 2:00 p.m. or July 8, 2021, at 2:00 p.m., depending upon the availability of the case agent. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 05/25/2021) |
| 05/25/2021 | 38 | NOTICE OF HEARING ON 30 Motion to Dismiss Superseding Indictment. Motion Hearing set for 7/8/2021 at 02:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 05/25/2021) |
| 06/02/2021 | 39 | MOTION to Withdraw as Attorney by Lisa Call. by Kristopher Justinboyer Ervin. (Call, Lisa) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 06/02/2021) |
| 06/04/2021 | 40 | NOTICE OF ATTORNEY APPEARANCE: Alex King appearing for Kristopher Justinboyer Ervin (King, Alex) (Entered: 06/04/2021) |
| 06/04/2021 | 41 | **ORDER granting 39 Motion to Withdraw as Attorney Lisa Call withdrawn from case. as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 6/4/2021. (SHS)** (Entered: 06/04/2021) |
| 07/01/2021 | 42 | MOTION for Miscellaneous Relief, specifically to Adopt Motion to Dismiss (Doc. 30) re 30 MOTION to Dismiss *Superseding Indictment* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 07/01/2021) |
| 07/02/2021 | 43 | **ENDORSED ORDER granting 42 Motion to Adopt Motion to Dismiss Superseding Indictment. Signed by Judge Marcia Morales Howard on 7/2/2021. (JW)** (Entered: 07/02/2021) |
| 07/08/2021 | 44 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin. (JW) (Entered: 07/08/2021) |
| 07/08/2021 | 45 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin held on 7/8/2021; denying 30 Motion to Dismiss as to Kristopher Justinboyer Ervin (1); granting 44 Oral Motion to Continue as to Kristopher Justinboyer Ervin (1). Status Conference set for 9/20/2021 at 09:30 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. |

| | | Defendant is required to be present. Jury Trial set for trial term commencing on 10/4/2021 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Plea deadline is September 27, 2021. The United States is directed to file a Bill of Particulars no later than July 16, 2021. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 07/08/2021) |
|---|---|---|
| 07/16/2021 | 46 | BILL of particulars as to Kristopher Justinboyer Ervin. (Taylor, Laura) (Entered: 07/16/2021) |
| 08/10/2021 | 47 | NOTICE OF ATTORNEY APPEARANCE Mai Tran appearing for USA. (Tran, Mai) (Entered: 08/10/2021) |
| 08/12/2021 | 48 | TRANSCRIPT of Motion Hearing as to Kristopher Justinboyer Ervin held on July 8, 2021 before Judge Marcia Morales Howard. Court Reporter/Transcriber Cindy Packevicz Jarriel, Telephone number 904-301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/2/2021 Redacted Transcript Deadline set for 9/13/2021 Release of Transcript Restriction set for 11/10/2021. (CLP) (Entered: 08/12/2021) |
| 08/12/2021 | 49 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Kristopher Justinboyer Ervin. Court Reporter: Cindy Packevicz Jarriel; cindyrprfcrr@gmail.com (CLP) (Entered: 08/12/2021) |
| 09/20/2021 | 50 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin. (JW) (Entered: 09/20/2021) |
| 09/20/2021 | 51 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 9/20/2021; granting 50 Oral Motion to Continue as to Kristopher Justinboyer Ervin (1). Special Status Conference set for 11/22/2021 at 01:30 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Defendant is required to be present. Jury Trial set for trial term commencing on 12/6/2021 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 09/20/2021) |
| 11/22/2021 | 52 | ORAL MOTION to Continue Trial by USA and Kristopher Justinboyer Ervin. (JW) (Entered: 11/23/2021) |
| 11/22/2021 | 53 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin held on 11/22/2021; granting 52 Joint Oral Motion to Continue as to Kristopher Justinboyer Ervin (1). Status Conference and Motion Hearing set for 3/21/2022 at 01:30 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Jury Trial set for trial term commencing on 4/4/2022 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. The Court requests that the parties hold the weeks of April 11, April 18, and April 25, 2022 for trial. See Minutes for additional deadlines. Court Reporter: Cindy Packevicz Jarriel (JW) (Entered: 11/23/2021) |

| 12/15/2021 | 54 | **ORDER SCHEDULING TRIAL. Jury selection shall commence on April 11, 2022, at 9:00 a.m. Opening statements and evidence will begin on April 12, 2022, at 9:00 a.m. Jury instructions, proposed Voir Dire, proposed brief statement of the case, and proposed verdict form due no later than February 18, 2022. Signed by Judge Marcia Morales Howard on 12/15/2021. (Attachments: # 1 Instructions Regarding Jury Selection, # 2 Instructions Regarding Premarking Exhibits)(JW)** (Entered: 12/15/2021) |
|---|---|---|
| 12/21/2021 | 55 | NOTICE *of Disclosure of Summary of Expert Testimony in Compliance with Fed. R. Crim. P. 16(a)(1)(G)* by USA as to Kristopher Justinboyer Ervin (Taylor, Laura) (Entered: 12/21/2021) |
| 01/13/2022 | 56 | NOTICE *of Disclosure of Summary Expert Testimony in Compliance with Fed. R. Crim. P. 16(b)(1)(C)* by Kristopher Justinboyer Ervin (Attachments: # 1 Exhibit A) (King, Alex) (Entered: 01/13/2022) |
| 01/26/2022 | 57 | SECOND SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1ss, 2ss-7ss, 8ss-14ss, 15ss-17ss, Matthew Raymond Hoover (2) count(s) 1, 2-7. (BGR) (Additional attachment(s) added on 1/27/2022: # 1 Restricted Unredacted Indictment) (BGR). Modified on 3/16/2023 to edit text (AET). (Entered: 01/27/2022) |
| 01/28/2022 | 64 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin: Initial Appearance on the Second Superseding Indictment set for 2/2/2022 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 01/28/2022) |
| 01/28/2022 | 65 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin: Arraignment on the Second Superseding Indictment set for 2/2/2022 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 01/28/2022) |
| 02/02/2022 | 69 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Second Superseding Indictment as to Kristopher Justinboyer Ervin (1) Count 1, 1s-7s, 1ss, 2ss-7ss, 8s, 8ss-14ss, 9s-14s, 15ss-17ss held on 2/2/2022 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 02/02/2022) |
| 02/07/2022 | 71 | Consent MOTION for Miscellaneous Relief, specifically to Hold in Abeyance Previously Ordered Motion Deadline by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 02/07/2022) |
| 02/08/2022 | 72 | **ORDER granting 71 Defendant Ervin's Consent Motion to Hold in Abeyance Previously Ordered Motion Deadline. The parties are relieved of the obligation of complying with the motions deadline of February 11, 2022, and the responses deadline of February 25, 2022. The hearing scheduled for March 21, 2022, at 1:30 p.m. remains set. Signed by Judge Marcia Morales Howard on 2/8/2022. (JW)** (Entered: 02/08/2022) |
| 03/04/2022 | 78 | JOINT MOTION to Hold Motions Deadlines in Abeyance and For a Status Hearing by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Modified on 3/4/2022, to edit text) (BGR). (Entered: 03/04/2022) |
| 03/07/2022 | 79 | **ORDER granting 78 Joint Motion to Hold Motions Deadlines in Abeyance and** |

| | | |
|---|---|---|
| | | for a Status Hearing. The parties are relieved of the obligation of complying with the motions deadlines. The hearing scheduled for March 21, 2022, at 1:30 p.m. is cancelled. A status conference as to all parties is set for March 23, 2022, at 1:30 p.m. Signed by Judge Marcia Morales Howard on 3/7/2022. (JW) (Entered: 03/07/2022) |
| 03/21/2022 | 81 | **ENDORSED ORDER granting 80 Motion to Appear Telephonically. Zachary Zermay and Matthew Larosiere are permitted to appear telephonically at the status conference set for March 23, 2022, at 1:30 p.m. The Courtroom Deputy Clerk will separately provide counsel with the call-in information for the hearing. Signed by Judge Marcia Morales Howard on 3/21/2022. (JW)** (Entered: 03/21/2022) |
| 03/23/2022 | 82 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin and Matthew Raymond Hoover. (JW) (Entered: 03/23/2022) |
| 03/23/2022 | 83 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 3/23/2022; granting 82 Oral Motion to Continue Trial as to Kristopher Justinboyer Ervin (1) and Matthew Raymond Hoover (2). Special Status Conference set for 6/27/2022 at 02:00 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Jury Trial set for trial term commencing on 7/5/2022 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for additional deadlines. Court Reporter: Shannon Bishop (JW) (Entered: 03/23/2022) |
| 03/25/2022 | 84 | NOTICE OF ATTORNEY APPEARANCE David B. Mesrobian appearing for USA. (Mesrobian, David) (Entered: 03/25/2022) |
| 03/25/2022 | 85 | TRANSCRIPT of Digitally recorded arraignment and detention hearing as to Kristopher Justinboyer Ervin held on 3/15/2021 before Judge Patricia D. Barksdale. Court Reporter/Transcriber Katharine M. Healey, Telephone number (904) 301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/15/2022 Redacted Transcript Deadline set for 4/25/2022 Release of Transcript Restriction set for 6/23/2022. (KMH) (Entered: 03/25/2022) |
| 03/25/2022 | 86 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Kristopher Justinboyer Ervin. Court Reporter: Katharine Healey (904) 301-6843 (KMH) (Entered: 03/25/2022) |
| 04/27/2022 | 87 | MOTION for Reconsideration re 23 Order of Detention by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 04/27/2022) |
| 05/02/2022 | 88 | **ENDORSED ORDER directing to respond to 87 MOTION for Reconsideration re 23 Order of Detention as to Kristopher Justinboyer Ervin. Responses due by 5/13/2022 Signed by Magistrate Judge Monte C. Richardson on 5/2/2022. (SHS)** Modified on 5/2/2022 (SHS). (Entered: 05/02/2022) |

| 05/12/2022 | 89 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin re 87 MOTION for Reconsideration re 23 Order of Detention (Taylor, Laura) (Entered: 05/12/2022) |
|---|---|---|
| 05/24/2022 | 90 | MOTION for Leave to File Document *to Government's Response in Opposition to Defendant's Motion to Reconsider Detention of Defendant* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 05/24/2022) |
| 06/01/2022 | 91 | **ORDER denying 87 Motion for Reconsideration re 23 Order of Detention filed by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 6/1/2022. (SHS)** (Entered: 06/01/2022) |
| 06/02/2022 | 92 | **ENDORSED ORDER denying 90 Motion for Leave to File as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 6/2/2022. (SHS)** (Entered: 06/02/2022) |
| 06/15/2022 | 93 | NOTICE of APPEAL by Kristopher Justinboyer Ervin re 91 Order on Motion for Reconsideration / Clarification. Filing fee paid $ 505, receipt number AFLMDC-19679305. (King, Alex) . (Entered: 06/15/2022) |
| 06/16/2022 | 94 | TRANSMITTAL of initial appeal package as to Kristopher Justinboyer Ervin to USCA consisting of copies of notice of appeal, order/judgment being appealed, and motion, if applicable to USCA re 93 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (Attachments: # 1 Notice of appeal, # 2 Order)(SJW) (Entered: 06/16/2022) |
| 06/21/2022 | 95 | MOTION to Dismiss by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice, # 2 Request for Oral Argument)(Zermay, Zachary) (Entered: 06/21/2022) |
| 06/21/2022 | 96 | MOTION to Change Venue / Transfer Case by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice, # 2 Declaration of Zachary Z. Zermay, # 3 Request for an Evidentiary Hearing and Oral Argument)(Zermay, Zachary) (Entered: 06/21/2022) |
| 06/21/2022 | 97 | MOTION to Sever Trial by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Request for Oral Argument) (Zermay, Zachary) (Modified on 6/22/2022, to edit text) (BGR). (Entered: 06/21/2022) |
| 06/21/2022 |  | USCA Case Number as to Kristopher Justinboyer Ervin. USCA Number: 22-12005-E for 93 Notice of Appeal filed by Kristopher Justinboyer Ervin. (SJW) (Entered: 06/22/2022) |
| 06/27/2022 | 98 | NOTICE of filing supplemental authority by Kristopher Justinboyer Ervin, Matthew Raymond Hoover re: 95 MOTION to Dismiss filed by Matthew Raymond Hoover (Zermay, Zachary) (Entered: 06/27/2022) |
| 06/27/2022 | 99 | JOINT ORAL MOTION to Continue Trial as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (CKS) (Entered: 06/28/2022) |
| 06/27/2022 | 100 | Minute Entry for Virtual proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 6/27/2022; granting 99 Joint Oral Motion to Continue Trial as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover(2). Jury Trial set for the November 2022 trial term, scheduled to commence on 11/1/2022 at 09:00 AM in Jacksonville |

| | | Courtroom 10 B before Judge Marcia Morales Howard. Court Reporter: Katharine Healey (CKS) (Entered: 06/29/2022) |
|---|---|---|
| 07/01/2022 | 101 | SUPPLEMENT re 95 MOTION TO DISMISS & to Declare Unconstitutional the National Firearms Act of 1934 by Matthew Raymond Hoover (Zermay, Zachary) Modified on 7/7/2022 to edit text (AET). (Entered: 07/01/2022) |
| 07/12/2022 | 102 | NOTICE *Regarding Expert Disclosure* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 07/12/2022) |
| 08/01/2022 | 106 | NOTICE *REGARDING JURY SELECTION* by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 08/01/2022) |
| 08/02/2022 | 107 | NOTICE *REGARDING EXPERT DISCLOSURE* by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 08/02/2022) |
| 08/03/2022 | 108 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover: Motion Hearing/Status Conference set for 10/11/2022 at 10:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Defendants are required to be present. (JW) (Entered: 08/03/2022) |
| 08/04/2022 | 110 | MOTION for Leave to File Reply to 103 Response in Opposition by Matthew Raymond Hoover. (Zermay, Zachary) Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | 111 | MOTION for Leave to File Reply to 105 Response in Opposition to Sever Defendant by Matthew Raymond Hoover. (Zermay, Zachary) Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | 112 | MOTION for Leave to File Reply to 104 Response in Opposition to Change Venue/Transfer Case by Matthew Raymond Hoover. Modified on 8/5/2022 to edit text (AET). (Entered: 08/04/2022) |
| 08/04/2022 | 113 | NOTICE of filing supplemental authority by Matthew Raymond Hoover re: 95 MOTION to Dismiss filed by Matthew Raymond Hoover (Zermay, Zachary) Modified on 8/5/2022 to edit text and to confirm with counsel page 3 is intentionally blank (AET). (Entered: 08/04/2022) |
| 08/05/2022 | 114 | NOTICE OF RESCHEDULING HEARING: The Motion Hearing/Status Conference previously scheduled for October 11, 2022, at 10:00 a.m. is rescheduled as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. New hearing date and time: Motion Hearing/Status Conference set for 10/12/2022 at 2:30 PM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 08/05/2022) |
| 08/23/2022 | 118 | MOTION in Limine by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 56 Notice of Disclosure of Summary Expert Testimony in compliance with Fed. R. Crim. P. 16(b)(1)(C) and 107 Notice Regarding Expert Disclosure. (Attachments: # 1 Exhibit A, video on disk filed separately, # 2 Exhibit B, # 3 Exhibit C)(AET) (Entered: 08/24/2022) |
| 08/30/2022 | 119 | JOINT UNOPPOSED MOTION to Continue trial by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 9/2/2022 to edit text (AET). (Entered: 08/30/2022) |

| 08/31/2022 | 120 | THIRD SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1sss, 2sss-8sss, 9sss-15sss, 16sss-18sss, Matthew Raymond Hoover (2) count(s) 1s, 2s-8s. (Attachments: # 1 Restricted Unredacted Indictment) (AET) Modified on 3/16/2023 to edit text (AET). (Entered: 08/31/2022) |
|---|---|---|
| 08/31/2022 | 123 | NOTICE OF HEARING ON 119 Joint and Unopposed Motion to Continue Trial. Motion Hearing set for September 6, 2022, at 3:00 p.m. before Judge Marcia Morales Howard. The hearing will be held via Zoom. The Courtroom Deputy Clerk will separately send participants the Zoom link. (JW) (Entered: 08/31/2022) |
| 09/01/2022 | 124 | USCA Order Dismissed as to Kristopher Justinboyer Ervin re 93 Notice of Appeal USCA number: 22-12005. Issued as mandate on 8/30/22. (SJW) (Entered: 09/01/2022) |
| 09/07/2022 | 126 | Minute Entry for Virtual proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 9/7/2022; granting 119 Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2); denying, without prejudice, as moot 95 Defendant Hoover's Motion to Dismiss. Hoover's renewed motion to dismiss due September 22, 2022. Response due October 7, 2022. Motion hearing set for December 9, 2022, at 10:00 a.m. Jury Trial set for 1/9/2023 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for additional deadlines. Court Reporter: Katharine Healey (JW) (Entered: 09/12/2022) |
| 09/13/2022 | 127 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: re: 120 Third Superseding Indictment,. Arraignment set for 9/22/2022 at 11:30 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 09/13/2022) |
| 09/14/2022 | 128 | UNOPPOSED MOTION for Zachary Z. Zermay; Matthew Larosiere and Defendant Matthew Hoover to appear telephonically by Matthew Raymond Hoover. (Zermay, Zachary) Motions referred to Magistrate Judge Monte C. Richardson. Modified on 9/15/2022 (AET). (Entered: 09/14/2022) |
| 09/16/2022 | 130 | NOTICE of Disclosure of Summary of Expert Testimony by Matthew Raymond Hoover as to Matthew Raymond Hoover (Zermay, Zachary) Modified on 9/19/2022 to edit text (AET). (Entered: 09/16/2022) |
| 09/22/2022 | 131 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Third Superseding Indictment as to Kristopher Justinboyer Ervin (1) Count 1, 1s-7s, 1ss, 1sss, 2ss-7ss, 2sss-8sss, 8s, 8ss-14ss, 9s-14s, 9sss-15sss, 15ss-17ss, 16sss-18sss, and Matthew Raymond Hoover (2) Count 1, 1s, 2-7, 2s-8s, held on 9/22/2022 Defendant(s) pled not guilty. (Digital) (SHS) (Entered: 09/22/2022) |
| 09/22/2022 | 132 | MOTION to Dismiss by Matthew Raymond Hoover as to Matthew Raymond Hoover. (Attachments: # 1 Request for Judicial Notice)(Zermay, Zachary) Modified text on 9/26/2022 (BD). (Entered: 09/22/2022) |
| 09/22/2022 | 133 | Second MOTION to Dismiss for First And Second Amendment Violations & to Declare Unconstitutional The National Firearms Act Of 1934 by Matthew Raymond Hoover as to Matthew Raymond Hoover. (Zermay, Zachary) Modified text on 9/26/2022 (BD). (Entered: 09/22/2022) |
| 09/28/2022 | 134 | MOTION to Extend Time to Filing Deadline by Kristopher Justinboyer Ervin. (King, |

| 09/28/2022 | 135 | **ENDORSED ORDER granting [134](#) Defendant Ervin's Motion for Extension of Time of Filing Deadline. Defendant Ervin shall have up to and including October 7, 2022, to file his Daubert motion. The United States shall have up to and including October 24, 2022, to file a response. Signed by Judge Marcia Morales Howard on 9/28/2022. (JW)** (Entered: 09/28/2022) |
|---|---|---|
| 09/28/2022 | 136 | MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 09/28/2022) |
| 10/07/2022 | 139 | Unopposed MOTION to Continue Daubert Motion Deadline by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) (Entered: 10/07/2022) |
| 10/11/2022 | 140 | **ENDORSED ORDER granting [139](#) Unopposed Motion to Continue Daubert Deadline. Defendants shall have up to and including October 21, 2022, to file Daubert motions. The United States shall have up to and including November 7, 2022, to file responses. Signed by Judge Marcia Morales Howard on 10/11/2022. (JW)** (Entered: 10/11/2022) |
| 10/21/2022 | 142 | MOTION in Limine *to Exclude Trial Testimony of Government's Purported Expert Witnesses* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 10/21/2022) |
| 10/28/2022 | 145 | **ORDER granting 143 Motion to Continue Motion in Limine Deadline. Motions in limine due 11/10/2022. Responses due 11/28/2022. Signed by Judge Marcia Morales Howard on 10/28/2022. (JCM)** (Entered: 10/28/2022) |
| 10/31/2022 | 146 | TRANSCRIPT of Digitally Recorded Initial Appearance and Arraignment Proceedings as to Matthew Raymond Hoover held on 02/22/2022 before Judge Monte C. Richardson. Court Reporter/Transcriber Katharine M. Healey, RMR, CRR, FPR-C, Telephone number (904) 301-6843. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 11/21/2022 Redacted Transcript Deadline set for 12/1/2022 Release of Transcript Restriction set for 1/30/2023. (KMH) (Entered: 10/31/2022) |
| 10/31/2022 | 147 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT (02/22/2022 Digitally Recorded Initial Appearance and Arraignment of Matthew Raymond Hoover). The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Matthew Raymond Hoover. Court Reporter: Katharine Healey (KMH) (Entered: 10/31/2022) |
| 11/07/2022 | 149 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re [142](#) MOTION in Limine *to Exclude Trial Testimony of Government's Purported Expert Witnesses* (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B) (Taylor, Laura) (Entered: 11/07/2022) |
|  |  |  |

| | | |
|---|---|---|
| 11/10/2022 | 152 | Joint MOTION to Extend Time to Filing Deadline and Request for Status Conference by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) (Entered: 11/10/2022) |
| 11/10/2022 | 153 | RESPONSE to Motion re 152 Joint MOTION to Extend Time to Filing Deadline and Request for Status Conference by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 11/10/2022) |
| 11/10/2022 | 154 | **ENDORSED ORDER granting 152 Joint Emergency Motion for Extension of Time of Filing Deadline and Request for Status Conference. Motions in limine must be filed on or before November 18, 2022. A telephonic status conference is set for Thursday, November 17, 2022, at 1:00 p.m. The Courtroom Deputy Clerk will separately send participants the call-in information for the hearing. Absent a continuance of the trial, no further extensions of time will be granted. Signed by Judge Marcia Morales Howard on 11/10/2022. (JW) (Entered: 11/10/2022)** |
| 11/17/2022 | 158 | ORAL MOTION to Continue Trial by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 11/21/2022) |
| 11/17/2022 | 159 | Minute Entry for Telephonic proceedings held before Judge Marcia Morales Howard: STATUS Conference as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 11/17/2022; terminating 136 Government's Motion in Limine; granting 158 Oral Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2). A Daubert hearing will be held on February 7, 2023. The time will be set at a later date. Jury Trial set for 4/10/2023 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. See Minutes for deadlines. The Court emphasized its expectation that the deadlines would be met and that the trial date is firm and will not change. Order Scheduling Trial to enter. Court Reporter: Katharine Healey (JW) (Entered: 11/21/2022) |
| 12/09/2022 | 165 | NOTICE *Amended of Disclosure of Expert Testimony in Compliance with Fed. R. Crim. P. 16(b)(1)(C) Testimony* by Kristopher Justinboyer Ervin (King, Alex) (Entered: 12/09/2022) |
| 01/03/2023 | 169 | **ORDER SCHEDULING TRIAL. As previously directed, Daubert motions are due January 4, 2023, and responses are due January 18, 2023. A Daubert hearing is set for February 7, 2023, at 10:00 a.m. in Courtroom 10B. Motions in limine shall be filed by February 24, 2023, and responses are due March 10, 2023. Jury selection and trial shall commence on April 10, 2023, at 9:00 a.m. Trial documents due no later than April 3, 2023. Signed by Judge Marcia Morales Howard on 1/3/2023. (Attachments: # 1 Instructions Regarding Jury Selection, # 2 Instructions Regarding Premarking Exhibits)(JW) (Entered: 01/03/2023)** |
| 01/04/2023 | | Set/Reset Deadlines as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: Exhibit List due by 4/10/2023. (AET) (Entered: 01/04/2023) |
| 01/04/2023 | 170 | MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 01/04/2023) |
| 01/18/2023 | 171 | RESPONSE to Motion re 170 MOTION in Limine *to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses* by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 01/18/2023) |
| | | |

| 02/01/2023 | 177 | **ORDER directing the parties to file a written proffer of each proposed expert witness's opinions by 12:00 noon on Monday, February 6, 2023. Signed by Judge Marcia Morales Howard on 2/1/2023. (JCM)** (Entered: 02/01/2023) |
|---|---|---|
| 02/03/2023 | 178 | NOTICE *of Withdrawal of Notice of Disclosure of Expert Testimony in Compliance with Fed. R. Crim. P. 16(b)(1)(C) and Request for Relief from this Court's February 1, 2023 Order* by Kristopher Justinboyer Ervin re 165 Notice (Other), 177 Order. (King, Alex) (Entered: 02/03/2023) |
| 02/06/2023 | 180 | NOTICE *of Filing Written Proffer of Testimony by Ernest Lintner in Anticipation of Trial* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 02/06/2023) |
| 02/06/2023 | 181 | NOTICE *of Filing Written Proffer of Opinions of Cody Toy in Anticipation of Trial* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 02/06/2023) |
| 02/06/2023 | 182 | NOTICE *of Written Proffer of Testimony by Daniel O'Kelly in Anticipation of Trial* by Kristopher Justinboyer Ervin re 177 Order. (King, Alex) (Entered: 02/06/2023) |
| 02/07/2023 | 184 | NOTICE *of Filing* by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Exhibit A)(King, Alex) (Entered: 02/07/2023) |
| 02/07/2023 | 185 | NOTICE *of supplemental authority* by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Attachment 1)(Mesrobian, David) (Entered: 02/07/2023) |
| 02/07/2023 | 186 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 2/7/2023; terminating as moot 118 Government's Motion In Limine to Exclude Trial Testimony of Defendants' Proposed Expert Witness; denying without prejudice 142 Defendants' Motion In Limine to Exclude Trial Testimony of Government's Purported Expert Witnesses; denying as moot, in part, and withdrawing, in part, 170 Government's Motion In Limine to Exclude Trial Testimony of Defendants' Proposed Expert Witnesses. Proposed limiting instruction(s) due February 24, 2023. Court Reporter: Katharine Healey (JW) (Entered: 02/08/2023) |
| 02/23/2023 | 187 | JOINT EMERGENCY MOTION to Extend Time to Filing Deadline by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/24/2023 to edit text (AET). (Entered: 02/23/2023) |
| 02/23/2023 | 188 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 187 Emergency MOTION to Extend Time to Filing Deadline -- *Joint* (Mesrobian, David) (Entered: 02/23/2023) |
| 02/24/2023 | 189 | MOTION in Limine for Jury Instruction by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) Modified on 2/27/2023 to edit text (AET). (Entered: 02/24/2023) |
| 02/24/2023 | 190 | MOTION in Limine to exclude argument and evidence at trial that is contrary to the law by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) Modified on 2/27/2023 to edit text (AET). (Entered: 02/24/2023) |
| 02/24/2023 | 191 | **ORDER granting in part and denying in part 187 Emergency Joint Motion for** |

| | | **Extension of Filing Deadline, Motions in Limine due no later than 1:00 p.m. on Monday, February 27, 2023. See Order for details. Signed by Judge Marcia Morales Howard on 2/24/2023. (JCM) (Entered: 02/24/2023)** |
|---|---|---|
| 02/27/2023 | 193 | FIRST MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 194 | SECOND MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 195 | THIRD MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 196 | FOURTH MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Exhibit A)(King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 197 | FIFTH MOTION in Limine by Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (King, Alex) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 198 | FIRST MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 199 | SECOND MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 200 | THIRD MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 201 | FOURTH MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 02/27/2023 | 202 | FIFTH MOTION in Limine by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Zermay, Zachary) Modified on 2/28/2023 to edit text (AET). (Entered: 02/27/2023) |
| 03/06/2023 | 204 | FOURTH SUPERSEDING INDICTMENT returned in open court as to Kristopher Justinboyer Ervin (1) count(s) 1ssss, 2ssss-8ssss, 9ssss, 10ssss-12ssss, Matthew Raymond Hoover (2) count(s) 1ss, 2ss-8ss. (Attachments: # 1 Restricted Unredacted Indictment) (BD) Modified on 3/16/2023 to edit text (AET). (Entered: 03/06/2023) |
| 03/08/2023 | 205 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: re: 204 Fourth Superseding Indictment. Arraignment set for 3/14/2023 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) (Entered: 03/08/2023) |
| 03/10/2023 | 207 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 198 FIRST MOTION in Limine , 193 FIRST MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 208 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 199 SECOND MOTION in Limine , 194 SECOND MOTION in |

Limine (Taylor, Laura) (Entered: 03/10/2023)

| | | |
|---|---|---|
| 03/10/2023 | 209 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 200 THIRD MOTION in Limine , 195 THIRD MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 210 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 201 FOURTH MOTION in Limine , 196 FOURTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 211 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 197 FIFTH MOTION in Limine , 202 FIFTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 212 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 203 SIXTH MOTION in Limine (Taylor, Laura) (Entered: 03/10/2023) |
| 03/10/2023 | 213 | RESPONSE 189 MOTION in Limine for Jury Instruction by Kristopher Justinboyer Ervin (King, Alex) (Entered: 03/10/2023) |
| 03/10/2023 | 214 | RESPONSE 190 MOTION in Limine to exclude argument and evidence at trial that is contrary to the law by Kristopher Justinboyer Ervin (King, Alex) (Entered: 03/10/2023) |
| 03/14/2023 | 217 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. Richardson: ARRAIGNMENT on the Fourth Superseding Indictment as to Kristopher Justinboyer Ervin (1) Counts 1ssss through 12ssss and Matthew Raymond Hoover (2) Counts 1ss through 8ss, held on 3/14/2023 Defendant(s) pled not guilty. (Digital) (SHS) Modified on 3/16/2023 to edit text (AET). (Entered: 03/15/2023) |
| 03/20/2023 | 218 | TRANSCRIPT of Motion Hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 02/07/2023 before Judge Marcia Morales Howard. Court Reporter: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 4/10/2023. Redacted Transcript Deadline set for 4/20/2023. Release of Transcript Restriction set for 6/20/2023. (KMH) (Entered: 03/20/2023) |
| 03/22/2023 | 219 | TRIAL BRIEF by USA as to Kristopher Justinboyer Ervin (Tran, Mai) (Entered: 03/22/2023) |
| 03/30/2023 | 222 | Unopposed MOTION to Allow Electronic Equipment, specifically cell phone and laptop by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 03/30/2023) |
| 03/30/2023 | 223 | **ORDER granting in part and denying in part 189 Government's Motion in Limine for Jury Instruction; granting in part and denying in part 190 Government's Motion in Limine to Exclude Argument and Evidence; denying** |

| | | |
|---|---|---|
| | | **193** Defendants' First Motion in Limine; denying **194** Defendants' Second Motion in Limine; denying **195** Defendants' Third Motion in Limine; denying **196** Defendants' Fourth Motion in Limine; denying **197** Defendants' Fifth Motion in Limine; denying **198** Defendants' First Motion in Limine; denying **199** Defendants' Second Motion in Limine; denying **200** Defendants' Third Motion in Limine; denying **201** Defendants' Fourth Motion in Limine; denying **202** Defendants' Fifth Motion in Limine; denying 203 Defendant Hoover's Sixth Motion in Limine. Signed by Judge Marcia Morales Howard on 3/30/2023. (JCM) (Entered: 03/30/2023) |
| 03/31/2023 | 224 | **ORDER granting 222 Motion to Allow Electronic Equipment as to Kristopher Justinboyer Ervin (1). Signed by Judge Marcia Morales Howard on 3/31/2023. (JW)** (Entered: 03/31/2023) |
| 04/03/2023 | 225 | Proposed Jury Instructions by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 226 | STATEMENT of the case for trial by USA. (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 227 | PROPOSED verdict form filed by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 228 | PROPOSED Voir Dire by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/03/2023) |
| 04/03/2023 | 229 | PROPOSED Voir Dire by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/03/2023) |
| 04/03/2023 | 230 | STATEMENT of the case for trial (King, Alex) (Entered: 04/03/2023) |
| 04/03/2023 | 231 | PROPOSED verdict form filed by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/03/2023) |
| 04/03/2023 | 232 | Proposed Jury Instructions by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/03/2023) |
| 04/08/2023 | 240 | WITNESS LIST by Kristopher Justinboyer Ervin. (King, Alex) Modified on 4/10/2023 to edit text (AET). (Entered: 04/08/2023) |
| 04/10/2023 | 241 | EXHIBIT LIST by Kristopher Justinboyer Ervin (King, Alex) Modified on 4/11/2023 See Docket Entry 245 for corrected Exhibit List (AET). (Entered: 04/10/2023) |
| 04/10/2023 | 242 | WITNESS LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/10/2023) |
| 04/10/2023 | 243 | EXHIBIT LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/10/2023) |
| 04/10/2023 | 244 | EXHIBIT LIST by Matthew Raymond Hoover as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Zermay, Zachary) (Entered: 04/10/2023) |
| 04/10/2023 | 245 | EXHIBIT LIST by Kristopher Justinboyer Ervin (King, Alex) (Entered: 04/10/2023) |
| 04/10/2023 | 246 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY SELECTION AND TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/10/2023. Court Reporter: Katharine Healey (JW) |

| 04/11/2023 | 247 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/11/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/12/2023) |
|---|---|---|
| 04/12/2023 | 248 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/12/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/13/2023) |
| 04/13/2023 | 249 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/13/2023. Court Reporter: Shelli Kozachenko (JW) (Entered: 04/14/2023) |
| 04/14/2023 | 251 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/14/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/17/2023) |
| 04/17/2023 | 250 | REQUEST for Judicial Notice by Kristopher Justinboyer Ervin (Attachments: # 1 Exhibit A)(King, Alex) Modified on 4/18/2023 to edit text (AET). (Entered: 04/17/2023) |
| 04/17/2023 | 252 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/17/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/18/2023) |
| 04/18/2023 | 253 | SUPPLEMENT re 225 Proposed Jury Instructions by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 04/18/2023) |
| 04/19/2023 | 254 | COURT'S FINAL JURY INSTRUCTIONS as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 04/19/2023) |
| 04/19/2023 | 256 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/19/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/21/2023) |
| 04/20/2023 | 255 | **PARTIAL SEQUESTRATION ORDER. Signed by Judge Marcia Morales Howard on 4/20/2023. (JW)** (Entered: 04/20/2023) |
| 04/20/2023 | 257 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/20/2023. Court Reporter: Katharine Healey (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 258 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: JURY TRIAL as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/21/2023. Court Reporter: Katharine Healey (Attachments: # 1 Government's Exhibit 1 Regarding Remand, # 2 Government's Exhibit 2 Regarding Remand) (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 259 | EXHIBIT LIST by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Additional attachment(s) added on 4/26/2023: # 1 Exhibit 1, # 2 Exhibit 1A, # 3 Exhibit 2, # 4 Exhibit 2A, # 5 Exhibit 3, # 6 Exhibit 3A, # 7 Exhibit 4, # 8 Exhibit 4A, # 9 Exhibit 5, # 10 Exhibit 5A, # 11 Exhibit 6, # 12 Exhibit 6A, # 13 Exhibit 7, # 14 Exhibit 7A, # 15 Exhibit 8, # 16 Exhibit 8A, # 17 Exhibit 9, # 18 Exhibit 9A, # 19 Exhibit 10, # 20 Exhibit 10A, # 21 Exhibit 11, # 22 Exhibit 11A, # 23 Exhibit 12, # 24 Exhibit 12A, # 25 Exhibit 14, # 26 |

Exhibit 14A, # 27 Exhibit 15, # 28 Exhibit 15A, # 29 Exhibit 16, # 30 Exhibit 16A, # 31 Exhibit 17.1, # 32 Exhibit 17.1A, # 33 Exhibit 17.2, # 34 Exhibit 17.2A, # 35 Exhibit 17.3, # 36 Exhibit 17.3A, # 37 Exhibit 18, # 38 Exhibit 19, # 39 Exhibit 20, # 40 Exhibit 20A, # 41 Exhibit 21, # 42 Exhibit 22, # 43 Exhibit 23, # 44 Exhibit 24, # 45 Exhibit 25, # 46 Exhibit 25A, # 47 Exhibit 25B, # 48 Exhibit 26) (JW). (Additional attachment(s) added on 4/26/2023: # 49 Exhibit 27A, # 50 Exhibit 27B, # 51 Exhibit 28, # 52 Exhibit 29, # 53 Exhibit 30, # 54 Exhibit 30A, # 55 Exhibit 30B, # 56 Exhibit 30C, # 57 Exhibit 30D, # 58 Exhibit 30E, # 59 Exhibit 30F, # 60 Exhibit 30G, # 61 Exhibit 30H, # 62 Exhibit 30I, # 63 Exhibit 30J, # 64 Exhibit 30K, # 65 Exhibit 30L, # 66 Exhibit 30M, # 67 Exhibit 30N, # 68 Exhibit 30O, # 69 Exhibit 30P, # 70 Exhibit 30Q, # 71 Exhibit 30R, # 72 Exhibit 30S, # 73 Exhibit 30T, # 74 Exhibit 30U, # 75 Exhibit 30V, # 76 Exhibit 31, # 77 Exhibit 32) (JW). (Additional attachment(s) added on 4/26/2023: # 78 Exhibit 33, # 79 Exhibit 33A, # 80 Exhibit 33B, # 81 Exhibit 33C, # 82 Exhibit 33D, # 83 Exhibit 33E, # 84 Exhibit 33F, # 85 Exhibit 33G, # 86 Exhibit 33H, # 87 Exhibit 33I, # 88 Exhibit 33J, # 89 Exhibit 33K, # 90 Exhibit 33L, # 91 Exhibit 33M, # 92 Exhibit 33N, # 93 Exhibit 33O, # 94 Exhibit 33P, # 95 Exhibit 33Q, # 96 Exhibit 33R, # 97 Exhibit 33S, # 98 Exhibit 33T, # 99 Exhibit 33U, # 100 Exhibit 33V, # 101 Exhibit 33W, # 102 Exhibit 33X, # 103 Exhibit 33Y, # 104 Exhibit 33Z, # 105 Exhibit 34, # 106 Exhibit 35, # 107 Exhibit 36, # 108 Exhibit 37, # 109 Exhibit 38, # 110 Exhibit 39, # 111 Exhibit 40, # 112 Exhibit 41, # 113 Exhibit 42, # 114 Exhibit 43, # 115 Exhibit 44, # 116 Exhibit 45, # 117 Exhibit 46, # 118 Exhibit 47, # 119 Exhibit 48, # 120 Exhibit 49) (JW). (Additional attachment(s) added on 4/26/2023: # 121 Exhibit 49A, # 122 Exhibit 49B, # 123 Exhibit 49C, # 124 Exhibit 49D, # 125 Exhibit 49E, # 126 Exhibit 49F, # 127 Exhibit 49G, # 128 Exhibit 49H, # 129 Exhibit 49I, # 130 Exhibit 49J, # 131 Exhibit 49K, # 132 Exhibit 49L, # 133 Exhibit 49M, # 134 Exhibit 49N, # 135 Exhibit 49O, # 136 Exhibit 49P, # 137 Exhibit 49Q, # 138 Exhibit 50A, # 139 Exhibit 50B, # 140 Exhibit 50C, # 141 Exhibit 50D, # 142 Exhibit 50E, # 143 Exhibit 50F, # 144 Exhibit 50G, # 145 Exhibit 50H, # 146 Exhibit 50I, # 147 Exhibit 50J, # 148 Exhibit 50K, # 149 Exhibit 50L, # 150 Exhibit 50M, # 151 Exhibit 50N, # 152 Exhibit 50O, # 153 Exhibit 50P, # 154 Exhibit 51, # 155 Exhibit 52, # 156 Exhibit 53, # 157 Exhibit 54, # 158 Exhibit 55, # 159 Exhibit 56) (JW). (Additional attachment(s) added on 4/26/2023: # 160 Exhibit 57A, # 161 Exhibit 57B, # 162 Exhibit 57C, # 163 Exhibit 58A, # 164 Exhibit 58B, # 165 Exhibit 58C, # 166 Exhibit 58D, # 167 Exhibit 59, # 168 Exhibit 60, # 169 Exhibit 61, # 170 Exhibit 63, # 171 Exhibit 64, # 172 Exhibit 65, # 173 Exhibit 66, # 174 Exhibit 67, # 175 Exhibit 67A, # 176 Exhibit 67B, # 177 Exhibit 67C, # 178 Exhibit 67D, # 179 Exhibit 67E, # 180 Exhibit 67F, # 181 Exhibit 67G, # 182 Exhibit 67H, # 183 Exhibit 67I, # 184 Exhibit 67J, # 185 Exhibit 67K, # 186 Exhibit 67L, # 187 Exhibit 67M, # 188 Exhibit 67N, # 189 Exhibit 67O, # 190 Exhibit 67P, # 191 Exhibit 67Q, # 192 Exhibit 67R, # 193 Exhibit 67S, # 194 Exhibit 67T, # 195 Exhibit 67U, # 196 Exhibit 67V, # 197 Exhibit 67W, # 198 Exhibit 67X, # 199 Exhibit 67Y, # 200 Exhibit 67Z) (JW). (Additional attachment(s) added on 4/26/2023: # 201 Exhibit 67AA, # 202 Exhibit 67BB, # 203 Exhibit 67CC, # 204 Exhibit 67DD, # 205 Exhibit 67EE, # 206 Exhibit 67FF, # 207 Exhibit 67GG, # 208 Exhibit 67HH, # 209 Exhibit 67II, # 210 Exhibit 67JJ, # 211 Exhibit 67KK, # 212 Exhibit 67LL, # 213 Exhibit 67MM, # 214 Exhibit 67NN, # 215 Exhibit 67OO, # 216 Exhibit 67PP, # 217 Exhibit 67QQ, # 218 Exhibit 67RR, # 219 Exhibit 67SS, # 220 Exhibit 67TT, # 221 Exhibit 67UU, # 222 Exhibit 67VV, # 223 Exhibit 67WW, # 224 Exhibit 67XX, # 225 Exhibit 67YY, # 226 Exhibit 67ZZ, # 227 Exhibit 67AAA, # 228 Exhibit 67BBB, # 229 Exhibit 67CCC, # 230 Exhibit 68, # 231 Exhibit 69, # 232 Exhibit 70, # 233 Exhibit 71, # 234 Exhibit

72, # 235 Exhibit 73, # 236 Exhibit 74, # 237 Exhibit 75, # 238 Exhibit 76, # 239 Exhibit 77, # 240 Exhibit 78, # 241 Exhibit 79, # 242 Exhibit 80, # 243 Exhibit 81, # 244 Exhibit 82, # 245 Exhibit 83, # 246 Exhibit 84, # 247 Exhibit 85, # 248 Exhibit 86, # 249 Exhibit 87, # 250 Exhibit 88, # 251 Exhibit 89) (JW). (Additional attachment(s) added on 4/26/2023: # 252 Exhibit 89A, # 253 Exhibit 89B, # 254 Exhibit 89C, # 255 Exhibit 89D, # 256 Exhibit 89E, # 257 Exhibit 89F, # 258 Exhibit 89G, # 259 Exhibit 89H, # 260 Exhibit 89I, # 261 Exhibit 90, # 262 Exhibit 90A, # 263 Exhibit 90B, # 264 Exhibit 90C, # 265 Exhibit 90D, # 266 Exhibit 90E, # 267 Exhibit 90F, # 268 Exhibit 90G, # 269 Exhibit 90H, # 270 Exhibit 91) (JW). (Additional attachment(s) added on 4/26/2023: # 271 Exhibit 91A, # 272 Exhibit 91B, # 273 Exhibit 91C, # 274 Exhibit 91D, # 275 Exhibit 91E, # 276 Exhibit 91F, # 277 Exhibit 91G, # 278 Exhibit 91H, # 279 Exhibit 91I, # 280 Exhibit 91J, # 281 Exhibit 91K, # 282 Exhibit 91L, # 283 Exhibit 91M, # 284 Exhibit 91N, # 285 Exhibit 92, # 286 Exhibit 92A, # 287 Exhibit 92B, # 288 Exhibit 92C, # 289 Exhibit 92D, # 290 Exhibit 92E, # 291 Exhibit 92F, # 292 Exhibit 92G, # 293 Exhibit 92H, # 294 Exhibit 92I, # 295 Exhibit 92J, # 296 Exhibit 92K, # 297 Exhibit 93, # 298 Exhibit 94, # 299 Exhibit 95, # 300 Exhibit 95A, # 301 Exhibit 95B, # 302 Exhibit 95C, # 303 Exhibit 95D, # 304 Exhibit 95E) (JW). (Additional attachment(s) added on 4/26/2023: # 305 Exhibit 96, # 306 Exhibit 97, # 307 Exhibit 97A, # 308 Exhibit 97B, # 309 Exhibit 97C, # 310 Exhibit 97D, # 311 Exhibit 98, # 312 Exhibit 98A, # 313 Exhibit 98B, # 314 Exhibit 98C, # 315 Exhibit 98D, # 316 Exhibit 98E, # 317 Exhibit 99, # 318 Exhibit 99A, # 319 Exhibit 99B, # 320 Exhibit 99C, # 321 Exhibit 99D, # 322 Exhibit 100, # 323 Exhibit 101, # 324 Exhibit 101A) (JW). (Additional attachment(s) added on 4/26/2023: # 325 Exhibit 102, # 326 Exhibit 103, # 327 Exhibit 103A, # 328 Exhibit 104, # 329 Exhibit 105, # 330 Exhibit 105A, # 331 Exhibit 108, # 332 Exhibit 109A, # 333 Exhibit 109B, # 334 Exhibit 109C, # 335 Exhibit 109D, # 336 Exhibit 110) (JW). (Additional attachment(s) added on 4/27/2023: # 337 Exhibit 111, # 338 Exhibit 112, # 339 Exhibit 114, # 340 Exhibit 115, # 341 Exhibit 116A, # 342 Exhibit 116B, # 343 Exhibit 116C, # 344 Exhibit 116D, # 345 Exhibit 117, # 346 Exhibit 118, # 347 Exhibit 119, # 348 Exhibit 120, # 349 Exhibit 120A, # 350 Exhibit 120B, # 351 Exhibit 120C, # 352 Exhibit 120D, # 353 Exhibit 123, # 354 Exhibit 124, # 355 Exhibit 124.1, # 356 Exhibit 124.1A, # 357 Exhibit 124.2, # 358 Exhibit 124.3, # 359 Exhibit 124.3A, # 360 Exhibit 125, # 361 Exhibit 125A, # 362 Exhibit 126) (JW). (Entered: 04/24/2023)

| Date | No. | Description |
|---|---|---|
| 04/21/2023 | 260 | EXHIBIT LIST by Kristopher Justinboyer Ervin (FILED IN OPEN COURT). (Attachments: # 1 Defendant Ervin's Exhibit 8, # 2 Defendant Ervin's Exhibit 26)(JW) (Entered: 04/24/2023) |
| 04/21/2023 | 261 | Court's Proposed Jury Instructions as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 262 | Court's Revised Proposed Jury Instructions as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (FILED IN OPEN COURT). (JW) (Entered: 04/24/2023) |
| 04/21/2023 | 263 | JURY VERDICT as to Kristopher Justinboyer Ervin (FILED IN OPEN COURT). (Attachments: # 1 Restricted Unredacted Jury Verdict)(JW) (Entered: 04/24/2023) |
| 04/21/2023 | 266 | Court Exhibits as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (JW) (Entered: 04/24/2023) |
| 04/24/2023 | 267 | NOTICE OF HEARING as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover: Sentencing set for July 31, 2023, at 9:30 a.m. in Jacksonville Courtroom 10 B |

| | | before Judge Marcia Morales Howard. (JW) (Entered: 04/24/2023) |
|---|---|---|
| 04/27/2023 | | Remark: The flash drives containing the closing argument PowerPoint presentations by all counsel are stored with the exhibits in the trial exhibit storage room in the Clerk's Office. (JW) (Entered: 04/27/2023) |
| 05/03/2023 | 270 | Unopposed MOTION to Continue Deadline to File Motion for Judgment of Acquittal by Kristopher Justinboyer Ervin. (King, Alex) (Entered: 05/03/2023) |
| 05/04/2023 | 271 | **ORDER granting 270 Unopposed Motion to Continue Deadline to File Motion for Judgment of Acquittal. Motion due May 19, 2023. Signed by Judge Marcia Morales Howard on 5/4/2023. (JW)** (Entered: 05/04/2023) |
| 05/05/2023 | 272 | TRANSCRIPT of Excerpt of Jury Trial Proceedings (remand arguments as to Hoover) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/21/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 5/26/2023. Redacted Transcript Deadline set for 6/5/2023. Release of Transcript Restriction set for 8/3/2023. (KMH) (Entered: 05/05/2023) |
| 05/19/2023 | 273 | POST-VERDICT MOTION for Judgment of Acquittal by Kristopher Justinboyer Ervin. (King, Alex) (Modified on 5/22/2023, to edit text) (BGR). (Entered: 05/19/2023) |
| 05/19/2023 | 274 | MOTION for Judgment of Acquittal by Matthew Raymond Hoover. (Zermay, Zachary) (Modified on 5/22/2023, to edit text) (BGR). (Entered: 05/19/2023) |
| 05/25/2023 | 275 | MOTION to Extend Time to Respond to Defendants' Motions for Judgment of Acquittal by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 05/25/2023) |
| 05/26/2023 | 276 | **ENDORSED ORDER granting 275 Motion to Extend Time to Respond to Defendants' Motions for Judgment of Acquittal. The United States shall have up to and including June 16, 2023, to file its responses to Defendants' Motions for Judgment of Acquittal. Signed by Judge Marcia Morales Howard on 5/26/2023. (JW)** (Entered: 05/26/2023) |
| 06/06/2023 | 277 | TRANSCRIPT of Jury Selection and Trial (Volume 1 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/10/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is |

| | | |
|---|---|---|
| | | filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/06/2023) |
| 06/06/2023 | 278 | TRANSCRIPT of Jury Trial (Volume 2 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 04/11/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Modified on 6/6/2023, to edit text) (BGR). (Entered: 06/06/2023) |
| 06/06/2023 | 279 | TRANSCRIPT of Jury Trial (Volume 3 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/12/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Modified on 6/6/2023, to edit text) (BGR). (Entered: 06/06/2023) |
| 06/06/2023 | 280 | TRANSCRIPT of Jury Trial (Volume 4 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/13/23 before Judge Howard. Court Reporter/Transcriber: Shelli Kozachenko. Email address: shellikoz@gmail.com. Telephone number: 904.301.6842.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/27/2023. Redacted Transcript Deadline set for 7/7/2023. Release of Transcript Restriction set for 9/5/2023. (SMK) (Entered: 06/06/2023) |

| | | |
|---|---|---|
| 06/07/2023 | 281 | TRANSCRIPT of Jury Trial (Volume 5 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/14/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 282 | TRANSCRIPT of Jury Trial (Volume 6 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/17/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 283 | TRANSCRIPT of Jury Trial (Volume 7 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/19/23 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: 9043016843. NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 284 | TRANSCRIPT of Jury Trial (Volume 8 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/20/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843. NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the |

| | | |
|---|---|---|
| | | court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/07/2023 | 285 | TRANSCRIPT of Jury Trial (Volume 9 of 9) as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 4/21/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 6/28/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/5/2023. (KMH) (Entered: 06/07/2023) |
| 06/12/2023 | 286 | MOTION to Continue Sentencing Hearing by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 06/12/2023) |
| 06/13/2023 | 287 | MOTION for Forfeiture of a Preliminary Order for Involved-In Property and Substitute Assets by USA as to Kristopher Justinboyer Ervin. (Tran, Mai) (Entered: 06/13/2023) |
| 06/13/2023 | 288 | **ENDORSED ORDER as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover regarding 286 United States' Motion to Continue Sentencing Hearing. Defendants shall have up to and including June 20, 2023, to file responses to this motion. Signed by Judge Marcia Morales Howard on 6/13/2023. (JW)** (Entered: 06/13/2023) |
| 06/16/2023 | 289 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover re 274 MOTION for Judgment of Acquittal (Taylor, Laura) (Entered: 06/16/2023) |
| 06/16/2023 | 290 | RESPONSE in Opposition by USA as to Kristopher Justinboyer Ervin re 273 MOTION for Judgment of Acquittal (Taylor, Laura) (Modified on 6/20/2023, to edit text) (BGR). (Entered: 06/16/2023) |
| 06/20/2023 | 291 | RESPONSE 286 MOTION to Continue Sentencing Hearing by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (King, Alex) (Entered: 06/20/2023) |
| 06/21/2023 | 293 | **ORDER granting 286 Motion to Continue as to Kristopher Justinboyer Ervin (1), Matthew Raymond Hoover (2). Sentencing hearing continued to September 6, 2023, at 9:30 a.m. Signed by Judge Marcia Morales Howard on 6/21/2023. (JW)** (Entered: 06/21/2023) |

| 08/01/2023 | 295 | RULE 32(e)(2) INITIAL PRESENTENCE INVESTIGATION REPORT as to Kristopher Justinboyer Ervin. E-copies made available to selected parties.(TH) (Entered: 08/01/2023) |
|---|---|---|
| 08/07/2023 | 296 | MOTION for Miscellaneous Relief, specifically Order Prohibiting Dissemination of Presentence Investigation Report by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Taylor, Laura) (Entered: 08/07/2023) |
| 08/08/2023 | 297 | **ORDER taking under advisement 296 United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report. An IN PERSON hearing on the motion is set for Friday, August 11, 2023, at 2:00 p.m. in Courtroom 10B. Defendants and all counsel of record are required to be present. Signed by Judge Marcia Morales Howard on 8/8/2023. (JW)** (Entered: 08/08/2023) |
| 08/09/2023 | 298 | NOTICE OF RESCHEDULING HEARING (AS TO TIME ONLY): The Motion Hearing previously scheduled for August 11, 2023, at 2:00 p.m. is rescheduled as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. New hearing time: Motion Hearing set for August 11, 2023, at 1:30 p.m. in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. (JW) (Entered: 08/09/2023) |
| 08/09/2023 | 299 | JOHN CRUMP'S EMERGENCY MOTION to Intervene for the Limited Purpose of Responding to the United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (MDC) (Entered: 08/09/2023) |
| 08/09/2023 | 300 | First MOTION for Stephen D. Stramboulieh to appear pro hac vice, Special Admission fee paid, Receipt No. FLMDC-21130611 for $150 by John Crump as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Phillips, James) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/09/2023) |
| 08/09/2023 | 301 | First MOTION for Robert J. Olson to appear pro hac vice, Special Admission fee paid, Receipt No. FLMDC-21130715 for $150 by John Crump as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Phillips, James) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/09/2023) |
| 08/09/2023 | 302 | SUPPLEMENT to 296 Motion for Order Prohibiting Dissemination of Presentence Investigation Report by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (Attachments: # 1 Exhibits not scanned, filed separately)(MDC) (Entered: 08/09/2023) |
| 08/10/2023 | 303 | **ENDORSED ORDER granting 300 Motion for Special Admission by Stephen D. Stramboulieh, Esq. If Mr. Stramboulieh has not already done so, he shall immediately register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Monte C. Richardson on 8/9/2023. (SHS)** Modified on 8/10/2023 (SHS). (Entered: 08/10/2023) |
| 08/10/2023 | 304 | **ENDORSED ORDER granting 301 Motion for Special Admission by Robert J. Olson, Esq. If Mr. Olson has not already done so, he shall immediately register for a login and password for electronic filing at the Court's website at www.flmd.uscourts.gov. Signed by Magistrate Judge Monte C. Richardson on 8/9/2023. (SHS)** (Entered: 08/10/2023) |
| 08/10/2023 | 305 | **ENDORSED ORDER taking under advisement 299 John Crump's Emergency Motion to Intervene. The Court intends to resolve the Motion at the August 11,** |

| | | **2023 Hearing. Signed by Judge Marcia Morales Howard on 8/10/2023. (MHM)** (Entered: 08/10/2023) |
|---|---|---|
| 08/10/2023 | 306 | MOTION for Leave to File Amicus Curiae Brief and Brief Amicus Curiae of Eric Blandford, et al. in Support of 299 Emergency Motion by Eric J. Friday as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover. (BGR) (Entered: 08/11/2023) |
| 08/11/2023 | 307 | **ORDER permitting members of the press to enter the courthouse with laptop computers, tablets, and/or cell phones to attend the hearing set for today, August 11, 2023, at 1:30 p.m. Signed by Judge Marcia Morales Howard on 8/11/2023. (JW)** (Entered: 08/11/2023) |
| 08/11/2023 | 308 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: MOTION hearing as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 8/11/2023; denying as moot 299 John Crump's Emergency Motion to Intervene; denying as moot 306 Motion for Leave to File Amicus Curiae Brief; withdrawing, in part, and denying, in part, 296 United States' Motion for Order Prohibiting Dissemination of Presentence Investigation Report. Court Reporter: Katharine Healey (JW) (Entered: 08/14/2023) |
| 08/14/2023 | 309 | TRANSCRIPT of Motion as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover held on 08/11/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/5/2023. Redacted Transcript Deadline set for 9/14/2023. Release of Transcript Restriction set for 11/13/2023. (KMH) (Entered: 08/14/2023) |
| 08/23/2023 | 310 | **ORDER denying 273 Ervin's Motion for Judgment of Acquittal; denying 274 Hoover's Motion for Judgment of Acquittal. Signed by Judge Marcia Morales Howard on 8/23/2023. (JCM)** (Entered: 08/23/2023) |
| 08/30/2023 | 311 | RULE 32(g) FINAL PRESENTENCE INVESTIGATION REPORT as to Kristopher Justinboyer Ervin. E-copies made available to selected parties.(MW) (Entered: 08/30/2023) |
| 08/30/2023 | 313 | SENTENCING MEMORANDUM by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 08/30/2023) |
| 08/31/2023 | 316 | **PRELIMINARY ORDER OF FORFEITURE (granting 287 Motion for Forfeiture of Property as to Kristopher Justinboyer Ervin (1)). Signed by Judge Marcia Morales Howard on 8/31/2023. (JW)** (Entered: 08/31/2023) |
| 09/01/2023 | 319 | SENTENCING MEMORANDUM by Kristopher Justinboyer Ervin as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Attachments: # 1 Exhibit A, # 2 Exhibit B)(King, Alex) (Entered: 09/01/2023) |

| 09/02/2023 | 320 | SENTENCING MEMORANDUM by USA as to Kristopher Justinboyer Ervin, Matthew Raymond Hoover (Taylor, Laura) (Entered: 09/02/2023) |
|---|---|---|
| 09/06/2023 | 321 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: SENTENCING held on 9/6/2023. The Court heard argument from counsel regarding the objections to the Presentence Investigation Report, resolved the objections, and announced the guidelines on the record. The parties made their presentations, and the Court heard from Defendants and their mitigation witnesses. The Court will pronounce sentence on September 7, 2023, at 11:30 a.m. Court Reporter: Katharine Healey (JW) (Entered: 09/08/2023) |
| 09/07/2023 | 323 | Minute Entry for In Person proceedings held before Judge Marcia Morales Howard: SENTENCING held on 9/7/2023 for Kristopher Justinboyer Ervin (1), Counts 1, 15ss-17ss, 16sss-18sss, 1s-7s, 1ss, 1sss, 2ss-7ss, 2sss-8sss, 8s, 8ss-14ss, 9s-14s, 9sss-15sss, Dismissed on Government's Motion; Counts 1ssss, 2ssss-8ssss, 9ssss, 10ssss-12ssss, Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00. Court Reporter: Katharine Healey (JW) (Entered: 09/14/2023) |
| 09/14/2023 | 324 | **JUDGMENT as to Kristopher Justinboyer Ervin (1), Counts 1, 15ss-17ss, 16sss-18sss, 1s-7s, 1ss, 1sss, 2ss-7ss, 2sss-8sss, 8s, 8ss-14ss, 9s-14s, 9sss-15sss, Dismissed on Government's Motion; Counts 1ssss, 2ssss-8ssss, 9ssss, 10ssss-12ssss, Imprisonment: SIXTY-EIGHT (68) MONTHS, consisting of SIXTY (60) MONTHS as to each Count One and Nine and SIXTY-EIGHT (68) MONTHS as to each Count Two through Eight and Ten through Twelve, all such terms to run concurrently; Supervised Release: THREE (3) YEARS, consisting of THREE (3) YEARS as to each Count One through Twelve, all such terms to run concurrently; Special Assessment: $1,200.00 Signed by Judge Marcia Morales Howard on 9/14/2023. (JW)** (Entered: 09/14/2023) |
| 09/14/2023 | 325 | STATEMENT OF REASONS as to Kristopher Justinboyer Ervin. E-copies made available to selected parties. (JW) (Entered: 09/14/2023) |
| 09/14/2023 | 329 | TRANSCRIPT of Sentencing (Volume 1 of 2) as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 09/06/2023 before Judge Marcia Morales Howard. Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/5/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/13/2023. (KMH) (Entered: 09/14/2023) |
| 09/14/2023 | 330 | TRANSCRIPT of Sentencing (Volume 2 of 2) as to Kristopher Justinboyer Ervin and Matthew Raymond Hoover held on 09/07/2023 before Judge Marcia Morales Howard. |

| | | |
|---|---|---|
| | | Court Reporter/Transcriber: Katharine M. Healey, RMR, CRR, FPR-C. Email address: katharinehealey@bellsouth.net. Telephone number: (904) 301-6843.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/5/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/13/2023. (KMH) (Entered: 09/14/2023) |
| 09/19/2023 | 331 | NOTICE OF APPEAL by Kristopher Justinboyer Ervin re 310 Order on Motion for Judgment of Acquittal, 324 Judgment. Filing fee paid $ 505, receipt number AFLMDC-21268505. (King, Alex) (Entered: 09/19/2023) |
| 09/20/2023 | 332 | TRANSMITTAL of initial appeal package as to Kristopher Justinboyer Ervin to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 331 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (CTR) (Entered: 09/20/2023) |
| 09/21/2023 | | USCA Case Number as to Kristopher Justinboyer Ervin. USCA Number: 23-13062 for 331 Notice of Appeal filed by Kristopher Justinboyer Ervin. (SJW) (Entered: 09/22/2023) |
| 10/02/2023 | 335 | PROOF OF PUBLICATION as to Kristopher Justinboyer Ervin newspaper: Official Government Internet Site (www.forfeiture.gov) dates of publication: 30 consecutive days from September 2, 2023 through October 1, 2023. (Tran, Mai) (Entered: 10/02/2023) |
| 10/20/2023 | 337 | Judgment Returned Executed as to Kristopher Justinboyer Ervin on 9/29/2023. Institution: FCI Jesup. (BD) (Entered: 10/20/2023) |
| 10/25/2023 | 338 | MOTION to Withdraw as Attorney by Alex King., MOTION to Appoint Counsel , MOTION to Extend Time to appeal filings deadline by Kristopher Justinboyer Ervin. (King, Alex) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 10/25/2023) |
| 11/06/2023 | 339 | **ORDER Setting Hearing on Motion to Withdraw as Counsel and denying 338 Motion to Extend Time as to Kristopher Justinboyer Ervin (1). Signed by Magistrate Judge Monte C. Richardson on 11/6/2023. (SHS)** (Entered: 11/06/2023) |
| 11/06/2023 | 340 | Writ of Habeas Corpus ad Testificandum Issued for Kristopher Justinboyer Ervin for an in camera ex parte hearing to be held on 11/29/2023 at 11:00 a.m. as to Kristopher Justinboyer Ervin. Signed by Judge Magistrate Judge Monte C. Richardson. (SHS) (Entered: 11/06/2023) |
| 11/16/2023 | 341 | Notice of substitution of AUSA. Jennifer Michele Harrington substituting for Mai Tran. (Harrington, Jennifer) (Entered: 11/16/2023) |
| 11/29/2023 | 342 | Minute Entry for In Person proceedings held before Magistrate Judge Monte C. |

| | | Richardson: granting 338 Motion to Withdraw as Attorney Alex King and Daniel Scott Monroe withdrawn from case. as to Kristopher Justinboyer Ervin (1); EX PARTE Hearing as to Kristopher Justinboyer Ervin held on 11/29/2023 re 338 MOTION to Withdraw as Attorney by Alex King. MOTION to Appoint Counsel MOTION to Extend Time to appeal filings deadline filed by Kristopher Justinboyer Ervin. (Digital) (SHS) (Entered: 11/29/2023) |
|---|---|---|
| 11/29/2023 | 343 | ***CJA 23 Financial Affidavit (FILED IN OPEN COURT) by Kristopher Justinboyer Ervin. (SHS) (Entered: 11/29/2023) |
| 12/01/2023 | 344 | **ORDER of Appointment of CJA Counsel as to Kristopher Justinboyer Ervin: Appointment of Attorney Valarie Linnen for Kristopher Justinboyer Ervin. Signed by Magistrate Judge Monte C. Richardson on 11/29/2023. (SHS)** (Entered: 12/01/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/05/2023 09:15:40 | | | |
| **PACER Login:** | vlinnen0063291 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cr-00022-MMH-MCR |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt CJA |