THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 23-13062
DC DKT NO.: 3:12-cr-22-MMH-MCR-1

UNITED STATES OF AMERICA,
Appellee,

v.

KRISTOPHER JUSTINBOYER ERVIN,
Appellant.

REPLY BRIEF FOR APPELLANT

Valarie Linnen, Esq.
Florida Bar No. 63291
841 Prudential Drive
12th Floor
Jacksonville, FL  32207
888.608.8814
vlinnen@live.com
Attorney for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................1

TABLE OF AUTHORITIES .........................................................................................2

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES...3

CERTIFICATE OF INTERESTED PERSONS .......................................................4

ARGUMENT ..................................................................................................................5

   I.    Under the Fifth Amendment, the district court reversibly erred by denying the motion to dismiss and/or motion for judgment of acquittal for the firearms-related charges on the basis of statutory vagueness. .......................................5

   II.   Under Rule 29, Federal Rules of Criminal Procedure (2023), the district court reversibly erred by denying the motion for judgment of acquittal on the basis that the Auto Key Card does not fall within the statutory definition of machinegun within the meanng of Section 5845(b). ........................................8

   III.  Under Rule 29, Federal Rules of Criminal Procedure (2023), the district court reversibly erred by denying the judgment of acquittal as there was insufficient evidence that Mr. Ervin structured bank withdrawals for the purpose of evading the reporting requirement. .............................................................11

   IV.  Under the Fifth Amendment, the district court deprived Mr. Ervin of Due Process of Law by failing to orally pronounce at sentencing all discretionary "standard conditions" of probation. .............................................................13

CONCLUSION ...........................................................................................................13

CERTIFICATE OF SERVICE ..................................................................................14

CERTIFICATE OF TYPEFACE COMPLIANCE ................................................14

## **TABLE OF AUTHORITIES**

U.S. Const. amend. V ................................................................................... passim

26 U.S.C. § 5845 (2021) ............................................................................... passim

United States v. Brown, 40 F.3d 1218 (11th Cir. 1994) ........................................ 12

United States v. Lanier, 520 U.S. 259 (1997) .......................................................... 7

United States v. Rodriguez, 75 F.4th 1231 (11th Cir. 2023) .................................. 13

Fed. R. Crim. P. 29 (2023) ....................................................................................... 8

# **STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES**

Pursuant to 11th Cir. Rule 28-1(f), Mr. Ervin adopts all arguments made by *Amici Curiae* Firearms Policy Coalition and FPC Action Foundation, including but not limited to the arguments that the metal card does not meet the statutory definition of a machinegun (Argument I) and that the rule of lenity be applied to this case (Argument II).

Mr. Ervin also adopts all arguments made by Mr. Hoover, including but not limited to the arguments regarding the motion for judgment of acquittal (Argument III), the First Amendment violation (Argument IV), and the Second Amendment violation (Argument V).

## **CERTIFICATE OF INTERESTED PERSONS**

Appellant, KRISTOPHER JUSTINBOYER ERVIN, by and through the counsel, hereby certifies the following as Interested Persons:

1) BARKSDALE, Patricia D. – U.S. Magistrate Judge

2) CALL, Lisa – Assistant Public Defender

3) CORRIGAN, Timothy J. – U.S. District Judge

4) ERVIN, Kristopher Justinboyer – Defendant / Appellant

5) HARRINGTON, Jennifer Michelle – Assistant U.S. Attorney

6) HOOVER, Matthew Raymond – Co-Defendant

7) HOWARD, Marcia Morales – U.S. District Judge

8) KING, Alex – Trial Defense Counsel

9) KLINDT, James R. – U.S. Magistrate Judge

10) LINNEN, Valarie – Appellate Counsel for Mr. Thomas

11) MESROBIAN, David B. – Assistant U.S. Attorney

12) MONROE, Daniel Scott – Former Defense Counsel

13) RICHARDSON, Monte C. – U.S. Magistrate Judge

14) SIEKKINAN, Sean – Assistant U.S. Attorney

15) TAYLOR, Lisa Cofer – Assistant U.S. Attorney

16) TRAN, Mia – Assistant U.S. Attorney

4

# ARGUMENT

**I.   Under the Fifth Amendment, the district court reversibly erred by denying the motion to dismiss and/or motion for judgment of acquittal for the firearms-related charges on the basis of statutory vagueness.**

In *Appellant's Initial Brief*, Appellant, KRISTOPHER JUSTINBOYER ERVIN, argued that the district court reversibly erred by denying the pretrial motion to dismiss and the motion for judgment of acquittal at trial. (IB.26-33). Specifically, Mr. Ervin argued that it is not reasonably clear that a drawing on a piece of metal is considered a "combination of parts", or even a drawing that could eventually become a "combination of parts" after substantial manipulation with a motorized tool and a change of firearm bolts, is considered a "combination of parts" under Section 5845(b). An ordinary reasonable person would think that a "combination of parts" would have to be functional to be illegal. A drawing on a piece of metal that must be substantially manipulated, machined, manufactured, filed, sanded, and custom-fitted with a motorized tool is not clearly covered under Section 5845(b). (IB.32-33)

In the *Answer Brief*, the government argues that the definition of machinegun in the National Firearms Act (NFA) "plainly and simply encompasses 'a combination of parts designed and intended for use in converting a weapon into a machinegun." (AB.59) (citations omitted). The government adds, "[A] person of ordinary intelligence should foresee that the distinct pieces of the lightening links

5

that Ervin created and sold could reasonably be construed as a combination of parts designed and intended as a machinegun-conversion device, even though customers had to cut the parts out themselves." (AB.61)

However, the government glosses over the fact that the district court admitted the ambiguity in its order denying the motion for judgment of acquittal:

> **Whether Defendants transferred a 'combination of parts' may not have been obvious in this particular case.** But the law itself provides a meaningful standard. Applying that standard to Defendants' real-world conduct, the jury found that Defendants went too far and, rather than transferring mere art, they were, in fact, transferring a combination of machine gun parts. Resolving that factual question was well-within the province of the jury.

(Dkt.310 p.22. Emphasis added.) The district court plainly admitted that it "may not have been obvious in this particular case" that the items sold by Mr. Ervin fell within the meaning and prohibitions of the NFA.

The district court went on to write:

> With the second Auto Key Card that Toy received, he used a Dremel tool and a drill press. Id. at 159–61. It took him 53 minutes to successfully cut out the parts of a lightning link from that card. Id. at 162. Once Toy installed these parts into his rifle, the rifle fired automatically. Id. at 163. Based on Toy's testimony, a reasonable jury could find that, **while Toy had to "materially alter" the Auto Key Card to access the parts of a lightning link, he did not have to materially alter the parts themselves.** Toy merely had to remove the parts from the surrounding metal in order to use them to convert a semiautomatic rifle into a machinegun.

See Dkt.310 p.10.

6

But the rationale applied by the district is the sort of "judicial gloss" that the Supreme Court warned against when statutes are ambiguous:

> **[A]lthough clarity may be applied by judicial gloss on an otherwise uncertain statute**, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope…

See United States v. Lanier, 520 U.S. 259, 266 (1997).

It is not "reasonably clear" that a drawing on a piece of metal is considered a "combination of parts", or even a drawing that could eventually become a "combination of parts" after substantial manipulation with a motorized tool and a change of firearm bolts, is considered a "combination of parts" under Section 5845(b). See Lanier, 520 U.S. at 267. An ordinary reasonable person would think that a "combination of parts" would have to be functional to be illegal. A drawing on a piece of metal that must be substantially manipulated, machined, manufactured, filed, sanded, and custom-fitted with a motorized tool is not clearly covered under Section 5845(b). See Lanier, 520 U.S. at 267. As a laser-etched metal card does not meet the definition of a machinegun under Section 5845(b), the rule of lenity demands that the ambiguity be resolved in Mr. Ervin's favor.

Accordingly, the district court reversibly erred by denying both the motion dismiss the indictment and the motion for judgment of acquittal on this ground.

**II.  Under Rule 29, Federal Rules of Criminal Procedure (2023), the district court reversibly erred by denying the motion for judgment of acquittal on the basis that the Auto Key Card does not fall within the statutory definition of machinegun within the meaning of Section 5845(b).**

In *Appellant's Initial Brief,* Mr. Ervin argued that the district court reversibly erred by denying the motion for judgment of acquittal on the basis that the Auto Key Card does not fall within the statutory definition of machinegun within the meaning of Section 5845(b).  Specifically, he argued that an Auto Key Card is not a "part" of a weapon: it does not fit into a rifle without material alteration by someone skilled in manufacturing, machining, and firearms custom fitting.  Stated differently, the metal business card could not be inserted into a weapon causing the weapon to "shoot…automatically more than one shot…". (IB.34-39, citing 26 § U.S.C. 5845(b)).

In the *Answer Brief*, the government glosses over the evidence of the amount of further alterations, machining, fitting, and manufacturing required to eventually get the pieces from the Auto Key Card to fire a rifle automatically "doesn't change things."  (AB.37). The government argues that there was sufficient evidence for the jury to find that the metal key cards constituted machine gun parts within the meaning of the NFA.  (AB.37-42)

However, the government's argument glosses over the amount of work that has to be done to an Auto Key Card before it will actually cause a semi-automatic

8

weapon to fire automatically. When the government firearms expert actually cut out the pieces, the pieces did not cause a semi-automatic rifle to fire automatically. The government firearms expert had to modify the design and then substitute the bolt in an AR-15 for the bolt from a machine gun. It was only after the firearms expert made these substantial modifications that the metal pieces actually caused the rifle to fire automatically.

The amount of further manufacturing, machining, and hand fitting required to make the rifle fire automatically demonstrates just how far removed the Auto Key Card is from being an actual "part or combination of parts". These additional manufacturing, machining, and fitting requirements not only remove the Auto Key Card from the "part" or "combination of parts" requirement but also remove it from the "for use" requirement of the statutory definition.

At best, the Auto Key Card was a mere precursor to an auto sear or lightning link. However, a potential precursor to an auto sear or "lightning link" does not meet the statutory definition under Section 5845(b). As the amicus brief points out, simple household items such as a metal wall hook or wire coat hanger could *potentially* be converted into an auto sear. But to meet the statutory definition of "part or combination of parts", the item at issue must be complete and actually cause the weapon to fire automatically without material alterations. To hold otherwise

9

would allow the list of metal items that constitute a machine gun to "grow exponentially." See Amicus Brief p.5.

In sum, a metal card with a tracing of a general generalized auto sear (unspecific to any make or model of firearm) does not meet the statutory definition of a machine gun under Section 5845(b): it is not a "part" without further machining, manufacturing, filing, and custom fitting; the metal card cannot be directly inserted into a weapon "for use" as a machine gun; and the metal card with a tracing and a bottle opener is not designed "solely and exclusively" to cause a weapon to fire automatically. Accordingly, Mr. Ervin asks this Court to reversed his convictions on the firearms counts (Counts One – Eight and Ten – Twelve) and direct the district court to enter a judgment of acquittal.

Mr. Ervin adopts Mr. Hoover's arguments regarding the government's failure to prove that Mr. Ervin had the mens rea requirement to be convicted of transferring unregistered machine guns.

**III.   Under Rule 29, Federal Rules of Criminal Procedure (2023), the district court reversibly erred by denying the judgment of acquittal as there was insufficient evidence that Mr. Ervin structured bank withdrawals for the purpose of evading the reporting requirement.**

In *Appellant's Initial Brief*, Mr. Ervin argued that the district court reversibly erred by denying the motion for judgment of acquittal as there was insufficient evidence that Mr. Ervin structured bank withdrawals for the purpose of evading the reporting requirement. (IB.40-46).

In the *Answer Brief*, the government argues that the simple fact the bank manager informed Mr. Ervin that the bank would not permit him to withdraw more than $10,000 in a single day somehow put Mr. Ervin on notice that a withdrawal of $10,001 would trigger the IRS reporting requirement. (AB.53-55)

However, the evidence established that no one ever informed Mr. Ervin that a withdrawal of $10,001 would trigger the CTR requirement or that Mr. Ervin was ever aware of the $10,001 reporting requirement.

Instead, the evidence established that Mr. Ervin withdrew under $10,000 because the bank manager prohibited him from withdrawing anything more than that amount without ever mentioning the CTR requirement. The bank manager testified:

> When we told him we couldn't take the check the way it was payable – because he was trying to put it into a personal account and we don't allow that – he got upset again, said that we wouldn't be getting his business account, mortgages, loans, et cetera, and that he wanted to take all of his money out in cash.

> We told him it would need to be a special order because of the amount and it wouldn't be available until the end of the next week because we don't order every single day.
>
> **And then continued to change the dollar amount what we could give him. I told him initially, you know, "We can give you 10,000."**
>
> He said "okay" and then said, "No, give me 9,000 and I'll just come back every day or try other branches until I get all of my money."

See Dkt.279 p.170-171. (Emphasis added.)

The only record evidence as to why Mr. Ervin withdrew under $10,000 on the date in question is because the bank prohibited him from withdrawing any more than that amount. There was zero evidence presented that Mr. Ervin was aware of what amount would trigger the reporting requirement and no record evidence that Mr. Ervin withdrew that amount to evade the requirement.

Because the record reveals **a lack of substantial evidence** from which a factfinder could find Mr. Ervin guilty beyond a reasonable doubt of structuring bank transacti0ons for the purpose of evading the CTR requirement, his conviction and sentence for Count Nine must be reversed. See generally United States v. Brown, 40 F.3d 1218, 1221-20 (11th Cir. 1994).

### IV. Under the Fifth Amendment, the district court deprived Mr. Ervin of Due Process of Law by failing to orally pronounce at sentencing all discretionary "standard conditions" of probation.

In *Appellant's Initial Brief*, Mr. Ervin argued that the district court deprived Mr. Ervin of Due Process of Law by failing to orally pronounce at sentencing the "standard conditions" of supervised release.

In the Answer Brief, the government cites this Court's recent decision as foreclosing this issue. (AB.69-74; citing United States v. Rodriguez, 75 F.4th 1231, 1247 (11th Cir.2023)).

While Mr. Ervin acknowledged the Rodriguez decision in the initial brief, the undersigned counsel asserts, in good faith, that the case was decided in error and reasserts the arguments presented in *Appellant's Initial Brief*.

## CONCLUSION

For the aforementioned reasons, Mr. Ervin asks this Court to vacate and/or reverse the judgment and sentence imposed in this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to the following via electronic case mail delivery on this 4th day of June 2024:

Sean Siekkinen, Esq., Assistant U.S. Attorney

Matthew Larosiere, Esq., Attorney for Mr. Hoover

Erik S. Jaffe, Esq. & Miranda Cherkas Sherrill, Esq., Attorneys for Firearms Policy Coalition & FPC Action Foundation

## CERTIFICATE OF TYPEFACE COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 2,029 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

/s/ Valarie Linnen
VALARIE LINNEN, ESQ.
Florida Bar No.: 63291
841 Prudential Drive
12th Floor
Jacksonville, FL 32207
(888) 608-8814 Tel.
vlinnen@live.com
Attorney for Appellant