## No. 23-13062-DD

In the

# United States Court of Appeals
# for the Eleventh Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

KRISTOPHER JUSTINBOYER ERVIN AND
MATTHEW RAYMOND HOOVER,

*Defendants-Appellants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 3:21-CR-22-MMH-MCR-1

## SUPPLEMENTAL BRIEF OF THE UNITED STATES

ROGER B. HANDBERG
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

SEAN SIEKKINEN
Assistant United States Attorney
Appellate Division
USA No. 192
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
October 16, 2024                    (813) 274-6000

*United States v. Kristopher Justinboyer Ervin and Matthew Raymond Hoover*
No. 23-13062-DD

**Certificate of Interested Persons
and Corporate Disclosure Statement**

In addition to the persons identified in the Certificate of Interested

Persons and Corporate Disclosure Statement in the appellants' supplemental

briefs, the following persons and entities have an interest in the outcome of this

case:

1.     Firearms Policy Coalition, *amicus curiae*;

2.     FPC Action Coalition, *amicus curiae*;

3.     Jaffe, Erik S., Esq.; and

4.     Sherrill, Miranda Cherkas, Esq.

No publicly traded company or corporation has an interest in the

outcome of this appeal.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement......... C-1

Table of Contents ......................................................................... i

Table of Citations ......................................................................... ii

Background and Introduction......................................................... 1

Argument and Citations of Authority ............................................ 4

     I.     *Cargill* supports the conclusion that the Second Amendment does not prevent the government from regulating machineguns and machinegun-conversion devices...................... 4

     II.     Although this Court should not consider this newly asserted argument, the jury reasonably found that the lightning links in the AutoKeyCard were designed and intended to generate automatic fire "by a single function of the trigger." ...................... 7

     III.     This Court granted leave to file supplemental briefs addressing *Cargill*. The Court should not entertain Hoover's belated new argument about the Taxing and Spending Clause, which is meritless in any event ..................................... 12

Conclusion................................................................................. 15

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

i

# Table of Citations

## Cases

*Garland v. Cargill*,
 602 U.S. 406 (2024)....................................................................1–9, 12, 13

United States v. Durham,
 795 F.3d 1329 (11th Cir. 2015)..........................................................8, 13

United States v. Levy,
 379 F.3d 1241 (11th Cir. 2004)......................................................4, 8, 13

United States v. Rivera,
 58 F.3d 600 (11th Cir. 1995).................................................................15

United States v. Spoerke,
 568 F.3d 1236 (11th Cir. 2009).......................................................13–15

## Statutes

26 U.S.C. § 5841 ....................................................................................5

26 U.S.C. § 5845(b) ..........................................................................5, 8, 9

26 U.S.C. § 5861(e)................................................................................5

## Other Authorities

National Firearms Act Handbook, Bureau of Alcohol, Tobacco,
 Firearms, and Explosives, available at
 https://www.atf.gov/files/publications/download/p/atf-p-5320-
 8/atf-p-5320-8.pdf (last visited Oct. 16, 2024) ...........................................5

## Background and Introduction

The United States respectfully submits this supplemental brief in accordance with this Court's order granting the defendants' requests for supplemental briefing to address *Garland v. Cargill*, 602 U.S. 406 (2024). *See* App. Docs. 58 & 60 (defendants' requests for supplemental briefing) and App. Doc. 61-1 (order); *see also* Sept. 16, 2024 briefing notice.

This is a fully briefed criminal appeal. The appellants, Kristopher Ervin and Matthew Hoover, challenge their convictions for having possessed or transferred combinations of parts designed and intended as machinegun-conversion devices, and for related offenses. The pair manufactured, advertised, and sold "lightning links"—two-piece metal brackets that caused semiautomatic weapons to fire automatically, discharging multiple rounds with a single function of the trigger. *See* United States' response brief at 4–22 (describing evidence at trial); Doc. 254 at 18 & 25 (jury instructions). A jury convicted Hoover on eight counts and Ervin on twelve counts. *See* Docs. 263–64.

After the parties submitted their appellate briefs, the Supreme Court ruled in *Cargill* that a semiautomatic weapon equipped with a "bump stock" is not a machinegun because a bump stock does not cause a gun to fire multiple rounds by a "single function of the trigger." *See Cargill,* 602 U.S. at 413–23.

1

Rather, a bump stock causes rapid successive trigger functions discharging a single round each time. *Id*. A bump stock, however, is much different than a lightning link. So that part of *Cargill* means nothing for Ervin and Hoover, as we explain below. Importantly, however, *Cargill* all but acknowledges that Congress may regulate machineguns and conversion devices (of which lightning links are one). *Id*. at 412–13, 428–29. That matters here because Hoover challenged Congress's authority in his principal brief. *See* Hoover's brief at 55–59. The United States has already submitted a supplemental-authority letter noting that *Cargill* undermines Hoover's Second Amendment challenge. *See* App. Doc. 55.

In requesting supplemental briefing, Hoover responded with a new argument. He now claims that whether his lightning link "generate[d] automatic fire by a single function of the trigger"—the issue in *Cargill* as to bump stocks—"is *heavily* disputed in this case." App. Doc. 58 (emphasis his). But neither he nor Ervin disputed that in their opening briefs. *See* Hoover's brief and Ervin's brief. Aside from Hoover's Second Amendment challenge, the defendants' main argument at trial was, and on appeal is, that their lightning link was not a "combination of parts" as charged in the indictment, but rather a "single homogenous piece of steel." *See* Hoover's brief at 16–52; Ervin's brief at 32–38. The United States has already explained why Hoover

2

and Ervin are wrong about that. *See* United States's response brief at 36–51.

Ervin, to his credit, disagreed with Hoover about *Cargill*. Ervin acknowledged that the primary issue in *Cargill*—"the definition of a 'single function of the trigger'"—is not at issue in this case. App. Doc. 60. He asserts in his supplemental brief that *Cargill* is "inapplicable to this case." App. Doc. 63 at 5–9. He correctly observes that "[n]o party [in this case] raised any issue in the [opening] briefing regarding 'a single function of the trigger'" and that "there was no litigation [in the district court] regarding 'a single function of the trigger'"—"no motion to dismiss, no motion in limine, no objection, and no evidence." App. Doc. 63 at 8. That is true. But Ervin does not address our argument—set out in our supplemental-authority letter—that *Cargill* is relevant because it implies that Congress may regulate machineguns (and conversion devices) and that the National Firearms Act does not violate the Second Amendment as applied here. *See* App. Doc. 55. That's why we brought *Cargill* to the Court's attention. Ervin's silence suggests that he does not disagree with that.

Hoover takes a different tack with his supplemental brief. First, he doubles down on his new assertion that, in light of *Cargill*, his lightning link did not generate "automatic" fire (although he now claims that's because the device caused a "malfunction"). *See* App. Doc. 62 at 2–18. Second, he raises a

3

completely different argument having nothing to do with *Cargill* and nothing to do with the arguments in his opening brief. He now claims that the NFA exceeds Congress's authority under the Taxing and Spending Clause. *Id*. at 19–24. He says "review of the record inspired by new precedent" revealed this belated argument. *Id*. at 1. Notably, Hoover (like Ervin) does not address the *Cargill* argument in the United States' supplemental-authority letter. He, too, apparently concedes that *Cargill* undermines his Second Amendment challenge. Nowhere in his supplemental brief does Hoover address an issue or argument raised in the opening briefs. This Court typically does not consider issues raised for the first time in a supplemental brief. *See United States v. Levy*, 379 F.3d 1241, 1242 (11th Cir. 2004). We explain below why *Cargill* matters and why it does not. We also address Hoover's unavailing, belated argument about the Taxing and Spending Clause.

## Argument and Citations of Authority

I.   *Cargill* **supports the conclusion that the Second Amendment does not prevent the government from regulating machineguns and machinegun-conversion devices.**

*Garland v. Cargill*, 602 U.S. 406 (2024), relates to this appeal in one way: it strongly suggests that the machinegun restrictions that Hoover and Ervin violated are constitutional. Hoover and Ervin were convicted of possessing or

4

transferring machinegun-conversion devices in violation of 26 U.S.C. §§ 5841, 5845, and 5861(e). *See* Doc. 204 at 1–14. Hoover argued in his opening brief that the Second Amendment blocks the government from regulating the AutoKeyCard conversion device. *See* Hoover's brief at 55–59. *Cargill* implies otherwise. Across the board, the majority, concurring, and dissenting opinions seem to recognize that Congress is free to regulate machineguns and conversion devices.

As we explained in our supplemental-authority letter, *Cargill* holds that a semiautomatic rifle equipped with a "bump stock" is not a "machinegun" under the NFA because a bump stock generates rapid successive trigger functions, not automatic fire "by a single function of the trigger," as the NFA provides. *Cargill,* 602 U.S. at 413–23. Ervin correctly notes in his supplemental brief that this part of *Cargill* has no bearing here. *See* App. Doc. 63. He's right about that, because neither he nor Hoover disputed at trial or in their appellate briefs that the two-piece lightning link in the AutoKeyCard generates automatic fire by a single function of the trigger. *Cf. Cargill*, 602 U.S. at 420 n.4 (addressing auto sears). And regardless, the evidence showed that it did, as we explain farther below.

Here is why we brought *Cargill* to the Court's attention: In striking down ATF's interpretation of the law, *Cargill* notes that Congress *could* prohibit bump

stocks by amending the statute. And the Court strongly implies that proposed legislation banning bump stocks would have made a difference in that case. For instance, the Court observes, "Congress could have linked the definition of 'machinegun' to a weapon's rate of fire, as the dissent would prefer." *Cargill*, 602 U.S. at 428. "But, it instead enacted a statute that turns on whether a weapon can fire more than one shot 'automatically ... by a single function of the trigger,'" and by *that* definition, a bump stock (unlike a lightning link) does not turn a semiautomatic rifle into a machinegun. *Id.* (The Court notes that "[n]one of these bills became law," however, and "[s]imilar proposals in the intervening years have also stalled." *Id.* at 412–13.) Justice Alito is even more explicit in his concurring opinion. He invites Congress to restrict machineguns and conversion devices more broadly: "Congress can amend the law—and perhaps would have done so already if ATF had stuck with its earlier interpretation. Now that the situation is clear, Congress can act." *Id.* at 429 (Alito, J., concurring). And the dissenting justices think the Court should "respect congressional intent" and uphold ATF's classification of bump stocks as prohibited devices under the NFA. *See id.* at 443–46 (Sotomayor, J., dissenting). All of this undercuts Hoover's argument that the Second Amendment prevents the government from regulating the AutoKeyCard (or any machinegun-conversion device).

6

Although *Cargill* is a statutory-interpretation case, not a Second Amendment one, the Court's resort to a potential statutory fix encompassing bump stocks strongly suggests that the Second Amendment would not stand in Congress' way. It's hard to imagine that the Court invited an unconstitutional remedy. And that's perhaps doubly so given that Justice Thomas authored both *Cargill* and *Bruen*, the Court's Second Amendment blueprint. *Cargill* thus supports the district court's ruling that the Second Amendment is no bar to Ervin's and Hoover's prosecutions. That's all that *Cargill* means here. Nothing more.

## II.    Although this Court should not consider this newly asserted argument, the jury reasonably found that the lightning links in the AutoKeyCard were designed and intended to generate automatic fire "by a single function of the trigger."

Hoover attempts to leverage *Cargill* with a new argument that he could have made earlier but didn't (presumably because it flies in the face of the evidence). The evidence did not support the argument then and it does not support it now. *Cargill* did not change this record.

Hoover says that *Cargill* somehow shows that the lightning links that he and Ervin were convicted of possessing or transferring did not generate "automatic" fire. *See* Hoover's supplemental brief at 2–19. He's wrong about that, but this much is true: the jury had to find that the AutoKeyCard was

*designed and intended* to convert a weapon to fire automatically "by a single function of the trigger." 26 U.S.C. 5845(b) (definition). That's how the court instructed the jury, and the jury found that the AutoKeyCard was designed and intended to do just that. *See* Doc. 254 at 18 & 25 (jury instructions); Docs. 263–64 (verdict forms). We will explain the evidence supporting the jury's finding on this element (see below), but this Court need not address it because Hoover abandoned the issue. Indeed, nowhere in Hoover's supplemental brief does he address an issue or argument raised in the opening briefs. This Court typically does not address issues raised for the first time in a supplemental brief. *See United States v. Levy*, 379 F.3d 1241, 1242 (11th Cir. 2004). Issues not raised in a party's opening brief—like this entirely new argument about whether these lightning links generated "automatic" fire—are deemed abandoned. *See id*. at 1242–43. Although this Court recognizes an exception "[w]here precedent that is binding in this circuit is overturned by an intervening decision of the Supreme Court," *United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (en banc), *Cargill* did not overrule governing precedent, nor has Hoover suggested that it did. This Court should not consider Hoover's belated argument.

Regardless, overwhelming evidence supports the jury's verdicts. Most of it is described in our response brief. *See* United States' response brief at 4–22

8

(explaining how, by Ervin's and Hoover's own words and actions, they conspired to design, manufacture, market, advertise, and sell the AutoKeyCard as a functional device to convert semiautomatic weapons to fully automatic machineguns). *Cargill* has nothing to do with any of this. *Cargill* simply holds that a different type of machinegun-conversion device does not meet the statutory definition for reasons that don't apply here.

Hoover does not argue that the lightning links in the AutoKeyCard were not "designed and intended" to generate automatic fire by a single function of the trigger. Instead, he claims that the device generated automatic fire by a "malfunction" despite how it was designed and intended to work. *See* Hoover's supplemental brief at 2. Functionality, however, is not an element of these offenses. A machinegun-conversion device need not successfully convert a weapon to fire automatically. If it is "designed and intended" to do that, it is a machinegun-conversion device under the statute. *See* 26 U.S.C. § 5845(b). The jury need not have found that the AutoKeyCard worked as intended. That's what Congress decided. *Id*.

Regardless, the jury could have reasonably found that the lightning links in the AutoKeyCard successfully generated automatic fire by a single function of the trigger, as designed and intended. The evidence showed just that. The ATF agent who cut out and tested the device testified that it caused a

9

semiautomatic rifle to "fire[] two rounds automatically with a single function of the trigger" the first time he tested it. Doc. 283 at 164. After the first test, he could not get that weapon to function "as a machinegun" again, but the lightning link "worked better" in another gun. *Id*. Government Exhibit 63 was a video of the agent firing at least five rounds from the second gun with a single trigger pull. *Id.* at 164, 167; Doc. 259-170. The agent later repeated the test with the same gun and the same lightning link, firing two more rounds and then five more rounds "with a single function of the trigger" each time. *Id*. at 167–68. After that, he replaced the bolt carrier with a different version and successfully fired "another five rounds of ammunition ... automatically," again, with a single pull of the trigger. *Id*. at 168. In sum, the agent successfully tested Hoover's and Ervin's lightning link by firing multiple rounds automatically, by a single function of the trigger, at least five times, further supporting the jury's finding that the device had been "designed and intended" to accomplish that.

Hoover claims that "[n]o evidence was put forth that the device ... caused a semiautomatic firearm to fire 'automatically.'" Hoover's supplemental brief at 2. The trial testimony, though, is plain as day. *See* above. Hoover says the lightning link did not function as designed because the ATF agent testified that it induced "hammer follow." *Id*. at 10 (citing Doc. 283 at

163). But the agent said the weapon fired "automatically" *despite* "some hammer follow," which occurred only on the first test anyway. Doc. 283 at 163–64. He then explained that he successfully fired multiple rounds automatically "with a single function of the trigger" at least four more times "without a problem." *Id.* at 164, 167–68. In any event, it doesn't matter whether the lightning link worked as intended. The jury need only have found that it was designed and intended to generate automatic fire by a single function of the trigger, as explained above. The agent's testimony casts no doubt on the jury's finding that this lightning link was designed and intended to do that. Indeed, the testimony supports the jury's finding.

Most of Hoover's supplemental brief is unsupported attorney argument about how he says an AR-15 may be "designed to function 'automatically.'" Hoover's supplemental brief at 5. His brief includes 12 pages of extra-record diagrams and narrative descriptions mostly devoid of citations. *Id.* at 5–17. This Court lacks jurisdiction to conduct *de novo* fact-finding of this nature. That was the jury's job. To reiterate, however, Hoover's belated extra-record assertions suggest no error even if this Court accepts them as fact. The jury reasonably found based on ample evidence that the lightning links in the AutoKeyCard were *designed and intended* to generate automatic fire by a single function of the trigger, as explained above. It makes no difference whether the

11

lightning link functioned as designed (but the evidence showed that it did).

### III.   This Court granted leave to file supplemental briefs addressing *Cargill*. The Court should not entertain Hoover's belated new argument about the Taxing and Spending Clause, which is meritless in any event.

Hoover's other supplemental argument is likewise beyond the scope of the opening briefs, but also beyond the scope of the supplemental-briefing order. In Hoover's supplemental-authority letter, he requested "supplemental briefing on *Cargill*'s application." App. Doc. 58. Ervin similarly requested leave to file a supplemental brief addressing *Cargill*. *See* App. Doc. 60 at 2 (noting the United States's and Hoover's supplemental-authority letters citing *Cargill*, disputing *Cargill*'s applicability to this case, and "ask[ing] this Court to order supplemental briefing in regards to the notices of supplemental authority"). This Court provided the relief that both defendants requested, granting Ervin's motion and giving the "appellants" leave to file a "supplemental brief." *See* App. Doc. 61-1. Ervin and Hoover filed separate briefs as described above. *See* App. Docs. 62–63.

Despite this Court's granting the request to address *Cargill*, Hoover now argues that the National Firearms Act exceeds Congress's authority under the Taxing and Spending Clause. *See* Doc. 62 at 19–24. *Cargill* has nothing to do with that. Hoover says "review of the record inspired by new precedent"

revealed this new argument. *Id*. at 1. But he could have raised it his opening brief. Issues not raised in a party's opening brief are deemed abandoned and not grounds for supplemental briefing. *See Levy*, 379 F.3d at 1242–43. (The *Durham* exception discussed above does not apply to this new argument, either.) Besides, the taxing-and-spending argument has nothing to do with *Cargill*, the case on which this Court granted supplemental briefing. *See* Doc. 62 at 19–24. For this reason too, this Court therefore should not consider the argument.

In any event, the district court correctly ruled that the NFA does not exceed Congress's authority under the Taxing and Spending Clause as applied to Hoover and Ervin. *See* Doc. 141. This Court has held that "the National Firearms Act is constitutional" under the Taxing and Spending Clause even if a defendant is otherwise "precluded by law" from registering a weapon. *United States v. Spoerke*, 568 F.3d 1236, 1245–46 (11th Cir. 2009) (rejecting argument, like Hoover's, that the Act was "unconstitutional as applied to [the defendant] because pipe bombs are unlawful and cannot be taxed"). Hoover claims *Spoerke* is distinguishable because it addressed the constitutionality of the NFA as applied to the possession of pipe bombs, which are not "completely outlaw[ed]" by a separate federal statute. Doc. 62 at 21. He correctly notes that *Spoerke* cited a Tenth Circuit decision holding that a "prosecution for

13

possession of unregistered pipe bombs under the [NFA] was not unconstitutional because registration of a pipe bomb is not a legal impossibility." *Spoerke*, 568 F.3d at 1246. Hoover, though, admits that he, for one, was a Special Occupational Taxpayer licensed to manufacture and deal in NFA firearms, including machineguns and conversion devices. *See* Doc. 259-1 (Gov. Ex. 1) (one of Hoover's videos); United States' response brief at 16 (explaining the video). So registering the AutoKeyCard was not a "legal impossibility." *See also* National Firearms Act Handbook, Bureau of Alcohol, Tobacco, Firearms, and Explosives, at §§ 7.5-7.6, available at https://www.atf.gov/files/publications/download/p/atf-p-5320-8/atf-p-5320-8.pdf (describing that "qualified manufacturers may manufacture machineguns on or after May 19, 1986 for sale to Federal and State agencies or to [Federal Firearms Licensees/payers of the Special Occupational Tax] as 'sales samples' for demonstration to prospective governmental customers" or "for exportation in compliance with the Arms Export Control Act and Department of State regulations") (last visited Oct. 16, 2024). Regardless, it does not follow from *Spoerke* that the NFA is unconstitutional as applied to weapons that cannot be registered. Indeed, *Spoerke* rejected the defendant's argument—like Hoover's— that the NFA was unconstitutional as applied because he was "precluded by law" from registering the weapon (in that case, because he was a convicted

14

felon). *Id.* at 1246. There was no due-process problem, this Court held, because the defendant "could comply with the [NFA] 'by declining to possess firearms.'" *Id.* (quoting *United States v. Rivera*, 58 F.3d 600, 601 (11th Cir. 1995)). The same is true for Hoover and Ervin.

## Conclusion

This Court should affirm Hoover's and Ervin's convictions and sentences for these reasons and the reasons in our response brief.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

By:  *s/ Sean Siekkinen*
SEAN SIEKKINEN
Assistant United States Attorney
Appellate Division
USA No. 192
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
sean.siekkinen@usdoj.gov

15

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 3,282 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was sent by CM/ECF on October 16, 2024, to:

VALARIE LINNEN, ESQ.
*Counsel for Kristopher Ervin*

MATTHEW LAROSIERE, ESQ.
*Counsel for Matthew Hoover*

*s/ Sean Siekkinen*
SEAN SIEKKINEN
Assistant United States Attorney

Gkpr - no / 5-10-24

*b_Ervin, Kristopher et al_US supplemental brief_FINAL.docx*